## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| **et al.** | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | **Chapter 11** |

### DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING BUSINESS FORMS AND RECORDS; (II) AUTHORIZING MAINTENANCE OF EXISTING CORPORATE BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM; AND (III) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(b)

The above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their proposed undersigned attorneys, file this Emergency Motion for an Order (i) Authorizing Continued Use of Existing Business Forms and Records; (ii) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System; and (iii) Waiving the Requirements of 11 U.S.C. § 345(b) (the "Motion") and in support thereof, respectfully represent as follows:

### I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.  BACKGROUND

2.      On December 4, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the

HOUSTON\2342126

"Court").   Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession.   Joint administration of the cases was granted by Court order on December 8, 2009.   No trustees or examiners have been appointed in these cases.

3.      With their original petitions, the Debtors contemporaneously filed a Notice of Designation as Complex Chapter 11 Bankruptcy Case.

4.      The Debtors are privately-held companies based in Houston, Texas that provide subsea services for the offshore oil and gas industry.   The Debtors offer remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection and repair services.

5.      The debtor Deep Marine 1, LLC is a Louisiana limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.   Deep Marine 1, LLC is the owner of the DMT Diamond, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 50T dynamic knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.

6.      The debtor Deep Marine 2, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.   Deep Marine 2, LLC is the owner of the DMT Emerald, a 292 ft. Class II DP Maintenance and Support Vessel, which includes a 100T knuckle boom crane, a 100T Heave Compensated Multi-purpose Lifting Tower, a 23x27 Moonpool, and accommodations for 73 people.   The DMT Emerald is outfitted with two 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

7.      The debtor Deep Marine 3, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.   Deep Marine 3, LLC is the owner

of the DMT Topaz.  The DMT Topaz is a 220 ft. Class II DP diving support vessel, which includes a 40T knuckle boom crane.  The DMT Topaz is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

8.      The debtor Deep Marine 4, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 4, LLC is the owner of the DMT Sapphire, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 40T knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.  The DMT Sapphire is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class ROV.

9.      The debtor Deep Marine Technology Incorporated is a Texas corporation, and is the sole member and manager of Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC.  Deep Marine Technology Incorporated is the wholly owned subsidiary of the debtor Deep Marine Holdings, Inc., a Delaware corporation.  Deep Marine Holdings, Inc. is owned by DCC Ventures, LLC and Otto Candies, LLC.

10.      As of the Petition Date, the Debtors employed seven (7) individuals in total, all of whom were and are employed by Deep Marine Technologies Incorporated.  Four of these individuals are currently aboard the Debtors' various vessels.  The remaining three individuals consist of the Chief Operating Officer, Chief Financial Officer and Controller.

11.      The Debtors' businesses heavily depend on the availability of capital. The downturn in the economy, the credit crisis, and the dramatic drop in oil and gas prices have all negatively impacted the Debtors' businesses and the Debtors' abilities to timely meet their financial obligations.

12.     Prior to commencing these cases, in the ordinary course of their businesses, the Debtors used a cash management system (the "Cash Management System") to efficiently collect, transfer, and disburse funds generated by their business operations.  The Cash Management System consists of the following accounts, held in the name of Deep Marine Technology Incorporated and maintained at Amegy Bank, 4400 Post Oak Parkway, Houston, Texas 77027, and PNC Bank, 620 Liberty Avenue, Pittsburg, Pennsylvania 15265.

    (a)     Account No.  XXXXXX3720, at Amegy Bank (the "Amegy Account")

    (b)     Account No. XXXXXX2074, at PNC Bank (the "Cash Intake Account")[1]

    (c)     Account No. XXXXXX2082, at PNC Bank (the "Operating Account")

13.     The Amegy Account, Cash Intake Account and Operating Account are collectively referred to herein as the "Accounts."

### III.  RELIEF REQUESTED AND BASIS THEREFORE

14.     The Debtors request, pursuant to §§ 105(a), 345(b), 363(c), and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the entry of an order (i) authorizing the Debtors to continue using their existing business forms and records; (ii) authorizing the Debtors to maintain their bank accounts and Cash Management System; and (iii) waiving the requirements of 11 U.S.C. § 345(b).

**A.     The U.S. Trustee Guidelines and Section 345(b) of the Bankruptcy Code**

15.     The Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") has established its Guidelines for Chapter 11 Debtors-in-Possession (the "Guidelines") in order to supervise the administration of chapter 11 cases.  The Guidelines require chapter 11 debtors-in-possession to, among other things, close all existing bank accounts

---

[1] PNC Bank is a lender to the Debtors under a revolving credit agreement.  Such revolving credit agreement is allegedly secured by accounts receivable of the Debtors.  Any funds held by the Debtors in deposit accounts at PNC Bank may be subject to the security interests of PNC Bank arising under the revolving credit agreement and related documents.

and open new debtor-in-possession ("DIP") bank accounts, establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), maintain a separate DIP account for cash collateral, and obtain checks for all DIP accounts that bear the designation, "debtor-in-possession," the bankruptcy case number, and the type of account.  The Guidelines also require debtors to close their books and records as of the petition date and to open new books and records.  The Guidelines are designed to provide, among other things, a clear demarcation between pre-petition and post-petition transactions and operations, which would, in theory, prevent the inadvertent post-petition payment of a pre-petition claim.

16.     As set forth below, the Debtors seek a waiver of certain requirements of the Guidelines.  The Debtors' operations would be harmed by the disruption, confusion, delay, and cost that would most certainly result from rigid compliance with the Guidelines.

17.     Section 345(b) of the Bankruptcy Code provides as follows:

Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested–

    (1)     a bond–

        (A)     in favor of the United States;

        (B)     secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

        (C)     conditioned on–

            (i)     a proper accounting for all money so deposited or invested and for any return on such money;

            (ii)     prompt repayment of such money and return; and

            (iii)     faithful performance of duties as a depository; or

    (2)     the deposit of securities of the kind specified in section 9303 of title 31;

unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

18.     On a forward going basis, the Debtors intend to use only the Amegy Account for all funds to be collected and distributed, other than funds collected as accounts receivable.  The Debtors will continue to deposit alleged proceeds of accounts receivable into the PNC Cash Intake Account, to the extent that such accounts receivable existed as of the Petition Date, until the PNC revolving credit agreement is satisfied in full or such accounts receivable are fully collected, whichever occurs first.[2]  Although the Debtors believe their account with Amegy Bank satisfies § 345(b), out of an abundance of caution, the Debtors also request a waiver, to the extent necessary, of the requirements of § 345(b) of the Bankruptcy Code.

**B.      Existing Business Forms and Records**

19.     The Debtors seek a waiver of the Guidelines' requirement that they open a new set of books and records as of the Petition Date.  Opening a new set of books and records would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay.[3]  The Debtors, in the ordinary course of their business, use many invoices, stationery, and other business forms.  By virtue of the nature and scope of the business in which the Debtors are engaged and the numerous other parties with whom they deal, the Debtors need to use their existing business forms without alteration or change.  Printing new business forms would take an undue amount of time and expense.  Accordingly, the Debtors respectfully request that they be authorized to continue to use their existing business forms and to maintain their existing business records.

---

[2] The Debtors make no admission as to the validity of any security interest alleged by PNC Bank or the applicability of any such interest to accounts receivable collected post-petition and the Debtors reserve all rights with respect thereto.

[3] The Debtors do intend to purchase and utilize QuickBooks software to organize and manage their books on a post-petition basis and to this extent, the Debtors will be "opening a new set of books."

**C.**     **Continued Use of Bank Accounts and Cash Management System**

20.     The Debtors respectfully request authority to maintain the Accounts and the Cash Management System in accordance with their usual and customary practices to ensure a smooth transition into chapter 11 with minimal disruption to operations.  The Debtors also request authority to close any of the Accounts if, in the exercise of their business judgment, the Debtors determine that such action is in the best interest of their estates.

21.     In order to conduct their post-petition business, the Debtors need to be able to issue checks to vendors, service providers, employees, and others.  To open new accounts and obtain checks for those accounts will cause delay and disruption to the Debtors' business and a delay in receipt of funds needed for the Debtors' operations.  The Debtors have added the designation "Debtor in Possession" or "DIP" to any checks in their possession and instructed Amegy to add the designation to current and future Accounts.[4]

22.     The Debtors' Cash Management System constitutes an ordinary course, essential business practice providing significant benefits to the Debtors including, among other things, the ability to (i) control funds, (ii) ensure the availability of funds when necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information.  Any disruption of the Cash Management System could have a severe and adverse impact upon the Debtors' reorganization efforts.

23.     The relief requested in this motion is vital to ensuring the Debtors' seamless transition into bankruptcy.  Authorizing the Debtors to maintain their Cash Management System, as modified, will avoid many of the possible disruptions and distractions that could divert the Debtors' attention from more pressing matters during the initial days of these chapter 11 cases.

---

[4] Just prior to the initiation of the bankruptcy cases the Debtors required and ordered new checks from Amegy Bank which bear the designation of "debtor in possession" on their face.

24.    No checks issued prior to the Petition Date will be honored, except as otherwise provided by separate order of this Court.  The Debtors reserve their rights pursuant to § 549 of the Bankruptcy Code with respect to any check issued pre-petition that is inadvertently honored post-petition.  The Debtors will continue to maintain records respecting all transfers between and among the Bank Accounts so that all transactions can be ascertained after they have occurred.

**D.    Payment of Banking Fees**

25.    Additionally, Amegy charges monthly fees to the Debtors for maintaining the Bank Accounts, which may vary monthly based on actual usage.   The fees are assessed according to the kind of transaction.[5]  The Debtors were current on payment of these monthly fees as of the Petition Date.  The Debtors request authority to continue paying the monthly fees in the ordinary course of business, including any portion of the fee attributable to pre-petition services.

**E.    Waiver of Requirements of 11 U.S.C. § 345(b)**

26.    Pursuant to § 105(a) of the Bankruptcy Code, the Debtors seek a waiver of the requirements of § 345(b) of the Bankruptcy Code.  As discussed above, the Accounts are maintained with a financial institution that is financially stable and on the list of approved financial institutions maintained through the Office of the United States Trustee.  Out of an abundance of caution, however, the Debtors request a waiver of the requirement to comply with § 345(b)'s investment guidelines, if necessary, as the deposit of funds with Amegy Bank should pose no substantial risk to the Debtors' estates or creditors.

27.    Section 345(a) of the Bankruptcy Code authorizes deposits or investments of money of estates, such as the Debtors' cash, in a manner that "will yield the maximum reasonable

---

[5] For example, $20.00 for a wire transfer.  The fees average between $700 and $800 per month.

net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).

28.     Due to the significant amounts of money that may be in the Accounts from time to time, it would take a large amount of time for the Debtors to locate and determine, where necessary, appropriate alternative accounts that satisfy § 345(b).  Requiring the Debtors to change their deposits and other procedures could result in harm to the Debtors, their estates, and creditors because such change would disrupt the Cash Management System.  Conversely, the Debtors' estates and creditors will not be harmed by the Debtors' maintenance of the status quo because of the relatively safe and prudent practices already utilized by the Debtors.

29.     For each of the foregoing reasons, a waiver of the requirement to comply with the investment guidelines set forth in § 345(b) should not pose any risk to the Debtors' estates.

## IV.  APPLICABLE AUTHORITY

30.     Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Courts have long recognized that the power granted by § 105(a) was expressly meant to be exercised to effectuate the rehabilitation of the debtor.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 16 (1977)).  The relief requested in this Motion is critical to the Debtors' successful reorganization or liquidation, and is justified under § 105(a).

31.     Extensive authority supports the relief the Debtors seek in the Motion.  In other chapter 11 cases, courts have recognized that strict enforcement of the United States Trustee requirements does not always serve the purposes of a chapter 11 bankruptcy.  Accordingly, courts have often waived such requirements and replaced them with alternative procedures.  *See,*

*e.g.,* In *re Sterling Chemicals Holdings, Inc.,* Case No. 01-37805 (Bankr. S.D. Tex. July 18, 2001); *In re TransCom USA Mgmt. Co.,* Case No. 01-35158 (Bankr. S.D. Tex. May 10, 2001); *In re Stage Stores, Inc.,* Case No. 00-35078 (Bankr. S.D. Tex. June 20, 2000).

32.     Additionally, § 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).   The purpose of § 363(c)(1) of the Bankruptcy Code is to provide a debtor-in-possession with the flexibility to engage in the ordinary course transactions required to operate its business without unneeded oversight by its creditors or the Court.  *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Git-N-Go, Inc.*, 322 B.R. 164, 171 (Bankr. N.D. Okla. 2004); *In re Enron Corp.*, No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *In re Atlanta Retail, Inc.*, 287 B.R. 849, 856 (Bankr. N.D. Ga. 2002); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of § 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under § 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement, of cash pursuant to their Cash Management System as described above.

## V.  NOTICE

33.     Notice of this Motion has been or will be provided to the United States Trustee for the Southern District of Texas, the Debtors' known or alleged secured creditors, the 30 largest unsecured creditors of the Debtors (on a consolidated basis), the United States Attorney's Office for the Southern District of Texas, the Internal Revenue Service, any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and any such other government agencies to

the extent required by the Bankruptcy Rules and Local Rules.   The Debtors submit that no further notice of this Motion is required.

WHEREFORE, premises considered, the Debtors respectfully request that the Court grant the Motion, authorize the Debtors to continue using their existing business forms and records, authorize the Debtors to maintain their existing corporate bank accounts and cash management system, waive the requirements of 11 U.S.C. § 345(b), and grant such other and further relief as is just and proper.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By:  _/s/ Marcy E. Kurtz_
      Marcy E. Kurtz
      Texas Bar No. 11768600
      Marcy.Kurtz@bgllp.com
      William A. (Trey) Wood III
      Texas Bar No. 21916050
      Trey.Wood@bgllp.com
      Jason G. Cohen
      Texas Bar No. 24050435
      Jason.Cohen@bgllp.com
      Bracewell & Giuliani LLP
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone:    (713) 223-2300
      Facsimile:    (713) 221-1212

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on December 15, 2009, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

*/s/ Jason G. Cohen*
        Jason G. Cohen
