IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | Case No. 09-39313 |
| et al. | § | |
| | § | Jointly Administered |
| Debtors. | § | Chapter 11 |

**DEBTORS' EMERGENCY MOTION FOR ORDER AUTHORIZING MAINTENANCE OF INSURANCE POLICIES AND PAYMENT OF INSURANCE PREMIUMS AND INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT PAYMENTS**

The above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this motion (the "Motion") for an order authorizing maintenance of insurance policies and payment of insurance premiums and insurance premium finance and security agreement payments. In support thereof, the Debtors respectfully represent as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. BACKGROUND

2. On December 4, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are

operating their businesses and managing their property as debtors-in-possession. Joint administration of the cases was granted by Court order on December 8, 2009. No trustees or examiners have been appointed in these cases.

3. With their original petitions, the Debtors contemporaneously filed a Notice of Designation as Complex Chapter 11 Bankruptcy Case.

4. The Debtors are privately-held companies based in Houston, Texas that provide subsea services for the offshore oil and gas industry. The Debtors offer remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection and repair services.

5. The debtor Deep Marine 1, LLC is a Louisiana limited liability company wholly owned by the debtor Deep Marine Technology Incorporated. Deep Marine 1, LLC is the owner of the DMT Diamond, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 50T dynamic knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.

6. The debtor Deep Marine 2, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated. Deep Marine 2, LLC is the owner of the DMT Emerald, a 292 ft. Class II DP Maintenance and Support Vessel, which includes a 100T knuckle boom crane, a 100T Heave Compensated Multi-purpose Lifting Tower, a 23x27 Moonpool, and accommodations for 73 people. The DMT Emerald is outfitted with two 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

7. The debtor Deep Marine 3, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated. Deep Marine 3, LLC is the owner of the DMT Topaz. The DMT Topaz is a 220 ft. Class II DP diving support vessel, which

includes a 40T knuckle boom crane. The DMT Topaz is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

8. The debtor Deep Marine 4, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated. Deep Marine 4, LLC is the owner of the DMT Sapphire, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 40T knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people. The DMT Sapphire is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class ROV.

9. The debtor Deep Marine Technology Incorporated is a Texas corporation, and is the sole member and manager of Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC. Deep Marine Technology Incorporated is the wholly owned subsidiary of the debtor Deep Marine Holdings, Inc., a Delaware corporation. Deep Marine Holdings, Inc. is owned by DCC Ventures, LLC and Otto Candies, LLC.

10. As of the Petition Date, the Debtors employed seven (7) individuals in total, all of whom were and are employed by Deep Marine Technologies Incorporated. Four of these individuals are currently aboard the Debtors' various vessels. The remaining three individuals consist of the Chief Operating Officer, Chief Financial Officer and Controller.

11. The Debtors' businesses heavily depend on the availability of capital. The downturn in the economy, the credit crisis, and the dramatic drop in oil and gas prices have all negatively impacted the Debtors' businesses and the Debtors' abilities to timely meet their financial obligations.

## III.  RELIEF REQUESTED

12. In connection with the operation of their businesses, the Debtors maintain various insurance policies (the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers").  Attached hereto as **Exhibit A** is a list of the Insurance Programs, Insurance Carriers, policy numbers, coverage dates, premiums, the date through which each policy is paid, and the amount of premium outstanding.

13. Debtors' Insurance Programs include coverage for Workers Compensation, Automobile Liability, Property Insurance, Maritime Employers Liability, Maritime General Liability, Bumbershoot Liability (i.e. excess liability coverage for insureds with major wet marine exposures), Excess Bumbershoot Liability, Contractors Equipment, Protection & Indemnity for Pollution and War, and Hull & Machinery.

14. The Debtors are required to pay premiums based upon a fixed rate established and billed by each Insurance Carrier.  The premiums for most of these policies are determined annually or semi-annually and are paid either directly to the Insurance Carrier, or are financed through a third party (who has paid the Insurance Carrier).  Specifically, the Debtors directly pay American International Group, Inc., Hartford Underwriters Insurance Co., and Hartford Lloyds Insurance Company for their Workers Compensation, Automobile Liability, and Property Insurance, respectively.  The Debtors finance the premiums for the remainder of their Insurance Programs under two finance agreements with Aon Corporation (the "Finance Agreements").

15. Finally, the Debtors maintain Directors & Officers Insurance (the "D&O Insurance") to indemnify their directors and officers from claims brought against such individuals in their capacities as executives for the Debtors.  The D&O Insurance is described in more detail on Exhibit A.  The Debtors are in the process of securing additional D&O Insurance

to cover periods extending through and beyond the bankruptcy cases (i.e. a "tail policy") to ensure the availability of insurance and protection for the Debtors' officers and directors through this timeframe.

16. Accordingly, pursuant to Sections 105(a), 363(b) and 503(b) of the Bankruptcy Code, the Debtors seek authorization to (i) maintain and continue to make payments with respect to the Insurance Programs and Financing Agreements on an uninterrupted basis, and (ii) pay all pre-petition premiums, finance payments, deductibles, and other amounts due under the Insurance Programs and Financing Agreements, including retrospective adjustments. In addition, the Debtors propose to continue to make all post-petition payments with respect to the Insurance Programs and Financing Agreements. The Debtors propose to pay all obligations arising under or related to these programs and policies and the Financing Agreements subsequent to the Petition Date in the ordinary course of business, not on an accelerated basis, and in accordance with the terms of these programs and policies and the Finance Agreement. To the extent a premium, finance payment or deductible reimbursement relating to a period prior to the Petition Date is outstanding with respect to any insurance policy, the Debtors seek authority to make such payment in the same manner that such payments were made prior to the Petition Date

17. The Debtors further request that the Court authorize and direct those banks at which the Debtors maintain accounts to receive, process, honor and pay any and all checks drawn or electronic funds transferred to pay the Insurance Obligations, whether such checks were presented prior to or after the Petition Date; *provided, however*, that such checks or electronic transfers are indentified by the Debtors as relating directly to the authorized payment of the Insurance Obligations. The Debtors also seek authority to issue new post-petition checks, or effect new electronic fund transfers, on account of the Insurance Obligations to replace and

pre-petition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtors' Chapter 11 cases.

18. For the reasons set forth below, the Debtors submit that cause exists to grant the relief requested herein.

## IV. ARGUMENT AND AUTHORITY

19. Pursuant to § 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to § 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate outside of the ordinary course of business. *See* 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code further provides that the court may issue any order that is "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20. The Debtors believe that most of their obligations under the Insurance Programs will constitute post-petition obligations of the Debtors' estates. With respect to those Insurance Obligations that are pre-petition claims, however, payment of such obligations is necessary and appropriate, and may be authorized under §§ 363(b) and 105(a) of the Bankruptcy Code pursuant to the "doctrine of necessity."

21. The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical pre-petition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 490 (Bankr. N.D. Tex. 2002) (holding that a court may authorize payment of pre-petition claims if, among other things,

dealing with the claimant is virtually indispensable to the preservation of the estate); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of pre-petition claims if such payment is essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of pre-petition employee wages and benefits while recognizing the judicial power to "authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that § 105(a) "provides a statutory basis for the payment of pre-petition claims" under the doctrine of necessity and noting that the Supreme Court accepts the authority of the bankruptcy court "to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."). The rationale for the "doctrine of necessity" is consistent with the paramount goal of Chapter 11 – "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176. Accordingly, pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

22. The Debtors must continue their Insurance Programs, which provide a comprehensive range of coverage for the Debtors and their business and properties, in full force and effect. If these policies were allowed to lapse, the Debtors would be exposed to substantial liability for any damages resulting to persons and property of the Debtors and others. Maintenance of the directors' and officers' liability policy also is necessary to the retention of the Debtors' senior management who are critical to the success of the Debtors' business and reorganization and to enable the Debtors to financially indemnify its officers and directors per

the requirements set forth in its corporate bylaws. The guidelines of the Office of the United States Trustee also require the Debtors to maintain their Insurance Programs.

23. The Debtors estimate that the total amount proposed to be paid with respect to pre-petition amounts owed under the Insurance Programs is *de minimis* compared with the size of the Debtors' estates, the importance of employees to the reorganization effort and the potential liability exposure of the Debtors absent insurance coverage. It would be tremendously more costly and disruptive to the Debtors' estate and operations if the Debtors were required to cancel their current policies and attempt to obtain new insurance policies. Based upon the foregoing, the relief requested herein is amply justified.

## V. RESERVATION OF RIGHTS

24. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interests' rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtors to accept any services, to accept the shipment of goods, or prevent the Debtors from returning or rejecting any goods.

## VI. NOTICE

25. Notice of this Motion has been or will be provided to the United States Trustee for the Southern District of Texas, the Debtors' known or alleged secured creditors, the 30 largest unsecured creditors of the Debtors (on a consolidated basis), the United States Attorney's Office

for the Southern District of Texas, the Internal Revenue Service, any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules.  The Debtors submit that no further notice of this Motion is required.

## VIII.  CONCLUSION

WHERFORE, premises considered, the Debtors respectfully request that the Court grant the relief requested herein and enter an order substantially in the form attached hereto, and grant the Debtors such other and further relief as the Court deems just.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By:  _/s/ Marcy E. Kurtz_
     Marcy E. Kurtz
     Texas Bar No. 11768600
     Marcy.Kurtz@bgllp.com
     William A. (Trey) Wood III
     Texas Bar No. 21916050
     Trey.Wood@bgllp.com
     Jason G. Cohen
     Texas Bar No. 24050435
     Jason.Cohen@bgllp.com
     Bracewell & Giuliani LLP
     711 Louisiana, Suite 2300
     Houston, Texas 77002
     Telephone:    (713) 223-2300
     Facsimile:     (713) 221-1212

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on December 15, 2009, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

*/s/ Jason G. Cohen*
Jason G. Cohen