IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| et al. | § | |
| | § | **Jointly Administered** |
| Debtors. | § | **Chapter 11** |

**DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING DEBTORS TO (A) PAY PRE-PETITION WAGES AND SALARIES TO EMPLOYEES AND (B) PAY PRE-PETITION BENEFITS AND TO CONTINUE BENEFIT PROGRAMS IN THE ORDINARY COURSE AND (II) DIRECTING BANKS TO HONOR PRE-PETITION CHECKS FOR PAYMENT OF PRE-PETITION EMPLOYEE OBLIGATIONS**

The above-captioned debtors and debtors-in-possession (together, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this motion (the "Motion") to pay all outstanding pre-petition wages, salaries, benefits and to continue all benefit programs in the ordinary course. In support of the relief requested in the Motion, the Debtors respectfully represent as follows:

**I.  JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicate for the relief requested herein Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**II.  BACKGROUND**

3. On December 4, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession. Joint administration of the cases was granted by Court order on December 8, 2009. No trustees or examiners have been appointed in these cases.

4. With their original petitions, the Debtors contemporaneously filed a Notice of Designation as Complex Chapter 11 Bankruptcy Case.

5. The Debtors are privately-held companies based in Houston, Texas that provide subsea services for the offshore oil and gas industry. The Debtors offer remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection and repair services.

6. The debtor Deep Marine 1, LLC is a Louisiana limited liability company wholly owned by the debtor Deep Marine Technology Incorporated. Deep Marine 1, LLC is the owner of the DMT Diamond, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 50T dynamic knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.

7. The debtor Deep Marine 2, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated. Deep Marine 2, LLC is the owner of the DMT Emerald, a 292 ft. Class II DP Maintenance and Support Vessel, which includes a 100T knuckle boom crane, a 100T Heave Compensated Multi-purpose Lifting Tower, a 23x27 Moonpool, and accommodations for 73 people. The DMT Emerald is outfitted with two 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

8.      The debtor Deep Marine 3, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 3, LLC is the owner of the DMT Topaz.  The DMT Topaz is a 220 ft. Class II DP diving support vessel, which includes a 40T knuckle boom crane.  The DMT Topaz is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

9.      The debtor Deep Marine 4, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 4, LLC is the owner of the DMT Sapphire, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 40T knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.  The DMT Sapphire is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class ROV.

10.     The debtor Deep Marine Technology Incorporated is a Texas corporation, and is the sole member and manager of Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC.  Deep Marine Technology Incorporated is the wholly owned subsidiary of the debtor Deep Marine Holdings, Inc., a Delaware corporation.  Deep Marine Holdings, Inc. is owned by DCC Ventures, LLC and Otto Candies, LLC.

11.     As of the Petition Date, the Debtors employed seven (7) individuals in total, all of whom were and are employed by Deep Marine Technologies Incorporated.  Four of these individuals are currently aboard the Debtors' various vessels.  The remaining three individuals consist of the Chief Operating Officer, Chief Financial Officer and Controller.

12.     The Debtors' businesses heavily depend on the availability of capital. The downturn in the economy, the credit crisis, and the dramatic drop in oil and gas prices have all

negatively impacted the Debtors' businesses and the Debtors' abilities to timely meet their financial obligations.

### III.  RELIEF REQUESTED

13. Because of the filing of the bankruptcy petitions, the Debtors cannot pay pre-petition claims, including salaries and wages incurred before the Petition Date, absent specific Court authorization.

14. In order to avoid the undue hardship that would undoubtedly befall the employees if they went unpaid, the Debtors request the Court to enter an order under Bankruptcy Code §§ 105(a), 363, 507(a)(4), 541, 1107, and 1108 granting the Debtors the authority, in their discretion and in the exercise of their business judgment, (a) to pay all obligations of the Debtors owing to or on behalf of employees (the "Employee Claims"),[1] including pre-petition claims, whether accrued or currently due and payable, of all of the Debtors' remaining seven employees, and (b) directing all financial institutions to honor pre-petition checks for payment of Employee Claims and prohibiting such financial institutions from placing any holds on, or attempting to reverse, any automatic transfers made on Employee Claims.

15. Additionally, the Debtors' employees are unfamiliar with the bankruptcy process and have expressed worry and concern as to the ability of the Debtors to continue to pay wages as the case progresses.  In order to quell such concerns, the Debtors seek, on a forward going basis, permission to pay all their employees on a weekly basis, as opposed to the semi-monthly basis used in the past.  The Debtors do not believe this will have any negative impact whatsoever

---

[1] The Debtors also seek authority to pay all federal, state, local, and foreign income withholding, payroll, employment, unemployment, social security, and similar taxes, whether withheld from Employees' wages or paid directly by the Debtors to governmental authorities, as well as other Employee withholdings, including, but not limited to, charitable contributions and garnishment contributions, if any. The defined term "Employee Claims" is meant to include all such payments.

on the Debtors' cash flow, however, it will greatly reduce the worry and concern of the Debtors' employees, thus allowing them to focus on their efforts to stabilize and assist the Debtors.

16.     Assuming they are granted authority to enter into debtor-in-possession financing and to use such financing,[2] the Debtors will have sufficient funds available to pay all requested amounts as and when due, and all payments made on account of Employee Claims will be made in accordance with any budgeted use of the debtor-in-possession financing approved by the Court.

17.     To the extent that any Employee Claim exceeds the Bankruptcy Code § 507(a) caps, the Debtors request authorization to pay such claims pursuant to Bankruptcy Code §§ 105(a) and 363(b).[3]

18.     Payment of the Employee Claims is necessary for the Debtors' effective reorganization. The Debtors believe that it is critical for employee productivity and stability that all Employee Claims and payments remain current and be continued post-petition. If the Employees' wages are not received in the ordinary course of business, employee morale will deteriorate, which, in turn, will substantially and adversely impact the Debtors' ability to complete a successful reorganization.  Further, if the Employee Claims are not paid in the ordinary course of business, the Employees will suffer personal hardship and in some cases will be unable to pay basic living expenses. This will hurt the Employees, destabilize the Debtors, and harm the Debtors' businesses and reorganization efforts. Any loss of Employees would disrupt the Debtors' businesses and would deplete the value of these estates.  Accordingly, the Debtors seek authorization to pay all Employee Claims in the ordinary course of business.

---

[2] The Debtors have filed a motion for approval of debtor-in-possession financing contemporaneously with the filing of this Motion.

[3] The Debtors believe that only two of the seven remaining employees are owed more than $10,950, and those two employees are owed less than $2,000 each over such amount.

19. Bankruptcy courts in the Fifth Circuit have granted authority for a debtor's payment of claims similar to the Employee Claims. *See, e.g.*, *In re Daisytek, Incorporated,* Case No. 03-34762, Docket No. 48 (Bankr. N.D. Tex. May 12, 2003); *In re Mosaic Group (US) Inc.*, Case No. 02-81440, Docket No. 24 (Bankr. N.D. Tex. Dec. 19, 2002); *In re Food Fast Holdings, Ltd.*, Case No. 02-10542, Docket No. 22 (Bankr. E.D. Tex. Jan. 24, 2002). Moreover, Bankruptcy courts have authorized debtors to pay pre-petition wages, salary expenses, and benefits claims in excess of the Bankruptcy Code § 507(a) caps on the grounds that payment of such claims was necessary to effect a successful reorganization. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Penn Central Trans. Co.*, 467 F.2d 100, 102 (3d Cir. 1973); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989).[4]

**Payment of Trust Fund Taxes**

20. The Debtors are required by law to withhold from an Employee's wages amounts related to applicable federal, state, and local income taxes, social security taxes, and Medicare taxes. The Debtors are required to (a) match the social security and Medicare taxes; (b) based on a percentage of gross payroll, pay additional amounts for state and federal unemployment insurance; and (c) remit these payroll taxes to various taxing authorities.

21. The failure to make such payments may subject the Debtors and their officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 98-99 (3d Cir.

---

[4] Although the "necessity of payment" doctrine has been widely accepted, the Court in *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) developed an alternative test to determine whether payment of certain pre-petition unsecured claims prior to confirmation of a plan of reorganization would be appropriate. Under the *CoServ* test, a debtor must show that (i) it is critical that the debtor deal with the claimant; (ii) unless the debtor deals with the claimant, the debtor risks the probability of harm, or alternatively, loss of economic advantage to the estate of the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim; and (iii) there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* Although the *CoServ* analysis appears to be applicable only to the treatment of pre-petition vendor claims, the payment of the Employee Claims would satisfy the *CoServ* test.

1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan (In re DuCharmes & Co.)*, 852 F.2d 194, 194-96 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes).  Further, under 11 U.S.C. § 541, such funds are not property of the Debtors' estates, and therefore the funds are not subject to the normal bankruptcy prohibitions against payment. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate").

22. Accordingly, the Debtors seek authorization to collect and pay all taxes attributable to pre-petition wages as required by state and federal law, in the ordinary course of business.

**Workers Compensation**

23. Employees also receive workers compensation insurance if they suffer from a disability due to a work-related injury depending upon the nature of the disability or accident (as required by law). The Debtors pay all premiums associated with this benefit in advance and as required by law.  The Debtors request authority to continue to pay for workers compensation insurance in the ordinary course of business as such may become due and payable.

**Payment of Pre-Petition Expenses Related to 401(k) Plan**

24. The Debtors maintain a 401(k) plan (the "401(k) Plan") through ADP Retirement Services, JP Morgan Chase, and ADP, as plan custodian, trustee and administrator, respectively. Through the 401(k) Plan, participating employees may defer a portion of their salary to help meet their future financial goals.  The Debtors do not make any matching contributions to the

401(k) Plan on behalf of their employees. Employees are always 100% vested in the entire account balance of their 401(k) Plan. Through payroll deductions, employees may contribute up to 92.35% of their total compensation, not to exceed the applicable IRS annual limitation.

25. The Debtors request authority to remit all necessary amounts deducted from employee paychecks on account of the 401(k) plans.

**Honoring Pre-Petition Checks and Electronic Transfers**

26. The Debtors request that, to the extent of funds on deposit, all applicable banks and other financial institutions shall be directed to receive, process, honor and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors relating to the Employee Claims, whether such checks were presented or fund transfer requests were submitted prior to, or subsequent to, the Petition Date. Further, the Debtors request authority to issue post-petition checks, or to effect post-petition funds transfer requests in replacement of any checks or funds transfer requests with respect to its pre-petition employee obligations dishonored or denied as a consequence of the commencement of these cases.

## IV.  NOTICE

27. Notice of this Motion has been or will be provided to the United States Trustee for the Southern District of Texas, the Debtors' known or alleged secured creditors, the 30 largest unsecured creditors of the Debtors (on a consolidated basis), the United States Attorney's Office for the Southern District of Texas, the Internal Revenue Service, any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules. The Debtors submit that no further notice of this Motion is required.

## V. COMPLIANCE WITH RULE 6003

28. Bankruptcy Rule 6003 prohibits the payment of pre-petition claims, or the other use of property outside the ordinary course of business, within the first 20 days of a bankruptcy case, expect as necessary to prevent immediate and irreparable harm. For the reasons stated previously herein, the Debtors submit that the relief requested is absolutely necessary to prevent immediate and irreparable harm to these estate.

WHEREFORE, premises considered, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By: _/s/ Marcy E. Kurtz_
    Marcy E. Kurtz
    Texas Bar No. 11768600
    Marcy.Kurtz@bgllp.com
    William A. (Trey) Wood III
    Texas Bar No. 21916050
    Trey.Wood@bgllp.com
    Jason G. Cohen
    Texas Bar No. 24050435
    Jason.Cohen@bgllp.com
    Bracewell & Giuliani LLP
    711 Louisiana, Suite 2300
    Houston, Texas 77002
    Telephone:   (713) 223-2300
    Facsimile:   (713) 221-1212

**PROPOSED ATTORNEYS FOR THE DEBTORS**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on December 15, 2009, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and by United States first class mail, postage prepaid.

>  */s/ Jason G. Cohen*
>  Jason G. Cohen