# EXHIBIT A

## Debtor in Possession Loan Term Sheet

The following summarizes selected terms of a proposed Debtor-in-Possession Loan (the "DIP Loan") for Deep Marine Holdings, Inc., Deep Marine Technology Incorporated, Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC (the "Debtors") in connection with the Debtors' jointly administered chapter 11 bankruptcy cases proceeding in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") under Case No. 09-39313-H1-11 (the "Bankruptcy Case"). This Term Sheet is intended merely as an outline of certain of the material terms of the DIP Loan, and does not include descriptions of all of the terms, conditions, and other provisions that would be contained in the definitive documentation relating to the DIP Loan and it is not intended to limit the scope of discussion and negotiation of any matters not inconsistent with the specific matters set forth herein.

Notwithstanding anything to the contrary in this Term Sheet, Lender (as defined below) has no obligation to fund the interim portion of the DIP Loan until Lender has reviewed and approved the substance of the information contained on Exhibits A, B, C and D (as defined herein), which information will be provided by the Debtors no later than 5:00 p.m. (CST) on Tuesday, December 15, 2009. Lender will complete its review of the information so provided by the Debtors and will notify the Debtors of its acceptance or non-acceptance thereof prior to 2:00 p.m. (CST) on Thursday, December 17, 2009. Further, notwithstanding anything to the contrary in this Term Sheet, Lender (as defined below) has no obligation to fund any portion of the DIP Loan above and beyond the initial $1,500,000.00 until Lender has completed due diligence with respect to the DIP Loan and is satisfied with the results of such due diligence.

| Lender | SunChase Holdings, Inc. ~~Investment, LLC~~ or an entity specifically created by SunChase ~~Investment LLC~~ Holdings, Inc. to make the DIP Loan. |
|---|---|
| Borrowers | Each of the Debtors will be a borrower under the DIP Loan |
| Amount and Availability: | The DIP Loan shall be in the total amount of $3,100,000.00 plus Lender's costs and expenses, including attorneys' fees, and the amount of the Commitment Fee (as defined below).<br><br>$1,500,000 (plus the amount of the Commitment Fee) shall be available upon entry of an interim order approving the DIP Loan satisfactory to Lender. |

| | |
|---|---|
| | $1,600,000 shall be available upon (A) entry of a final order approving the DIP Loan satisfactory to Lender, and (B) upon completion by Lender of a satisfactory inspection of the "DMT Sapphire".<br><br>The Lender shall complete the foregoing inspection and shall notify the Debtors of the results thereof as promptly as possible. |
| Security | Pursuant to 11 U.S.C. §§364(c)(1), (2) and (d)(1) the DIP Loan shall be secured by a first priority lien on the "DMT Sapphire."<br><br>The "DMT Sapphire" will be subject to a preferred ship mortgage (the "Mortgage") in favor of Lender that qualifies as a "preferred mortgage" under the provisions of Chapter 313 of Title 46 of the U.S. Code, as amended ("Chapter 313"), and Debtors will comply with and satisfy all provisions of Chapter 313 necessary to establish and at all times maintain the Mortgage as a "preferred mortgage" under said Chapter 313.<br><br>The first priority lien shall be subject to a carve-out for (a) allowed fees and expenses of attorneys, accountants, financial advisors, and other professionals retained by the Debtors (the "Debtors' Professionals") pursuant to the U.S Bankruptcy Code (the "Code'); (b) United States Trustee fees; and (c) any and all allowed fees and expenses of the Debtors' Professionals after the occurrence of an event of default or the end of the Term in an amount (exclusive of any retainers held by such Debtors' Professionals) not to exceed $300,000.00 (the "Carve-Out").<br>Pursuant to 11 U.S.C. §§364(c)(1) and (3) the DIP Loan shall be secured by a junior lien on all of the Debtors' other property, including the proceeds of such property. |

| | |
|---|---|
| Purpose | To fund general working capital needs of the Debtors during the pendency of the Bankruptcy Case, strictly in accordance with the Approved Budget (as defined below). |
| Use of DIP Loan Proceeds | Proceeds of the DIP Loan would be used to fund: (i) the fees and expenses associated with the DIP Loan as agreed to by the Debtors, and (ii) the amounts described in the Debtors 17-week cash flow budget of receipts and disbursements, as approved by Lender (the "**Approved Budget**"). |
| Term | The earlier of (i) June 30, 2010, (ii) the conversion or dismissal of the Bankruptcy Case; or (iii) the effective date of a Plan of Reorganization for the Debtors. |
| Interest Rate | The DIP Loan will bear interest at a base rate of fifteen percent (15%) per annum (the "**Base Rate**"). After the occurrence and during the continuance of an event of default, interest of the DIP Loan will bear interest at a rate equal to 4 percent (4%) plus the Base Rate.<br><br>Interest shall be due and payable on the last day of the Term. Interest to be computed on the basis of a 360-day year. |
| Fees | Debtors will pay Lender a commitment fee equal to 5 percent (5%) of the aggregate principal amount of the DIP Loan (the "**Commitment Fee**"). The Commitment Fee shall be payable to the Lender at the time that it makes the first advance to the Debtors. In addition, at the end of the Term, the Debtors will pay Lender an exit fee equal to 2 percent (2%) of the aggregate principal amount of the DIP Loan. |
| Amortization | None, all amounts due under the DIP Loan, |

3

| | |
|---|---|
| | excluding the Commitment Fee, shall be paid at the end of the term. |
| Voluntary Prepayments | Permitted at the option of the Debtors. |
| Representations and Warranties | Debtors are duly organized, validly existing and in good standing in their state of incorporation.<br><br>Executing and entering into the DIP Loan (i) does not conflict with or cause a breach or default under any of the terms, conditions or provisions of any constitutional provision, statute, order, rule or regulation of any court or governmental or regulatory agency or body having jurisdiction over the Debtor or their activities; and (ii) does not constitute a default under any of the foregoing.<br><br>No consent, licenses, permit, approval or authorization of, notice or report to, or registration, filing or declaration with any governmental or regulatory authority, any court, or any other third party, is required for the execution, delivery and performance of this DIP Loan, other than the approval of the Bankruptcy Court.<br><br>Debtors are the sole owners of the "DMT Sapphire" and the equipment thereon, as set forth on Exhibit A, save and except the equipment listed on Exhibit B.<br><br>There has been no lapse in insurance coverage on the "DMT Sapphire" since December 1, 2009. |
| Covenants | |
| | Debtors are and shall remain citizens of the United States of America within the meaning of Section 50501 of Title 46 of the United |

4

| | |
|---|---|
| | States Code for purposes of operating the "DMT Sapphire" in the United States coastwise trade, and Debtors are duly authorized, upon approval of the Bankruptcy Court to mortgage the "DMT Sapphire," in accordance with the Mortgage.. All action necessary or required by law for the making and delivery of this DIP Loan, has, upon approval of the Bankruptcy Court, been duly and effectively taken. Debtors have the corporate or limited liability company, as applicable, right and power and are duly authorized by all necessary corporate or limited liability company, as applicable, action to enter into, execute, deliver and perform the DIP Loan and the security and ancillary documents to be executed in connection therewith (the "Related Documents"). Debtors now have complete and lawful authority and privilege to own, maintain and operate the "DMT Sapphire" in the coastwise trade, and Debtors hereby expressly covenants that they will at all times cause to be done all things necessary to maintain the eligibility of the "DMT Sapphire" for use in the coastwise trade.<br><br>Debtors will duly and punctually pay or cause to be paid all of the indebtedness, liabilities and obligations of Debtors due to Lender under the DIP Loan and the Related Documents, at the dates and places, in the manner, and according to the terms provided in the DIP Loan Agreement and the Related Documents, and will at all times keep, perform and observe all and singular the covenants, conditions, and agreements in the DIP Loan Agreement and the Related Documents.<br><br>Debtors at the time of delivery hereof are lawfully possessed of and are the sole and lawful owners of the whole of the "DMT Sapphire" and, upon approval of the Bankruptcy Court, have full power and authority to sell, mortgage and convey the "DMT Sapphire", and will warrant and defend the title and interest of Lender, its successors |

and assigns, hereunder against the claims and demands of all persons (subject to existing claims and demands as set forth on Exhibit C); the "DMT Sapphire" are and shall at all times during the life of the DIP Loan, or any renewal or extension thereof, be kept free of all encumbrances, charges and liens whatsoever (other than existing encumbrances, charges, and liens as set forth on Exhibit D), except maritime liens arising in the ordinary course of the operation of the business, provided always that Debtors are not delinquent in the payment of any money obligation in connection therewith (subject to the requirements of the Code and the Approved Budget) unless Debtors, in good faith and by appropriate proceedings, shall contest the validity thereof. Such right of Debtors to contest the validity of any maritime lien shall, however, in no event be construed as permitting any arrest, attachment, seizure or detention of the "DMT Sapphire" to remain undissolved or discharged, and if "DMT Sapphire" shall be so arrested, attached, seized, detained or taken into custody, Debtors will forthwith take such steps as will release the same.

Debtors covenant and agree that they will, at their expense, maintain or cause to be maintained in effect insurance for "DMT Sapphire". Such insurance shall name Debtors and Lender as insureds, as their respective interests may appear. All deductibles payable under the aforesaid policies of insurance shall be paid by Debtors. All aforementioned policies of insurance shall be further endorsed to provide that a claim "in rem" shall be considered as a claim against Debtors. Debtors agree to provide Lender with certificates of insurance evidencing the above coverage on the date hereof and upon each renewal, replacement or change in coverage and agrees to provide Lender with all policies of insurance upon request.

Debtors will not cause or permit the "DMT

| | Sapphire" while subject to this DIP Loan to be operated in any manner contrary to any rules, regulations or statutes of the United States of America, or any other governmental or regulatory authority having jurisdiction in the premises, whether federal, state or municipal, or contrary to the provisions of any policy of insurance covering the "DMT Sapphire." Without limiting the foregoing, Debtors will not suffer or permit the "DMT Sapphire" to engage in any voyage not permitted under the vessels' Certificate of Documentation and endorsements or that would cause the insurance on the "DMT Sapphire" not to be in effect with respect to all or part of such voyage.<br><br>Debtors agree that the "DMT Sapphire" will not, unless so required by the Government of the United States or a duly authorized department or agency thereof, be sent to or through a port or area where a state of warfare or hostilities exists or is threatened, nor to a port or area which is blockaded, nor to any declared or recognized or threatened war zone, nor shall the "DMT Sapphire" be permitted to engage in the carriage of contraband or any controlled substance, or engage in a trade of a character with respect to which the President of the United States or the State Department may state in substance that persons so engaging therein shall do so at their own risk, without first obtaining insurance covering such voyage and the prior written consent of Lender in each case.<br><br>The Debtors will not permit the "DMT Sapphire" to serve under any contract with a person or entity (a) that is listed in the annex to, or is otherwise subject to the provisions of, Executive Order No. 13224, (b) owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the annex to, or is otherwise subject to the provisions of Executive Order No. 13224, (c) with which the |
|---|---|

7

|  | any Debtor is prohibited from dealing or otherwise engaging in any transaction by any anti-terrorism law, (d) that commits, threatens, or conspires to commit of supports "terrorism" as defied in Executive Order No. 13224, (e) that is named as a "specially designated national" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control at its official website or any replacement website or other replacement official publication of such list, or (f) who is affiliated or associated with a person or entity listed above, nor will it charger or otherwise permit the "DMT Sapphire" to be used in any fashion which will subject such vessel to forfeiture under the laws of the United States. Debtors agree that in the event of requisition of title or use of the "DMT Sapphire" by the government of the United States, acting through any department or agency of said government, any and all moneys which the United States may become liable to pay and shall pay as the fair actual value thereof at the time of taking (up to the amount payable at maturity under the DIP Loan) shall be deposited with Lender to be applied first to the obligations of Debtors under the DIP Loan and the Mortgage. The operations conducted on the "DMT Sapphire" are, and at all times will continue to be, in material compliance with all applicable environmental laws and occupational safety and health laws, and are not subject to any existing, pending or threatened action, remedial obligation, suit, investigation, inquiry or proceeding by any governmental or regulatory authority or other person under any environmental laws or occupational safety and health laws. The "DMT Sapphire" will not be used to carry, store or transport any hazardous materials other than in material accordance with applicable law and that will not cause any insurance covering such vessel not to be in |
|---|---|

|  | effect with respect to such materials. |
|---|---|
|  | A certified copy of the Mortgage granted pursuant to this DIP Loan shall be carried as part of the ship's papers on the "DMT Sapphire" (if required by law) and shall be exhibited together with such vessel's documents by the proper agent of such vessel to any person having business with such vessel which might give rise to a maritime lien upon such vessel, or to the sale, conveyance, mortgage, charter or lease thereof; Debtors will at all times take appropriate action which will give notice to all persons that Debtors' right, title and interest in and to the vessels are subject to the lien granted pursuant to the DIP Loan and the Mortgage, and that neither Debtors nor the masters of any of the vessels have any right, power or authority to create or impose or to suffer or permit to be created or imposed any charge or encumbrance (except for crews and stevedores' wages, salvage, and other applicable statutory maritime liens) superior or which might be deemed superior to the lien granted pursuant to the DIP Loan. |
|  | At all times, at their own cost and expense, Debtors will preserve and maintain the "DMT Sapphire" in conformity with prudent marine equipment maintenance practices, in as good condition, working order and repair as the same was in on the date of approval of the DIP Loan, ordinary wear and tear excepted. At no time during the term of the DIP Loan shall Debtors make or suffer to be made any material alteration in the structure or machinery of the "DMT Sapphire" without first obtaining the written consent of Lender. |
|  | Debtors will at all reasonable times afford Lender's authorized representatives full and complete access to the "DMT Sapphire" and Debtors' books and records for the purpose of inspecting the same and discussing the affairs, finances and accounts of Debtors with its |

9

|  | officers. |
|---|---|
|  | During the Term of the DIP Loan, the Debtors will, as required under the Code and subject to the Approved Budget: (A) pay and discharge, as the same shall become due and payable, all taxes, assessments, governmental and other charges, fines and penalties lawfully levied or imposed by the United States of America or by any state, county, municipality or other taxing body on the "DMT Sapphire", their income and profits, or upon any of their property, real, personal or mixed, or any part thereof, or which if unpaid might become a lien or charge upon the franchises, assets, earnings or business of Debtors; and (B) pay and discharge, as the same shall become due and payable, all sales or other taxes imposed upon any and all goods, wares, merchandise and supplies or other property furnished to or for the "DMT Sapphire", whether such taxes be assessed or levied by any state, county, municipality or other taxing body. |
|  | If, during the Term of the DIP Loan a complaint shall be filed against the "DMT Sapphire", or if the vessel shall be levied upon or taken into custody pursuant to any process issuing out of any court, whether state or federal, or if the vessel is otherwise detained by reason of any proceedings in any court or tribunal, or by the act of any governmental authority, whether federal or state or municipal, Debtors agree, within ten (10) days from the happening of any such event of arrest, levy, custody, detention or seizure, to cause such vessel to be released from any such arrest, levy, custody, detention or seizure by filing a bond or undertaking, or by securing such discharge or release by stipulation or otherwise. In the event of the occurrence of any such arrest, levy, custody, detention or seizure, Debtors covenant forthwith, upon the happening thereof, to notify Lender by electronic mail and facsimile immediately, stating the facts and circumstances of such |

10

| | |
|---|---|
| | arrest, levy, custody, detention or seizure. |
| Defaults | Failure to make payments when due under the DIP Loan, non-compliance with covenants (including any covenants in the Mortgage), violations of the representations or warranties contained herein, impairment of collateral, appointment of chapter 11 trustee, examiner with extended powers or conversion of Bankruptcy Case to chapter 7, failure of Bankruptcy Court to issue a final order approving the DIP Loan by close of business on January 22, 2010, the Bankruptcy Court approving additional debtor-in-possession financing secured by a lien on the "DMT Sapphire" unless the proceeds of such additional debtor-in-possession financing are used to repay in full the DIP Loan and all accrued but unpaid amounts owing with respect thereto, and failure of the Debtors to, on or before March 15, 2010, either (a) file a motion pursuant to Section 363 of the Code seeking authority to sell the DMT Sapphire or other assets of the Debtor for amounts that are sufficient to repay in full the DIP Loan and all accrued but unpaid amounts owing with respect thereto or (b) file a plan of reorganization providing for the repayment in full of the DIP Loan and all accrued but unpaid amounts owing with respect thereto. |
| Remedies Upon Default | Upon the occurrence of an Event of Default, the Lender may declare all principal and interest due and immediately payable. The interim and final orders approving the DIP Loan shall provide that the automatic stay of section 362 of the Bankruptcy Code shall be modified to permit the Lender to exercise any and all remedies under the DIP Loan and applicable law, including setoff and foreclosure, upon written notice to the Debtors, the United States Trustee and any statutory committees appointed in the Bankruptcy Case. |

| | |
|---|---|
| | At the election of Lender, upon the occurrence of a default, Lender shall have the right to exercise any and all remedies under the DIP Loan and applicable law, including foreclosure, as provided above. |
| Conditions to Closing | (i) Delivery of satisfactory documentation and customary closing documents, including acceptance of the Mortgage for recording by the National Vessel Documentation Center.<br><br>(ii) Satisfactory interim order of the Bankruptcy Court approving the DIP Loan, which shall not be subject to a stay.<br><br>(iii) Granting of satisfactory collateral/lien arrangements.<br><br>(iv) Receipt of Approved Budget. |
| Miscellaneous | All reasonable costs and expenses (including reasonable fees and expenses of Lender's counsel, accountants and other professional advisors to the Lenders) arising in connection with the preparation, execution and delivery of this Term Sheet and definitive loan documents, the review of the collateral securing the DIP Loan and the transactions contemplated thereby, including collateral monitoring, monitoring of and participation in the Bankruptcy Case by Lender. Payment of such costs and expenses shall not be subject to approval by the Bankruptcy Court, but if there is a dispute concerning the reasonableness of such fees, the Bankruptcy Court shall have jurisdiction to resolve such disputes.<br><br>The Debtors shall indemnify the Lender and its directors, officers, employees, attorneys, and affiliates for any loss, claim damage or liability arising out of or relating to the DIP Loan, or the use of proceeds thereof in accordance with customary provisions.<br><br>The Debtors shall indemnify the Lender for its |

| | |
|---|---|
| | actual losses and costs incurred as a result of any and all unknown liens asserted against the "DMT Sapphire" to the extent such liens are allowed and determined to be superior to the liens granted to Lender pursuant to the DIP Loan.<br><br>The "DMT Sapphire" will be kept in warm storage reasonably acceptable to Lender during the Term of the DIP Loan.<br><br>The Lender agrees that, notwithstanding the foregoing, the DMT Sapphire may be removed from storage to allow for inspection, survey, appraisal and/or testing of such vessel or any equipment thereon by potential buyers or as otherwise reasonably necessary in connection with the attempted sale thereof; provided that (i) neither vessel may exit the jurisdictional waters of the United States without the prior approval of the Lender and (ii) the Lender shall be provided with reasonable notice of such removal and opportunity to be present.<br><br>To the extent the Debtors seek authority to sell the "DMT Sapphire" pursuant to 11 U.S.C. §363(b) or otherwise, Lender shall have the right to credit bid any amounts due and owing with respect to the DIP Loan, solely or in combination with any other consideration that the Lender deems appropriate. |

*[Signature page follows this page.]*

  Any obligation to provide the financing described herein is subject to entry of the court orders described herein authorizing such financing and execution of definitive documents, each reasonably acceptable to the Lender. If the foregoing is acceptable to you, please indicate your acceptance by executing this document in the space indicated below.

  We look forward to working with you.

Regards,

SUNCHASE HOLDINGS, INC.

By: _[signature]_____
  Name: Philip J Haydley
  Title: Chief Financial Officer

Acknowledged as of the date first above written:

DEEP MARINE HOLDINGS, INC.

By: _____
  Name: John Hudgens
  Title: Vice President, Chief Financial Officer and Secretary

DEEP MARINE TECHNOLOGY INCORPORATED

By: _____
  Name: John Hudgens
  Title: Vice President, Chief Financial Officer and Secretary

DEEP MARINE 1, LLC

By: Deep Marine Technology Incorporated,
  as its sole member and manager

  By: _____
    Name: John Hudgens
    Title: Vice President, Chief Financial Officer and Secretary

14

    Any obligation to provide the financing described herein is subject to entry of the court orders described herein authorizing such financing and execution of definitive documents, each reasonably acceptable to the Lender. If the foregoing is acceptable to you, please indicate your acceptance by executing this document in the space indicated below.

    We look forward to working with you.

                                    Regards,

                                    SUNCHASE HOLDINGS, INC.

                                  By:_____
                                       Name:
                                       Title:


Acknowledged as of the date first above written:

DEEP MARINE HOLDINGS, INC.

By: _____
     Name: John Hudgens
     Title:  Vice President, Chief Financial Officer and Secretary


DEEP MARINE TECHNOLOGY INCORPORATED

By: _____
     Name: John Hudgens
     Title:  Vice President, Chief Financial Officer and Secretary


DEEP MARINE 1, LLC

By:    Deep Marine Technology Incorporated,
       as its sole member and manager

By: _____
     Name: John Hudgens
     Title:  Vice President, Chief Financial Officer and Secretary

DEEP MARINE 2, LLC

By: Deep Marine Technology Incorporated,
as its sole member and manager

By: _____
Name: John Hudgens
Title: Vice President, Chief Financial Officer and Secretary


DEEP MARINE 3, LLC

By: Deep Marine Technology Incorporated,
as its sole member and manager

By: _____
Name: John Hudgens
Title: Vice President, Chief Financial Officer and Secretary


DEEP MARINE 4, LLC

By: Deep Marine Technology Incorporated,
as its sole member and manager

By: _____
Name: John Hudgens
Title: Vice President, Chief Financial Officer and Secretary