UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re: DEEP MARINE HOLDINGS, INC., *et al.*,

Debtors.

CASE NO.: 09-39313

Jointly Administered
CHAPTER 11

**CROSSMAR, INC.'S LIMITED OBJECTION TO
DEEP MARINE HOLDINGS, INC.'S MOTION AUTHORIZING
DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING**

NOW INTO COURT, through undersigned counsel comes Crossmar, Inc., d/b/a Cross Rentals, Inc. ("Cross"), a creditor of the above-captioned Debtor, and objects to the proposed DIP Loan on the following grounds:

I.

Cross is a creditor of Deep Marine Technology in the total amount of $700,787.90 and is the holder of recorded maritime liens on the M/V DMT Sapphire in the amount of $370,927.81.

II.

In its emergency motion for post-petition secured financing, the Debtor seeks to collateralize the M/V DMT Sapphire, which is currently encumbered by a number of pre-petition liens. Among these pre-petition liens is Cross' recorded maritime contract lien. In its motion, Debtor seeks this Court's approval to deprive Cross of its lien priority, placing the proposed DIP lender in a position superior to all other parties with security interests in the M/V DMT Sapphire. Debtor seeks this financing structure without regard to the fact that, even with the existing liens

in place and senior to the proposed post-petition security interest in the vessel, the DIP lender would be over-secured by a factor of roughly 8 to 1, based on the Debtor's estimated value for the vessel, without regard to whatever additional value the DIP lender might receive under its administrative or super priorities.

### III.

The ability to prime an existing lien exists as the remedy of last resort[1] and:

> a court considering a debtor's application for approval of a priming, post-petition loan must be guided by the express terms of the governing statute, together with the judicial interpretation of [11 U.S.C.] § 364(d)(1) as being appropriate in bankruptcy proceedings as a matter of last resort.[2]

### IV.

The Debtor has made no showing that it has been "unable to obtain such credit otherwise" as required by 11 U.S.C. § 364(d)(1)(A).[3] Indeed, if the Debtor's representation of the value of the M/V DMT Sapphire is correct,[4] the DIP lender would be over-secured by a factor of at least 8 to1 even if the approximately $1.2 million in total asserted maritime contract lien claims on the M/V DMT Sapphire are not disturbed. The subordination of those liens cannot logically be a "make or break" issue.

---

[1] *In re First South Savings Association*, 820 F.2d 700 (5th Cir. 1987).

[2] *In re Den-Mark Construction, Inc.*, 406 B.R. 683, 693 (E.D. N.C. 2009).

[3] Exhibit "A" (R. Doc. 30-1 at 6) to Debtor's Motion provides that certain encumbrances contained on Exhibit "D" (which was not provided in the copy served on undersigned but presumably is a listing of the existing maritime liens) will remain on the vessel.

[4] R. Doc. 30 at 15, n. 6 ("A July 2009 appraisal of the DMT Sapphire assert (sic) a fair market value for the vessel of over $25 million").

V.

The Trustee bears the burden of proving the factual preconditions for Section 364(d)'s operation, specifically on the issue of adequate protection (the "equity cushion" suggested by the Debtor).[5] If there is adequate protection for the existing creditors to be primed by a $3.1 million DIP loan, then there is certainly adequate protection for the proposed DIP lender to leave a claimed $1.2 million in maritime liens in place. Here, it is submitted that if the Debtor's representation as to the value of the vessel in the M/V DMT Sapphire is correct,[6] then the Debtor-in-Possession should be able to obtain credit without resort to the extraordinary remedy of priming existing creditors by judicial *fiat*.

VI.

Further, this view is supported the Term Sheet attached to the Debtor's motion, which provides that certain encumbrances contained on Exhibit "D" (which was not provided in the copy served on undersigned but presumably is a listing of the existing maritime liens) will remain on the vessel.[7] The mere showing of the 20% "equity cushion" endorsed by many courts should not be dispositive where a debtor has not met the "inability to obtain such credit otherwise" requirement.

VII.

While the amount of the "equity cushion" in the property is the primary factor that courts look to in an adequate protection analysis under § 364(d)(1), other factors include: "the value of

---

[5] 11 U.S.C. § 364(d)(2); *In re First South Savings Association*, 820 F.2d 700, 709 (5th Cir. 1987).

[6] R. Doc. 30 at 15, n. 6 ("A July 2009 appraisal of the DMT Sapphire assert (sic) a fair market value for the vessel of over $25 million").

[7] R. Doc. 30-1 at 6.

the collateral...the likelihood that the collateral will depreciate or appreciate over time, whether insurance coverage is inadequate, whether property taxes are being paid, and the prospects for successful reorganization."[8]

As to the value of the vessel, the affected lien-holders have only the appraisal alleged by the Debtor in its motion.[9] The Debtor, however, bears the burden of proof to show that value.

As to the prospects for successful reorganization, on information and belief, the Debtor's vessels are all sitting dockside, none are working, and the Debtor has terminated all but seven (7) of its employees. Since schedules have not been filed, affected lien-holders have little opportunity or means to assess the Debtor's chances of reorganizing and operating again. The Debtor, however, bears the burden of proof to show that such prospects for reorganization exist.

The attempt to prime the existing maritime lien creditors in favor of the proposed DIP lender is simply an overreach, perhaps on the theory if one does not ask, one cannot receive. In this case, the Court should reject the attempt since the proposed DIP lender will apparently enjoy over-secured status in the ratio of at least 8 to 1 even if the maritime lien claimants are not primed.

**WHEREFORE**, Crossmar, Inc., d/b/a Cross Rentals, Inc., respectfully requests that the Court deny the Debtor's application for DIP financing to the extent that it seeks to assert a lien on the M/V DMT Sapphire which would prime existing recorded maritime contract liens. Due to the limited notice of the Debtor's motion, Cross files this limited objection on the eve of the preliminary hearing and respectfully reserves its right to supplement and amend its opposition

---

[8] *In re Mendoza*, 111 F.3d 1264, 1272, n. 3 (5th Cir. 1997).

[9] R. Doc. 30 at 15, n. 6 ("A July 2009 appraisal of the DMT Sapphire assert (sic) a fair market value for the vessel of over $25 million").

and objections when a final hearing is held.

DATED:  December 15, 2009.

Respectfully submitted,

**MONTGOMERY, BARNETT, BROWN,
 READ, HAMMOND & MINTZ, L.L.P.**


BY:   /s/  Ryan M. McCabe
STEPHEN L. WILLIAMSON
swilliamson@monbar.com
U.S.D.C., S.D. Tex. Admission No. 22922
La. Bar No. 8316
RYAN M. McCABE
rmccabe@monbar.com
U.S.D.C., S.D. Tex. Admission No. 907983
La. Bar No. 31254
3300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:  (504) 585-3200
Facsimile: (504) 200-8983

Attorneys for Creditor,
Crossmar, Inc.


**CERTIFICATE OF SERVICE**

I, Ryan M. McCabe, hereby certify that, pursuant to Local Rule 9013(f), a true and correct copy of the foregoing Notice of Appearance and Request for Notice was forwarded electronically to the Clerk of Court via the CM/ECF system and mailed via United States mail, postage prepaid and properly addressed, to all parties listed on Exhibit "A" hereto on December 15, 2009.

  /s/  Ryan M. McCabe
RYAN M. McCABE

5