UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | | Case No. 09-39313 |
| DEEP MARINE HOLDINGS, INC.; § | | (Jointly Administered) |
| § | | |
| DEEP MARINE TECHNOLOGY § | | |
| INCORPORATED; § | | |
| DEEP MARINE 1, LLC; § | | |
| DEEP MARINE 2, LLC; § | | |
| DEEP MARINE 3, LLC; and § | | |
| DEEP MARINE 4, LLC § | | |
| § | | |
| Debtors § | | Chapter 11 |

GE BUSINESS FINANCIAL SERVICES, INC.
AND GENERAL ELECTRIC CAPITAL CORPORATION'S
RESPONSE TO DEBTORS' EMERGENCY MOTION PURSUANT TO
11 USC §§ 105 , 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001
AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION
SECURED FINANCING, (II) GRANTING SECURITY INTERESTS AND
SUPERPRIORITY CLAIMS, AND (III) SCHEDULING FINAL HEARING

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

GE Business Financial Services, Inc. ("GEBFS") and General Electric Capital Corporation ("GECC") (jointly referred to herein as "GE") file this Response to Emergency Motion Pursuant to 11 USC §§ 105 , 362, 363, and 364 and Bankruptcy Rules 2002, 4001 and 9014 (i) Authorizing the Debtors to Obtain Post-Petition Secured Financing, (ii) Granting Security Interests and  Superpriority Claims, and (iii) Scheduling Final Hearing ("Response") and, in support thereof, shows as follows:

I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 11 U.S.C. §105 and 28 §§ U.S.C. 151, 157 and 1334.  Venue is proper herein by virtue of 28 U.S.C. §1408.  The Debtors' DIP Motion (hereinafter defined)  seeks relief pursuant to 11

U.S.C. §§ 105, 362, 363, 364 and Rules 2002, 4001 and 9004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## II. INTRODUCTION

2. GE is a secured creditor of the Debtors, Deep Marine 1 LLC ("Deep Marine 1") and Deep Marine 2 LLC ("Deep Marine 2"), arising from two loans made by GE's predecessor-in-interest to these Debtors.[1] GE is owed in excess of $47 million. The Loans are secured by preferred ship mortgages on the DMT Diamond and the DMT Emerald. The Loans are guaranteed by Deep Marine Technology Incorporated ("DMT") and Deep Marine Holdings Inc. ("DMH"), who are also debtors in these jointly-administered cases. Deep Marine 1, Deep Marine 2, Deep Marine 3, LLC, Deep Marine 4, LLC, DMT and DMH are hereinafter referred to as the "Debtors."

3. GE generally supports the DIP Motion and agrees that post-petition financing is necessary (i) to preserve the property of the Debtors' estates, including GE's collateral, and (ii) allow the Debtors to market the assets and obtain the highest value for the benefit of all creditors of the Debtors' bankruptcy estates. GE has concerns, however, with the extent of the collateral proposed to secure the DIP Loan as well as certain other terms and budget items as described below.

## III. FACTUAL BACKGROUND

**A. The GE Loans**

    **(i) The Diamond Loan**

4. On or about November 30, 2006, National City Commercial Capital Corporation ("National City") made a $15 million loan ("Diamond Loan") to Deep

---

[1] GEBFS is the Administrative Agent, Arranger and Security Trustee for certain lenders under the Emerald Loan (hereinafter defined).

Marine 1 evidenced by a Secured Promissory Note ("Diamond Note") dated November 30, 2006, in the original principal amount of $15,000,000, executed by Deep Marine 1, as maker, payable to the order of National City, as payee. The Note was secured by a United States first priority Preferred Mortgage and Deed of Covenants ("Diamond Mortgage") on the Borrower's United States flag vessel "DMT Diamond", Official No. 1091373, and the other Collateral (as defined in the Loan Agreement). In addition, DMT and DMH each executed Guaranty Agreements dated November 30, 2006, for the benefit of National City whereby they unconditionally guaranteed the full payment of the Diamond Note. Deep Marine 1 and National City also executed a Loan Agreement ("Diamond Loan Agreement") dated as of November 30, 2006.

5. On June 18, 2007, National City assigned all right, title and interest in the Diamond Loan Agreement, Diamond Note, Diamond Mortgage, Guaranties, and other loan documents to GECC.

6. During the summer of 2009, Deep Marine 1 defaulted under the Diamond Loan Agreement having failed to the keep vessel clear of any lien, encumbrance or charge on the vessel other then the Mortgage.

7. On November 16, 2009, GECC gave written notice that Deep Marine 1 had defaulted under the Diamond Note by, among other things, failing to make installment payments when due under the Diamond Note. As of that date, a total of $295,663.64 was past due for which GECC demanded payment by November 26, 2009.

8. Despite demand, no payments were made by Deep Marine 1 on the Diamond Note. As of December 1, 2009, principal in the amount of $13,372,654.24 and

accrued interest in the amount of $257,423.61 was due and owing under the Diamond Note.

### (ii)　The Emerald Loan

9.　On or about June 7, 2007, Merrill Lynch Business Financial Services Inc. ("Merrill Lynch") made a $41.4 million loan ("Emerald Loan") to Deep Marine 2 evidenced by a Term Loan Promissory Note ("Emerald Note") dated June 7, 2007, in the original principal amount of $41,400,000, executed by Deep Marine 2, as maker, payable to the order of Merrill Lynch Capital, a division of Merrill Lynch, as Administrative Agent for certain banks and financial institutions,[2] as payee. The Emerald Note was secured by a United States first priority Preferred Mortgage and Deed of Covenants ("Emerald Mortgage") on the Borrower's United States flag vessel "DMT Emerald", Official No. 1190616. Deep Marine 2 and Merrill Lynch also executed a Loan and Security Agreement ("Emerald Loan Agreement") dated as of June 7, 2007.

10.　In addition, DMT and DMH each executed Guaranty Agreements dated June 7, 2007, for the benefit of Merrill Lynch whereby they unconditionally guaranteed the full payment of the Emerald Note.

11.　On February 4, 2008, Merrill Lynch was acquired by a subsidiary of GECC and its name was changed to GEBFS. GEBFS succeeded to all rights, title and interest of Merrill Lynch with respect to the Emerald Note, Emerald Mortgage, guarantees and other loan documents.

---

[2] The Emerald Loan was funded by Merrill Lynch, Caterpillar Financial Services Corporation and the CIT Group/Equipment Financing, Inc. (collectively referred to as the "Lenders"). Merrill Lynch was designated as the Administrative Agent, Arranger and Security Trustee for the Lenders in connection with for the Emerald Loan.

12. In August, 2009, Deep Marine 1 defaulted under the Emerald Loan Agreement and Emerald Note by, among other things, (i) breaching certain loan covenants and other provisions contained in the agreement, and (ii) failing to keep the vessel clear of liens other then those permitted by the agreement.

13. As a result, GEBFS declared an Event of Default under the Emerald Note and accelerated the maturity of the note.

14. Despite demand for payment of the Emerald Note following its acceleration, no payment was made by Deep Marine 2. As of December 1, 2009, principal in the amount of $33,636,500.00 and accrued interest in the amount of $181,807.90 was due and owing under the Emerald Note.

**B.     The Debtors' Chapter 11 Bankruptcy Filings**

15. On December 4, 2009 ("Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors have maintained possession of their property, as Debtors-in-Possession pursuant to 11 U.S.C. §§1107 and 1108.

16. The Debtors are privately-held companies based in Houston, Texas that provide subsea services for the offshore oil and gas industry. The Debtors offer remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection and repair services. Their assets include four vessels generally known as the DMT Diamond, the DMT Emerald, the DMT Topaz and the DMT Sapphire and accounts receivable. As stated above, GE holds liens on the DMT Diamond and DMT Emerald.

17. Upon information and belief, as of the Petition Date, the Debtors had virtually ceased all business operations and reduced its staff to seven employees, including the Chief Operating Officer, the Chief Financial Officer and the Controller. Upon information and belief, on the Petition Date, both the DMT Sapphire and DMT Emerald were at sea. Since the Petition Date, these two vessels have been docked. To GE's knowledge, the only business activities in which the Debtors are currently engaged are in connection with the liquidation of the companies and/or their assets.

18. On December 15, 2009, the Debtors filed, among other things, an Emergency Motion Pursuant to 11 U.S.C. §§ 105 , 362, 363, and 364 and Bankruptcy Rules 2002, 4001 and 9014 (i) Authorizing the Debtors to Obtain Post-Petition Secured Financing, (ii) Granting Security Interests and Superpriority Claims, and (iii) Scheduling Final Hearing ("DIP Motion"). An interim hearing on the DIP Motion is set on December 17, 2009, at 3:00 p.m.

### IV. GE'S OBJECTION TO THE DIP MOTION

**A.    Objection to Certain Terms of the Proposed DIP Loan**

19. GE is in favor of the Debtors obtaining DIP financing in order to preserve the assets, including GE's Collateral, as well as to facilitate the marketing and sale of these assets in order to maximize their value for the benefit of all creditors of the Debtors' bankruptcy estates. GE is concerned, however, that the proposed terms of the DIP financing are over-broad and unwarranted given the Debtors' representation of the value of the DMT Sapphire. GE's objections are described below.

20. GE objects to the granting of junior liens on all of the Debtors' other property, including the proceeds of such property. It is clear from the Term Sheet

attached to the DIP Motion that the principal collateral is the DMT Sapphire. Yet, the Debtors are proposing to give SunChase Holdings, Inc. ("Sunchase") junior liens on the DMT Topaz, as well as GE's Collateral (the DMT Diamond and the DMT Emerald). According to the DIP Motion, "the unencumbered value of the DMT Sapphire far exceeds the amount of the DIP Loan and the maritime liens alleged by Crossmar Inc., NREC Power Systems, Inc., and BNA Marine Services, LLC." DIP Motion at 15. The Debtors further allege that "the value of the DMT Sapphire exceeds any possible non-consensual liens that could reasonably exist." *Id.* The Debtors also state that "a July 2009 appraisal of the DMT Sapphire assert a fair market value for the vessel of over $25 million." *Id.* In view of the fact that the SunChase is loaning $3.1 million, plus its' attorneys' fees and costs (which are presumably going to be less than $5 million), the request for collateralization with a loan to value of 806% is unwarranted (based on FMV of $25 million and loan of $3.1MM). As such, there is no basis for granting SunChase liens on other assets, junior or otherwise.

21. GE further objects to the granting of junior liens on its Collateral because it is in contravention of its loan documents and potentially will impair GE's rights under the loan documents. For example, the DIP Motion indicates that the Debtors intend to liquidate their assets under Chapter 11. GE's rights could be affected by the timing of the sale of the Debtors' vessels. If, for example, the Debtors receive an offer on the DMT Emerald, the decision on whether the price is sufficient is going to be complicated by the addition of a lien in favor of SunChase, even though SunChase has other collateral to look to in satisfaction of its debt. Similarly, there may be issues with respect to the assertion of maritime liens by other creditors on the various vessels. While GE intends to

vigorously defend its position as the holder of first priority liens based upon its preferred ship mortgages, there is no financial reason for the Debtors to further encumber GE's Collateral.  Doing so would unnecessarily complicate, delay and impose additional expenses on a Chapter 11 case the success of which will depend on the simple, expeditious liquidation of the Debtors assets.   For these reasons, GE objects to the granting of any additional liens, junior or otherwise, on the DMT Diamond and DMT Emerald.  At very least, the rights associated with any junior interest granted to SunChase must be clearly delineated in an intercreditor agreement.

22. GE further objects to the DIP Motion to the extent that the terms of the proposed DIP loan include a provision that the automatic stay is lifted as to <u>all</u> collateral in the event there is a default under the DIP loan agreement.   While GE objects to the granting of junior liens on its Collateral, in the event that GE's objection is overruled, the DIP Lenders should not be given carte blanche rights to proceed with collection efforts, including foreclosure on a junior lien on GE's Collateral,  in the event of a default.  SunChase must be required to seek relief from the automatic stay prior to exercising any rights as to the Debtors' assets other than the DMT Sapphire.  Furthermore, in the event of a default under the proposed DIP loan, SunChase should be required to give notice to GE of any such default.  As requested above, in the event the Court overrules GE's objections and authorizes the grant to SunChase of a junior lien in all Collateral, GE urges the Court to require the rights and remedies of GE and SunChase in GE's collateral to be well defined through an intercreditor agreement.

23. GE also objects to the DIP Motion to the extent that the Debtors are providing an indemnity to SunChase for "its actual losses and costs incurred for any and

all unknown liens against the Sapphire to the extent they are allowed and determined to be superior." SunChase is already aware of $1.1 million in filed liens which they intend to prime with the proposed DIP order. Given the Debtors' projected value of $25 million for the DMT Sapphire, SunChase's risk appears relatively low. SunChase should not be given an additional secured claim on assets potentially including GE's Collateral, for legal fees for actions it may elect to pursue against other lien claimants which may or may not be warranted under the circumstances.

### B.      Objection to the DIP Budget

24.      GE also has concerns about some of the proposed line items in the Budget attached to the DIP Motion. For example, it is not clear whether the proposed insurance coverage and corresponding expenses are necessary since the Debtors are no longer operating. GE is in the process of reviewing the insurance coverage issues and will address this in a separate response to the Debtors' Insurance Motion. In addition, GE has some concerns regarding the budgeted amount of wages since the Debtor currently employs only four people, excluding the Chief Operating Officer, Chief Financial Officer and Controller. In particular, clarification is needed as to the $689,143 payroll payment budgeted for the week of March 3, 2010.

25.      GE reserves the right to amend this Response prior to the interim or final hearing on the DIP Motion.

WHEREFORE, GE Business Financial Services, Inc. and General Electric Capital Corporation respectfully requests that its objections be sustained in all things and that it be granted such other and further relief to which it may be entitled.

DATED: December 16, 2009.

              Respectfully submitted,

              **ADAMS AND REESE LLP**

              By: */s Susan C. Mathews*
                 SUSAN C. MATHEWS
                 State Bar No. 05060650
                 1221 McKinney, Suite 4400
                 Houston, Texas 77010
                 Tel: 713-652-5151
                 Fax: 713-652-5152

              ***COUNSEL FOR GE BUSINESS FINANCIAL SERVICES, INC. AND GENERAL ELECTRIC CAPITAL CORPORATION***

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all parties on the attached Service List via electronic file notification by the Clerk of the Court on this 16th day of December 2009.

                 */s/ Susan C. Mathews*
                 Susan C. Mathews

**SERVICE LIST**

| *Debtor* | *Debtor's counsel* |
|---|---|
| Deep Marine Holdings, Inc.<br>20411 Imperial Valley<br>Houston, TX 77073 | Jason Gary Cohen<br>Bracewell & Giuliani LLP<br>711 Louisiana St<br>Ste2300<br>Houston, TX 77002<br>713-221-1416<br>Fax : 713-222-3209<br>Email: jason.cohen@bgllp.com<br><br>Marcy E Kurtz<br>Bracewell & Giuliani LLP<br>711 Louisiana<br>Ste 2300<br>Houston, TX 77002<br>713-221-1206<br>Fax : 713-221-2125<br>Email: marcy.kurtz@bgllp.com |
| *US Trustee's Office*<br>Nancy Lynne Holley<br>U S Trustee<br>515 Rusk St<br>Ste 3516<br>Houston, TX 77002<br>713-718-4650<br>Email: nancy.holley@usdoj.gov | |