IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | Jointly Administered Under |
| DEEP MARINE HOLDINGS, INC. et al | § | Case No. 09-39313-H1-11 |
|    Debtors | § | |

**COMMITTEE'S OBJECTION TO FIRST DAY MOTIONS**
(Responds to Docket #30, 23, 25, 28 and 31)

**TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:**

The Official Committee of Unsecured Creditors hereby objects to the "First Day Motions"[1] filed by the above-captioned Debtors, and would respectfully show the Court as follows:

**MOTION FOR POST-PETITION FINANCING (Docket #30)**

1.      Because of the emergency nature of the Debtors' request and the lack of forewarning about the budget or lender, as well as the lack of real notice to affected parties, the Committee makes this interim response to the Motion for Post-Petition Financing (the "Motion"), and reserves the right to supplement as needed.

2.      The Debtors have not disclosed Exhibits "A," "B," "C," or "D," which were supposed to be attached to the term sheet and which are incorporated as material terms. These omitted exhibits detail existing liens and specific assets that are essential to an understanding of the transaction. Likewise, the Debtors have not provided the proposed loan documents. The documents were served by mail, if at all.

3.      The Debtors have not explained what efforts were undertaken to secure third-party financing on other terms. There is no disclosure of whether there are any connections

---

[1] Docket #21, 22, 23, 25, 26, 28, 29, 30 and 31.

Austin 55119v1

between the Debtors and the Lender, or confirmation that the Lender is a third party. There is no disclosure of connections with the Debtors.

4. The Debtors' Motion was filed before any schedules or statements of financial affairs were filed. The Motion does nothing to correct the information vacuum. The Motion gives no list of the assets that exist (other than one vessel). Yet, *all* of the Debtors' assets will be encumbered by the loan, including assets in the form of lawsuits and avoidance actions. The value of the assets must be evaluated for one to make any reasoned judgment about the Motion. Avoidance actions must be carved out from the lien. Also, pursuant to Section 506(c), surcharges should not be waived at this early stage in the proceedings.

5. The Motion did not attach a budget until approximately 9:30 a.m. (CST) the morning of the hearing (today, December 17, 2009). The budget is deficient and overbroad. The budget does not show enough detail to determine the propriety of the expenses. The budget does not demonstrate the necessity for several of the line items, especially operational, general administrative, and legal line items.

6. For instance, the budget plans to distribute $1.5 Million on an interim basis. The Debtors' Motion fails to demonstrate that they truly need that entire amount immediately. For interim purposes, they should only draw down what they need to make it to the final DIP hearing. There are some large disbursements in the first week that need to be explained: (a) why is payroll $160,000, when it is about $40,000 for most other weeks (are they paying pre-petition wages?); (b) what comprises the $340,000 in "General & Administrative" charges; and (c) why are the Debtors paying a commitment fee on the full $3.1 Million at inception, if they are only drawing $1.5 Million, and the lender is not even committed to make the other $1.6 Million advance?

7. The Motion does not explain why a 5% commitment fee and 2% exit fee on a six month loan is reasonable. When coupled with the 14% interest rate, which is even charged on the 5% commitment fee, the effective annual interest rate is exorbitant.

8. The budget, filed only this morning does not explain why the Debtors are paying down PNC Bank's ("PNC") prepetition debt in excess of $1 Million. Is there an undisclosed agreement with PNC? What if PNC is undersecured? Why are there no opportunities to evaluate PNC's lien position? Why is payment now a good business decision? There seems no current justification to pay the Debtors' prepetition debt, and that request is certainly inappropriate at an interim hearing. Further, by eliminating that pay down, the Debtors would reduce the DIP loan by $1 Million and save $50,000 in commitment fees.

9. The Motion allows the lender to unilaterally pull the plug on the case by providing no requirement of good faith in due diligence. The lender can effectively own the only asset listed (the vessel) for $1.5 Million by simply choosing not to be satisfied with the due diligence on the remainder of the loan.

10. The Motion states that the Debtors must pay <u>all</u> legal fees of the lender and that "such payment shall not be subject to approval by the Bankruptcy Court." How can the Debtors pay fees outside the ordinary course without *any* court approval and without limitation? The Bankruptcy Code (11 U.S.C. §§ 330, 506, 503) prohibits this explicitly and implicitly.

11. There is no disclosure of the negotiations leading to the term sheet and why those should be considered good faith. The Court should not presume good faith. Rather, the Committee needs to examine the transaction.

12. Finally, the Motion contains an improper "carve out" that does not pay administrative claims equally in violation of the Bankruptcy Code and its policy. Any "carve

out" must be for administrative expenses generally. Selecting a carve out for the Debtors' counsel only would leave the Committee with no means of representing the statutory constituency.

### OTHER MOTIONS (Docket #23, 25, and 28)

13. The Debtors' Motion to Extend Time to File Schedules and Statements (docket #23) is opposed. The Debtors have not set forth a reason why there are only three people assembling the records, especially given Grant Thornton's involvement in the case. The Debtors' emergency relief sought by other motions requires that all parties receive full disclosure.

14. The Debtors' Motion to Pay Prepetition Wages (docket # 25) is opposed. The Debtors give no explanation of who is being paid more than $10,950. The Debtors do not explain whether those employees could assert a seaman's lien for wages. The Debtors do not explain the executive pay scale. The pay going to executives is of keen interest to the Committee.

15. The Debtors' Motion to Pay Insurance Policy Premiums (docket #28) is only opposed on the limited basis that the Debtors should be <u>required</u> to pay for insurance, especially D&O Insurance.

### OBJECTION TO EXPEDITED CONSIDERATION (Docket #31)

16. The Committee is forced to object because the Debtors have not given sufficient time for explanation and evaluation of the case. The Committee would prefer to have an opportunity to evaluate the merits of each motion before conducting a contested DIP hearing. The Committee asks for a brief postponement to discuss the facts and proposed budget with the Debtors.

17. The Committee objects to the expedited consideration of all of the relief in the First Day Motions to the extent a genuine emergency has not been shown by competent evidence. If a genuine emergency is demonstrated by the Debtors, then this objection may be withdrawn.

WHEREFORE, PREMISES CONSIDERED, the Committee requests that the Court deny the Debtors' relief as set forth herein, or as modified by agreement, and grant such other and further relief to which it may show itself justly entitled.

DATED: December 17, 2009

Respectfully submitted,

MCKOOL SMITH, P.C.

By: */s/ Hugh M. Ray, III*
HUGH M. RAY, III
State Bar No. 24004246
600 Travis, Suite 7000
Houston, Texas 77002
Telephone: (713) 485-7300
Facsimile: (713) 485-7344

PROPOSED ATTORNEYS FOR OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2009, a true and correct copy of the foregoing document has been served via DLR 5.1 and the ECF system, to the parties on the ECF service list.

*/s/ Hugh M. Ray, III*
HUGH M. RAY, III