

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/21/2009

| | | |
|---|---|---|
| In Re: | § § | |
| DEEP MARINE HOLDINGS, INC., et al. | § § § § | Case No. 09-39313 |
| | § | Jointly Administered |
| Debtors. | § | Chapter 11 |

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 362, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING, (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND (III) SCHEDULING FINAL HEARING

Before the Court is the motion (the "Motion"),[1] of the above-captioned debtors and debtors-in-possession (together, the "Debtors"), for an order, pursuant to Bankruptcy Code §§ 105, 362, 363, and 364 and Bankruptcy Rules 2002, 4001, and 9014 seeking:

(a) authorization for the Debtors to borrow up to $3.1 million plus costs and expenses in principal amount of post-petition financing (the "DIP Financing"), including up to $820,000 plus costs and expenses on an interim basis on the terms and conditions set forth in the Term Sheet,[2] plus the Commitment Fee, Exit Fee and Lender's costs and expenses;

(b) authorization for the Debtors to execute and deliver any necessary DIP Documents, to perform such other and further acts as may be necessary or appropriate in connection therewith, and to grant the liens and security interests to the Lender as provided for in the Term Sheet, the eventual DIP Documents, and this Order;

(c) authorization pursuant to Bankruptcy Code §§ 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) to grant certain liens and superpriority claims to the Lender to secure the Debtors' obligations under the DIP Documents;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

[2] The Term Sheet has been modified by agreements announced on the record on December 18, 2009. All references to the "Term Sheet" are to the Term Sheet, as modified by this Order and by announcement made on the record on this date.

(d)     authorization for the Lender to accelerate the maturity of the DIP Loan and terminate the commitments under and in accordance with the Term Sheet and DIP Documents upon the occurrence and continuance of an event of default, subject to the provisions of this Order; and

(e)     the Court to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion to become effective pursuant to the Final Order.

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Final Hearing.* A final hearing on the Motion shall be held on January 6, 2010, at 3:00 p.m, before this Court, in Courtroom 404, at the United States Bankruptcy Court, 515 Rusk, Houston, Texas 77002. Objections to the relief requested in the Motion shall be made in writing and filed with the Clerk of the Bankruptcy Court, with a copy served upon the following parties so that any such objections are received on or before 12:00 p.m. (prevailing Central time) on January 5, 2010:

(a)     Proposed Counsel for the Debtors: Marcy E. Kurtz, Bracewell & Giuliani LLP, 711 Louisiana St., Suite 2300, Houston, Texas 77002, Marcy.Kurtz@bgllp.com;

(b)     Counsel for Lender: John C. Leininger, Bryan Cave LLP, 2200 Ross Avenue, Suite 3300, Dallas, Texas 75201, John.Leininger@bryancave.com.

(c)     Office of United States Trustee: Nancy Holley, 515 Rusk, Suite 3516, Houston, Texas 77002, Nancy.Holley@usdoj.com.

(d)     Counsel for the Official Committee of Unsecured Creditors: Hugh M. Ray, III, McKool Smith, P.C., 600 Travis, Suite 7000, Houston, Texas 77002, hmray@mckoolsmith.com, with a copy to hray@mckoolsmith.com.

2.     *Disposition/Jurisdiction.* The Motion is granted on an interim basis in accordance with the terms of this Order. Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. This Court has core jurisdiction over the cases commenced on December 4, 2009 (the "Petition Date"), the Motion, and the parties and property affected hereby

pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.

3. *Notice.* Notice of the Motion, the relief requested herein and the Interim Hearing was served by the Debtors via e-mail, facsimile, telephone, first class mail, and/or hand delivery, as appropriate, to (a) the Office of the United States Trustee for the Southern District of Texas, (b) all known or alleged secured creditors, (c) the 30 largest unsecured non-insider creditors of the Debtors (on a consolidated basis), (d) all shareholders of Deep Marine Holdings, Inc., (e) all board members of Deep Marine Holdings, Inc., (f) all Debtor representatives, (g) any financial advisors to the Debtors, (h) the United States Attorney's Office for the Southern District of Texas, (i) the Internal Revenue Service, (j) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (k) any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

*Findings Regarding The DIP Financing.*

4. All findings of fact and conclusions of law as announced on the record by the Court at the Interim Hearing are hereby adopted and incorporated in this Order

5. Good cause has been shown for the entry of this Order.

6. The Debtors have an immediate need to obtain the DIP Loan in order to, among other things, preserve the value of the Debtors' assets, make payroll, and satisfy other working capital and general corporate purposes of the Debtors. The DIP Loan is necessary to ensure that

the Debtors have sufficient working capital and liquidity to preserve and maintain the value of the Debtors' estates.

7. The Debtors are unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the Term Sheet and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the Term Sheet without the Debtors granting the DIP Liens (as defined in below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and the Term Sheet.

8. Pursuant to this Order, the provisions of the terms of the Term Sheet are found to be fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

9. The Term Sheet has been the subject of extensive negotiations conducted in good faith and at arms'-length among the Debtors, the Committee, other creditors, the Lender, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Loan, including without limitation, all loans made to the Debtors pursuant to the Term Sheet, owing to the Lender (collectively, the "<u>DIP Obligations</u>"), shall be deemed to have been extended by the Lender and their respective affiliates in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

10. The Debtors have requested entry of this Order pursuant to Bankruptcy Rule 4001(c)(2). Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Loan and the use of the Debtors pre-petition property in accordance with this Order and the Term Sheet are in the best interest of the Debtors' estates.

*Authorization Of The DIP Financing And The Term Sheet.*

11. The Debtors are hereby authorized to enter into the Term Sheet and any DIP Documents consistent therewith to borrow thereunder up to an aggregate principal amount of $3,100,000.00, plus the Commitment Fee, Exit Fee and Lender's costs and expenses, all in accordance with the terms of this Order. Specifically with respect to the Commitment Fee, Lender shall increase the balance of the Debtor's obligations under the DIP Loan by $155,000.00 to pay for the Commitment Fee, and all other costs and expenses of Lender This increase shall not reduce the remaining availability to Debtor under the DIP Loan.

12. In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents and to pay all fees and expenses reasonably required or necessary for the Debtors' performance of their obligations under the Term Sheet and DIP Documents, including, without limitation, (i) the execution, delivery and performance of the Term Sheet and DIP Documents; (ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors and Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications (A)

HOUSTON\2344163.3 -5-

shorten the term (as described in the Term Sheet) on terms and conditions other than those set forth in the Term Sheet, (B) increase the amount or the rate of interest payable on the DIP Loan, or (C) change any event of default (as described in the Term Sheet), add any covenants or amend the covenants therein in any such case to be materially more restrictive to the Estates; (iii) the costs and expenses as may be due from time to time under the DIP Documents, all as provided in the Term Sheet and all of which constitute the DIP Obligations; and (iv) the performance of all other acts required under or in connection with the Term Sheet and DIP Documents.

13.     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

*Superpriority Claims.*

14.     Except to the extent expressly set forth in this Order in respect of the Carve Out (as defined in paragraph 14(b) below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative claims (the "Superpriority Claims") against each of the Debtors with priority over all valid claims, administrative expenses, adequate protection claims, and all other valid claims against each of the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative

expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, but no payment on any such SuperPriority Claims shall be paid from the proceeds of any Avoidance Action, other causes of action, or the proceeds or property recovered in respect of any Avoidance Action or causes of action.

15. For purposes hereof, the "Carve Out" means (a) allowed fees and expenses of attorneys, accountants, financial advisors, and other professionals retained pursuant to court order by the Debtors, their estates, or the Committee (collectively, "Estate Professionals") pursuant to the Bankruptcy Code; (b) United States Trustee fees; and (c) any and all allowed fees and expenses of the Estate Professionals after the occurrence of an event of default or the end of the Term (as described in the Term Sheet) in a combined aggregate amount (exclusive of any retainers held by such Estate Professionals) not to exceed $300,000.00.

16. *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Lender of any collateral, the following security interests and liens are hereby granted by the Debtors to the Lender, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b), (c) and (d) below being collectively referred to as the "Collateral"), subject only to the Carve Out (all such liens and security interests granted to the DIP Lender, pursuant to this Order and the DIP Documents, the "DIP Liens"):

(a) <u>First Priority Lien On the DMT Sapphire</u>. Pursuant to Bankruptcy Code § 364(c)(2), the Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, the DMT Sapphire to the extent the DMT Sapphire is not already encumbered.

(b) <u>Preferred Ship Mortgage</u>. The DMT Sapphire shall be subject to a preferred ship mortgage (the "<u>Mortgage</u>") in favor of the Lender that qualifies as a "preferred mortgage" under the provisions of Chapter 313 of Title 46 of the U.S. Code ("<u>Chapter 313</u>"), as amended, and the Debtors will comply with and satisfy all provisions of Chapter 313 necessary to establish and at all times maintain the Mortgage as a "preferred mortgage" under said Chapter 313.

(c) <u>Liens Priming Existing Liens</u>. Pursuant to Bankruptcy Code § 364(d)(1), the Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected senior priming lien on the DMT Sapphire, to the extent that there are existing liens on the DMT Sapphire.

(d) <u>Liens Junior To Existing Liens</u>. Pursuant to Bankruptcy Code § 364(c)(3), the Lender shall be granted junior perfected liens on all property of the Debtors subject to existing valid, perfected, enforceable, and unavoidable liens on such property (other than DMT Sapphire), until such time as the DIP Loan is approved on a final basis at which time these junior liens are released.

Notwithstanding anything in this Order, Lender is not granted a lien on any causes of action, whether arising under Chapter 5 of the Bankruptcy Code or otherwise.

17. *Adequate Protection.* Parties with valid liens on the DMT Sapphire are entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to adequate protection of their interests in the DMT Sapphire. The Court finds that such interests are adequately protected by the "equity cushion" in the DMT Sapphire, and that no other or further adequate protection is required.

18. *Perfection Of The DIP Liens.* The DIP Lender is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar

instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order. The Debtors shall execute and deliver to the DIP Lender all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date. Pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtors, or any guarantor to pledge, grant, sell, or otherwise transfer any such interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code and shall have no force and effect with respect to the transactions granting the DIP Lender a security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Debtors in favor of the DIP Lender in accordance with the terms of the DIP Documents. Notwithstanding any other provision in the Order, no security interests or liens established pursuant to this Order shall attach to any property that is not property of the Debtors' bankruptcy estates. Furthermore, this Order is without prejudice to the rights of parties in interest to challenge whether property is property of the Debtors' bankruptcy estates. Finally, notwithstanding the foregoing, the Lender has agreed not to notify any account debtors to the Debtors of its junior lien pending entry of a Final Order. If a Final Order is not entered the Lender reserves the right to notify account debtors. Pending

further order of the Court, neither the Debtors nor the Lender may spend or receive any funds that are the proceeds of pre-petition accounts receivable.

*Preservation Of Rights Granted Under The Order.*

19. No claim or lien having a priority senior to or *pari passu* with those granted by this Order or the DIP Documents to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding.

20. Unless all the DIP Obligations shall have been indefeasibly paid in full in cash (i) the Debtors shall not seek, and it shall constitute an event of default under the DIP Agreement if any of the Debtors seeks, or if there is entered, any modification of this Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender, or (ii) it shall constitute an event of default under the DIP Documents if any order is entered converting, dismissing or appointing a chapter 11 trustee in any of these cases. However, it shall *not* constitute an event of default if a Chief Restructuring Officer is appointed pursuant to an order of this Court for the reasons stated on the record. If an order dismissing any of these cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims and the DIP Liens and the provisions with respect to the Carve Out shall continue in full force and effect and shall maintain their priorities as provided in this Order until all the DIP Obligations shall have been indefeasibly paid in full in cash and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, Carve Out and security interests granted herein.

21.   If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the Carve Out or (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the receipt of actual written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority or enforceability of the DIP Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any DIP Obligations incurred by the Debtors to the DIP Lender prior to the receipt of actual written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all DIP Obligations.

22.   Until all DIP Obligations are indefeasibly paid in full in cash, and except as expressly provided in this Order or in the DIP Documents, the DIP Liens, and the Superpriority Claims, and all other rights and remedies of the DIP Lender granted by the provisions of this Order and the DIP Documents shall, in each case, survive, and shall not be modified, impaired or discharged by (y) the entry of an order converting any of these cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of these cases or by any other act or omission, or (z) the entry of an order confirming a plan of reorganization in any of the cases.  In addition, the Carve Out shall survive each of the conditions described in clauses (y) and (z) above subject to the terms and provisions of this Order.  The terms and provisions of this Order and the DIP Documents shall continue in these cases, in any successor cases if the cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens and the Superpriority Claims, and all other rights and remedies of the DIP Lender granted

by the provisions of this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash.

23. *Limitation On Use Of The DIP Financing Proceeds And Collateral.* The Debtors shall use the proceeds of the DIP Loan solely as provided by this Order and in the DIP Documents, and also be subject to the budget attached hereto. Notwithstanding anything herein or in any other order of this Court to the contrary, no sums under the DIP Loan or the Carve Out may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation against the DIP Lender or for the purpose of challenging the validity, extent or priority of any claim, lien or security interest held or asserted by the DIP Lender or asserting any defense, claim, counterclaim, or offset with respect to the DIP Obligations, (b) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Documents, (c) to seek to modify any of the rights granted to the DIP Lender under this Order, or under the DIP Documents, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court, and (ii) permitted under the DIP Documents.

24. *Exculpation.* Nothing in this Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the pre-petition or post-petition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Lender complies with its obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code) (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner

or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

25. *Order Governs.* In the event of any inconsistency between the provisions of this Order, the DIP Documents, or the prior order entered by the Court on December 18, 2009, the provisions of this Order shall govern.

26. *Retention of Jurisdiction.* The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

27. *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the cases, including without limitation, the DIP Lender, all pre-petition secured lenders, any official committee of unsecured creditors and the Debtors and their respective successors and assigns and shall inure to the benefit of the DIP Lender, the Debtors and their respective successors and assigns, provided, however, that the DIP Lender shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

28. *Limitation of Liability.* In determining to make any loan under the DIP Documents, or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Lender shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors,

shareholders or estates, and (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability act of 1980 or any similar federal or state statute).

29. *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

30. *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

Dated: 12/18/09

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**DRAFT**
**Deep Marine Technology**
**Projected Receipts and Disbursements**

| Updated 12-18-2009 | | Week Ending | | | |
|---|---|---|---|---|---|
| | | 12/18/2009 | 12/25/2009 | 1/1/2010 | 1/8/2010 |
| **CASH RECEIPTS** | | | | | |
| Funding from DIP Facility | | 820,000 | - | - | - |
| **Total Cash Receipts** | | 820,000 | - | - | - |
| **CASH DISBURSEMENTS** | | | | | |
| Payroll - funded on Wednesday's | | 130,315 | 28,000 | 28,000 | 28,000 |
| Insurance | | 241,659 | | | |
| Customs Clearing Fee for the Sapphire | | 20,000 | - | - | - |
| Utility Deposits | | 14,000 | | | |
| Utilities | | - | - | 14,000 | - |
| Rent on Beauty Elite Property | | - | - | 49,000 | - |
| General & Administrative | | 15,000 | - | 10,000 | - |
| Ordinary Course Professionals | | 6,000 | 3,000 | 3,000 | 3,000 |
| Dock Fees/Power | | 20,250 | | 20,250 | |
| Possible Moving Costs | | 6,000 | 53,000 | 53,000 | 23,000 |
| Contingency | | - | 20,000 | 20,000 | 10,000 |
| **Total Cash Disbursements** | | 453,224 | 104,000 | 197,250 | 64,000 |
| **Net Cash Flow** | | 366,776 | (104,000) | (197,250) | (64,000) |
| | Beginning cash balance | 0 | 366,776 | 262,776 | 65,526 |
| | Net Cash Flow | 366,776 | (104,000) | (197,250) | (64,000) |
| | Ending cash balance | 366,776 | 262,776 | 65,526 | 1,526 |
| Beginning DIP Loan Balance | | $ - | $ 975,000 | $ 975,000 | $ 975,000 |
| DIP Loan Commitment Fee | | $ 155,000 | | | |
| Drawdown/(Repayment) | | 820,000 | 0 | 0 | 0 |
| **Ending DIP Loan Balance** | | $ 975,000 | $ 975,000 | $ 975,000 | $ 975,000 |