IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: § | | |
| § | | |
| **DEEP MARINE HOLDINGS, INC.,** § | | Case No. 09-39313 |
| et al. § | | |
| § | | Jointly Administered |
| Debtors. § | | Chapter 11 |

**DECLARATION OF JOHN BITTNER, IN SUPPORT OF DEBTORS' APPLICATION TO EMPLOY AND RETAIN (I) GRANT THORNTON LLP TO PROVIDE MANAGEMENT AND RESTRUCTURING SERVICES TO THE DEBTORS AND (II) JOHN BITTNER AS DEBTORS' CHIEF RESTRUCTURING OFFICER**

STATE OF TEXAS          §
                                       §
COUNTY OF HARRIS   §

JOHN BITTNER of Grant Thornton LLP makes this Declaration pursuant to Federal Rule of Bankruptcy Procedure 2014 and states:

1. I am a Partner of Grant Thornton LLP ("Grant Thornton"), a professional services firm which maintains local offices at 333 Clay Street, Suite 2700, Houston, TX 77002. Grant Thornton is a firm of independent public accountants as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants and is the U.S. member firm of Grant Thornton International Ltd. ("Grant Thornton International"). Among other things, Grant Thornton provides numerous services including turnaround consulting, advising on formal or informal restructurings, bankruptcy planning, and process management and advising on other corporate financial matters. Grant Thornton is internationally recognized in developing, designing, and implementing turnaround strategies, assisting companies with improving their

operational and financial performance, reorganizing balance sheets, developing refinancing options, and implementing operational changes required to return to profitability. The Debtors have selected Grant Thornton to provide management and restructuring services because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation and bankruptcy.

2. I submit this Declaration on behalf of Grant Thornton in support of the application (the "Application")[1] of Deep Marine Technology, Inc. *et al.*, as debtors and debtors-in-possession (the "Debtors"), for entry of an order, pursuant to sections 363 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), authorizing the Debtors to employ and retain (i) Grant Thornton to provide management and restructuring services to the Debtors and (ii) John Bittner as the Debtors' Chief Restructuring Officer. Except as otherwise noted, I have personal knowledge of the matters set forth herein.[2]

3. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry by myself or other Grant Thornton employees, working under my supervision, other than in connection with this engagement, neither I, nor Grant Thornton, nor any of its managing directors, partners, principals, employees, or agents, have any connection with the Debtors, their creditors, the United States Trustee for the Southern District of Texas, or any other party with an actual or potential interest in these chapter 11 cases, or their respective attorneys or accountants, except as set forth herein:

    a. Preceding the Petition Date, the Debtors had employed Grant Thornton as financial and restructuring advisor from November 20, 2009.

---

[1] Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Application.

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at Grant Thornton and are based on information provided by them.

b. Grant Thornton has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest, and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in this chapter 11 case.

c. Grant Thornton has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants, except for those mentioned above, with regard to any matter related to this chapter 11 case.

d. Grant Thornton is the U.S. member firm of Grant Thornton International. Only Grant Thornton is being retained in this matter. Grant Thornton has not performed a comprehensive global search for potential relationships between the other Grant Thornton International member firms and the Debtors, other parties-in-interest, and their respective attorneys and accountants. Grant Thornton cannot assure that an engagement will not be accepted by a foreign member firm of Grant Thornton International for another party that may bear upon Grant Thornton's engagement by the Debtors.

e. As part of its practice, Grant Thornton appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to this bankruptcy. Grant Thornton has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in this chapter 11 case that would cause it to be adverse to the Debtors, the Debtors' estate, any creditor or any other party-in-interest.

f. If and when additional information becomes available with respect to any other relationships, which may exist between Grant Thornton, foreign member firms of Grant Thornton International, or their partners and professionals and the Debtors, creditors, or any other parties-in-interest, which may affect this case, supplemental declarations describing such information shall be filed with this Court.

4. Based upon information supplied by the Debtors, Grant Thornton searched its client database from to identify any connection or relationship with the following entities:

a. The Debtors and their affiliates;

b. The Debtors' officers and directors;

c. The Debtors' major secured creditors;

d. The Debtors' thirty (30) largest unsecured creditors;

e.  Counsel to the Debtors; and

f.  Financial advisors and counsel to certain other parties-in-interest.

The names provided to Grant Thornton by the Debtors are set forth in **Exhibit A** hereto. Based on this search, Grant Thornton represents that, to the best of its knowledge, Grant Thornton knows of no fact or situation that would represent a conflict of interest for Grant Thornton with regard to the Debtors. However, Grant Thornton wishes to disclose the following:

a.  Grant Thornton is currently providing professional services to Aramark in matters unrelated to the Company.

b.  Grant Thornton is currently providing professional services to Baker Botts LLP in matters unrelated to the Company.

c.  Grant Thornton has previously provided and is currently providing professional services to Bracewell Giuliani LLP in matters unrelated to the Company.

d.  Grant Thornton is currently providing professional services to General Electric Capital Fleet Services and General Electric Company in matters unrelated to the Company.

e.  Grant Thornton is currently providing professional services to Hydro, Inc. in matters unrelated to the Company.

f.  Grant Thornton is currently providing professional services and audit services to McDermott, Will & Emery LLP in matters unrelated to the Company.

g.  Grant Thornton is currently providing professional services to PNC Bank N.A. in matters unrelated to the Company.

h.  Grant Thornton is currently providing professional services to U.S. Bank N.A. in matters unrelated to the Company.

5.  Grant Thornton submits that it holds no adverse interest as to the matters for which it has been employed by the Debtors. Certain individuals affiliated with Grant Thornton may render crisis and interim management services to the Debtors on a part time basis, while others have been and/or will continue to be engaged full time. To the extent such individuals are

employed on a part-time basis, Grant Thornton submits that there are no simultaneous or prospective engagements existing which would constitute a conflict or adverse interest as to the matters for which it has been employed by the Debtors, nor would Grant Thornton staff such part-time temporary staff on any future matter that would constitute a conflict or adverse interest to these matters.

6. Grant Thornton may determine, from time to time, to augment its professional staff with independent contractors (each an "Independent Contractor") in these chapter 11 cases. In such event, Grant Thornton will file, and will require each Independent Contractor to file an affidavit (a "2014 Affidavit") pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (i) indicating that the Independent Contractor has reviewed the list of the interested parties in these cases, (ii) disclosing the Independent Contractor's relationships, if any, with the interested parties, and (iii) indicating that the Independent Contractor is disinterested. The Independent Contractor must remain disinterested during the time that Grant Thornton is involved in providing services on behalf of the Debtors and the Independent Contractor must represent to Grant Thornton that he/she will not work for the Debtors or other parties in interest in these cases during the time Grant Thornton is involved in providing services to the Debtors.

7. According to the books and records of Grant Thornton, during the 90-day period prior to the commencement of the these chapter 11 cases, Grant Thornton received a retainer from the Debtors in the amount of $150,000.00 to apply against professional services performed and expenses incurred in anticipation of these bankruptcy filings. For the period of November 20, 2009 through December 3, 2009, Grant Thornton incurred fees and expenses of $43,015.00 which Grant Thornton offset prior to the chapter 11 filings against the retainer received.

8. Despite the efforts described above to identify and disclose Grant Thornton's connections with parties in interest in these chapter 11 cases, because the Debtors are a large enterprise with thousands of creditors and other relationships, Grant Thornton is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Grant Thornton discovers additional information that requires disclosure, Grant Thornton will file a supplemental disclosure with the Court.

9. Grant Thornton did not hold a prepetition position as an officer and did not have prepetition involvement in the decision to engage Grant Thornton pursuant to this Application.

10. Upon information and belief, there are no asserted or threatened claims against Grant Thornton or any person furnished by Grant Thornton arising from any act or omission in the course of a prepetition engagement.

11. Mr. Nasser Kazeminy and Mr. Otto Candies, III serve as the two sole directors on each of the independent boards of each of the Debtors.

12. Except as set forth in Paragraph 13 herein, the contemplated retention and accompanying disclosures are in compliance with the standards for the retention of a crisis manager under section 363 of the Bankruptcy Code set forth in the Protocol for Engagement of Jay Alix & Associates and Affiliates (the "Jay Alix Protocol") (attached hereto as **Exhibit B**). The protocol provides, in relevant part, that a prospective crisis manager:

> a. will not act in more than one of the following capacities in any bankruptcy cases of a debtor and its affiliates: (i) crisis manager, (ii) financial advisor, (iii) claims administrator, or (iv) investor/acquirer;
>
> b. may not switch to another capacity once it has been retained

c. shall seek retention under section 363 of the Bankruptcy Code with respect to its crisis management services;

d. in all other cases, shall seek retention under section 327 of the Bankruptcy Code;

e. shall be retained in such position upon the express approval of an independent board of directors whose members are performing their duties and obligations as required under applicable law;

f. will act under the direction, control and supervision of the board and will serve at the board's pleasure;

g. shall not seek to be retained in any bankruptcy case in which a principal, employee or independent contractor of the prospective crisis manager is, or has within two (2) years prior to the filing of the bankruptcy petition, served as a director of the debtor;

h. shall receive compensation for crisis management services paid directly to the prospective crisis manager;

i. shall be entitled to indemnification on the same terms as provided to the debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the debtor's D&O policy, with no other indemnification of the prospective crisis manager.

13. The Jay Alix Protocol was the product of settlement agreements between the United States Trustee for Region 3 and Jay Alix & Associates and its affiliates in bankruptcy cases pending before the United States Bankruptcy Court for the District of Delaware. It has

since been widely adopted by bankruptcy courts in the U.S. Second and Third Circuits of Appeals. Pursuant to the Jay Alix Protocol, debtors are generally only permitted to indemnify those persons serving as executive officers on the same terms as provided to a debtors' other officers and directors under the corporate bylaws and applicable state law. The Debtors have informed Grant Thornton that the Debtors currently do not indemnify their officers and directors. Accordingly, the Debtors are continuing to negotiate with Grant Thornton regarding the issue of indemnifying Grant Thornton and the result of such negotiations will appear in the engagement letter to be submitted with the proposed order submitted in connection with this Application.

14. The precise terms and conditions of engagement are still being negotiated between the Debtors, Grant Thornton and the Committee as of the time of this filing. It is my understanding that the Debtors intend to file a formal engagement letter specifying the terms and conditions of the employment of Grant Thornton at the time the Debtors file a consensual proposed order, which the Debtors expect will be prior to the hearing set on this motion. To the extent that this Declaration is required by the Bankruptcy Code, Bankruptcy Rules or the Court to be supplemented once the precise terms and conditions of Grant Thornton's retention are agreed upon, I will so supplement.

15. Grant Thornton reserves the right to supplement this Declaration in the event that Grant Thornton discovers any facts bearing on matters described in this Declaration regarding Grant Thornton's employment with the Debtors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

*[signature]*

**JOHN BITTNER**
Partner
Grant Thornton LLP

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on the 31 day of December, 2009.

My Commission Expires:

September 25, 2012

_____
Notary Public - State of Texas

George D Ayers Jr
Printed Name of Notary Public

[Notary Seal:
GEORGE D. AYERS JR
My Commission Expires
September 25, 2012
STATE OF TEXAS]

HOUSTON\2346983

**EXHIBIT A**

This information is being provided in connection with the Affidavit of John Bittner, a Partner of Grant Thornton, in support of the Application. The following names were provided to Grant Thornton by the Debtors and compared to its client database to identify any connection or relationship:

**Debtors**
Deep Marine Technology, Inc.
Deep Marine Holdings, Inc.

**Debtor Subsidiaries**
Deep Marine 1, LLC
Deep Marine 2, LLC
Deep Marine 3, LLC
Deep Marine 4, LLC

**Officers / Directors**
Nasser Kazeminy
Nader Kazeminy
Otto Candies, III
Wade Abadie
John Hudgens
Paul McKim
B.J. Thomas

**Prepetition Secured Creditors**
PNC Bank
GE Capital
CIT
Caterpillar Financial
DCC Ventures, LLC
Otto Candies, LLC

**Top 30 Unsecured Creditors (as of 12-03-2009)**
Otto Candies, LLC
DCC Ventures, LLC
Aramark Offshore
NREC Power Systems, Inc.
NJK Holding Corporation
BNA Marine Services, LLC.

Intrepid Global Ind.
Bollinger Fourchon, LLC.
UTEC Survey Inc.
Crossmar Incorporated
Ertech India
Conrad Shipyard, LLC.
McDermott Will & Emery LLP
BP America
CapRock Communications
Ocean Services, LLC
B & J Martin, Inc/ MARTIN QUAR
The IUC Group

**Top 30 Unsecured Creditors (as of 12-03-2009) (continued)**
Madcon Corporation
ES&H
GS-HYDRO-US, Inc
Candies Shipbuilders
Asamarbunkers c/o Asamar, Inc.
Greenburg Traurig, LLP
Intermoor, Inc.
Nexans Norway AS
Huisman-Itrec Special Lifting
US Bank
Greenwood Marine Management
Bollinger Texas City
Noble Denton Marine Inc.
Seagull Marine / Agility

**Professionals Sought to be Retained by Debtors**
Bracewell & Giuliani LLP

**Office of the U.S. Trustee**
Office of the U.S. Trustee, Houston, TX

**Attorneys Retained by Debtors Equity Interest Holders**
Baker Botts LLP

**EXHIBIT B**

**Protocol for Engagement of Jay Alix & Associates and Affiliates**

I.  Retention Guidelines

   A.  Jay Alix & Associates ("JA&A") is a firm that provides turnaround and crisis management services, financial advisory services, management consulting services, information systems services and claims management services.  In some cases the firm provides these services as advisors to management, in other cases one or more of its staff serve as corporate officers and other of its staff fill positions as full time or part time temporary employees ("crisis manager"), and in still other cases the firm may serve as a claims administrator as an agent of the Bankruptcy Court.  JA&A and its affiliates[1] will not act in more than one of the following capacities in any single bankruptcy case: (i) crisis manager retained under Sec. 363, (ii) financial advisor retained under Sec. 327, (iii) claims agent/claims administrator appointed pursuant to 28 U.S.C. § 156(c) and any applicable local rules or (iv) investor/acquirer; and upon confirmation of a Plan may only continue to serve in a similar capacity.  Further, once JA&A or one of its affiliates is retained under one of the foregoing categories it may not switch to a different retention capacity in the same case.  However, with respect to subsequent investments by Questor this prohibition is subject to the time limitations set forth in IV.B below.

   B.  Engagements involving the furnishing of interim executive officers[2] whether prepetition or postpetition (hereinafter "crisis management" engagements) shall be provided through JA&A Services LLC ("JAS").

   C.  JAS shall seek retention under section 363 of the Bankruptcy Code.  The application of JAS shall disclose the individuals identified for executive officer positions as well as the names and proposed functions of any additional staff to be furnished by JAS.  In the event the Debtor or JAS seeks to assume additional or different executive officer positions, or to modify materially the functions of the persons engaged, a motion to modify the retention shall be filed.  It is often not possible for JAS to know the extent to which full time or part time temporary

---

[1] Affiliates of JA&A presently are System Advisory Group (an organization that provides information services), JA&A Services LLC (an entity that provides temporary employees), Questor Management Company LLC, an organization that manages Questor Partners Fund, Questor Partners Fund II, and various Side-by-Side entities, which are limited partnerships that invest in underperforming and troubled companies, and ACT Two (an entity that owns and operates a private airplane).  Future affiliates of JA&A, if any, will be subject to the limitations set forth herein.

[2] "Executive officers" shall include but is not necessarily limited to Chief Executive Officer, President, Chief Operating Officer, Treasurer, Chief Financial Officer, Chief Restructuring Officer, Chief Information Officer, and any other officers having similar roles, power or authority, as well as any other officers provided for in the company's bylaws.

employees will be required when beginning an engagement. In part this is because the extent of the tasks that need to be accomplished is not fully known and in part it is because JAS is not yet knowledgeable about the capability and depth of the client's existing staff. Accordingly, JAS shall file with the Court with copies to the UST and all official committees a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

D. Persons furnished by JAS for executive officer positions shall be retained in such positions upon the express approval thereof by an independent Board of Directors whose members are performing their duties and obligations as required under applicable law ("Board"), and will act under the direction, control and guidance of the Board and shall serve at the Board's pleasure (*i.e.* may be removed by majority vote of the Board).

E. The application to retain JAS shall make all appropriate disclosures of any and all facts that may have a bearing on whether JAS, its affiliates, and/or the individuals working on the engagement have any conflict of interest or material adverse interest, including but not necessarily limited to the following:

1. Connection, relationship or affiliation with secured creditors, postpetition lenders, significant unsecured lenders, equity holders, current or former officers and directors, prospective buyers, or investors.

2. Involvement as a creditor, service provider or professional of any entity with which JA&A or any affiliate has an alliance agreement, marketing agreement, joint venture, referral arrangement or similar agreement.

3. Any prepetition role as officer, director, employee or consultant,[3] but service as a pre-petition officer will not *per se* cause disqualification.

4. Any prepetition involvement in voting on the decision to engage JA&A or JAS in the bankruptcy case, and/or any prepetition role carrying the authority to decide unilaterally to engage JA&A or JAS.

5. Information regarding the size, membership and structure of the Board so as to enable the UST and other interested parties to determine that the Board is independent.

---

[3] In no case shall any principal, employee or independent contractor of JA&A, JAS and affiliates serve as a director of any entity while JA&A, JAS or any affiliate is rendering services in a bankruptcy proceeding, and JA&A, JAS and their affiliates shall not seek to be retained in any capacity in a bankruptcy proceeding for an entity where any principal, employee or independent contractor of JA&A, JAS and affiliates serves or has previously served as a director of the entity or an affiliate thereof within two years prior to the petition date. During such two year period, neither JA&A, JAS or affiliates shall have provided any professional services to the entity nor shall any individuals associated with JA&A, JAS and affiliates have served as an Executive Officer.

HOUSTON\2346983

      6.      Whether the executive officers and other staff for the engagement are expected to be engaged on a full time or part time basis, and if part-time whether any simultaneous or prospective engagement exists that may be pertinent to the question of conflict or adverse interest.

      7.      The existence of any unpaid balances for prepetition services.

      8.      The existence of any asserted or threatened claims against JA&A, JAS or any person furnished by JA&A/JAS arising from any act or omission in the course of a prepetition engagement.

    F.    Disclosures shall be supplemented on a timely basis as needed throughout the engagement.

    G.    Where JA&A does not act as a crisis manager its retention will be sought as a financial advisor under section 327 of the Code or as a Court appointed claims representative.

II.    <u>Compensation</u>

    A.    Compensation in crisis management engagements shall be paid to JAS.

    B.    The application to retain JAS shall disclose the compensation terms including hourly rates and the terms under which any success fee or back-end fee may be requested.

    C.    JAS shall file with the Court, and provide notice to the UST and all official committees, reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall summarize the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. The notice shall provide a time period for objections. All compensation shall be subject to review by the Court in the event an objection is filed (*i.e.*, a "negative notice" procedure).

    D.    Success fees or other back-end fees shall be approved by the Court at the conclusion of the case on a reasonableness standard and shall not be pre-approved under section 328(a). No success fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause or appointment of a trustee.

III.    <u>Indemnification</u>

    A.    Debtor is permitted to indemnify those persons serving as executive officers on the same terms as provided to the debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the debtor's D&O policy.

   B.  There shall be no other indemnification of JA&A, JAS or affiliates.

IV. Subsequent Engagements

   A.  Pursuant to the "one hat" policy as stated above, after accepting an engagement in one capacity, JA&A and affiliates shall not accept another engagement for the same or affiliated debtors in another capacity.

   B.  For a period of three years after the conclusion of the engagement, Questor shall not make any investments in the debtor or reorganized debtor where JA&A, JAS or another affiliate has been engaged.