## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| **et al.** | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | **Chapter 11** |

### DEBTORS' MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING BIDDING DEADLINE, AUCTION DATE AND SALE HEARING DATE, (III) APPROVING FORM AND NOTICE THEREOF,  AND (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING THE DEBTORS TO SELL THEIR ASSETS, (II) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES AND (III) GRANTING RELATED RELIEF</u>

**A HEARING WILL BE CONDUCTED ON THE PORTION OF THIS MOTION RELATING TO (A) ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING BIDDING DEADLINE, AUCTION DATE AND SALE HEARING DATE, (III) APPROVING FORM AND NOTICE THEREOF, ON APRIL 8, 2010 AT 1:30 P.M. IN COURTROOM 404, 515 RUSK, HOUSTON, TEXAS 77002.  IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST GIVE A COPY OF YOUR RESPONSE TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

The  above-captioned debtors and debtors in possession (the "<u>Debtors</u>"), by and through their undersigned counsel, hereby move for (a) Entry of an Order (i) Approving Bidding Procedures, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (iii)

Approving Form and Notice Thereof, and (b) Entry of an Order After the Sale Hearing (i) Authorizing the Debtors to Sell Their Assets, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iii) Granting Related Relief (the "<u>Motion</u>").  In support of this Motion, the Debtors respectfully represent as follows:

## I.       <u>JURISDICTION AND VENUE</u>

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 363(f), 365, 503, 507, and 1123(b) of title 11 of the United States Code, and Rules 2002(a)(2), 6003, 6004, 6006(a), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## II.      <u>BACKGROUND</u>

3.       On December 4, 2009 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Court</u>").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors-in-possession.  Joint administration of the cases was granted by Court order on December 8, 2009.  No trustees or examiners have been appointed in these cases.

4.       The Court entered its Order Granting Chapter 11 Complex Case Treatment on January 5, 2010 (Doc. No. 107).

5.       An official committee of unsecured creditors (the "<u>Committee</u>") was appointed in these cases on December 15, 2009.  The Committee requested the appointment of a chief

restructuring officer, and on January 7, 2010, this Court entered an order appointing John Bittner of Grant Thornton to serve as Chief Restructuring Officer ("CRO") for the Debtors.

6.      The Debtors are privately-held companies based in Houston, Texas that provide subsea services for the offshore oil and gas industry.   The Debtors offer remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection and repair services.

7.      The debtor Deep Marine 1, LLC is a Louisiana limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 1, LLC is the owner of the DMT Diamond, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 50T dynamic knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.

8.      The debtor Deep Marine 2, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 2, LLC is the owner of the DMT Emerald, a 292 ft. Class II DP Maintenance and Support Vessel, which includes a 100T knuckle boom crane, a 100T Heave Compensated Multi-purpose Lifting Tower, a 23x27 Moonpool, and accommodations for 73 people.  The DMT Emerald is outfitted with two 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").

9.      The debtor Deep Marine 3, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 3, LLC is the owner of the DMT Topaz.  The DMT Topaz is a 220 ft. Class II DP diving support vessel, which includes a 40T knuckle boom crane.  The DMT Topaz is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class ROV.

10.     The debtor Deep Marine 4, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.  Deep Marine 4, LLC is the owner of the DMT Sapphire, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 40T knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.  The DMT Sapphire is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class ROV.

11.     The debtor Deep Marine Technology Incorporated is a Texas corporation, and is the sole member and manager of Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC.  Deep Marine Technology Incorporated is the wholly owned subsidiary of the debtor Deep Marine Holdings, Inc., a Delaware corporation.  Deep Marine Holdings, Inc. is owned by DCC Ventures, LLC and Otto Candies, LLC.

### III.     RELIEF REQUESTED

12.     By this Motion, the Debtors seek (a) entry of an order (the "Bid Procedures Order") (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale of the Debtors' property, (ii) scheduling a bidding deadline, auction date and sale hearing date, and (iii) approving form and notice thereof.  The Debtors submit that the Bidding Procedures will permit interested parties reasonable opportunities to evaluate whether to propose a bid for the Debtors' property that is higher and better than the Purchase and Sale Agreement (the "PSA") between the Debtors and the Proposed Purchaser (as defined below).  Attached as **Exhibit A** to this Motion is the Bid Procedures Order.

13.     In addition, the Debtors seek, at the conclusion of the Sale Hearing (defined below), entry of an order (a) authorizing the sale of the Debtors' property to Oceaneering International, Inc., a corporation organized under the laws of the State of Delaware (the "Proposed Purchaser") or such other person or entity who is the Prevailing Bidder (defined

below), (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting certain related relief (the "Sale Order"). Attached as **Exhibit B** to this Motion is an executed copy of the PSA.

## IV.     BASIS FOR RELIEF

### A.     Approval of Bidding Procedures

14.     The Bidding Procedures are designed to maximize value for the Debtors' estates and ensure that a marketing and sales process is undertaken by the Debtors in accordance with the timeline required by the Proposed Purchaser. The Bidding Procedures are the result of arm's-length negotiations between the Debtors and the Proposed Purchaser and are summarized as follows:[1]

- The Debtors shall offer for sale (the "Sale") the vessels and their machinery, engines, tower, cranes and other appurtenances, remotely operated vehicles, and equipment, spare parts, spare equipment, stores and certain contracts related to the foregoing identified in further detail in the PSA (such assets collectively referred to herein as the "Acquired Assets").

- Confidentiality Agreements: Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtors, any person wishing to participate in the bidding process ("Potential Bidder") and wishing to conduct due diligence on the Acquired Assets may be granted access to all material information that has been or will be made available to the Proposed Purchaser or any other Potential Bidder.

- Participation Requirements:   Any Potential Bidder that wishes to participate in the bidding must become a "Qualifying Bidder." As a prerequisite to becoming a Qualifying Bidder, a Potential Bidder: (a) must deliver an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors;[2] and (b) must be able, as determined

---

[1] The description of the Bidding Procedures provided herein is a summary and is qualified in its entirety by reference to the Bidding Procedures attached as **Exhibit 1** to the Bid Procedures Order. Also attached to the Bid Procedures Order are the Sale Notice (**Exhibit 2**), the Publication Notice (**Exhibit 3**), and the Cure Notice (**Exhibit 4**), all as defined in this Motion.

[2] For the avoidance of doubt, parties who have already executed a confidentiality agreement with the Debtors shall not be required to execute a new confidentiality agreement provided that the existing confidentiality agreement is in form and substance acceptable to the Debtors.

by the Debtors in consultation with the Committee, to consummate a transaction based upon a Qualifying Bid (as defined below).  The Proposed Purchaser is deemed a Qualifying Bidder and the PSA constitutes a Qualifying Bid for all purposes, any other provision of these Bidding Procedures notwithstanding.  A Potential Bidder who satisfies the foregoing prerequisites shall be deemed a "<u>Qualifying Bidder</u>."  The Debtors reserve the right (i) at any time to require any Potential Bidder previously determined to be a Qualified Bidder (other than the Proposed Purchaser) to provide additional evidence of its ability to consummate a transaction based upon a Qualifying Bid in order to remain a Qualifying Bidder, and (ii) to exclude any such Potential Bidder from participating further in the auction process as a result of its inability to satisfy such further requirements to remain a Qualified Bidder.

- <u>Due Diligence</u>:  The Debtors shall afford any Qualifying Bidder the time and opportunity to conduct reasonable due diligence.  This will include an opportunity for Qualifying Bidders to inspect the Acquired Assets.  The due diligence period shall extend through and include the Bid Deadline (as defined below).  The Debtors and their representatives shall not be obligated to furnish any due diligence information after the Auction.

- <u>Bid Requirements</u>:  To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder by a date no later than the Bid Deadline that:

  (a)     states such Qualifying Bidder offers to purchase the Acquired Assets upon the terms and conditions substantially as set forth in the PSA or pursuant to an alternative structure or terms that the Debtors determine are no less favorable to the Debtors' estates than the terms and conditions of the PSA;

  (b)     identifies the cash consideration to be paid for the Acquired Assets, or the amount of any credit bid as allowed hereunder;

  (c)     states such Qualifying Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Acquired Assets on terms and conditions no less favorable to the Debtors' estates than the terms and conditions contained in the PSA (as determined by the Debtors in their reasonable business judgment, in consultation with the Committee), including, without limitation, the purchase of the Acquired Assets and assumption of the liabilities to be assumed by the Proposed Purchaser under the PSA;

  (d)     is accompanied by a clean and duly executed purchase and sale agreement or similar agreement (the "<u>Modified Purchase Agreement</u>") and a marked Modified Purchase Agreement

reflecting any variations from the PSA executed by the Proposed Purchaser;

(e)    states such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Modified Purchase Agreement and provides written evidence in support thereof;

(f)    states such Qualifying Bidder's offer is irrevocable[3] until the closing of the Sale if such Qualifying Bidder is the Prevailing Bidder (as defined below) and whether such Qualifying Bidder agrees to serve as a Back-up Bidder;

(g)    contains such financial and other information to allow the Debtors, in consultation with the Committee, to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, including, without limitation, such financial and other information setting forth adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve, within three (3) business days after such receipt, such information on counter-parties to any contracts or leases being assumed or assumed and assigned in connection with the proposed sale that have requested, in writing, such information;

(h)    identifies with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

(i)    does not request or entitle such Qualifying Bidder to any break-up fee, expense reimbursement, or similar type of payment;

(j)    fully discloses the identity of each entity that will be bidding in the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation;

(k)    is likely to result in a value to the Debtors' estates which, in the Debtors' reasonable judgment, and in consultation with the Committee, is more than the aggregate of the value of the sum of (a) the Break-up Fee and the expense reimbursements, (b) the

---

[3] The Back-up Bidder (as defined in the Bidding Procedures) shall be required to keep its bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central time) on the date which is (i) twenty (20) days after the date of the Sale Hearing (the "Outside Back-up Date") or (ii) the closing of the Sale transaction with the Prevailing Bidder.

purchase price to be paid pursuant to the terms of the PSA, (c) any applicable purchase price adjustments, as provided for in the PSA, and (d) $250,000;

(l)     (i) does not contain any financing contingencies of any kind; (ii) provides for expiration of any due diligence contingency on or before the Bid Deadline; and (iii) contains evidence that the Qualifying Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Sale, which evidence is reasonably satisfactory to the Debtors, in consultation with the Pre-petition Agent;

(m)     includes evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and performance of the Modified Purchase Agreement; and

(n)     provides a purchase deposit equal to or greater than the deposit set forth in the PSA.

A competing bid meeting the above requirements shall constitute a "Qualifying Bid." The Debtors, in consultation with the Committee, shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than **12:00 p.m. (prevailing Central time) on May 14, 2010**.

- Bid Deadline: A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its bid to: (i) Deep Marine Technology Incorporated, 20411 Imperial Valley Drive, Houston, Texas 77073 (Attn: John Bittner, email: John.Bittner@GT.com), (ii) counsel to the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Trey Wood, email: Trey.Wood@bgllp.com), and (iii) counsel for the Committee, McKool Smith P.C., 600 Travis Street, Suite 7000, Houston, Texas 77002 (Attn: Hugh Ray III, email: hmray@mckoolsmith.com) so as to be received by a date **no later than 3:00 p.m. (prevailing Central Time) on May 13, 2010 (the "Bid Deadline")**.

- Aggregate Bids: Persons who collectively are referred to as a "Qualifying Bidder" need not be affiliates and need not act in concert with one another, and the Debtors may aggregate separate bids from unaffiliated persons to create one "Bid" from a "Qualifying Bidder"; provided, however, that all bidders shall remain subject to the provisions of Bankruptcy Code section 363(n) regarding collusive bidding.

- Evaluation of Qualifying Bids:  Prior to the Auction (defined below), the Debtors shall determine, in their reasonable judgment after consultation

with the Debtors' financial and legal advisors and the Committee, which of the Qualifying Bids is likely to result in the highest and best value to the Debtors' estates, and shall provide a copy of that Qualifying Bid to all Qualifying Bidders prior to the beginning of the Auction.

- <u>No Qualifying Bids</u>: If no Qualifying Bids other than the Qualifying Bid submitted by the Proposed Purchaser are submitted by the Bid Deadline, the Debtors shall not hold an Auction and instead shall request at the Sale Hearing that the Bankruptcy Court approve the PSA with the Proposed Purchaser and declare the Proposed Purchaser and the PSA to be the Prevailing Bid.

- <u>Auction</u>: In the event that the Debtors timely receive one or more Qualifying Bids other than the PSA, the Debtors shall, conduct an auction (the "<u>Auction</u>") starting at 10:00 a.m. (prevailing Central Time) on May 17, 2010 (the "<u>Auction Date</u>") at the law offices of Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002. The Auction shall be governed by the following procedures:

    (a)    only the Proposed Purchaser and the other Qualifying Bidders who have made a Qualifying Bid shall be entitled to make any subsequent bids at the Auction;

    (b)    the Proposed Purchaser and each other Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

    (c)    the Proposed Purchaser and the other Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

    (d)    bidding shall commence at the amount of the highest Qualifying Bid as determined pursuant to Paragraph 8 of the Bidding Procedures;

    (e)    the Proposed Purchaser and each Qualifying Bidder may then submit successive bids in increments of at least $250,000.00 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $250,000.00 higher than the previous bid; provided that the Debtors shall retain the right to modify the bid increment requirements at the Auction;

    (f)    the Proposed Purchaser and each other Qualifying Bidder may make one or more credit bids of some or all of their claims to the full extent permitted by Bankruptcy Code section 363(k);

    (g)    the Auction will be conducted openly and the Proposed Purchaser and the other Qualifying Bidders will be informed of the terms of the previous bid;

    (h)    the Proposed Purchaser and all other Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the PSA or Modified Purchase Agreement at the Auction, provided that any such modifications to the PSA or Modified Purchase Agreement on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors' estates, as determined by the Debtors in consultation with the Committee, than the terms of the highest and best Qualifying Bid at that time;

    (i)    the Auction shall continue until there is only one offer that the Debtors determine, in consultation with the Committee and subject to Bankruptcy Court approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Prevailing Bid").  In making this decision, the Debtors shall consider, without limitation, the amount of the Purchase Price (as defined in the Bidding Procedures) or other amounts to be paid to the Debtors, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the PSA requested by each bidder, and the net benefit to the Debtors' estates.  The bidder submitting such Prevailing Bid shall become the "Prevailing Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable PSA or Modified Purchase Agreement;

    (j)    within fifteen (15) calendar days after the entry of the Sale Order, the Prevailing Bidder and the Debtors (i) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made, and (ii) shall close the sale transaction; and

    (k)    the Debtors may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that they anticipate will result in the highest or otherwise best value for the Debtors' estates and that are not inconsistent with any applicable Bankruptcy Court order, provided that any changed or additional rules of the Auction are not materially inconsistent with the Bidding Procedures and are communicated to all participants at or prior to the Auction.

- <u>Sale Hearing</u>: The Prevailing Bid will be subject to approval by the Bankruptcy Court.  The hearing to approve the Prevailing Bid (the "Sale

Hearing") shall take place at 3:00 p.m. (prevailing Central Time) on May 27, 2010.  At such time, the Debtors will seek the entry of an order of the Bankruptcy Court approving and authorizing the Sale to the Prevailing Bidder at the Auction on the terms and conditions of the Prevailing Bid. The Prevailing Bidder shall appear at the Sale Hearing and be prepared to testify in support of the Prevailing Bid and the Prevailing Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

- Return of Deposits: Except as provided herein, all deposits shall be returned to each bidder not selected by the Debtors as the Prevailing Bidder no later than five (5) business days following the conclusion of the Auction, except for the Back-up Bidder (as defined below) whose deposit will be returned by no later than the third (3rd) business day after the earlier to occur of: (a) the closing of the sale transaction with the Prevailing Bidder or (b) the Outside Back-up Date.

- Failure to Consummate Purchase: If an Auction is conducted, the party with the next highest or otherwise best Qualifying Bid (including for this purpose the Proposed Purchaser), as determined by the Debtors, in the exercise of their business judgment, at the Auction may serve as a back-up bidder (the "Back-up Bidder") and keep such bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central time) on the date which is (i) twenty (20) days after the date of the Sale Hearing (the "Outside Back-up Date") or (ii) the closing of the Sale transaction with the Prevailing Bidder.  Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved Sale because of (a) the failure of a condition precedent beyond the control of either the Debtors or the Prevailing Bidder or (b) a breach or failure to perform on the part of such Prevailing Bidder, the Back-up Bidder will be deemed to be the new Prevailing Bidder, and the Debtors will be authorized to consummate the Sale with the Back-up Bidder without further order of the Bankruptcy Court, provided, however, that if the Proposed Purchaser is the Back-up Bidder, the Debtors shall be required to consummate the Sale to the Back-up Bidder.[4]  In the case of (b) above, the defaulting Prevailing Bidder's deposit shall be forfeited to the Debtors as the Debtors sole remedy with respect to the defaulting Prevailing Bidder.

- Reservation of Rights; Deadline Extension: The Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify these

---

[4] For the avoidance of doubt, if the Prevailing Bidder fails to consummate the purchase and the purchase is ultimately consummated with the Proposed Purchaser (in their capacity as the Back-up Bidder), the Proposed Purchaser shall not be entitled to receive the Break Up Fee or to deduct the amount of the Break Up Fee from the Purchase Price.

Bidding Procedures or impose at, or prior to, the Auction, additional customary terms and conditions on the Sale of the Acquired Assets, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Acquired Assets at any time prior to or during the Auction or canceling the Auction in the Debtors' business judgment, and in consultation with the Committee. Notwithstanding the foregoing, (a) the Debtors may not impair or modify the Proposed Purchaser's rights and obligations under the PSA or the Proposed Purchaser's right to credit the Break-Up Fee as part of any subsequent bids, or (b) extend the Outside Back-up Date.

**B.     Approval of Buyer Protections**

15.     In consideration of the Proposed Purchaser's due diligence, good faith negotiations of and entering into the PSA, and in recognition of the Proposed Purchaser's work in establishing a bid standard or minimum for other bidders and serving, by its name and its expressed interest, as a catalyst for other bidders, the Debtors shall pay to the Proposed Purchaser, subject to and in accordance with, Section 7.2 of the PSA (1) a break-up fee in the amount of three percent (3%) of the sum of the purchase price to be paid for the Acquired Assets (defined below) pursuant to Section 2.2 of the PSA (the "Break-Up Fee"), and (2) an amount equal to Buyer's actual and reasonable out-of-pocket expenses incurred in connection with the preparation and negotiation of the PSA (such expenses, in any case, not to exceed $150,000, subject to the Debtors' receipt of supporting documentation in reasonable detail (the "Expense Reimbursement")).

16.     The Break-Up Fee and Expense Reimbursement shall be allowed and paid as administrative expense claims of the Proposed Purchaser under Section 503(b)(1) of the Bankruptcy Code, upon the occurrence of the consummation of a transaction with a Person other than the Proposed Purchaser pursuant to a Prevailing Bid (an "Alternative Transaction") (in which case payment shall be made from the proceeds of such Alternative Transaction).

C.      **Approval of Notice Procedures**

17.      To preserve the Debtors' going-concern value, the Debtors wish to proceed to the Auction and Sale Hearing as expeditiously as the Court's calendar will allow, while providing the requisite notice of the proposed sale as required under Bankruptcy Rule 2002.

18.      Not later than five (5) business days after entry of the Bid Procedures Order, the Debtors will serve a copy of the Notice of Auction and Sale Hearing (the "Sale Notice" substantially in the form attached as **Exhibit 2** to the Bid Procedures Order), as well as a copy of this Motion and the Bid Procedures Order, by first-class mail postage prepaid upon (i) counsel for the Committee; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts (as defined below); (ix) all other parties known to Debtors who have or may have asserted liens against any of the Acquired Assets; (x) the Debtors' thirty (30) largest unsecured creditors; (xi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets.

19.      In addition, on or before five (5) business days after the entry of the Bid Procedures Order, the Debtors shall publish notice of the Auction and Sale Hearing (the "Publication Notice")[5] in the national edition of The Wall Street Journal once.

---

[5] The Publication Notice is attached as **Exhibit 3** to the Bid Procedures Order.

**D.      Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases**

20.     To facilitate and effect the Sale, to the extent necessary, the Debtors may be required to assume and assign to the Prevailing Bidder certain executory contracts and unexpired leases (the "Assumed and Assigned Contracts").

21.     Pursuant to the PSA, the Proposed Purchaser does not require the assumption and assignment of any Assumed and Assigned Contracts.  In the event that any Qualifying Bid requires the assumption and assignment of any Assumed and Assigned Contract, the Debtors shall cause notice to be provided to any counterparties to such Assumed and Assigned Contract specified in such Qualifying Bid by May 14, 2010 (the "Cure Notice").[6]  The Cure Notice shall provide the counterparties to such Assumed and Assigned Contracts notice of the amount that the Debtors believe must be cured upon assumption and assignment as required under Bankruptcy Code section 365 (the "Cure Amount").

22.     Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance or to the Cure Amounts set forth in the Cure Notice, must be in writing and filed with the Court no later than 3:00 p.m. (prevailing Central Time) on May 21, 2010 (the "Cure Notice Objection Deadline").

23.     If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice will be binding upon the non-debtor party or parties to the Assumed and Assigned Contract for all purposes in these chapter 11 cases and otherwise.  All such counterparties to the Assumed and

---

[6] The Cure Notice is attached as **Exhibit 4** to the Bid Procedures Order.

Assigned Contracts will (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Prevailing Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Contracts.

24.     If a non-debtor counterparty to an Assumed and Assigned Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing.

25.     Except as may otherwise be agreed to by parties to an Assumed and Assigned Contract (with the consent of the Prevailing Bidder and the Committee), all Cure Amounts shall be paid as administrative expenses.

**E.      Approval of Releases**

26.     The Debtors request that the Court approve the following releases and sundry provisions (collectively, the "Releases") with respect to the Debtors and the Prevailing Bidder.

Releases in Favor of the Debtors

27.     Except for the enumerated rights and obligations of the Debtors and the Prevailing Bidder (collectively, the "Parties") under the purchase agreement constituting part of the Prevailing Bid (the "Purchase Agreement"), the Prevailing Bidder, to the extent permitted by law, is hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Debtors and their affiliates, and all their past, present and future shareholders,

partners, members, board of directors and/or supervisors, managers, officers, employees, agents, attorneys, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever at law or in equity, known or unknown, which the Prevailing Bidder or its affiliates might now or subsequently may have, based on, relating to or arising out of the Purchase Agreement, the transactions contemplated thereby, the ownership, use or operation of the Acquired Assets or the condition, quality, status or nature of the Acquired Assets, including rights to contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, breaches of statutory or implied warranties, nuisance or other tort actions, rights to punitive damages, common law rights of contribution and rights under insurance maintained by the Debtors or any of their affiliates.

<u>Releases in Favor of the Prevailing Bidder</u>

28.     Except for the enumerated rights and obligations of the Parties under the Purchase Agreement, the Debtors, to the extent permitted by law, are hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Prevailing Bidder and its affiliates and all their past, present and future shareholders, partners, members, board of directors and/or supervisors, managers, officers, employees, agents, attorneys, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever at law or in equity, known or unknown, which the Debtors might now or subsequently may have, based on, relating to or arising out of the Purchase Agreement, the transactions contemplated thereby, the ownership, use or operation of the Acquired Assets or the condition, quality, status or nature of the Acquired Assets, including rights to contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, breaches of statutory or implied warranties, nuisance or other

tort actions, rights to punitive damages, common law rights of contribution and rights under insurance maintained by the Prevailing Bidder or any of its affiliates.

## V.      ARGUMENTS AND AUTHORITIES

**A.      The Bidding Procedures are Fair and are Designed to Maximize the Value Received for the Acquired Assets Given the Financial Exigencies Facing the Debtors**

29.      The Bidding Procedures proposed herein are designed to maximize the value received for the Acquired Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids, taking into account the financial exigencies facing the Debtors.

30.      The Bidding Procedures provide Potential Bidders with more than the twenty day notice envisioned by Rule 2002 of the Bankruptcy Rules, which provides sufficient notice and opportunity to acquire the information necessary to submit a timely and informed bid.  The liquidity crisis facing the Debtors precludes a more extended process, and the Debtors believe that the period between the Petition Date and the deadline for submission of bids provides a reasonable means for maximizing the return from sale of the Acquired Assets within the financial constraints faced.

31.      At the same time, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select the highest or best offer for the completion of the Sale.  Entering into the PSA with the Proposed Purchaser ensures fair value by setting a minimum purchase price and testing the price in the marketplace.  Accordingly, the Debtors and all parties in interest can be assured that, taking into account the financial condition of the Debtors,  the consideration paid for the Acquired Assets will be fair, reasonable, and in the best interest of the Debtors' estates and creditors, and there are sound business reasons to approve the Bidding Procedures.

**B.**     **Approval of the Bid Protections Is Warranted and Appropriate**

32.     Courts have acknowledged that the approval of break-up fees and expenses in connection with substantial sales in bankruptcy is warranted to compensate an unsuccessful acquirer whose initial offer served as the basis and catalyst for higher or better offers.  *See In re Hupp Industries, Inc.*, 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992).  As listed in *Hupp Industries*, courts consider various factors in determining whether to authorize break-up fees, such as:

- whether the fee requested correlates with a maximization of value to the debtor's estate;

- whether the transaction in the negotiated agreement is an arms-length transaction between the debtor's estate and the negotiating acquirer;

- whether the principal secured creditors and the official creditors committee are supportive of the concession;

- whether the subject break-up fee constitutes a fair and reasonable percentage of the proposed purchase price;

- whether the dollar amount of the break-up fee is so substantial that it provided a "chilling effect" on other potential bidders;

- the existence of available safeguards beneficial to the debtor's estate;

- whether there exists a substantial adverse impact upon unsecured creditors, where such creditors are in opposition to the break-up fee.

33.     To warrant court approval of such break-up fees and expenses, other courts have required a showing that the fee is necessary to preserve the value of, or provide some benefit to, the debtor's estate as required by the plain language of Bankruptcy Code section 503(b)(1)(A) governing the allowance of certain claims as administrative claims. *See Calpine Corp. v. O' Brien Env. Energy, Inc. (In re O'Brien Env. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir. 1999).

34.     The Break-Up Fee and the Expense Reimbursement to be paid under the circumstances described herein and in the PSA satisfy the foregoing tests because they are: (i) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b) and 507(a)(2); (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Proposed Purchaser; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Proposed Purchaser; and (iv) necessary to induce the Proposed Purchaser to continue to pursue the sale transaction and to continue to be bound by the PSA.

35.     The Break-Up Fee and the Expense Reimbursement also induced the Proposed Purchaser to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors and other bidders may rely.  The Proposed Purchaser has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price for the Acquired Assets will be received.  Accordingly, the Bidding Procedures and the Break-Up Fee are reasonable and appropriate and represent the best method to maximize value for the Debtors' estates.

## C.     The Debtors Have Exercised Sound Business Judgment and Provided Adequate Notice and Opportunity to Object With Respect to Assumed and Assigned Contracts

36.     Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Gucci*, 193 B.R.

411 (S.D.N.Y. 1996).   Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate.   *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr. Del. 2001); *see also, In re Chi-Feng, Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.* 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988).   Moreover, a debtor's decision to assume an executory contract or unexpired lease should be accepted "except upon a finding of bad faith or gross abuse of [the debtor's] business discretion."   *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985). "More exacting scrutiny would slow the administration of the debtors' estates and increase its cost, interfere with the Bankruptcy Court's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially."   *Richmond Leasing*, 762 F.2d at 1311.

37.    Two conditions are imposed upon a debtor's ability to assume and assign an executory contract.  First, in order to assume an agreement, pursuant to Bankruptcy Code section 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly cure" any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).  Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  Bankruptcy Code section 365(f)  specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable.  *See* 11 U.S.C. § 365(f)(1); *see also, e.g.*, *In re Office Prods. of Am., Inc.*, 140 B.R. 407 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the debtor's estate").

38.     Pursuant to Bankruptcy Code section 365(a), assignment is conditioned on "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *Accord In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

39.     Here, any Qualifying Bidder must be an entity with financial resources adequate to perform under the respective executory contracts and unexpired leases.  Additionally, the Debtors respectfully submit that the proposed cure procedures for the identification and payment of Cure Amounts (the "Cure Procedures") are appropriate and reasonably tailored to provide non-Debtor counterparties to potential assumed and assigned contracts with adequate notice of the proposed assumption and assignment of their applicable contract, as well as the proposed Cure Amounts related thereto, if any.  Such non-Debtor parties to the potential assumed and assigned contracts are given an opportunity to object to the proposed assumption and assignment and, in the event an objection is not resolved, this Court will adjudicate the dispute, including issues

pertaining to adequate assurance of future performance.  Accordingly, the Debtors submit that implementation of the proposed Cure Procedures is appropriate in these cases.

**D.     The Sale of the Acquired Assets Is Authorized Under Bankruptcy Code Section 363(b)**

40.     At the conclusion of the Sale Hearing, the Debtors request that the Court approve the sale of the Acquired Assets to the Proposed Purchaser or such other Qualifying Bidder who submits the Prevailing Bid.[7]  The Debtors submit that the sale of the Acquired Assets to the Proposed Purchaser pursuant to the PSA, or such other agreement as the Debtors may reach with the party submitting the Prevailing Bid, is in the best interest of the Debtors' estates and their creditors.

41.     Bankruptcy Code section 363(b)(1)  provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the Debtors' decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2nd Cir. 1983), which decision has been adopted in this circuit.  *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986); *see also, Fulton State Bank* v. *Schipper,* 933 F.2d 513, 515 (7th Cir. 1991); *In re San Jacinto Glass Industries, Inc.,* 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988); *In re Condere Corp.,* 228 B.R. 615, 628-69 (Bankr. S.D. Miss. 1998).

---

[7] To be clear, this portion of the relief is requested to be entered after the Sale Hearing in the form of the Sale Order.  The Debtors hereby reserve the right to file supplemental pleadings in support of its request for entry of the Sale Order.

42.     The business judgment rule shields a debtor's management from judicial second-guessing.  *See In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

43.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).  When applying the business judgment standard, courts show great deference to a debtor's business decisions.  *See In re Trans World Airlines.*, 2001 Bankr. LEXIS 267, at *45-50 (Bankr. D. Del. March 12, 2001) (describing business judgment rule as "very deferential standard"); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687, at *8-9 (N.D. Ill. September 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

44.     The fairness and reasonableness of the consideration to be paid for the Acquired Assets by the Proposed Purchaser, as may be declared at the Sale Hearing, will be conclusively demonstrated by the exposure of the opportunity to the marketplace.  The Debtors have proposed a fair and open process for achieving the objective of obtaining the highest or best offer and sale of the Acquired Assets for the benefit of the Debtors' estates and their creditors.  Here, the Debtors have insufficient liquidity to continue operations absent a substantial funding commitment.  The Debtors' decision to proceed with the sale process is consistent with sound

business judgment.   Under the circumstances, the Bidding Procedures and Auction process represent the best way to achieve substantial consideration for the Debtors' businesses, and offer the best resolution to the Debtors' current financial situation in the manner that will maximize the value available to the Debtors' estates and their creditors.

45.     The Sale of the Acquired Assets is also appropriate because it is being filed contemporaneously with a liquidating plan of reorganization and is not a *sub rosa* plan as proscribed by the Fifth Circuit.  In *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983), the Fifth Circuit held that an asset sale under Bankruptcy Code section 363(b) could not be approved if it, in effect, amounted to a *sub rosa* plan of reorganization.   *Id*. at 940.   In *Braniff*, the Fifth Circuit focused on three (3) primary factors for determining whether an asset sale amounts to a *sub rosa* plan:

> a.     Does the transaction dictate some or all of the terms of a future plan of reorganization?
>
> b.     Does the transaction require parties in interest to support a future plan of reorganization?
>
> c.     Are claims against the estate being released as part of the transaction?

*Id*. at 939-40.  *See also Official Comm. of Unsecured Creditors v. Cajun Electric Power Corp. (In re Cajun Electric Power)*, 119 F.3d 349, 354-55 (5th Cir. 1997).  *See also In re Babcock & Wilcox Co.*, 250 F.3d 955, 960 (5th Cir. 2001) ("*Braniff* stands merely for the proposition that the provisions of section 363 permitting a trustee to use, sell, or lease the assets do not allow a debtor to gut the bankruptcy estate before reorganization or to change the fundamental nature of the estate's assets in such a way that limits a future reorganization plan.").

46.     The Sale contemplated herein is not a *sub rosa* plan, does not have any of the indicia of a plan as proscribed by the Fifth Circuit, and does not dictate some or all of the terms of a future plan of reorganization.   Rather, the Debtors have filed a liquidating plan of

reorganization contemporaneously with this Motion, and the Debtors intend to seek approval of the Sale in conjunction with confirmation of their proposed plan.  Additionally, no parties in interest are required to support or vote in favor of the current plan or any future plan. Furthermore, other than the liabilities to be assumed by the Prevailing Bidder under the terms of the Sale, no claims against the Debtors' estates are being released by the terms of the Sale. Indeed, this transaction will help to facilitate the plan and will not act as a substitute therefore.

**E.     The Sale of The Acquired Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

47.     The Debtors respectfully submit that it is appropriate to sell the Acquired Assets free and clear of all interests, pursuant to Bankruptcy Code section 363(f), with all such interests attaching to the net sale proceeds of the Acquired Assets to the extent applicable.  Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

a.     applicable nonbankruptcy law permits sale of such property free and clear of such interests;

b.     such entity consents;

c.     such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

d.     such interest is in bona fide dispute; or

e.     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

48.     Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Acquired Assets free and

clear of the interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, *12 (Bankr. S.D.N.Y. March 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

49.     The Debtors believe that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Assets pursuant to a Sale Order.   In particular, the Debtors believe that section 363(f)(5) will be satisfied.

## VI.     NOTICE

50.     Notice of this Motion has been given to (i) counsel for the Committee; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts; (ix) all other parties known to Debtors who have or may have asserted liens against any of the Acquired Assets; (x) the Debtors' thirty (30) largest unsecured creditors; (xi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets.  The Debtors submit that no further notice is required.

## VII.     NO PRIOR REQUEST

51.     No previous motion for the relief requested herein has been made to this or any other court.

## VIII.   CONCLUSION

Wherefore, the Debtors respectfully request that the Court (i) issue the Bid Procedures Order, substantially in the form attached hereto as **Exhibit A**, (ii) issue the Sale Order, (to be filed as a proposed order at a later date), after the Sale Hearing, and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


**BRACEWELL & GIULIANI LLP**

By:   _/s/ William A. Wood_
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Marcy E. Kurtz
Texas Bar No. 11768600
Marcy.Kurtz@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:    (713) 223-2300
Facsimile:     (713) 221-1212

**ATTORNEYS FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 15, 2010, a true and correct copy of this document was served on all parties on the attached master service list by electronic means as listed on the court's ECF noticing system, by electronic mail as indicated, and/or by United States first class mail, postage prepaid.

_/s/ Jason G. Cohen_
Jason G. Cohen

HOUSTON\2363061