**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.;** | § | **Case No. 09-39313** |
| **DEEP MARINE TECHNOLOGY** | § | |
| **INCORPORATED;** | § | **Case No. 09-39314** |
| **DEEP MARINE 1, LLC;** | § | **Case No. 09-39315** |
| **DEEP MARINE 2, LLC;** | § | **Case No. 09-39316** |
| **DEEP MARINE 3, LLC;** | § | **Case No. 09-39317** |
| **DEEP MARINE 4, LLC** | § | **Case No. 09-39318** |
| **Debtors.** | § | **(Jointly Administered under 09-39313)** |
| | § | **Chapter 11** |

**NOTICE OF FILING DISCLOSURE STATEMENT AS APPROVED BY THE COURT**
**AND JOINT PLAN OF REORGANIZATION AS**
**DISTRIBUTED FOR SOLICITATION**

**PLEASE TAKE NOTICE THAT** the Debtors filed their initial draft Joint Plan of
Reorganization on March 15, 2010 (the "Plan") (doc. no. 295). The Debtors then filed their
initial draft disclosure statement (the "Disclosure Statement") on March 30, 2010 (doc. no. 338).
Subsequent to that filing, the Debtors received informal and formal objections to the Disclosure
Statement. In order to resolve the informal and formal objections to the Disclosure Statement,
the Debtors revised both the Plan and Disclosure Statement.

On April 29, 2010, the United States Bankruptcy Court for the Southern District of
Texas, Houston Division (the "Bankruptcy Court") approved the Disclosure Statement, as
revised, for use by the Debtors in soliciting acceptances or rejections of the Debtors' Plan, also
as revised.

Attached hereto as **Exhibit A** is the revised Disclosure Statement as approved by the
Bankruptcy Court. Also attached hereto (as Exhibit A to the Disclosure Statement) is the

revised Plan, which has been distributed by the Debtors for the solicitation of votes and which is set to be considered by the Court for confirmation on June 2, 2010, at 9:00 a.m.

**BRACEWELL & GIULIANI LLP**

By:  _/s/ Jason G. Cohen_
        William A. (Trey) Wood III
        Texas Bar No. 21916050
        Trey.Wood@bgllp.com
        Marcy E. Kurtz
        Texas Bar No. 11768600
        Marcy.Kurtz@bgllp.com
        Jason G. Cohen
        Texas Bar No. 24050435
        Jason.Cohen@bgllp.com
        711 Louisiana, Suite 2300
        Houston, Texas 77002
        Telephone:    (713) 223-2300
        Facsimile:    (713) 221-1212

**ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 10, 2010, a true and correct copy of this document was served on all parties as listed on the court's ECF noticing system.

_/s/ Jason G. Cohen_
        Jason G. Cohen

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.;** | § | **Case No. 09-39313** |
| **DEEP MARINE TECHNOLOGY** | § | |
| **INCORPORATED;** | § | **Case No. 09-39314** |
| **DEEP MARINE 1, LLC;** | § | **Case No. 09-39315** |
| **DEEP MARINE 2, LLC;** | § | **Case No. 09-39316** |
| **DEEP MARINE 3, LLC;** | § | **Case No. 09-39317** |
| **DEEP MARINE 4, LLC** | § | **Case No. 09-39318** |
| **Debtors.** | § | **(Jointly Administered under 09-39313)** |
| | | **Chapter 11** |

**JOINT DISCLOSURE STATEMENT FOR THE DEBTORS'**
**PROPOSED JOINT PLAN OF REORGANIZATION**

**IMPORTANT DATES**

- Date by which Ballots must be received: 3:00 p.m., prevailing Central Time, May 27, 2010

- Deadline by which objections to Confirmation of the Plan must be Filed and served: 3:00 p.m., prevailing Central Time, May 27, 2010

- Hearing on Confirmation of the Plan: 9:00 a.m., prevailing Central Time, June 2, 2010

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT.**

**BRACEWELL & GIULIANI LLP**

William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Marcy E. Kurtz
Texas Bar No. 11768600
Marcy.Kurtz@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:      (713) 223-2300
Facsimile:      (713) 221-1212

Dated: April 28, 2010                    **Attorneys for the Debtors and Debtors in Possession**

**THE PLAN VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN DESCRIBED HEREIN IS MAY 27, 2010, AT 3:00 P.M., PREVAILING CENTRAL TIME, UNLESS THE DEBTORS EXTEND THIS DATE PRIOR TO THE PLAN VOTING DEADLINE.   TO BE COUNTED, THE VOTING AGENT MUST RECEIVE YOUR BALLOT OR MASTER BALLOT ON OR BEFORE THE PLAN VOTING DEADLINE.**

THE DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION. THE INFORMATION INCLUDED IN THE DISCLOSURE STATEMENT IS PROVIDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS WHICH ARE ATTACHED TO, OR INCORPORATED BY REFERENCE IN, THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS AND THE STATEMENTS REFLECTED HEREIN OR THEREIN, RESPECTIVELY. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN, OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION INCORPORATED IN THE DISCLOSURE STATEMENT BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION, AS THE CASE MAY BE, SHALL GOVERN FOR ALL PURPOSES.

THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT HAVE BEEN MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH IN THE DISCLOSURE STATEMENT SINCE THE DATE OF THE DISCLOSURE STATEMENT OR THE DATES OTHERWISE NOTED. EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THE PLAN, THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT IN THEIR ENTIRETY BEFORE CASTING A BALLOT. THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ENTITIES DESIRING SUCH ADVICE OR ANY OTHER ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

NO ONE IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THE DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT AND THE DOCUMENTS ATTACHED TO THE DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN AS SET FORTH, OR INCONSISTENT WITH THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR THE DOCUMENTS ATTACHED TO THE DISCLOSURE STATEMENT AND THE PLAN, SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.

WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATION OR OTHER ACTIONS, THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER,

BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE. THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THE DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE.

THE PROJECTIONS PROVIDED IN THE DISCLOSURE STATEMENT, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, THOUGH CONSIDERED REASONABLE BY THE DEBTORS AND THEIR PROFESSIONALS, MAY NOT BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL.  THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE ABILITY TO ACHIEVE THE PROJECTED RESULTS.

**THE BANKRUPTCY COURT HAS SCHEDULED THE CONFIRMATION HEARING TO COMMENCE ON JUNE 2, 2010, AT 9:00 A.M. PREVAILING CENTRAL TIME BEFORE THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION, 515 RUSK STREET, HOUSTON, TEXAS 77002.  THE CONFIRMATION HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE EXCEPT FOR AN ANNOUNCEMENT OF THE ADJOURNED DATE MADE AT THE CONFIRMATION HEARING OR ANY ADJOURNMENT OF THE CONFIRMATION HEARING.**

**TO BE COUNTED, THE BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY GRANT THORNTON, VOTING AGENT FOR THE DEBTORS IN THESE CHAPTER 11 CASES, NO LATER THAN 3:00 P.M. PREVAILING CENTRAL TIME, ON MAY 27, 2010.**

**OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE FILED AND SERVED ON OR BEFORE 3:00 P.M. PREVAILING CENTRAL TIME ON MAY 27, 2010. UNLESS OBJECTIONS TO CONFIRMATION ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE ORDER APPROVING THE DISCLOSURE STATEMENT, THEY MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## TABLE OF CONTENTS

SUMMARY OF PLAN.................................................................................................1

ARTICLE I         1

BACKGROUND  1
    Section 1.01         Introduction...............................................................................1
    Section 1.02         Sources of Information ............................................................2
    Section 1.03         Description of Debtors' Business and Assets.........................2
    Section 1.04         Debtors' Corporate Structure..................................................4
    Section 1.05         The Debtors' Pre-Petition Indebtedness................................4
    Section 1.06         Debtors' Management ..............................................................5
    Section 1.07         Non-Bankruptcy Litigation .....................................................6
    Section 1.08         Events Precipitating the Reorganization Cases.....................8

ARTICLE II THE CHAPTER 11 CASES ................................................................8
    Section 2.01         Overview of Chapter 11 ..........................................................8
    Section 2.02         Administration of the Chapter 11 Cases ...............................9

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .........11
    Section 3.01         Introduction...........................................................................11
    Section 3.02         Voting; Acceptance by Impaired Classes ............................12
    Section 3.03         The DIP Facility Claim..........................................................12
    Section 3.04         Administrative Claims ...........................................................13
    Section 3.05         Priority Tax Claims ................................................................13
    Section 3.06         Maritime Lien Priority ...........................................................13
    Section 3.07         Deep Marine Holdings, Inc...................................................14
    Section 3.08         Deep Marine Technology Incorporated ...............................16
    Section 3.09         Deep Marine 1, LLC ..............................................................19
    Section 3.10         Deep Marine 2, LLC ..............................................................22
    Section 3.11         Deep Marine 3, LLC ..............................................................25
    Section 3.12         Deep Marine 4, LLC ..............................................................28

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN...........................31
    Section 4.01         No Substantive Consolidation...............................................31
    Section 4.02         Sale of the Acquired Assets...................................................31
    Section 4.03         Appointment of Liquidating Trustee.....................................32
    Section 4.04         Duties of the Liquidating Trustee .........................................32
    Section 4.05         Distribution of All Net Proceeds of Sale of Assets on the
                         Effective Date .......................................................................33
    Section 4.06         Distribution Procedures ........................................................35
    Section 4.07         Cancellation of Existing Secured Claims .............................35
    Section 4.08         Continued Corporate Existence ............................................36
    Section 4.09         Directors and Officers...........................................................36
    Section 4.10         Employee Benefit Plans.........................................................36
    Section 4.11         Exclusivity Period..................................................................36
    Section 4.12         Effectuating Documents; Further Reorganization Transactions ..........36
    Section 4.13         Exemption from Certain Transfer Taxes...............................37

i

Section 4.14        Closing of the Debtors' Chapter 11 Cases...........................................37

ARTICLE V THE SOLICITATION; VOTING PROCEDURES ...................................37
Section 5.01        Solicitation Package......................................................................37
Section 5.02        Voting Instructions .......................................................................37
Section 5.03        Voting Tabulation ........................................................................38
Section 5.04        Agreements upon Furnishing Ballots................................................39

ARTICLE VI FEASIBILITY, BEST INTEREST OF THE CREDITORS AND
        LIQUIDATION....................................................................................39
Section 6.01        Feasibility of the Plan ...................................................................39
Section 6.02        Best Interest of Creditors Test.........................................................39

ARTICLE VII CONFIRMATION PROCEDURES ...................................................40
Section 7.01        The Confirmation Hearing..............................................................40
Section 7.02        Statutory Requirements for Confirmation of the Plan ........................41
Section 7.03        Identity of Persons to Contact for More Information .........................43

ARTICLE VIII CERTAIN RISK FACTORS AFFECTING CERTAIN OF THE
        DEBTORS ...........................................................................................44
Section 8.01        Certain Bankruptcy Law Considerations...........................................44
Section 8.02        Risks Related to the Sale of the Debtors' Assets.................................44

ARTICLE IX ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
        THE PLAN ..........................................................................................44
Section 9.01        Liquidation Under Chapter 7 ..........................................................44
Section 9.02        Alternative Plan of Reorganization..................................................46

ARTICLE X EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
        AGREEMENTS......................................................................................46
Section 10.01      Assumption/Rejection....................................................................46
Section 10.02      Cure Costs...................................................................................46
Section 10.03      Assumed Executory Contracts and Unexpired Leases ........................47
Section 10.04      Insurance Policies .........................................................................47
Section 10.05      Pass-through................................................................................47
Section 10.06      Claims Based on Rejection of Executory Contracts and
                  Unexpired Leases.........................................................................48
Section 10.07      Reservation of Rights.....................................................................48
Section 10.08      Nonoccurrence of Effective Date.....................................................48

ARTICLE XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
        UNLIQUIDATED CLAIMS....................................................................49
Section 11.01      Objections to Claims.....................................................................49
Section 11.02      Estimation of Claims.....................................................................49
Section 11.03      No Distributions Pending Allowance................................................50
Section 11.04      Distributions After Allowance .........................................................50
Section 11.05      Reduction of Claims .....................................................................50
Section 11.06      Compliance with Tax Requirements/Allocations ...............................50

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION  AND
       CONSUMMATION OF THE PLAN..............................................................51
    Section 12.01    Conditions Precedent to Confirmation...................................51
    Section 12.02    Conditions Precedent to Effective Date.................................51
    Section 12.03    Substantial Consummation ....................................................52
    Section 12.04    Waiver of Conditions ............................................................52
    Section 12.05    Revocation, Withdrawal, or Non-consummation...................52

ARTICLE XIII AMENDMENTS AND MODIFICATIONS ......................................52

ARTICLE XIV RETENTION OF JURISDICTION ................................................53

ARTICLE XV COMPROMISES AND SETTLEMENTS ..........................................54

ARTICLE XVI MISCELLANEOUS PROVISIONS ................................................55
    Section 16.01    Bar Dates for Certain Actions ...............................................55
    Section 16.02    Payment of Statutory Fees ....................................................56
    Section 16.03    Severability of Plan Provisions.............................................56
    Section 16.04    Successors and Assigns.........................................................57
    Section 16.05    Exculpation ...........................................................................57
    Section 16.06    Indemnification .....................................................................57
    Section 16.07    Discharge of Liabilities.........................................................58
    Section 16.08    Permanent Injunction ...........................................................59
    Section 16.09    Bankruptcy Rule 3016 Compliance ......................................59
    Section 16.10    Term of Injunctions or Stay ..................................................59
    Section 16.11    Integral to Plan .....................................................................60
    Section 16.12    Preservation of Rights of Action; Settlement.......................60
    Section 16.13    Binding Effect.......................................................................63
    Section 16.14    Notices ..................................................................................63
    Section 16.15    Setoffs ..................................................................................64
    Section 16.16    Recoupment ..........................................................................64
    Section 16.17    Release of Liens....................................................................65
    Section 16.18    Request for Expedited Tax Review.......................................65
    Section 16.19    Dissolution of Committee .....................................................65
    Section 16.20    No Admissions ......................................................................65
    Section 16.21    Governing Law .....................................................................65

ARTICLE XVII CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE
       PLAN .......................................................................................66
    Section 17.01    Certain Material Federal Income Tax Consequences of the Plan ........66
    Section 17.02    Consequences to the Holders of Certain Claims...................69
    Section 17.03    Information Reporting and Withholding................................71
    Section 17.04    Importance of Obtaining Professional Tax Assistance .........71

ARTICLE XVIII CONCLUSION AND RECOMMENDATION ...............................71

iii

## **TABLE OF EXHIBITS**[1]

| Exhibit | Name |
|---------|------|
| A | Plan of Reorganization |
| B | Balance Sheets |
| C | Pending Pre-petition Litigation |
| D | Bidding Procedures Order |
| E | Preliminary Distribution Analysis |
| F | Liquidation Analysis |
| G | Order Approving the Disclosure Statement |
| H | Payments/Transfers to Creditors within 90 Days (or One Year for Insiders) |

---

[1] To the extent the referenced Exhibits are not attached to the Disclosure Statement, they will be filed as part of the Plan Supplement.

## SUMMARY OF PLAN

On March 15, 2010, the Debtors filed a Joint Plan of Reorganization[2] which proposes to sell substantially all assets of each Debtor to a proposed purchaser and to transfer the proceeds from such sale, along with any and all remaining assets, to a Liquidating Trust. The Debtors have sought approval from the Bankruptcy Court to establish appropriate Bidding Procedures and sale procedures related to the anticipated sale. Pursuant to the terms of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee will distribute the net proceeds of all assets to Creditors in order of the priority of their Claims.

Under the Plan, the Debtors are not consolidated for distribution or voting purposes. Each Debtor is treated separately.

Under the Plan, each Allowed Secured Claim will be paid in full to the extent of the value of the Collateral securing such Claim. All Allowed Administrative Claims and all Allowed Priority Tax Claims will be paid in full from retained balances of the sale proceeds of the Acquired Assets, on or promptly after the Effective Date. Holders of Allowed General Unsecured Claims against each Debtor will share in a cash distribution from any remaining proceeds of the sale of their Debtor's assets (including any net proceeds obtained by liquidating any retained assets and Causes of Action), after payment of Claims in classes entitled to higher priority, on or as soon as practicable after the Effective Date of the Plan. Holders of Allowed Subordinated Claims against each Debtor will share in a cash distribution from any remaining proceeds of the sale of their Debtor's assets (including any net proceeds obtained by liquidating any retained assets and Causes of Action), after payment of prior classes of Claims, on or as soon as practicable after the Effective Date of the Plan. Holders of Allowed Interests against each Debtor will share in a cash distribution from any remaining proceeds of the sale of their Debtor's assets (including any net proceeds obtained by liquidating any retained assets and Causes of Action), after payment of prior classes of Claims, on or as soon as practicable after the Effective Date of the Plan.

## ARTICLE I

## BACKGROUND

### Section 1.01      Introduction

Deep Marine Holdings, Inc., a Delaware Corporation, and the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors") submit the following Disclosure Statement pursuant to Bankruptcy Code section 1125 for the purpose of soliciting votes to accept or reject the Debtors' Plan. A copy of the Plan is attached hereto as **Exhibit A**. The Disclosure Statement describes certain aspects of the Plan, including the treatment of holders of Claims and Interests, and also describes certain aspects of the Debtors' operations, financial projections, and other related matters.

---

[2] Capitalized terms used in this Disclosure Statement and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  By order of the Bankruptcy Court, the Chapter 11 Cases are being jointly administered for procedural purposes only.  Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession in these Chapter 11 Cases.

**Section 1.02       Sources of Information**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT AND IS BASED, IN PART, UPON INFORMATION PREPARED BY PARTIES OTHER THAN THE DEBTORS.   THEREFORE, ALTHOUGH THE DEBTORS HAVE MADE EVERY REASONABLE EFFORT TO BE ACCURATE IN ALL MATERIAL MATTERS, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE.**

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtors, their businesses, properties and management, and the Plan, have been prepared from information furnished by the Debtors.

Certain of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents.  While the Debtors have made every effort to retain the meaning of such other documents or portions that have been summarized, the Debtors urge that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves.  In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of such document shall apply.

The authors of the Disclosure Statement have compiled information from the Debtors without professional comment, opinion or verification and do not suggest comprehensive treatment has been given to matters identified herein.  Each Creditor and Holder of an Interest is urged to independently investigate any such matters prior to reliance.

No statements concerning the Debtors, the value of their property, or the value of any benefit offered to the Holder of a Claim or Interest in connection with the Plan should be relied upon other than as set forth in this Disclosure Statement.  In arriving at your decision, you should not rely on any representation or inducement made to secure your acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be reported to counsel for the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attention: William A. (Trey) Wood, III.

**Section 1.03       Description of Debtors' Business and Assets**

The Debtors are privately-held companies based in Houston, Texas that provide subsea services for the offshore oil and gas industry.  The Debtors offer remote operated vehicles, subsea construction and field development works, deepwater intervention tasks and inspection

and repair services.  As of the Petition Date, the following Debtors owned the following primary assets:

Deep Marine 1, LLC is the owner of the DMT Diamond, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 50T dynamic knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.  Presently, the DMT Diamond is cold stacked in La Rose, Louisiana.  The Stalking Horse Bidder has allocated $6,000,000.00 as the purchase price for the DMT Diamond.

Deep Marine 2, LLC is the owner of the DMT Emerald, a 292 ft. Class II DP Maintenance and Support Vessel, which includes a 100T knuckle boom crane, a 100T Heave Compensated Multi-purpose Lifting Tower, a 23x27 Moonpool, and accommodations for 73 people.  The DMT Emerald is outfitted with two 150 Hp, 10,000 ft. Triton XLS work class remote operated vehicle ("ROV").  Presently, the DMT Emerald is in warm standby in Mobile, Alabama.  The Stalking Horse Bidder has allocated $49,000,000.00 as the purchase price of the DMT Emerald.

Deep Marine 3, LLC is the owner of the DMT Topaz.  The DMT Topaz is a 220 ft. Class II DP vessel, which includes a 40T knuckle boom crane.  The DMT Topaz is outfitted with a 125 Hp, 10,000 ft. Triton XLS work class ROV.  Presently, the DMT Topaz is in warm standby in Mobile, Alabama.  The Stalking Horse Bidder has allocated $4,000,000.00 as the purchase price of the DMT Topaz.

Deep Marine 4, LLC is the owner of the DMT Sapphire, a 240 ft. Class II DP Maintenance and Support Vessel, which includes a 40T knuckle boom crane, a Subsea Launch & Recovery Winch with 10,000 ft. of 1 1/2" cable, and accommodations for 36 people.  The DMT Sapphire is outfitted with a 150 Hp, 10,000 ft. Triton XLS work class ROV.  Presently, the DMT Sapphire is in warm standby in Mobile, Alabama.  The Stalking Horse Bidder has allocated $15,000,000.00 as the purchase price of the DMT Sapphire.

All of the ROVs described above are owned by Deep Marine Technology Incorporated.  Additionally, Deep Marine Technology Incorporated owns a 150 Hp, 10,000 ft. Triton XLS work class ROV that was previously dedicated to the DMT Diamond (prior to the DMT Diamond being cold stacked), and is presently located at the Debtors' offices in Houston, Texas.  DMT also owns a 75 Hp, 3,200 ft. Nemesis work class ROV, which is presently located at the Debtors' offices in Houston, Texas.  The Stalking Horse Bidder has allocated $10,500,000.00 as the purchase price of the ROVs.

Deep Marine Technology Incorporated owns miscellaneous equipment related to the vessels and the ROVs, various spare parts, spare equipment and stores, both in used and unused condition.  The Stalking Horse Bidder has allocated $500,000.00 as the purchase price of the Debtors' miscellaneous equipment.

Deep Marine Technology Incorporated also owns accounts receivable, both intercompany and third party.  Total accounts receivable as of the Petition Date were approximately $38,445,000.00.  Several of these accounts receivable are in dispute and the Debtors reserve all

rights related to all accounts receivable, as further detailed in Section 16.12. The Debtors balance sheets as of February 28, 2010, are attached as **Exhibit B.**

As of the Petition Date, the Debtors employed seven (7) individuals in total, all of whom were and are employed by Deep Marine Technologies Incorporated. Four of these individuals are currently aboard the Debtors' various vessels. The remaining three individuals are Francis Wade Abadie (Chief Operating Officer), John Hudgens (Chief Financial Officer), and Anita Cutting (Controller). Subsequent to the Petition Date, on January 6, 2010, the Debtors retained John Bittner as their Chief Restructuring Officer pursuant to court order.

Further information regarding the Debtors' businesses can be found in the Affidavit of John Hudgens in Support of First Day Motions at docket number 41 in Case No. 09-39313.

## Section 1.04    Debtors' Corporate Structure

The debtor Deep Marine 1, LLC is a Louisiana limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.

The debtor Deep Marine 2, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.

The debtor Deep Marine 3, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.

The debtor Deep Marine 4, LLC is a Delaware limited liability company wholly owned by the debtor Deep Marine Technology Incorporated.

The debtor Deep Marine Technology Incorporated is a Texas corporation, and is the sole member and manager of Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC. Deep Marine Technology Incorporated is the wholly owned subsidiary of the debtor Deep Marine Holdings, Inc., a Delaware corporation. Deep Marine Holdings, Inc. is owned by DCC Ventures, LLC, Otto Candies, LLC, Nasser Kazeminy and Triomphe Investors, LLC.

## Section 1.05    The Debtors' Pre-Petition Indebtedness

As of the Petition Date, certain of the Debtors were parties to the following credit facilities and accompanying loan documents:

(a)      The Credit and Security Agreement dated as of July 2, 2007, by and among Deep Marine Technology Incorporated, as Borrower, Deep Marine 1, LLC and Deep Marine 2, LLC, as Guarantors, National City Business Credit, Inc. as Lender and Agent, National City Bank, as Issuer, such other Lenders as may be parties thereto from time to time (as amended and restated from time to time, the "DMT Revolver"). Upon information and belief, National City Business Credit, Inc. is now part of PNC Bank, N.A. The DMT Revolver is allegedly secured by liens on certain property of Deep Marine Technology Incorporated, consisting primarily of the Debtors' accounts receivable. The Debtors believe that the amount outstanding under the DMT Revolver is approximately $1.1 million.

(b)      The Loan Agreement dated as of November 30, 2006, by and among Deep Marine 1, LLC, as Borrower, and National City Commercial Capital Corporation, as Lender (as amended and restated from time to time, the "DM1 Loan Agreement").  Upon information and belief, this loan has been assigned to GE Capital.  The DM1 Loan Agreement is allegedly secured by a lien on the DMT Diamond.  Also, the DM1 Loan Agreement is allegedly guaranteed by Deep Marine Holdings, Inc. and Deep Marine Technology, Incorporated.  The Debtors believe that the amount outstanding under the DM1 Loan Agreement is approximately $13.6 million.

(c)      The Loan and Security Agreement dated as of June 7, 2007, by and among Deep Marine 2, LLC, as Borrower, Deep Marine Technology Incorporated, as Guarantor, the Lenders party thereto from time to time, and Merrill Lynch Capital, as Administrative Agent (as amended and restated from time to time, the "DM2 Loan Agreement").  Upon information and belief, this loan has been assigned to GE Capital.  The DM2 Loan Agreement is allegedly secured by a lien on the DMT Emerald.  Also, the DM2 Loan Agreement is allegedly guaranteed by Deep Marine Holdings, Inc. and Deep Marine Technology, Incorporated.  The Debtors believe that the amount outstanding under the DM2 Loan Agreement is approximately $30.8 million.

(d)      The Second Amended and Restated Term Loan Agreement, dated as of September 9, 2009, by and among Deep Marine 3, LLC, as Borrower, and DCC Ventures, LLC and Otto Candies, L.L.C. as Lenders (as amended and restated from time to time, the "DM3 Loan Agreement").  The DM3 Loan Agreement is allegedly secured by a lien on the DMT Topaz.  The Debtors believe that the amount outstanding under the DM3 Loan Agreement is approximately $4.1 million.

(e)      Various promissory notes as of various dates, by and among Deep Marine Technology Incorporated and DCC Ventures, LLC, subject to the terms and provisions of the DMT Revolver.  The Debtors believe that the amount outstanding under the various promissory notes is approximately $8.8 million.

(f)      A loan agreement exists between the Debtors and Otto Candies, L.L.C. and such agreement is allegedly secured by liens on the Debtors' ROVs.  The Debtors believe that the amount outstanding under this agreement totals approximately $17.0 million.

**Section 1.06      Debtors' Management**

Upon the Petition Date, the following persons were employed as directors and senior management of the Debtors:

Nasser Kazeminy, Director
Otto Candies, III, Director
Wade Abadie, President and Chief Operating Officer
John Hudgens, Vice President, Chief Financial Officer, Secretary
Anita Cutting, Controller

The following persons were employed as senior management during the pendency of these cases:

John Bittner, Chief Restructuring Officer
Wade Abadie, Chief Operating Officer
John Hudgens, Chief Financial Officer
Anita Cutting, Controller

Upon appointment of John Bittner as the Chief Restructuring Officer on January 6, 2010, Nasser Kazeminy and Otto Candies, III resigned as members of the board of directors. In light of the absence of a board of directors, the Court order appointing Mr. Bittner as Chief Restructuring Officer provided that, with respect to management decisions and actions that would ordinarily be brought before the board of directors or would require authorization by the board of directors, Mr. Bittner would present the issue, solicit input, and discuss any proposed course of action as best as possible given the relevant circumstances and any potential conflicts of interest with Messrs. Kazeminy and Candies, the DIP Lender, the Committee, GE, and any other secured creditors or parties in interest that may have an actual or specific interest in the outcome of a particular decision. However, such discussions, regardless of the positions taken by the respective creditors, are not binding on Mr. Bittner in any way, and at all times Mr. Bittner retains full decision making authority. If there is a matter for consultation in which one or more of the forgoing consulting parties have a conflict of interest pursuant to which they would not be allowed to participate as a director of a corporation under Texas law if a similar conflict arose, then Mr. Bittner is not required to consult with such consulting party.

Under the Plan, the winding up of the estates after Confirmation of the Plan will be managed by a Liquidating Trustee, proposed to be John Bittner, subject to Bankruptcy Court approval.

## Section 1.07    Non-Bankruptcy Litigation

The Debtors are generally involved in various disputes incidental to their business operations, which include, among other things, various breach of contract claims as well as claims under the Jones Act. A list of pre-petition litigation is attached hereto as **Exhibit C**.

Additionally, Deep Marine Holdings, Inc. and Deep Marine Technology Incorporated, as well as certain current and former officers, directors, shareholders and affiliates thereof, are defendants in:

(i) *FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg, and Harley Langberg v. Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Otto Candies, Jr., Otto Candies, III, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman, John Hudgens, Nasser Kazeminy, DCC Ventures, LLC, NJK Holdings Corporation, NKOC, Inc., Otto Candies, LLC, Deep Marine Holdings, Inc. and Deep Marine Technology Inc.*, No. 5020-VCS, which is now pending in the Chancery Court of Delaware before Vice Chancellor Strine; and

(ii) *Deepwork Inc. v. Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Otto Candies, Jr., Otto Candies, III, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman, John Hudgens, Nasser Kazeminy, DCC Ventures, LLC, NJK Holdings Corporation, NKOC, Inc., Otto Candies, LLC, Deep Marine Holdings, Inc. and Deep Marine Technology Inc.* No. 5032-VCS, which is also now pending in the Chancery Court of Delaware before Vice

Chancellor Strine (both Delaware lawsuits, referred to collectively herein as the "Delaware Actions").

In the Delaware Actions, the plaintiffs therein (the "Delaware Plaintiffs") allege the following causes of action: (a) claim against the relevant Debtors for appraisal; (b) claim against the officers and directors of the Debtors for breach of fiduciary duty; (c) claim against certain shareholders for breach of fiduciary duty; (d) claim against certain shareholders for unjust enrichment; (e) claim against certain shareholders for aiding and abetting a breach of fiduciary duty; (f) claim against officers and directors for aiding and abetting a breach of fiduciary duty; (g) claim against all defendants for fraud through active concealment of material facts; (h) claim against all defendants for fraud through silence in the face of a duty to disclose; (i) claim against certain shareholders for wrongful equity dilution; and (j) claim against the relevant Debtors for an accounting (together, the foregoing causes of action are referred to herein as the "Delaware Causes of Action").

The Debtors believe that all of the Delaware Causes of Action are either derivative claims, in which case they belong to the Debtors, or are stayed by the automatic stay of section 362 of the Bankruptcy Code. On January 19, 2010, the Debtors initiated *Deep Marine Holdings, Inc. and Deep Marine Technology, Incorporated v. FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg, Harley Langberg, and Deepwork, Inc.*, Adversary Proceeding 10-03026, (Main Case No. 09-39313) (the "FLI Adversary Proceeding"). In the FLI Adversary Proceeding, the Debtors seek a declaratory judgment finding that the Debtors own most of the Delaware Causes of Action and those that the Debtors do not own are stayed. The Debtors also seek a Preliminary Injunction and Permanent Injunction barring the plaintiffs in the Delaware Actions from prosecuting the Delaware Causes of Action that belong to the Debtors. A temporary restraining order barring such prosecution was granted on January 21, 2010, and, as of the date of this Disclosure Statement, will remain in effect until a preliminary injunction hearing can be held, though a hearing date on the Debtors' application for Preliminary Injunction is not yet set.

The Delaware Plaintiffs are also defendants in *Official Committee of Unsecured Creditors v. FLI Deep Marine, LLC, Bressner Partners Ltd., Logan Langberg, Harley Langberg, and Deepwork, Inc.*, Adversary Proceeding 10-03116, (Main Case No. 09-39313), in which the Committee seeks to have the court subordinate the claims of the defendants below those of general unsecured creditors pursuant to 11 U.S.C. § 510(b) or (c).

Although the outcome of these disputes cannot be predicted, management, after consultation with legal counsel, is of the opinion that the final resolution of all currently pending or threatened litigation is not likely to have a material adverse effect on the Debtors' consolidated financial position, results of operations, or cash flows. All of the actions in which one of the Debtors is a defendant have been stayed by operation of law as a result of the commencement of these Chapter 11 Cases.[3]

---

[3] The Debtors have consented to allow the automatic stay to lift with regards to *Gene Nichols v. Deep Marine Technologies, Inc.*, Civil Action No: 09-cv-07382, in the United States District Court, Eastern District of Louisiana. However, Mr. Nichols has agreed (and the Court order lifting the automatic stay provides) that Mr. Nichols will proceed solely against the Debtors' insurance carrier and waives all claims against the Debtors directly.

**Section 1.08        Events Precipitating the Reorganization Cases**

The Debtors' businesses heavily depend on the availability of capital. The downturn in the economy, the credit crisis, and the dramatic drop in oil and gas prices have all negatively impacted the Debtors' businesses and their ability to timely meet their financial obligations.  In addition to these general factors which contributed to the Debtors' need to liquidity issues, certain pre-petition events directly necessitated that the Debtors file for bankruptcy protection when they did.  First, upon information and belief, UTEC Survey Inc. had filed a request for seizure of the DMT Emerald with the United States Marshals.  Consequently, the DMT Emerald was circling in the Gulf of Mexico and could not come to port without threat of seizure.  Second, PNC Bank, N.A. a pre-petition lender to certain of the Debtors under the DMT Revolver, froze the Debtors' revolving line of credit in mid-November.  This left the Debtors without sufficient funds to operate.

## ARTICLE II

## THE CHAPTER 11 CASES

**Section 2.01        Overview of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Chapter 11 authorizes a debtor to reorganize its business for the benefit of its creditors, equity interest holders, and other parties in interest.  Commencing a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the filing date.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The principal objective of a chapter 11 case is to consummate a plan of reorganization.  A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by a bankruptcy court binds a debtor, any issuer of securities thereunder, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or entity the bankruptcy court may find to be bound by such plan.  Chapter 11 requires that a plan treat similarly situated creditors and similarly situated equity interest holders equally, subject to the priority provisions of the Bankruptcy Code.

Subject to certain limited exceptions, the bankruptcy court order confirming a plan of reorganization discharges a debtor from any debt that arose prior to the date of confirmation of the plan and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

Prior to soliciting acceptances of a proposed plan of reorganization, Bankruptcy Code section 1125 requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan of reorganization.  This Disclosure Statement is submitted in accordance with Bankruptcy Code section 1125.

**Section 2.02       Administration of the Chapter 11 Cases**

### (a)       *First-day Motions*

On the Petition Date, or soon thereafter, the Debtors filed numerous first-day motions, the object of which was to streamline the transition to operating under chapter 11, to stabilize operations, and to preserve their relationships with vendors, customers, employees and utility providers.   These first-day motions requested, among other things, authority to (i) pay pre-petition compensation, wages, salaries and other reimbursable employee expenses, as well as to continue certain workers' compensation programs and insurance programs; (ii) pay certain taxes that the Debtors are required to collect from third parties and remit to the appropriate taxing authorities; and (iii) obtain post-petition debtor in possession financing and grant security interests and superpriority claims related to such financing.   The debtors also filed motions seeking relief from certain administrative requirements of the Bankruptcy Code and to establish procedures to resolve adequate assurance requests for their utility accounts.   In addition, the Debtors filed several applications seeking orders authorizing the retention of certain professionals including counsel to the Debtors, financial advisors to the Debtors, and a chief restructuring officer.

### (b)       *Appointment of Committee*

The Official Committee of Unsecured Creditors was appointed by the United States Trustee on December 15, 2009.  The Committee is (as of the date of this Disclosure Statement) composed of Aramark US Offshore Services, LLC; Ocean Services, LLC; NREC Power Systems, Inc.; Huisman-Intrepid Services LLC; B&J Martin, Inc.; and BNA Marine Services LLC.

### (c)       *Retention of Professionals*

The Debtors have filed, and the Court has granted, several applications to retain professionals in these Cases.  Specifically, the Debtors have retained (a) Bracewell & Giuliani LLP, as their general bankruptcy and restructuring counsel, (b) Grant Thornton, LLP as their restructuring and financial advisor, and (c) John Bittner, a partner of Grant Thornton, LLP, as their chief restructuring officer.  Additionally, the Committee has retained McKool Smith, P.C. as its counsel.

As of the date hereof, the Debtors estimate that, as of the Effective Date, the total amount of Allowed Administrative Claims will be approximately $1,750,000.00.  The Debtors further estimate that approximately $1,000,000.00 of the total amount of Allowed Administrative Claims will consist of unpaid Professional Fees (which includes $300,000.00 for Committee Professional Fees) and the remaining $750,000.00 will constitute unpaid ordinary course accounts payable.

### (d)       *Bidding Procedures Motion*

On March 15, 2010, the Debtors filed the Bidding Procedures and Sale Motion, which seeks Bankruptcy Court approval of a process under which the Debtors will seek competing bids

for the sale of all or substantially all of the Debtors' assets.  Specifically, the Bidding Procedures and Sale Motion contemplates the following:

- Notice of the Auction will be served on certain parties within five (5) Business Days of the Bankruptcy Court's entry of the Bidding Procedures Order.

- Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtors, any party wishing to conduct due diligence on the Acquired Assets may be granted access to material information.

- To be deemed a Qualifying Bid, a bid must, among other requirements specified in the Bidding Procedures: (i) be received by the bid deadline outlined in the Bidding Procedures; (ii) irrevocably offer to purchase all of the Acquired Assets or the DMT Diamond upon the terms and conditions substantially as set forth in the Purchase and Sale Agreement; (iii) be accompanied by a duly executed purchase agreement; (iv) provide written evidence that the Qualifying Bidder is financially capable of consummating the contemplated transaction; and (iv) not contain financial contingencies of any kind.

- All Qualifying Bids must also be accompanied by a purchase deposit, which will be returned to each Qualifying Bidder not deemed to be the Purchaser.

- In the event the Debtors timely receive one or more Qualifying Bids other than the Purchase and Sale Agreement, the Debtors shall conduct an Auction.

- The Qualifying Bidder submitting the highest and best bid at the Auction will be deemed the Purchaser, and will complete and execute all documents evidencing and containing the terms and conditions upon which the winning bid was made.

To facilitate this process, the Debtors negotiated and signed a Purchase and Sale Agreement with the Proposed Purchaser.  The Purchase and Sale Agreement provides that the Proposed Purchaser will pay the amount of $85 million for the Acquired Assets.  To entice the Proposed Purchaser to act as a stalking horse bidder, the Debtors offered the Proposed Purchaser certain protections including payment upon the consummation of a sale of the Acquired Assets to a Qualifying Bidder other than the Proposed Purchaser of (i) a break up fee of 3% of the Purchase Price and (ii) the Proposed Purchaser's reasonable documented out-of-pocket fees and expenses owed or paid to third parties actually incurred related to the Purchase and Sale Agreement, with such expenses not to exceed $150,000.

The order approving the Bidding Procedures was entered on April 12, 2010, and is attached hereto as **Exhibit D.**  The disclosures in this section are qualified in their entirety by the Bidding Procedures, which control in the case of any discrepancy.  The Auction contemplated by the Bidding Procedures and Sale Motion, if necessary, will be held on May 17, 2010, at 10:00 a.m. prevailing Central Time, at the law offices of Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002.

*(e)*      ***Preference Analysis and Other Potential Avoidance Actions***

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action which exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims which are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers and fraudulent conveyances.  As described below, the Plan preserves all of the Debtors' rights in respect of all Avoidance Actions, transfers the Debtors' rights in respect of such Avoidance Actions to the Liquidating Trust, and empowers the Liquidating Trustee to prosecute, collect, and/or settle the Avoidance Actions as deemed appropriate.

To date, the Debtors and other parties have not conclusively identified and/or investigated any potential Avoidance Actions.

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, HOLDERS OF CLAIMS AND INTERESTS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES THE LIQUIDATING TRUSTEE TO PROSECUTE THE SAME.**

*(f)*      ***Exclusivity***

The Debtors have the exclusive right to file a plan in their bankruptcy cases until April 3, 2010, and the exclusive right to solicit acceptances until June 2, 2010.  Although there is always a possibility that Confirmation of the Plan will not occur, at this time, the Debtors do not contemplate the need to extend these dates.

## ARTICLE III

## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

**Section 3.01      Introduction**

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, Confirmation and distribution pursuant to the Plan and Bankruptcy Code sections 1122 and 1123(a)(l).  A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims (except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code section 1123(a)(l)) are classified in Section 3.07 through Section 3.12 below.

## Section 3.02        Voting; Acceptance by Impaired Classes

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.  All classes are Impaired under this Plan except for Priority Non-Tax Claims, Senior Secured Maritime Claims, Secured Mortgage Claims of GE, Secured Claims of Otto Candies, LLC, Secured Mortgage Claims of Otto Candies, LLC, Secured Mortgage Claims of DCC Ventures, LLC and Other Secured Claims.

## Section 3.03        The DIP Facility Claim

The DIP Facility Claim consist of the Claim of the DIP Lender related to, arising under, or in connection with the DIP Facility, for all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments made to the DIP Lender prior to the Effective Date on account of such Claims (if any).  The DIP Facility Claim is secured by a lien on the DMT Sapphire.  Additionally, the DIP Facility Claim constitutes an allowed senior administrative claim pursuant to Bankruptcy Code section 364(c)(1) against each of the Debtors with priority over all valid claims, administrative expenses, adequate protection claims, and all other valid claims against each of the Debtors.

The DIP Facility Claim will consist of an Allowed Claim against Deep Marine Technology Incorporated, Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC, such that each of the foregoing Debtors shall satisfy an equal one-fifth of the aggregate amount of all obligations under the DIP Facility outstanding as of the Effective Date, as such amount is agreed to by the DIP Lender and the Debtors, or, in the event of a dispute regarding such amount, as such amount has been determined by a Final Order of the Bankruptcy Court.

Except to the extent that the DIP Lender has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), the DIP Lender shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, the DIP Facility Claim, Cash, in equal amounts, from DMT, DM1, DM2, DM3, and DM4, with such aggregate Cash amount to equal the amount of the Allowed DIP Facility Claim, on the later of (a) the Effective Date (or as soon as reasonably

practicable thereafter) and (b) the date such Claim becomes an Allowed Claim (or as soon as reasonably practicable thereafter).

The Debtors believe that, as of the Effective Date, the total amount of the Allowed DIP Facility Claims will be approximately $5.69 million.

GE objects to the allocation of the DIP Facility Claim as described herein and provided for in the Plan. GE also objects to any surcharge of its collateral. All parties in interest, including the Debtors, the Committee, and Kazeminy, Candies and their related entities, reserve their rights as to the allocation of the DIP Facility Claim and as to the surcharge of any collateral.

### Section 3.04     Administrative Claims

Except as otherwise provided for in the Plan, and subject to the requirements of Section 12.01 of the Plan, each Holder of an Allowed Administrative Claim shall receive from the Liquidating Trustee in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Administrative Claim the amount of such Allowed Administrative Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtors, or, after the Effective Date, the Liquidating Trustee.

### Section 3.05     Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive from the Liquidating Trustee, in full satisfaction, release settlement, and discharge of and in exchange for such Allowed Priority Tax Claim the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that is ten (10) Business Days after the date such Claim is Allowed, or (iii) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or, after the Effective Date, the Liquidating Trustee.

### Section 3.06     Maritime Lien Priority

Among Maritime Senior Secured Claims applicable law creates several subclasses, each with priority over subsequent classes. The subclasses, in order of priority, are as follows:

> **(a)      Special legislative rights of governments (e.g. wreck removal, St. Lawrence Seaway and Panama Canal tolls and damages, rights of detention, removal and destruction for pollution, rights of forfeiture and sale for various federal statutory offences).**

    *(b)*     **Expenses of justice while in custodia legis.**

    *(c)*     **Salvage liens.**

    *(d)*     **Wages of master and crew.**

    *(e)*     **Maritime torts.**

    *(f)*     **U.S. contract maritime liens for necessaries entered into before a preferred ship mortgage.[4]**

Within each subclass applicable law provides that maritime liens are ranked in reverse order of attachment.  However, applicable law also provides that, to the extent particular maritime liens of the same class arose within the same voyage, season, or short period, they may be paid pro rata.

While this Plan does not create a voting subclass for each subclass listed above, to the extent all Maritime Senior Secured Claims are not paid in full, distributions relative to each subclass shall be made in order of priority as stated above, and distributions within each subclass shall be made in reverse order of attachment, with no Maritime Senior Secured Claim receiving any distribution until those Maritime Senior Secured Claims with superior priority are first paid in full, except in those cases where liens arose within the same voyage, season, or short period, in which cases distributions shall be made pro rata.

Applicable law also provides that Maritime Junior Secured Claims are ranked in reverse order of attachment.  However, applicable law also provides that, to the extent particular maritime liens of the same class arose within the same voyage, season, or short period, they may be paid pro rata.  Thus, to the extent all Maritime Junior Secured Claims are not paid in full, distributions shall be made in reverse order of attachment with no Maritime Junior Secured Claim receiving any distribution until those Maritime Junior Secured Claims with superior priority are first paid in full, except in those cases where liens arose within the same voyage, season, or short period, in which cases distributions shall be made pro rata.

**Section 3.07**     **Deep Marine Holdings, Inc.**

    *(a)*     **Class A1:  Priority Non-Tax Claims**

<u>Classification</u>:  Class A1 consists of all Allowed Priority Non-Tax Claims against Deep Marine Holdings, Inc.

<u>Treatment</u>:  Except to the extent that a Holder of an Allowed Claim in Class A1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class A1 shall receive

---

[4] The descriptions provided in these subclasses are not intended as an exhaustive list of bases for maritime liens.  To the extent that additional bases for maritime liens exist under applicable law, such liens will be prioritized in accordance with applicable law.

in full satisfaction, release and discharge of and in exchange for, such Claim, Cash of Deep Marine equal to the amount of such Allowed Claim in Class A1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class A1 becomes an Allowed Claim in Class A1 (or as soon as reasonably practicable thereafter).

Voting:  Claims in Class A1 are Unimpaired.  Each Holder of an Allowed Claim in Class A1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (b)      Class A2:  Other Secured Claims

Classification:  Class A2 consists of all Allowed Other Secured Claims against Deep Marine Holdings, Inc.

Treatment:  Each Holder of an Allowed Class A2 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Class A2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class A2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class A2 Claim; or (b) satisfaction of any such Allowed Class A2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class A2 are Unimpaired.  Each Holder of an Allowed Claim in Class A2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (c)      Class A3:  General Unsecured Claims

Classification:  Class A3 consists of all Allowed General Unsecured Claims against Deep Marine Holdings, Inc.

Treatment:  Each Holder of an Allowed Class A3 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to Deep Marine in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against Deep Marine and all Allowed Claims in Classes A1 and A2.

Voting:  Class A3 Claims are Impaired.  Each Holder of an Allowed Claim in Class A3 shall be entitled to vote to accept or reject the Plan.

### (d)    Class A4:  Subordinated Claims

Classification:  Class A4 consists of Allowed Subordinated Claims against Deep Marine Holdings, Inc.

Treatment:  Each Holder of an Allowed Class A4 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging Deep Marine in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against Deep Marine and all Allowed Claims in Classes A1, A2 and A3.

Voting:  Class A4 Claims are Impaired.  Each Holder of an Allowed Claim in Class A4 shall be entitled to vote to accept or reject the Plan.

### (e)    Class A5:  Interests

Classification:  Class A5 consists of all Allowed Interests in Deep Marine Holdings, Inc.

Treatment:   On the Effective Date, all of the Class A5 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class A5 Interest shall receive in full satisfaction, release and discharge of, and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging Deep Marine in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against Deep Marine and all Allowed Claims in Classes A1, A2, A3 and A4.

Voting:  Class A5 Interests are Impaired.  Each Holder of an Allowed Claim in Class A5 shall be entitled to vote to accept or reject the Plan.

## Section 3.08    Deep Marine Technology Incorporated

### (a)    Class B1:  Priority Non-Tax Claims

Classification:  Class B1 consists of all Allowed Priority Non-Tax Claims against Deep Marine Technology Incorporated.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class B1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class B1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DMT equal to the amount of such Allowed Claim in Class B1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class B1 becomes an Allowed Claim in Class B1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class B1 are Unimpaired.   Each Holder of an Allowed Claim in Class B1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote or reject the Plan.

### (b)    Class B2:  Secured Claims of Otto Candies, LLC

Classification:   Class B2 consists of Allowed Secured Claims of Otto Candies, LLC against Deep Marine Technology Incorporated.

Treatment:  Each Holder of an Allowed Class B2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class B2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class B2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class B2 Claim; or (b) satisfaction of any such Allowed Class B2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class B2 are Unimpaired.  Each Holder of an Allowed Claim in Class B2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (c)    Class B3:  Secured Claims of PNC Bank, N.A. (as successor to National City Business Credit and National City Bank)

Classification: Class B3 consists of all Allowed Secured Claims of PNC Bank, N.A. (as successor to National Business Credit and National City Bank) against Deep Marine Technology Incorporated.

Treatment:  Each Holder of an Allowed Class B3 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Class B3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), the Cash Net Proceeds of any account receivable securing such Holder's Class B3 Claim, after satisfaction in full of all superior liens, up to the Allowed Amount of the Holder's Class B3 Claim, on or as soon as practicable after the later of (a) the date that is five (5) Business Days after such Claim is Allowed; (b) the date that is five (5) Business Days after collection such account receivable; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class B3 Claims are Impaired.  Each Holder of an Allowed Claim in Class B3 shall be entitled to vote to accept or reject the Plan.

### (d)    Class B4:  Other Secured Claims

<u>Classification</u>:  Class B4 consists of all Allowed Other Secured Claims against Deep Marine Technology Incorporated.

<u>Treatment</u>:  Each Holder of an Allowed Class B4 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Class B4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class B4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class B4 Claim; or (b) satisfaction of any such Allowed Class B4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

<u>Voting</u>:  Class B4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class B4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (e)    Class B5:  General Unsecured Claims

<u>Classification</u>:  Class B5 consists of all Allowed General Unsecured Claims against Deep Marine Technology Incorporated.

<u>Treatment</u>:  Each Holder of an Allowed Class B5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DMT in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DMT and all Allowed Claims in Classes B1, B2, B3 and B4.

<u>Voting</u>:  Class B5 Claims are Impaired.  Each Holder of an Allowed Claim in Class B5 shall be entitled to vote to accept or reject the Plan.

### (f)    Class B6:  Subordinated Claims

<u>Classification</u>:  Class B6 consists of Allowed Subordinated Claims against Deep Marine Technology Incorporated.

<u>Treatment</u>:  Each Holder of an Allowed Class B6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DMT in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DMT and all Allowed Claims in Classes B1, B2, B3, B4 and B5.

<u>Voting</u>:  Class B6 Claims are Impaired.  Each Holder of an Allowed Claim in Class B6 shall be entitled to vote to accept or reject the Plan.

### (g)  *Class B7:  Interests*

<u>Classification</u>:  Class B7 consists of all Allowed Interests in Deep Marine Technology Incorporated.

<u>Treatment</u>:  On the Effective Date, all of the Class B7 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class B7 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging DMT in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DMT and all Allowed Claims in Classes B1, B2, B3, B4, B5 and B6.

<u>Voting</u>:  Class B7 Interests are Impaired.  Each Holder of an Allowed Claim in Class B7 shall be entitled to vote to accept or reject the Plan.

## Section 3.09  Deep Marine 1, LLC

### (a)  *Class C1:  Priority Non-Tax Claims*

<u>Classification</u>:  Class C1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 1, LLC.

<u>Treatment</u>:  Except to the extent that a Holder of an Allowed Claim in Class C1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class C1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM1 equal to the amount of such Allowed Claim in Class C1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class A1 becomes an Allowed Claim in Class C1 (or as soon as reasonably practicable thereafter).

<u>Voting</u>:  Claims in Class C1 are Unimpaired.  Each Holder of an Allowed Claim in Class C1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (b)  *Class C2:  Maritime Senior Secured Claims*

<u>Classification</u>:  Class C2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 1, LLC.

<u>Treatment</u>:  Each Holder of an Allowed Class C2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the

Collateral securing such Holder's Allowed Class C2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C2 Claim; or (b) satisfaction of any such Allowed Class C2 Claim by delivering the Collateral securing any such Claim. Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

<u>Voting</u>:  Claims in Class C2 are Unimpaired.  Each Holder of an Allowed Claim in Class C2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### *(c)        Class C3:  Secured Mortgage Claim of GE*

<u>Classification</u>:  Class C3 consists of all Allowed Secured Mortgage Claims of GE against Deep Marine 1, LLC.

<u>Treatment</u>:  Each Holder of an Allowed Class C3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C3 Claim; or (b) satisfaction of any such Allowed Class C3 Claim by delivering the Collateral securing any such Claim. Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

<u>Voting</u>:  Class C3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class C3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### *(d)        Class C4:  Maritime Junior Secured Claims*

<u>Classification</u>:  Class C4 consists of all Allowed Maritime Junior Secured Claims against Deep Marine 1, LLC.

<u>Treatment</u>:  Each Holder of an Allowed Class C4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C4 Claim; or (b) satisfaction of any such Allowed Class C4 Claim by delivering the Collateral securing any such Claim. Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed

upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class C4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class C4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (e)    Class C5:  Other Secured Claims

Classification:   Class C5 consists of all Allowed Other Secured Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C5 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C5 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C5 Claim; or (b) satisfaction of any such Allowed Class C5 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class C5 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class C5 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (f)    Class C6:  General Unsecured Claims

Classification:  Class C6 consists of all Allowed General Unsecured Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM1 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM1 and all Allowed Claims in Classes C1, C2, C3, C4 and C5.

Voting:  Class C6 Claims are Impaired.  Each Holder of an Allowed Claim in Class C6 shall be entitled to vote to accept or reject the Plan.

### (g)    Class C7:  Subordinated Claims

Classification:   Class C7 consists of all Allowed Subordinated Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C7 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM1 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM1 and all Allowed Claims in Classes C1, C2, C3, C4, C5, and C6.

Voting:  Class C7 Claims are Impaired.  Each Holder of an Allowed Claim in Class C7 shall be entitled to vote to accept or reject the Plan.

### (h)    Class C8:  Interests

Classification:  Class C8 consists of all Allowed Interests in Deep Marine 1, LLC.

Treatment:   On the Effective Date, all of the Class C8 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class C8 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM1 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM1 and all Allowed Claims in Classes C1, C2, C3, C4, C5, C6 and C7.

Voting:  Class C8 Interests are Impaired.  Each Holder of an Allowed Claim in Class C8 shall be entitled to vote to accept or reject the Plan.

## Section 3.10     Deep Marine 2, LLC

### (a)    Class D1:  Priority Non-Tax Claims

Classification:  Class D1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 2, LLC.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class D1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class D1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM2 equal to the amount of such Allowed Claim in Class D1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class A1 becomes an Allowed Claim in Class A1 (or as soon as reasonably practicable thereafter).

Voting:  Claims in Class D1 are Unimpaired.  Each Holder of an Allowed Claim in Class D1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (b)     Class D2:  Maritime Senior Secured Claims

Classification:  Class D2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D2 Claim; or (b) satisfaction of any such Allowed Class D2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class D2 are Unimpaired.  Each Holder of an Allowed Claim in Class D2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (c)     Class D3:  Secured Mortgage Claim of GE

Classification:  Class D3 consists of all Allowed Secured Mortgage Claims of GE against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D3 Claim; or (b) satisfaction of any such Allowed Class D3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class D3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class D3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (d)     Class D4:  Maritime Junior Secured Claims

Classification:  Class D4 consists of all Allowed Maritime Junior Secured Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D4 Claim; or (b) satisfaction of any such Allowed Class D4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class D4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class D4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (e)  Class D5:  Other Secured Claims

Classification:  Class D5 consists of all Allowed Other Secured Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D5 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D5 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D5 Claim; or (b) satisfaction of any such Allowed Class D5 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class D5 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class D5 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (f)  Class D6:  General Unsecured Claims

Classification:  Class D6 consists of all Allowed General Unsecured Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM2 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims of DM2 and all Allowed Claims in Classes D1, D2, D3, D4, and D5.

Voting:  Class D6 Claims are Impaired.  Each Holder of an Allowed Claim in Class D6 shall be entitled to vote to accept or reject the Plan.

### (g)     Class D7:  Subordinated Claims

Classification:  Class D7 consists of Allowed Subordinated Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D7 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM2 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM2 and all Allowed Claims in Classes D1, D2, D3, D4, D5, and D6.

Voting:  Class D7 Claims are Impaired.  Each Holder of an Allowed Claim in Class D7 shall be entitled to vote to accept or reject the Plan.

### (h)     Class D8:  Interests

Classification:  Class D8 consists of all Allowed Interests in Deep Marine 2, LLC.

Treatment:  On the Effective Date, all of the Class D8 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class D8 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging DM2 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM2 and all Allowed Claims in Classes D1, D2, D3, D4, D5, D6 and D7.

Voting:  Class D8 Interests are Impaired.  Each Holder of an Allowed Claim in Class D8 shall be entitled to vote to accept or reject the Plan.

## Section 3.11     Deep Marine 3, LLC

### (a)     Class E1:  Priority Non-Tax Claims

Classification:  Class E1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 3, LLC.

Treatment:  Except to the extent that a Holder of an Allowed Claim in Class E1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class E1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM3 equal to the amount of such Allowed Claim in Class E1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class E1 becomes an Allowed Claim in Class E1 (or as soon as reasonably practicable thereafter).

Voting:  Claims in Class E1 are Unimpaired.  Each Holder of an Allowed Claim in Class E1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (b)      Class E2:  Maritime Senior Secured Claims

Classification:  Class E2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E2 Claim; or (b) satisfaction of any such Allowed Class E2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class E2 are Unimpaired.  Each Holder of an Allowed Claim in Class E2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (c)      Class E3:  Secured Mortgage Claims of DCC Ventures, LLC and Otto Candies, LLC

Classification:   Class E3 consists of Allowed Secured Mortgage Claims of DCC Ventures, LLC and Otto Candies, LLC against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E3 Claim; or (b) satisfaction of any such Allowed Class E3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class E3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class E3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

#### (d)     Class E4:  Maritime Junior Secured Claims

Classification:  Class E4 consists of Allowed Maritime Junior Secured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E4 Claim; or (b) satisfaction of any such Allowed Class E4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class E4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class E4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

#### (e)     Class E5:  Other Secured Claims

Classification:  Class E5 consists of all Allowed Other Secured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E5 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E5 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E5 Claim; or (b) satisfaction of any such Allowed Class E5 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class E5 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class E5 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

#### (f)     Class E6:  General Unsecured Claims

Classification:  Class E6 consists of all Allowed General Unsecured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM3 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM3 and all Allowed Claims in Classes E1, E2, E3, E4 and E5.

Voting:  Class E6 Claims are Impaired.  Each Holder of an Allowed Claim in Class E6 shall be entitled to vote to accept or reject the Plan.

### (g)  Class E7:  Subordinated Claims

Classification:  Class E7 consists of all Allowed Subordinated Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E7 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM3 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM3 and all Allowed Claims in Classes E1, E2, E3, E4, E5, and E6.

Voting:  Class E7 Claims are Impaired.  Each Holder of an Allowed Claim in Class E7 shall be entitled to vote to accept or reject the Plan.

### (h)  Class E8:  Interests

Classification:  Class E8 consists of all Allowed Interests in Deep Marine 3, LLC.

Treatment:  On the Effective Date, all of the Class E8 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class E8 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM3 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM3 and all Allowed Claims in Classes E1, E2, E3, E4, E5, E6 and E7.

Voting:  Class E8 Interests are Impaired.  Each Holder of an Allowed Claim in Class E8 shall be entitled to vote to accept or reject the Plan.

## Section 3.12     Deep Marine 4, LLC

### (a)  Class F1:  Priority Non-Tax Claims

Classification:  Class F1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 4, LLC.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class F1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class F1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM4 equal to the amount of such Allowed Claim in Class F1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class F1 becomes an Allowed Claim in Class F1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class F1 are Unimpaired.  Each Holder of an Allowed Claim in Class F1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (b)      Class F2:  Maritime Senior Secured Claims

Classification:  Class F2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class F2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class F2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class F2 Claim; or (b) satisfaction of any such Allowed Class F2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class F2 are Unimpaired.  Each Holder of an Allowed Claim in Class F2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (c)      Class F3:  Maritime Junior Secured Claims

Classification:  Class F3 consists of all Allowed Maritime Junior Secured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class F3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class F3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class F3 Claim; or (b) satisfaction of any such Allowed Class F3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed

upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class F3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class F3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (d)      Class F4:  Other Secured Claims

Classification:   Class F4 consists of all Allowed Other Secured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class F4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class F4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class F4 Claim; or (b) satisfaction of any such Allowed Class F4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class F4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class F4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

### (e)      Class F5:  General Unsecured Claims

Classification:  Class F5 consists of all Allowed General Unsecured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging DM4 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM4 and all Allowed Claims in Classes F1, F2, F3, and F4.

Voting:  Class F6 Claims are Impaired.  Each Holder of an Allowed Claim in Class F6 shall be entitled to vote to accept or reject the Plan.

### (f)      Class F6:  Subordinated Claims

Classification:   Class F6 consists of all Allowed Subordinated Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM4 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM4 and all Allowed Claims in Classes F1, F2, F3, F4, and F5.

Voting:  Class F6 Claims are Impaired.  Each Holder of an Allowed Claim in Class F6 shall be entitled to vote to accept or reject the Plan.

### (g)   Class F7:  Interests

Classification:  Class F7 consists of all Allowed Interests in Deep Marine 4, LLC.

Treatment:   On the Effective Date, all of the Class F7 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class F7 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM4 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM4 and all Allowed Claims in Classes F1, F2, F3, F4, F5, and F6.

Voting:  Class F7 Interests are Impaired.  Each Holder of an Allowed Claim in Class F7 shall be entitled to vote to accept or reject the Plan.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

### Section 4.01      No Substantive Consolidation

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent provided the relevant Plan), and such Claims will be administered and treated in the manner provided in the relevant Plan.

### Section 4.02      Sale of the Acquired Assets

The Plan contemplates the sale of the Acquired Assets to a third party.  To effect this, the Debtors filed the Bidding Procedures and Sale Motion which seek, *inter alia*, to establish the Auction.  On April 12, 2010, the Bankruptcy Court entered the Bidding Procedures Order, which

established May 13, 2010 as the deadline for Potential Bidders to submit bids for the Acquired Assets, and established May 17, 2010, as the date for the Auction.  In connection with the Auction, the Debtors have identified the Stalking Horse Bidder as a potential purchaser for the Acquired Assets.  If no additional Qualified Bidders are identified at or prior to the Auction, the Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Stalking Horse Bidder, pursuant to the Purchase and Sale Agreement.  If additional Qualified Bidders are identified, at the conclusion of the Auction, the Debtors will seek Bankruptcy Court approval to sell the Acquired Assets pursuant to the applicable purchase and sale agreement to the Qualified Bidder submitting the highest and best offer, free and clear of any Liens, Claims, encumbrances or other interests.  The Confirmation Order shall contain specific authority for the Debtors to comply with the applicable purchase and sale agreement in this regard.

## Section 4.03      Appointment of Liquidating Trustee

On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidation Trust.  The Liquidating Trust shall be governed by the Liquidating Trust Agreement.  The initial Liquidating Trustee shall be John Bittner.  The salient terms of the employment of the Liquidating Trustee, including duties and compensation, to the extent not set forth in the Plan, shall be set forth in the Liquidating Trust Agreement or the Confirmation Order. The Liquidating Trust Agreement shall contain provisions customary to liquidating trust agreements utilized in comparable circumstances.  The Liquidating Trust and the Liquidating Trustee shall be bound by the Plan and shall not challenge any provision of the Plan.  The Liquidating Trust Agreement shall be filed as an exhibit to the Plan Supplement, and its express terms shall govern distributions thereunder.

## Section 4.04   Duties of the Liquidating Trustee

John Bittner shall be the proposed Liquidating Trustee.  The Liquidating Trustee will initially be appointed by the Bankruptcy Court in the Confirmation Order.  The Liquidating Trustee will act as the Estates' representative for all purposes, and will be responsible for, among other things, (i) administering the liquidation of the Other Assets; (ii) controlling and managing the consideration received from the liquidation of the Other Assets; (iii) filing, prosecuting and settling Claim objections; (iv) prosecuting and settling any Estate causes of action transferred to the Liquidating Trust pursuant to this Plan; (v) pursuing any applicable insurance proceeds; (vi) making distributions and creating reserves in accordance with the terms of this Plan; (vii) winding-up and closing the Estates; (viii) abandoning any of the assets of the Debtors if the Liquidating Trustee concludes that such assets are of no benefit to the Creditors; (ix) enforcing the payment of notes or other obligations of any Person; (x) opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Liquidating Trust; (xi) paying all lawful expenses, debts, charges and liabilities of the Debtors; (xii) purchasing insurance with coverage and limits as it deems desirable including, insurance covering liabilities of the Liquidating Trustee and his employees and agents or employees or agents of the Debtors incurred in connection with their services to the Debtors, and/or terminating any insurance and collecting prepaid premiums; (xiii) appointing, engaging, employing, supervising, and compensating officers, employees, and other Persons as may be necessary or desirable, including

managers, consultants, accountants, technical, financial, real estate, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories; (xiv) delegating any or all of the discretionary power and authority conferred with respect to all or any portion of the Estates' property to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation except for such liability as is provided in the Plan; (xv) executing, delivering, and performing such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan; (xvi) undertaking any action necessary to maintain the corporate existence and/or dissolve, the Debtors; (xvii) undertaking any action necessary to ensure that the Debtors are and remain in good standing and compliance with applicable federal, state, and local laws; (xviii) filing any federal, state, or local tax returns and provide for the payment of any related taxes; and (xix) undertaking any action or performing any obligation provided for or required under the Plan.  The Liquidating Trustee's compensation will be set forth in the Liquidating Trust Agreement and approved by the Bankruptcy Court at Confirmation.  The Liquidating Trustee will be authorized to employ legal and accounting professionals employed by the Debtors or the Committee pre-confirmation, as well as such other professionals as the Liquidating Trustee may deem necessary and appropriate, including without limitation employment of professionals on a contingent fee basis, without further order of the Bankruptcy Court.  In case of the resignation or inability to serve of a Liquidating Trustee, a successor Liquidating Trustee shall be appointed in accordance with the Liquidating Trust Agreement.

The Liquidating Trustee shall own and shall have the right to assert, enforce and/or waive any applicable privileges (legal or otherwise, including the attorney-client privilege) held by the Debtors at any time (pre-petition or post-petition).

**Section 4.05     Distribution of All Net Proceeds of Sale of Assets on the Effective Date**

To the extent not already paid, all proceeds from the sale of the Acquired Assets of the Debtors shall be paid to the Debtors, or, after the Effective Date, the Liquidating Trustee for the benefit of the Debtors.  At the same time, any other assets of any of the Debtors not transferred to the Purchaser at Closing, including any equity interests in any Debtor (all such assets, the "Other Assets") shall be transferred to the Liquidating Trust for the benefit of the Holders of Secured Claims with Liens on such Other Assets, or, if no such Liens exist, for the benefit of Holders of General Unsecured Claims, Subordinated Claims and Interests.

GE has informed the Debtors that it does not consent to the transfer to the Liquidating Trust of proceeds of any collateral securing any Allowed Secured Mortgage Claim of GE. Rather, GE seeks payment of any Allowed Secured Mortgage Claim of GE upon the closing of any sale pursuant to the Purchase and Sale Agreement.  GE reserves its right to object to the Plan, including any provision of the Plan regarding the proceeds of any collateral securing any Allowed Secured Mortgage Claim of GE and the timing of any payment of any Allowed Secured Mortgage Claim of GE.  The Plan as ultimately approved by the Court will govern these issues.

The Liquidating Trustee shall make the payments required under the Plan to the Holders of Allowed Claims in compliance with this Plan, the Confirmation Order and the Liquidating Trust Agreement.

The Debtors have attempted to estimate the potential distributions under the Plan. However, any estimate of distributions under a Plan must take into account the uncertain nature of a liquidating Plan involving the auction of assets that are related to servicing the oil and gas market. In an effort to provide for the unknowns implicit in the auction of such assets, the Debtors have formulated a preliminary estimate of distributions under the Plan for each Debtor based on the Stalking Horse Bid. The preliminary distribution analysis is attached hereto as **Exhibit E.**

Since the auction provides the possibility that the assets will yield a price greater than that in the Stalking Horse Bid, the Debtors have formulated a preliminary estimate of the bid amounts necessary for the assets of each Debtor, such that the particular Debtor's Junior Maritime Secured Claims and General Unsecured Claims can be paid in full. Specifically:

- in order for Holders of Junior Maritime Secured Claims against DM1 to be paid in full, the DM1 assets must sell for approximately $21,931,000. The Stalking Horse Bid for such assets is currently 6,000,000. The Debtors do not believe that there are any valid Other Secured Claims or General Unsecured Claims against DM1. However, to the extent that any Other Secured Claims or General Unsecured Claims do exist against DM1, any proceeds of the Sale allocated to DM1 over and above $21,931,000 will be distributed to Holders of such Claims in accordance with the distribution priorities in the Plan. No distribution shall be made to Holders of Subordinated Claims against DM1 until all senior Claims against DM1 are first paid in full in accordance with the distribution priorities in the Plan. No Distribution shall be made to Holders of Interests in DM1 until all senior Claims are first paid in full in accordance with the distribution priorities in the Plan.

- it is anticipated that the value allocated to DM2 under the Stalking Horse Bid is sufficient to pay all Holders of Allowed Claims against DM2.

- in order for Holders of Junior Maritime Secured Claims against DM3 to be paid in full, the DM3 assets must sell for approximately $9,978,000. The Stalking Horse Bid for such assets is currently $4,000,000. The Debtors do not believe that there are any valid Other Secured Claims or General Unsecured Claims against DM3. However, to the extent that any Other Secured Claims or General Unsecured Claims do exist against DM3, any proceeds of the Sale allocated to DM3 over and above $9,978,000 will be distributed to Holders of such Claims in accordance with the distribution priorities in the Plan. No distribution shall be made to Holders of Subordinated Claims against DM3 until all senior Claims are first paid in full in accordance with the distribution priorities in the Plan. No distribution shall be made to Holders of Interests in DM3 until all senior Claims are first paid in full in accordance with the distribution priorities in the Plan.

- it is anticipated that the value allocated to DM4 under the Stalking Horse Bid is sufficient to pay all Holders of Allowed Claims against DM4.

- in order for all Holders of Claims against DMT to be paid in full, the aggregate sale price of all assets of all Debtors to be sold pursuant to the Bidding Procedures

must be approximately $123,760,000.  The aggregate amount under the Stalking Horse Bid for substantially all assets of all Debtors is currently $85,000,000.

**THE DEBTORS MAKE NO REPRESENTATIONS AS TO THE LIKELIHOOD OF ANY PARTY SUBMITTING A BID THAT IS HIGHER AND BETTER THAN THE STALKING HORSE BID.  CREDITORS SHOULD CONSIDER THE RISK THAT THE STALKING HORSE BID WILL BE THE HIGHEST AND BEST BID FOR THE DEBTORS' ASSETS WHEN CREDITORS ARE VOTING TO ACCEPT OR REJECT THE PLAN.**

The foregoing analysis could also be impacted if, as is contended by Otto Candies, LLC, that entity has Maritime Senior Secured Claims that prime GE's Secured Mortgage Claims.  GE disputes the contention of Otto Candies, LLC that Otto Candies, LLC has Maritime Senior Secured Claims that prime GE's Secured Mortgage Claims.  All parties reserve their rights with regard to the priority of any maritime Lien.

**Section 4.06     Distribution Procedures**

Any payments or distributions to be made by the Liquidating Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims.  Any payments or distributions to be made by the Liquidating Trustee pursuant to the Plans shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in the Plan.  Any payment, delivery or distribution by the Liquidating Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Liquidating Trustee into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is allowed.  The Liquidating Trustee will establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan.  The Debtors and the Liquidating Trustee will make no distributions upon a Claim held by a party against whom a Debtor or the Liquidating Trustee asserts any avoidance action until resolution of the avoidance action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  Avoidance Actions are retained as property of the Debtors under the Plan and transferred to the Liquidating Trust as of the Effective Date, and such actions may be pursued solely by the Debtors or, after the Effective Date, the Liquidating Trustee.

**Section 4.07     Cancellation of Existing Secured Claims**

Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Liquidating Trustee after the Effective Date) any Collateral or other property of any Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

**Section 4.08**      **Continued Corporate Existence**

Each Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of its state of incorporation for the purposes of satisfying its obligations under the Plan and the winding down of its affairs.

After the final distribution for each Estate, and the preparation and filing of any tax returns required of each Estate, the Liquidating Trustee shall effectuate the dissolution of each Debtor in accordance with the Plan, be discharged and have no further responsibilities for that Debtor.

**Section 4.09**      **Directors and Officers**

On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action), (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Liquidating Trustee and the Liquidating Trustee or its designee shall be the presiding officer and the sole Governor of each such Debtor.  The Liquidating Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor on and after the Effective Date**.**

**Section 4.10**      **Employee Benefit Plans**

Prior to the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law.  The Purchaser and the Liquidating Trust shall have no liability for any obligations under any Employee Benefit Plan.

**Section 4.11**      **Exclusivity Period**

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of the Plan under Bankruptcy Code section 1121(d).

**Section 4.12**      **Effectuating Documents; Further Reorganization Transactions**

John Bittner, as Chief Restructuring Officer of the Debtors or, after the Effective Date, the Liquidating Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  John Bittner, as Chief Restructuring Officer of the Debtors or, after the Effective Date, the Liquidating Trustee, shall be authorized to certify or attest to any of the foregoing actions. The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement.

**Section 4.13        Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected pursuant to the Purchase and Sale Agreement or by mergers provided under the Plan, from the Debtors to the Purchaser, Liquidating Trust or any other Person or Entity pursuant to the Plan or the Purchase and Sale Agreement, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 4.14        Closing of the Debtors' Chapter 11 Cases**

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**

**THE SOLICITATION; VOTING PROCEDURES**

**Section 5.01        Solicitation Package**

Accompanying this Disclosure Statement for the purpose of soliciting votes on the Plan are copies of (i) the Plan; (ii) the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time, and place of the hearing to consider Confirmation of the Plan and related matters, and the time for filing objections to Confirmation of the Plan; and, as applicable, (iii) a Ballot or Ballots (and return envelope(s)) that you may use in voting to accept or to reject the Plan), or a notice of non-voting status, (collectively the "Solicitation Package"). Only Holders eligible to vote in favor of or against the Plan will receive a Ballot(s) as part of their Solicitation Package.  If you did not receive a Ballot and believe that you should have, please contact the Debtors' counsel at the address or telephone number set forth in Section 16.14.

**Section 5.02        Voting Instructions**

After carefully reviewing the Plan and this Disclosure Statement, and the Exhibits thereto, and the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.  Please complete and sign your Ballot and return it in the envelope provided so that it is RECEIVED by the Voting Agent on or before the Plan Voting Deadline set forth on the Ballot.

Each Ballot has been coded to reflect the Class of Claims it represents.  Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

If you have any questions about the procedure for voting your eligible Claim or with respect to the Solicitation Package that you have received, please contact the Voting Agent:

Deep Marine Holdings, Inc. Ballot Processing
c/o Grant Thornton LLP
666 Third Avenue, 13th Floor
New York, NY  10017-4011
Telephone:  630.785.9021
Facsimile:  212.370.4520

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT FOR THE DEBTORS ON OR BEFORE 3:00 P.M., PREVAILING CENTRAL TIME, ON MAY 27, 2010, AT THE ABOVE ADDRESS.  EXCEPT TO THE EXTENT ALLOWED BY THE BANKRUPTCY COURT OR DETERMINED OTHERWISE BY THE DEBTORS, BALLOTS RECEIVED AFTER THE PLAN VOTING DEADLINE WILL NOT BE ACCEPTED OR USED IN CONNECTION WITH THE DEBTORS' REQUEST FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF.**

**ONLY BALLOTS WITH ORIGINAL SIGNATURES WILL BE COUNTED. BALLOTS WITH COPIED SIGNATURES WILL <u>NOT</u> BE ACCEPTED OR COUNTED. YOU MAY NOT SUBMIT A BALLOT ELECTRONICALLY, INCLUDING VIA EMAIL OR FACSIMILE.   ONLY ORIGINAL BALLOTS (INCLUDING BALLOTS FORWARDED BY MASTER BALLOTING AGENTS) RECEIVED BY THE VOTING AGENT BY THE PLAN VOTING DEADLINE WILL BE COUNTED.**

**Section 5.03      Voting Tabulation**

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only Holders who actually vote will be counted.  The failure of a Holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such Holder with respect to voting on the Plan and such abstentions will not be counted as votes for or against the Plan.

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted.  The Debtors, in their sole discretion, may request that the Voting Agent attempt to contact such voters to cure any such defects in the Ballots.

Except as provided below, unless the applicable Ballot is timely submitted to the Voting Agent before the Plan Voting Deadline, together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid and decline to utilize it in connection with seeking Confirmation of the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Bankruptcy Code section 1126(e), that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and, unless otherwise determined by the Debtors, must submit proper evidence satisfactory to the Debtors of authority to so act.

The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Plan Voting Deadline.  Except to the extent permitted by the Bankruptcy Court, Ballots that are received after the Plan Voting Deadline will not be counted or otherwise used by the Debtors in connection with the Debtors' request for Confirmation of the Plan (or any permitted modification thereof). IN NO CASE SHOULD A BALLOT BE DELIVERED TO ANY ENTITY OTHER THAN THE VOTING AGENT.

## Section 5.04        Agreements upon Furnishing Ballots

The delivery of an accepting Ballot to the Voting Agent by a Holder pursuant to one of the procedures set forth above will constitute the agreement of such Holder to accept (i) all of the terms of, and conditions to, the solicitation and voting procedures and (ii) the terms of the Plan; provided, however, all parties in interest retain their right to object to Confirmation of the Plan pursuant to Bankruptcy Code section 1128.

## ARTICLE VI

## FEASIBILITY, BEST INTEREST OF THE CREDITORS AND LIQUIDATION

## Section 6.01        Feasibility of the Plan

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successors to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.  The Plan proposed by the Debtors provides for a liquidation of the Debtors' remaining assets and a distribution of Cash to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan.  The ability of the Liquidating Trustee to make the Distributions described in the Plan does not depend on future earnings of the Debtors.  Accordingly, the Debtors believe that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

## Section 6.02        Best Interest of Creditors Test

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of a Claim or interest in such Class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such person would receive or retain if the Debtors liquidated under chapter 7 of the Bankruptcy Code. In chapter 7 liquidation cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior Class receiving any payments until all amounts due to senior Classes have been paid fully or any such payment is provided for:

- Secured creditors (to the extent of the value of their collateral);

- Administrative and other priority creditors;

- Unsecured creditors;

- Debt expressly subordinated by its terms or by order of the Bankruptcy Court; and

- Interest holders.

As described in the liquidation discussion set forth in Section 9.01 hereof, the Debtors believe that the value of any distributions in a chapter 7 case would be less than the value of distributions under the Plan because, among other reasons, distributions in a chapter 7 case may not occur for a longer period of time, thereby reducing the present value of such distributions. In this regard, the distribution of the proceeds of a liquidation would be delayed until a chapter 7 trustee and its professionals became knowledgeable about the Chapter 11 Cases and the Claims against the Debtors. In addition, proceeds received in a chapter 7 liquidation are likely to be significantly discounted due to the distressed nature of the sale, and the Debtors' estates would have to pay the fees and expenses of a chapter 7 trustee in addition to the Professionals' pre-conversion fees and expenses (thereby further reducing cash available for distribution).

## ARTICLE VII

## CONFIRMATION PROCEDURES

### Section 7.01      The Confirmation Hearing

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing.  Bankruptcy Code section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing for June 2, 2010, at 9:00 a.m., prevailing Central Time, before the Honorable Marvin Isgur, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Texas at the United States Courthouse, 515 Rusk Street, Houston, Texas 77002.

Objections to Confirmation of the Plan must be filed and served on the Debtors and the other parties set forth in the order approving the Disclosure Statement, and certain other parties, by no later than May 27, 2010, at 3:00 p.m. prevailing Central Time, in accordance with the order approving the Disclosure Statement (attached hereto as **Exhibit G**).  THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO CONFIRMATION OF THE PLAN IF ANY SUCH OBJECTIONS HAVE NOT BEEN TIMELY SERVED AND FILED IN COMPLIANCE WITH THE ORDER APPROVING THE DISCLOSURE STATEMENT.

The notice of the Confirmation Hearing will contain, among other things, the deadline to object to Confirmation of the Plan, the Plan Voting Deadline, and the date and time of the Confirmation Hearing.

**Section 7.02          Statutory Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code section 1129 have been satisfied. The Debtors believe that the Plan satisfies or will satisfy the applicable requirements, as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as Plan proponent, will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment:  (a) made before the Confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after the Confirmation of the Plan.

- The Debtors, as Plan proponent, have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an Affiliate of the Debtors participating in the Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

- The Debtors, as Plan proponent, have disclosed the identity of any insider (as defined in Bankruptcy Code section 101) that will be employed or retained by the Liquidating Trust, and the nature of any compensation for such insider.

- The Plan does not propose any rate change that is subject to approval by a governmental regulatory commission.

- Either each Holder of an Impaired Claim or Interest has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of each voting Class pursuant to Bankruptcy Code section 1129(b).

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims, Priority Tax

Claims and, Priority Non-Tax Claims will be paid in full, in Cash, on the Effective Date, or as soon thereafter as practicable.

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan unless such a liquidation or reorganization is proposed in the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

- The Debtors have no retirement benefit obligations except for 401(k) plans, and such plans are expected to be terminated and will provide of rollover distributions to current participants.

The Debtors believe that: (a) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (b) the Debtors have complied or will have complied with all of the requirements of chapter 11; and (c) the Plan has been proposed in good faith.

**(a)** *Acceptance by Impaired Classes*

The Bankruptcy Code requires, as a condition to Confirmation, that, except as described in the following section, each Class of Claims or Equity Interests that is Impaired under the Plan accept the Plan. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is Impaired unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or equity interest; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest after the occurrence of a default—(1) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured; (2) reinstates the maturity of such claim or interest as such maturity existed before such default; (3) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and *(4)* if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(l)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure*; and (5) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### (b)    Confirmation Without Acceptance by All Impaired Classes

Bankruptcy Code section 1129(b) allows a bankruptcy court to confirm a plan, even if an Impaired class entitled to vote on the plan has not accepted it, provided that the plan has been accepted by at least one Impaired Class.  No Classes are deemed to reject the Plan.  However, the Debtors cannot guarantee that all Impaired Classes will accept the Plan.  If any Impaired Class does not accept the Plan, the Debtors intend to seek confirmation of the Plan pursuant to Bankruptcy Code section 1129(b).  Bankruptcy Code section 1129(b) states that, notwithstanding an Impaired class's failure to accept a plan of reorganization, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is Impaired under, and has not accepted, the plan.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of secured creditors includes the following requirements that either:  (a) the plan provides that holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims and that each holder of a claim of such class receive on account of such claims deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; (b) the plan provides for the sale, subject to 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under (a) or (c) of this paragraph; or (c) the plan provides for the realization by such holders of the indubitable equivalent of such claims.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims includes the following requirement that either: (a) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) the holder of any claim or equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or equity interest any property.

The Debtors reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Exhibit or Schedule, including to amend or modify it to satisfy Bankruptcy Code section 1129(b), if necessary.

## Section 7.03    Identity of Persons to Contact for More Information

Any interested party desiring further information about the Plan should contact the Voting Agent at the phone number and/or address listed in Section 5.02 of this Disclosure Statement.

**ARTICLE VIII**

**CERTAIN RISK FACTORS AFFECTING
CERTAIN OF THE DEBTORS**

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF IMPAIRED CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**Section 8.01      Certain Bankruptcy Law Considerations**

Although the Debtors believe that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes.  Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.  In the event the conditions precedent to Confirmation of the Plan have not been satisfied or waived (to the extent possible) by the Debtors or applicable party (as provided in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no distributions under the Plan will be made, and the Debtors and all Holders of Claims and Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though such Confirmation Date had never occurred.

**Section 8.02      Risks Related to the Sale of the Debtors' Assets**

The Bankruptcy Court has not yet approved a sale of the Debtors' assets.  Further, the Purchase and Sale Agreement is subject to certain conditions precedent which must be satisfied before the transaction is consummated.  There is no guarantee that these conditions precedent will be satisfied or that the Bankruptcy Court will approve a sale of the Debtors' assets.  If the sale of the Debtors' assets is not consummated, the feasibility of the Plan may be adversely affected.

**ARTICLE IX**

**ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

If the Plan is not confirmed and consummated, the alternatives to the Plan include: (a) liquidation of the Debtors under chapter 7 of the Bankruptcy Code; and (b) an alternative plan of reorganization.

**Section 9.01      Liquidation Under Chapter 7**

If no plan can be confirmed, the Debtors' Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed (or

elected) to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Interests is set forth below. The Debtors believe that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan because of: (a) the likelihood that the assets of the Debtors would have to be sold or otherwise disposed of in a less orderly fashion over a shorter period of time; (b) additional administrative expenses involved in the appointment of a trustee; and (c) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of the Debtors' operations.

Specifically, the Debtors' costs of liquidation under chapter 7 of the Bankruptcy Code would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other Professionals that such a trustee might engage. In addition, claims would arise by reason of the breach or rejection of obligations incurred and leases and executory contracts assumed or entered into by the Debtors during the pendency of the Chapter 11 Cases. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 Cases, including any unpaid expenses incurred by the Debtors and the Committee during the Chapter 11 Cases such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition Allowed General Unsecured Claims, Allowed Subordinated Claims or Allowed Interests. Furthermore, the Debtors' DIP Facility will mature on June 30, 2010, at which point the Debtors are unlikely to be able to fund essential costs needed to preserve their vessels and ROVs and, if the cases were converted, it is highly likely that secured creditors would seek to lift the automatic stay in order to pursue their rights under state law, namely, foreclosure. Any foreclosure of the vessels or ROVs is likely to result in a diminished return to unsecured creditors.

To determine if the Plan is in the best interests of each Impaired Class, the value of the distributions from the proceeds of a liquidation of the Debtors' unencumbered assets and properties, after subtracting the amounts attributable to the foregoing claims, are then compared with the value of the property offered to such Classes of Claims and Interests under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to the Holders of Claims and Interests in the Chapter 11 Cases, including (i) the increased costs and expenses of a liquidation under chapter 7 of the Bankruptcy Code arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the likely erosion in value of assets in a chapter 7 case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under a chapter 7 liquidation and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases, the Debtors have determined that Confirmation of the Plan will provide each holder of an Allowed Claim or Interest with a recovery that is not less than such holder would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

The Debtors' Liquidation Analysis is attached hereto as **Exhibit F**. The information set forth in Exhibit F provides a summary of the liquidation values of the Debtors' assets, assuming a

chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtors' estates. The liquidation analysis was prepared by the Debtors' financial advisor.

Underlying the liquidation analysis are a number of estimates and assumptions that, although developed and considered reasonable by management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management. The liquidation analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtors were, in fact, to undergo such a liquidation. The chapter 7 liquidation period is assumed to be a period of six (6) months, allowing for, among other things, the (i) discontinuation of the Debtors' operations, (ii) sale of assets, and (iii) collection of receivables.

## Section 9.02    Alternative Plan of Reorganization

If the Plan is not confirmed, the Bankruptcy Court could confirm a different plan.  A different plan might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of the Debtors' assets, or some combination of the two.  The Debtors believe that the Plan, as described herein, enables Holders of Claims and Interests to realize the highest and best value under the circumstances.  The Debtors believe that any alternative form of chapter 11 plan is a much less attractive alternative to creditors than the Plan because of the far greater returns and certainty provided by the Plan.  Other alternatives could involve diminished recoveries, significant delay, uncertainty, and substantial additional administrative costs.

## ARTICLE X

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

## Section 10.01    Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

## Section 10.02    Cure Costs

The Purchase and Sale Agreement between the Debtors and the Stalking Horse Bidder does not require the assumption and assignment of any Assumed and Assigned Contracts (as defined in the Bidding Procedures and Sale Motion).  However, the Bidding Procedures and Sale Motion contemplates the possibility that a Qualifying Bidder (as defined in the Bidding Procedures and Sale Motion) other than the Stalking Horse Bidder will require the assumption and assignment of certain Assumed and Assigned Contracts.  In such an event, the Debtors shall cause notice to be provided to any counterparties to such Assumed and Assigned Contract specified in such Qualifying Bid by May 14, 2010 (the "Cure Notice").  The Cure Notice shall be substantially in the form attached to the Bidding Procedures Order.  The Cure Notice shall, among other things, (i) identify the potential Assumed and Assigned Contracts, (ii) specify the Cure Costs necessary to assume and assign such Assumed and Assigned Contracts, and (iii) state

that failure to timely object to the proposed assumption and assignment and/or the Cure Cost shall constitute deemed consent to such assumption and assignment and Cure Cost. Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures Order, File a detailed statement setting forth its reason no later than 3:00 p.m. (prevailing Central Time) on May 25, 2010 and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation Hearing. The fixing of the Cure Costs shall constitute the Debtor's right to assign the executory contract and unexpired lease to the Purchaser under Bankruptcy Code sections 365(c) and (f).

## Section 10.03   Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## Section 10.04   Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Liquidating Trust. The Liquidating Trustee may purchase extensions or tails on any insurance policy.

## Section 10.05   Pass-through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Liquidating Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c) shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Liquidating Trust and the counterparty unaltered and unaffected by the bankruptcy Filings or Chapter 11 Cases.

**Section 10.06      Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim against the particular Debtor in question to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim against the particular Debtor in question.

**Section 10.07      Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

Nothing in this Disclosure Statement shall constitute an admission by any Creditor.

**Section 10.08      Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

## ARTICLE XI

## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS

### Section 11.01   Objections to Claims

#### (a)   *Authority*

The Debtors or the Liquidating Trustee, on and after the Effective Date, shall have the exclusive authority to File objections to Claims, and to withdraw any objections to such Claims that they File.  The Debtors or the Liquidating Trustee, on and after the Effective Date, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims.  The Debtors or the Liquidating Trustee, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims.  From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

#### (b)   *Objection Deadline*

As soon as practicable, but no later than the Claims Objection Deadline, the Liquidating Trustee may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor or the Liquidating Trustee, as the case may be, without notice or hearing.

For the avoidance of doubt, except for the purposes of voting, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.

### Section 11.02   Estimation of Claims

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Liquidating Trustee or any Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to

object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

**Section 11.03     No Distributions Pending Allowance**

Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Liquidating Trustee in writing, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**Section 11.04     Distributions After Allowance**

The Liquidating Trustee shall make payments and distributions from a distribution reserve to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of the Liquidating Trust for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

**Section 11.05     Reduction of Claims**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

**Section 11.06     Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all distributions made under the Plan in

compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

## ARTICLE XII

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**Section 12.01     Conditions Precedent to Confirmation**

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)     The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such Order shall have become a Final Order.

(b)     The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors and, in the event the Stalking Horse Bidder is the Purchaser, the Stalking Horse Bidder; and (ii) include a finding of fact that the Debtors, and their respective present members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code section 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

(c)     If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order in form and substance reasonably acceptable to the Debtors.

**Section 12.02     Conditions Precedent to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.04 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and, in the event the Stalking Horse Bidder is the Purchaser, the Stalking Horse Bidder, and such Order shall have become a Final Order.

(b)     If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtors, and such Order shall have become a Final Order.

(c)     Purchaser shall have provided written evidence satisfactory to the Debtors that simultaneous with the occurrence of the Effective Date, Purchaser is prepared to close on the Transfer, and the Closing shall have occurred pursuant to the Purchase and Sale Agreement.

(d)      The Liquidating Trust Agreement shall have been fully executed in form and substance reasonably acceptable to the Debtors.

**Section 12.03      Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

**Section 12.04      Waiver of Conditions**

Each of the conditions set forth in Section 12.01 and Section 12.02 hereof may be waived in whole or in part by the Debtors.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**Section 12.05      Revocation, Withdrawal, or Non-consummation**

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

# ARTICLE XIII

# AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to the Purchaser, the Debtors may not modify such document without the written consent of the Purchaser, as applicable.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

# ARTICLE XIV

# RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(G)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with

implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

(I)    Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)    Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Purchase and Sale Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(K)    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

(L)    Recover all assets of the Debtors and property of the Estates, wherever located;

(M)    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)    Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

(O)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)    Enter an order or final decree concluding or closing the Chapter 11 Cases; and

(Q)    Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV

## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the

Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

**Section 16.01     Bar Dates for Certain Actions**

### (a)     *Administrative Claims; Substantial Contribution Claims*

The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and Administrative Claims in section (b) or (c) below), which date will be forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary case liabilities described in section (b) below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.  The Liquidating Trustee shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

### (b)     *Administrative Ordinary Course Liabilities*

Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims.  For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code section 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

### (c)     *Administrative Tax Claims*

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no Bar Date has otherwise been previously established, must be Filed and served on the Liquidating Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable Bar Date shall be forever barred from asserting any such claim against the Debtors, the Liquidating Trust, or their property, regardless of whether any

such Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

### (d)      Professional Fee Claims

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must be Filed and served on the Liquidating Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

## Section 16.02     Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan.  Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids.  Post-confirmation, the Debtors, and post-Effective Date, the Liquidating Trustee, shall be responsible for the payment of accruing United States Trustee quarterly fees for each of the Debtors until each case is closed by the Court.  The Debtors and the Liquidating Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

## Section 16.03     Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in

no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 16.04      Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Section 16.05      Exculpation**

The Released Parties SHALL NOT BE LIABLE TO ANY PERSON FOR ANY cause of action, arising on or after the Petition Date, in connection with or out of the administration of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any Released Party as to which such Released Party has been exculpated from liability pursuant to the preceding sentence or any other order of this Court.

**THE BANKRUPTCY COURT HAS RAISED CONCERNS RELATED TO THE PERMISSIBILITY OF THE EXCULPATION/RELEASES GRANTED IN THE FOREGOING PARAGRAPH.  IN PARTICULAR, THE BANKRUPTCY COURT IS CONCERNED AS TO THE PERMISSIBILITY OF GRANTING EXCULPATION/RELEASES TO NON-DEBTOR PARTIES UNDER CURRENT APPLICABLE FIFTH CIRCUIT LAW (I.E. *BANK OF NEW YORK TRUST CO., N.A. V. OFFICIAL UNSECURED CREDITORS COMMITTEE (IN RE PACIFIC LUMBER CO.)*, 584 F.3d 229 (5TH CIR. 2009)).  THE DEBTORS INTEND TO BRIEF THE ISSUE PRIOR TO THE CONFIRMATION HEARING SUCH THAT THE BANKRUPTCY COURT CAN DECIDE THE ISSUE AT THE CONFIRMATION HEARING.  TO THE EXTENT THAT THE BANKRUPTCY COURT ULTIMATELY FINDS THAT ANY EXCULPATION/RELEASES IN THE FOREGOING PARAGRAPH ARE NOT PERMISSIBLE UNDER APPLICABLE LAW, THE CONFIRMATION ORDER WILL MODIFY THE PLAN TO CONFORM TO THE BANKRUPTCY COURT'S RULING.**

**Section 16.06      Indemnification**

The Liquidating Trustee shall indemnify each Person identified as a Released Party against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities for which they are exculpated under Section 16.05; provided, however, that no Released Party shall be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Released Party was grossly negligent or acted fraudulently or with willful

misconduct in performing such Released Party's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law. Any Released Party entitled to indemnification under this section shall have a priority distribution right that is senior to the holders of Allowed Claims in every classified Class.  The Liquidating Trustee may use assets of the Liquidating Trust (as an expense of consummating this Plan) to purchase indemnification insurance to satisfy any potential indemnification claims

**Section 16.07     Discharge of Liabilities**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.   Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, the Liquidating Trust and all successors thereto.  As provided in section 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall void any judgment against the Debtors, their Estates, the Liquidating Trust or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Liquidating Trust or their respective property and assets to the extent it relates to a discharged Claim or Interest.

**THE BANKRUPTCY COURT HAS RAISED CONCERNS RELATED TO THE PERMISSIBILITY OF THE DISCHARGE GRANTED IN THE FOREGOING PARAGRAPH.  IN PARTICULAR, THE BANKRUPTCY COURT IS CONCERNED AS TO THE PERMISSIBILITY OF GRANTING A DISCHARGE TO A LIQUIDATING DEBTOR IN LIGHT OF 11 U.S.C. § 1141.  THE DEBTORS INTEND TO BRIEF THE ISSUE PRIOR TO THE CONFIRMATION HEARING SUCH THAT THE BANKRUPTCY COURT CAN DECIDE THE ISSUE AT THE CONFIRMATION HEARING.  TO THE EXTENT THAT THE BANKRUPTCY COURT ULTIMATELY**

**FINDS THAT THE DISCHARGE IN THE FOREGOING PARAGRAPH IS NOT PERMISSIBLE UNDER APPLICABLE LAW, THE CONFIRMATION ORDER WILL MODIFY THE PLAN TO CONFORM TO THE BANKRUPTCY COURT'S RULING.**

**Section 16.08    Permanent Injunction**

Except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement, or the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any Released Party on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party or against the property or interests in property of such Released Party on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any Released Party or against the property or interests in property of any Released Party on account of any such Claim or Interest.  The foregoing injunction will extend to successors of any Released Party and their respective property and interests in the property.

THE BANKRUPTCY COURT HAS RAISED CONCERNS RELATED TO THE PERMISSIBILITY OF THE INJUNCTION GRANTED IN THE FOREGOING PARAGRAPH.  IN PARTICULAR, THE BANKRUPTCY COURT IS CONCERNED AS TO THE PERMISSIBILITY OF GRANTING SUCH INJUNCTION TO A LIQUIDATING DEBTOR IN LIGHT OF 11 U.S.C. § 1141 AS WELL AS THE EXTENT TO WHICH SUCH AN INJUNCTION MAY RELEASE CERTAIN PARTIES.   THE DEBTORS INTEND TO BRIEF THE ISSUE PRIOR TO THE CONFIRMATION HEARING SUCH THAT THE BANKRUPTCY COURT CAN DECIDE THE ISSUE AT THE CONFIRMATION HEARING.  TO THE EXTENT THAT THE BANKRUPTCY COURT ULTIMATELY FINDS THAT THE INJUNCTION IN THE FOREGOING PARAGRAPH IS NOT PERMISSIBLE UNDER APPLICABLE LAW, THE CONFIRMATION ORDER WILL MODIFY THE PLAN TO CONFORM TO THE BANKRUPTCY COURT'S RULING.

**Section 16.09    Bankruptcy Rule 3016 Compliance**

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 16.10    Term of Injunctions or Stay**

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the

Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 16.11     Integral to Plan**

Each of the injunctions provided in the Plan is an integral part of the Plan and is essential to its implementation.  Each of the Released Parties and any other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

**Section 16.12     Preservation of Rights of Action; Settlement**

**Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise dealt with in the Plan, the Purchase and Sale Agreement, the Confirmation Order or are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b): (1) any and all rights, claims, causes of action, (including Avoidance Actions, which definition explicitly includes preference actions pursuant to 11 U.S.C. § 547), defenses, and counterclaims of or accruing to the Debtors or their Estates shall become assets of and vest in the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Liquidating Trustee does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtors' right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that the Liquidating Trustee has, or may have, as of the Effective Date.  The preference actions reserved in this paragraph include, but are not limited to, potential preference actions against all parties listed on the attached Exhibit H.**

Notwithstanding any provision of the Disclosure Statement or Plan, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and rights against any and all third parties, regardless of when such claims arose, including, without limitation, any and all causes of action and/or claims for relief the Debtors or the Liquidating Trustee may have against (i) any former director, officer, and/or shareholder of the Debtors (and their Related Persons) and/or any named defendant or plaintiff (and their Related Persons) in suits pending in the Court of Chancery of Delaware or any district court of the State of Texas, including, but not limited to, Otto Candies, LLC, Otto Candies Jr., Otto Candies III, Candies Shipbuilders, LLC, Nasser Kazeminy, DCC Ventures, LLC, NJK Holding Corporation, NKOC, Inc., Triomphe Investors, LLC, Joseph Grano, Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman and John Hudgens (and their Related Persons) and (ii) any insurer on any directors' and officers' liability and/or similar insurance policies in which either the Debtor and/or its current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers.  The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtors or the Liquidating Trustee relating to any claims or causes of action referred to in this Section, or otherwise. The Liquidating Trustee shall constitute the representative for the Debtors and their Estates for purposes of retaining, asserting and/or enforcing actions under § 1123(b)(3)(B) of the Bankruptcy Code. On and after the Effective Date, the Liquidating Trustee, in its discretion, may be substituted as a party of record in any pending litigation brought by or against the Debtors without need for further order of the Bankruptcy Court.  The claims and rights against parties listed in (i) and (ii) of this paragraph and preserved in the Disclosure Statement, the Plan and any Confirmation Order are not limited to claims and rights arising under the Bankruptcy Code, but also include claims and rights arising under any other applicable law, whether international or domestic, state or federal, statutory or common, whether or not such claims and causes of action are currently alleged or plead by any party or are currently known by the Debtors. Specifically, and without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action against the parties described in (i) and (ii) above, as well as any entity affiliated with or controlled by such parties, including but not limited to claims for fraud, breach of fiduciary duty, unjust enrichment, negligence, corporate waste, abuse, mismanagement, vicarious liability, illegal dividend, shareholder oppression, fraudulent transfer, breach of contract, subordination, and recharacterization (as well as any and all attendant claims and causes of action related to the foregoing, e.g. aiding and abetting the same, conspiracy to commit the same, violation of other laws (such as the RICO statute) in furtherance of the same, etc.).

Likewise, as of the filing of this Disclosure Statement, the Debtors have not yet completed their review of all Secured Claims, and therefore, without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action, whether arising pre-petition or post-petition, against any Holder of any Secured Claim of Otto Candies, LLC; Secured Claim of PNC Bank, N.A.; Secured Mortgage Claim of GE; Secured Mortgage Claim of DCC Ventures; Secured Mortgage Claim of Otto Candies, LLC; Maritime Senior Secured Claim; Maritime Junior Secured Claim; Secured Claim of

the DIP Lender; and Other Secured Claim.  Such reservation explicitly includes, without limitation, any causes of action related to the extent, validity and priority of any and all Liens asserted by such parties including all causes of action related to the amount of all fees and expenses (including attorney fees and expenses and other third party consultant, agent and advisor fees and expenses), subordination, recharacterization, lender liability, breach of contract, fraud, interference, negligence, good faith, fiduciary duty, direct liability, control, duress, and surcharge.  Additionally, without limitation, the Debtors explicitly reserve all causes of action against GE arising out of or related to GE's seizure of any escrowed funds of the Debtors.

Likewise, as of the filing of this Disclosure Statement, the Debtors have not yet completed their review of accounts receivable owned by the Debtors, and therefore, without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action related to all accounts receivable and the work giving rise to same.  Without limiting the foregoing preservation of rights, either as to claims, causes of action, or parties, the Debtors explicitly reserve all of their rights (whether for breach of contract, quantum meruit or otherwise) against (i) Boots and Coots Services, LLC, its affiliates, and all other third parties (including Allseas Group S.A., its affiliates, and all subcontractors) related to the accounts receivable (and the work giving rise to the same) owed by Boots and Coots Services, LLC to Deep Marine Technology, Incorporated; (ii) Capital Signal, its affiliates, and all other third parties (including Ocean Services, LLC and its affiliates, against whom the Debtors preserve, without limitation, all Avoidance Actions related to any alleged assignment of the Capital Signal accounts receivable) related to the accounts receivable (and the work giving rise to the same) owed by Capital Signal to Deep Marine Technology, Incorporated (or, allegedly, owed to Ocean Services, LLC); and (iii) LLOG Exploration, its affiliates, and all other third parties related to the accounts receivable (and the work giving rise to the same) owed by LLOG Exploration to Deep Marine Technology, Incorporated.

Boots & Coots Services, LLC has informed the Debtors that it reserves its right to argue that arbitration is applicable with regard to any and all claims, demands, disputes, suits, actions, causes of action, relief, accounts, remedies, obligations, setoffs, recoupments, and damages of every kind between and among Boots & Coots Services, LLC and the Debtors.  The Debtors reserve their right to contest the same.

Likewise, as of the filing of this Disclosure Statement, the Debtors have not yet completed their review of potential claims against former employees and former professionals (e.g. financial advisers, attorneys, accountants, investment bankers, consultants and agents), and therefore, without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action (including but not limited to all Avoidance Actions, all claims for breach of contract, breach of fiduciary duty, negligence, fraud, malpractice, malfeasance) that the Debtors may have against such Persons and their Related Persons.

**The Debtors and Liquidating Trustee reserve the right to amend and supplement the preservation of rights described in this Section, and such reservation includes, but is not limited to, the right to supplement this section via attachment to the Plan.**

**The Debtors' reservation of rights, causes of action and claims made in the Disclosure Statement, Plan and/or related documents are without prejudice to the rights, defenses or claims of any other party, and no such reservation shall affect any party's right to dispute any right, cause of action or claim brought by the Debtors, or after the Effective Date, the Liquidating Trustee.  Furthermore, no reservation of rights, causes of action and claims made in the Disclosure Statement, Plan and/or related documents shall be construed as an admission by any non-Debtor party.  Any explicit reservation of causes of action, claims and/or allegations in the Disclosure Statement or Plan (or any documents related thereto) is intended for preservation of the estates' rights, and is not intended to create or enhance any rights.**

**Section 16.13    Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

**Section 16.14    Notices**

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Liquidating Trust shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

Deep Marine Holdings, Inc. et al.
Attention: John Bittner
20411 Imperial Valley
Houston, Texas  77073
Phone:  (713) 896-8555
Fax:     (713) 849-4021

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300

Fax:  (713) 221-1212

If to the Liquidating Trustee

Deep Marine Liquidating Trust
c/o Grant Thornton LLP
Attention:  John Bittner
1717 Main Street, Suite 1500
Dallas, Texas  75201
Phone:   (214) 561-2390
Fax:       (214) 561-2370

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300
Fax:  (713) 221-1212

## Section 16.15    Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or the Liquidating Trust may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or the Liquidating Trust, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Liquidating Trust of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtor or the Liquidating Trust, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

## Section 16.16    Recoupment

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or the Liquidating Trust, as applicable, unless such Holder actually has performed such recoupment and

provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## Section 16.17    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.  For the avoidance of doubt, as provided in section 4.02 of the Plan, the Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

## Section 16.18    Request for Expedited Tax Review

The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

## Section 16.19    Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

## Section 16.20    No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

## Section 16.21    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or the Liquidating Trust, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

# ARTICLE XVII

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**Section 17.01    Certain Material Federal Income Tax Consequences of the Plan**

The following discussion summarizes certain material federal income tax consequences of the implementation of the Plan to the Debtors and to certain holders of Allowed Claims.  This summary does not address the federal income tax consequences to (i) holders of Claims who are deemed to have rejected a Plan in accordance with the provisions of section 1126(g) of the Bankruptcy Code, (ii) holders whose Claims are entitled to payment in full in cash or are otherwise unimpaired under the Plan (i.e., holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, any Secured Claims), or (iii) holders whose Claims are extinguished without distribution in exchange therefore.

This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), existing and proposed treasury regulations promulgated thereunder ("Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis.  Any such change could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  The Debtors have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.  In addition, this summary does not address state, local or foreign income or other tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, tax-exempt organizations, certain expatriates, or former long term residents of the United States, or pass-through entities or investors in pass-through entities).

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM.  EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLANS.**

### (a)    *Consequences to the Debtors.*

For federal income tax purposes, Deep Marine is the parent of an affiliated group of corporations that includes certain corporate subsidiaries that join in the filing of a consolidated federal income tax return.  This group of corporations (the "Tax Group") has reported consolidated net operating loss ("NOL") carryforwards for federal income tax purposes of approximately $56 million as of the taxable year ended March 31, 2009.  However, it should be noted that Deep Marine Holdings, Inc. was the subject of a Delaware short form merger pursuant

to Del. Code tit. 8, § 362 on July 1, 2009, and this merger may have reduced the amounts of NOL carryforwards available to the Tax Group.

### (i)      The Reorganization

Under the Plan, the Debtors will be selling or conveying substantially all of their assets. The Debtors will recognize gain or loss on the sale of their respective assets in an amount equal to the difference between (i) the sum of the amount of cash received and all liabilities assumed by any Purchaser (e.g., certain Allowed Administrative Claims, including trade payables), if any, and (ii) the adjusted tax basis of the assets.

### (ii)      Cancellation of Debt

The IRC provides that a debtor in a bankruptcy case must reduce certain of its tax attributes (such as NOL carryforwards, current year NOLs, tax credits, and tax basis in assets) by the amount of any cancellation of debt ("COD") that arises by reason of the discharge of the debtor's indebtedness.  COD is the amount by which the adjusted issue price of indebtedness discharged exceeds the amount of cash, the issue price of any debt instrument and the fair market value of any other property given in exchange therefore, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD (such as where the payment of the cancelled debt would have given rise to a tax deduction).

If the amount of a debtor's COD is sufficiently large, it can eliminate these favorable tax attributes; to the extent the amount of COD exceeds the amount of such tax attributes, the excess COD has no adverse federal income tax consequence (i.e., the remaining COD is simply forgiven).  Any reduction in tax attributes under these rules does not occur until the end of the taxable year after such attributes have been applied to determine the tax in the year of discharge or, in the case of asset basis reduction, the first day of the taxable year following the taxable year in which the COD occurs.

The extent to which NOLs and certain tax attributes survive tax attribute reduction, and the extent of any basis reduction, will depend upon the manner of applying the attribute reduction rules in the context of a consolidated group.

### (b)      *Limitations on NOL Carryforwards and Other Tax Attributes.*

### (i)      Section 382 Limitations – General.

Under Section 382 of the IRC, if a corporation (or consolidated group) undergoes an "ownership change," the amount of its pre-change losses (including NOL carryforwards from periods before the ownership change and certain losses or deductions which are "built-in," (i.e., economically accrued but unrecognized), as of the date of the ownership change) that may be utilized to offset future taxable income generally is subject to an annual limitation (referred to as the "Annual Limitation").

Subject to the business continuation requirement discussed below, the amount of this Annual Limitation is equal to the product of (i) the fair market value of the stock of the corporation (or, in the case of a consolidated group, the common parent) immediately before the ownership change (with certain adjustments) multiplied by (ii) the "long-term tax-exempt rate," which is the highest of the adjusted federal long-term rates in effect for any month in the 3-

calendar-month period ending with the calendar month in which the ownership change occurs. For a corporation (or consolidated group) in bankruptcy that undergoes the ownership change pursuant to a confirmed bankruptcy plan, the stock value generally is determined immediately after (rather than before) the ownership change by taking into account the surrender or cancellation of creditors' claims, also with certain adjustments.  The Annual Limitation can potentially be increased by the amount of certain recognized built-in gains.

Notwithstanding the foregoing general rule, however, if the corporation (or the consolidated group) does not continue its historic business or use a significant portion of its historic assets in a new business for two years after the ownership change, the Annual Limitation resulting from the ownership change is zero (potentially increased by certain recognized built-in gains).

(ii)   <strong>Section 382 Limitations – Built In Gains and Losses.</strong>

As indicated above, the Annual Limitation not only limits the amount of NOL carryforward that can be utilized after an ownership change occurs, it can also operate to limit the deductibility of built-in losses recognized subsequent to the date of the ownership change.  If a loss corporation (or consolidated group) has a net unrealized built-in loss at the time of an ownership change (taking into account most assets and items of "built-in" income and deduction), then any built-in losses recognized during the following five years (up to the amount of the original net unrealized built-in loss) generally will be treated as pre-change losses and similarly will be subject to the Annual Limitation.  Conversely, if the loss corporation (or consolidated group) has a net unrecognized built-in gain at the time of an ownership change, any built-in gains recognized during the following five years (up to the amount of the original net unrealized built-in gain) generally will increase the Annual Limitation in the year recognized, such that the loss corporation (or consolidated group) would be permitted to use its pre-change losses against such built-in gain income in addition to its regular annual allowance.  Although the rules applicable to net unrealized built-in losses generally applies to consolidated groups on a consolidated basis, certain corporations that join the consolidated group within the preceding five years may not be able to be taken into account in the group computation of net unrealized built-in loss.  Such corporations would nevertheless still be taken into account in determining whether the consolidated group has a net unrealized built-in gain.  In general, a loss corporation's (or consolidated group's) net unrealized built-in gain or loss will be deemed to be zero unless it is greater than the lesser of (i) $10 million, or (ii) 15% of the fair market value of the assets (with certain adjustment) before the ownership change.

(iii)   <strong>Section 382 Limitations – Application to the Debtors.</strong>

The Debtors' ability to utilize certain NOLs (and carryforwards thereof) and certain other tax attributes would be potentially subject to limitation if the Debtors were to undergo an "ownership change" within the meaning of Section 382 of the IRC by reason of the implementation of the Plan (or otherwise).  If an ownership change were to occur, the Debtors could incur a material amount of federal income tax in connection with the implementation of the Plan unless (1) the Debtors' assets are distributed pursuant to the Plan on or before the date of such ownership change, or (2) the amount of the Annual Limitation is large enough to permit the Tax Group to utilize an amount of NOL carryforwards (and other attributes) sufficient to offset such income tax.

### (c)  Alternative Minimum Tax.

In general, a federal alternative minimum tax ("AMT") is imposed on a corporation's alternative minimum taxable income at a 20% tax rate to the extent such tax exceeds the corporation's regular federal income tax.  For purposes of computing taxable income for alternative minimum tax purposes, certain tax deductions and other beneficial allowances are modified or eliminated.  For example, a corporation is generally not allowed to offset more than 90% of its taxable income for federal alternative minimum tax purposes by available NOL carryforwards.

In addition, if a corporation (or consolidated group) undergoes an "ownership change" within the meaning of Section 382 of the IRC and is in a net unrealized built-in loss position (as determined for federal alternative minimum tax purposes) on the date of the ownership change, the corporation's (or consolidated group's) aggregate tax basis in its assets would be reduced for certain federal AMT purposes to reflect the fair market value of such assets as of the change date.

Any federal alternative minimum tax that a corporation pays generally will be allowed as a nonrefundable credit against its regular federal income tax liability in future taxable years to the extent the corporation is no longer subject to federal alternative minimum tax.

### Section 17.02    Consequences to the Holders of Certain Claims

Pursuant to and in accordance with the implementation of the Plan, holders of Allowed Unsecured Claims will receive cash in respect of their Allowed Unsecured Claims.  The following discusses the potential federal income tax consequences to the holders of such Claims.

### (a)  Consequences to Holders of Allowed Unsecured Claims.

#### (i)  Gain or Loss – Generally.

In general, holders of Allowed Unsecured Claims will recognize gain or loss in an amount equal to the difference between (i) such holder's "amount realized" in respect of its Claim, which is the amount of cash and the fair market value of any property received by the holder in satisfaction of its Claim, and (ii) the holder's adjusted tax basis in its Claim (other than any Claim for accrued but unpaid interest).  Refer to Section B.2., "Distributions in Discharge of Accrued But Unpaid Interest" for a discussion of the federal income tax consequences of any Claim for accrued interest.

#### (ii)  Gain or Loss – Character.

Where gain or loss is recognized by a holder of an Allowed Unsecured Claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was acquired at a market discount and whether and to what extent the holder had previously claimed a bad debt deduction.  A holder of such a claim that purchased its Claim from a prior holder at a market discount may be subject to the market discount rules of the IRC.  Under those rules, assuming that the holder has made no election to amortize the market discount into income on a current basis with respect to any market discount instrument, any gain recognized on the exchange of such Claim (subject to a *de minimis* rule) generally would be

characterized as ordinary income to the extent of the accrued market discount on such Claim as of the date of the exchange. Holders of Allowed Unsecured Claims are urged to consult their tax advisors to determine the character of any gain or loss recognized in connection with the implementation of the Plan.

(iii) <strong>Property Received – Tax Basis.</strong>

In general, a holder's tax basis in any property received will equal the fair market value of such property on the date of distribution. The holding period for such property generally will begin the day following the date of distribution.

(iv) <strong>Gain or Loss – Imputed Interest.</strong>

If distributions are made to a holder of an Allowed Unsecured Claim subsequent to the Effective Date or on multiple dates, the imputed interest provisions of the IRC may apply to treat a portion of such distributions as interest for federal income tax purposes. Holders of such Claims are urged to consult their tax advisors regarding the possible application of these imputed interest rules.

(v) <strong>Gain or Loss – Effect of Potential Future Distributions.</strong>

The possibility that a holder of an Allowed Unsecured Claim will receive distributions after the Effective Date can have tax consequences to such holders. As previously described, holders of Allowed Unsecured Claims will receive cash in respect of their Claims. All distributions (whether or not received on the Effective Date) to a holder of an Allowed Unsecured Claim should be taxable to such holder in accordance with the principles discussed above in "Gain or Loss – Generally." As noted in "Gain or Loss – Imputed Interest" above, the imputed interest provisions of the IRC may apply to treat a portion of any subsequent distribution as imputed interest. It is possible that recognition of any loss realized by a holder of an Allowed Unsecured Claim may be deferred until such holder can no longer receive future distributions under the Plan from the Debtors.

Each holder of a Claim is urged to consult its tax advisor regarding the recognition of gain or loss for tax purposes in respect of the implementation of the Plan.

(b) <em>Distributions in Discharge of Accrued But Unpaid Interest.</em>

In general, to the extent that any distribution to a holder of a Claim is received in satisfaction of accrued interest or amortized original issue discount ("OID") during its holding period, such amount will be taxable to the holder as interest income (if not previously included in the holder's gross income). Conversely, a holder generally recognizes a deductible loss to the extent any accrued interest claimed or amortized OID was previously included in its gross income and is not paid in full. It is unclear whether a holder of a Claim with previously included OID that is not paid in full would be required to recognize a capital loss rather than an ordinary loss.

Each holder of a Claim is urged to consult its tax advisor regarding the tax consequences related to the deductibility and character of accrued interest or amortized OID that is not paid in full in respect of the implementation of the Plan.

**Section 17.03     Information Reporting and Withholding**

All distributions to holders of Allowed Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding.  Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 28%).  Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding.  Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

**Section 17.04     Importance of Obtaining Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE, AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**ARTICLE XVIII**

**CONCLUSION AND RECOMMENDATION**

The Debtors believe that the Plan is in the best interests of all Holders of Claims, and urge those Holders of Claims entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be RECEIVED by the Voting Agent no later than 3:00 p.m., prevailing Central Time on May 27, 2010.  If the Plan is not confirmed, or if Holders in those Classes do not vote to accept the Plan, the Holders in those Classes may not receive a distribution.

*(Signature Page Immediately Follows)*

Dated:  April 28, 2010

              DEEP MARINE HOLDINGS, INC.

By:     /s/ *John D. Bittner*
Name:    John D. Bittner
Title:     Chief Restructuring Officer

Dated: April 28, 2010

              DEEP MARINE TECHNOLOGY
INCORPORATED

By:     /s/ *John D. Bittner*
Name:    John D. Bittner
Title:     Chief Restructuring Officer

Dated: April 28, 2010

              DEEP MARINE 1, LLC

By:     /s/ *John D. Bittner*
Name:    John D. Bittner
Title:     Chief Restructuring Officer

Dated: April 28, 2010

              DEEP MARINE 2, LLC

By:     /s/ *John D. Bittner*
Name:    John D. Bittner
Title:     Chief Restructuring Officer

Dated: April 28, 2010

              DEEP MARINE 3, LLC

By:     /s/ *John D. Bittner*
Name:    John D. Bittner
Title:     Chief Restructuring Officer

Dated: April 28, 2010

              DEEP MARINE 4, LLC

By:     /s/ *John D. Bittner*
Name:    John D. Bittner
Title:     Chief Restructuring Officer