**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.;** | § | **Case No. 09-39313** |
| **DEEP MARINE TECHNOLOGY** | § | |
| **INCORPORATED;** | § | **Case No. 09-39314** |
| **DEEP MARINE 1, LLC;** | § | **Case No. 09-39315** |
| **DEEP MARINE 2, LLC;** | § | **Case No. 09-39316** |
| **DEEP MARINE 3, LLC;** | § | **Case No. 09-39317** |
| **DEEP MARINE 4, LLC** | § | **Case No. 09-39318** |
| **Debtors.** | § | **(Jointly Administered under 09-39313)** |
| | § | **Chapter 11** |

## JOINT PLAN OF REORGANIZATION

### BRACEWELL & GIULIANI LLP

William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Marcy E. Kurtz
Texas Bar No. 11768600
Marcy.Kurtz@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:     (713) 223-2300
Facsimile:     (713) 221-1212

Dated: April 28, 2010          **Attorneys for the Debtors and Debtors in Possession**

# TABLE OF CONTENTS

**Page**

ARTICLE I  DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ................................................................. 1

Section 1.01  Scope of Defined Terms; Rules of Construction ................................. 1

Section 1.02  Defined Terms ...................................................................................... 2

Section 1.03  Rules of Interpretation ....................................................................... 11

Section 1.04  Computation of Time .......................................................................... 12

Section 1.05  Reference to Monetary Figures .......................................................... 12

Section 1.06  Exhibits and Plan Supplement ........................................................... 12

Section 1.07  Deemed Acts ....................................................................................... 12

ARTICLE II  UNCLASSIFIED CLAIMS (Not Entitled To Vote On The Plan) ............... 13

Section 2.01  Administrative Claims ........................................................................ 13

Section 2.02  Priority Tax Claims ............................................................................ 13

ARTICLE III  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................................................................... 13

Section 3.01  Introduction ......................................................................................... 13

Section 3.02  The DIP Facility Claim ...................................................................... 14

Section 3.03  Voting; Acceptance by Impaired Classes .......................................... 14

Section 3.04  Maritime Lien Priority ....................................................................... 15

(a)  Special legislative rights of governments .............................................. 15

(b)  Expenses of justice while in custodia legis............................................ 15

(c)  Salvage liens ........................................................................................... 15

(d)  Wages of master and crew ..................................................................... 15

(e)  Maritime torts.......................................................................................... 15

(f)  U.S. contract maritime liens for necessaries entered into before a preferred ship mortgage. ........................................................................ 15

Section 3.05  Deep Marine Holdings, Inc................................................................. 16

Section 3.06  Deep Marine Technology Incorporated .............................................. 17

Section 3.07  Deep Marine 1, LLC ........................................................................... 20

Section 3.08  Deep Marine 2, LLC ........................................................................... 23

Section 3.09  Deep Marine 3, LLC ........................................................................... 26

Section 3.10  Deep Marine 4, LLC ........................................................................... 30

ARTICLE IV        MEANS FOR IMPLEMENTATION OF THE PLAN.................................. 32

    Section 4.01        No Substantive Consolidation............................................. 32

    Section 4.02        Sale of the Acquired Assets ................................................ 33

    Section 4.03        Appointment of Liquidating Trustee .................................. 33

    Section 4.04        Duties of the Liquidating Trustee ....................................... 33

    Section 4.05        Distribution of All Net Proceeds of Sale of Assets on the
                    Effective Date ..................................................................... 34

    Section 4.06        Distribution Procedures ...................................................... 35

    Section 4.07        Cancellation of Existing Security Claims ........................... 35

    Section 4.08        Continued Corporate Existence .......................................... 35

    Section 4.09        Directors and Officers ........................................................ 36

    Section 4.10        Preservation of Rights of Action; Settlement .................... 36

    Section 4.11        Employee Benefit Plans...................................................... 39

    Section 4.12        Exclusivity Period ............................................................... 39

    Section 4.13        Effectuating Documents; Further Reorganization Transactions........ 39

    Section 4.14        Exemption from Certain Transfer Taxes ........................... 39

    Section 4.15        Closing of the Debtors' Chapter 11 Cases ......................... 40

ARTICLE V        PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 40

    Section 5.01        Timing and Delivery of Distributions.................................. 40

    Section 5.02        Method of Cash Distributions............................................. 40

    Section 5.03        Failure to Negotiate Checks ............................................... 40

    Section 5.04        Compliance with Tax Requirements................................... 40

    Section 5.05        De Minimis Distributions ................................................... 41

    Section 5.06        Setoffs ................................................................................. 41

    Section 5.07        Distribution Record Date ................................................... 41

ARTICLE VI        EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND
                  OTHER AGREEMENTS ................................................................... 41

    Section 6.01        Assumption/Rejection.......................................................... 41

    Section 6.02        Cure Amounts ..................................................................... 41

    Section 6.03        Assumed Executory Contracts and Unexpired Leases ...................... 42

    Section 6.04        Insurance Policies ............................................................... 42

    Section 6.05        Pass-through......................................................................... 42

|  | Section 6.06 | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 42 |
|  | Section 6.07 | Reservation of Rights | 43 |
|  | Section 6.08 | Nonoccurrence of Effective Date | 43 |
| ARTICLE VII | PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS | | 43 |
|  | Section 7.01 | Objections to Claims | 43 |
|  | (a) | Authority | 43 |
|  | (b) | Objection Deadline | 44 |
|  | Section 7.02 | Estimation of Claims | 44 |
|  | Section 7.03 | No Distributions Pending Allowance | 44 |
|  | Section 7.04 | Distributions After Allowance | 44 |
|  | Section 7.05 | Reduction of Claims | 45 |
|  | Section 7.06 | Compliance with Tax Requirements/Allocations | 45 |
| ARTICLE VIII | CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN | | 45 |
|  | Section 8.01 | Conditions Precedent to Confirmation | 45 |
|  | Section 8.02 | Conditions Precedent to Effective Date | 46 |
|  | Section 8.03 | Substantial Consummation | 46 |
|  | Section 8.04 | Waiver of Conditions | 46 |
|  | Section 8.05 | Revocation, Withdrawal, or Non-consummation | 46 |
| ARTICLE IX | AMENDMENTS AND MODIFICATIONS | | 47 |
| ARTICLE X | RETENTION OF JURISDICTION | | 47 |
| ARTICLE XI | COMPROMISES AND SETTLEMENTS | | 49 |
| ARTICLE XII | MISCELLANEOUS PROVISIONS | | 49 |
|  | Section 12.01 | Bar Dates for Certain Actions | 49 |
|  | (a) | Administrative Claims; Substantial Contribution Claims | 49 |
|  | (b) | Administrative Ordinary Course Liabilities | 50 |
|  | (c) | Administrative Tax Claims | 50 |
|  | (d) | Professional Fee Claims | 50 |
|  | Section 12.02 | Payment of Statutory Fees | 50 |
|  | Section 12.03 | Severability of Plan Provisions | 51 |
|  | Section 12.04 | Successors and Assigns | 51 |

Section 12.05     Exculpation ........................................................................ 51

Section 12.06     Indemnification .................................................................. 52

Section 12.07     Discharge of Liabilities ...................................................... 52

Section 12.08     Permanent Injunction ......................................................... 53

Section 12.09     Bankruptcy Rule 3016 Compliance .................................... 53

Section 12.10     Term of Injunctions or Stay ............................................... 53

Section 12.11     Integral to Plan .................................................................. 53

Section 12.12     Binding Effect .................................................................... 53

Section 12.13     Notices ............................................................................... 54

Section 12.14     Setoffs ................................................................................ 55

Section 12.15     Recoupment ....................................................................... 55

Section 12.16     Release of Liens ................................................................. 55

Section 12.17     Request for Expedited Tax Review .................................... 55

Section 12.18     Dissolution of Committee .................................................. 56

Section 12.19     No Admissions ................................................................... 56

Section 12.20     Governing Law ................................................................... 56

ARTICLE XIII    CONFIRMATION REQUEST ...................................................... 56

## INTRODUCTION

Deep Marine Holdings, Inc., a Delaware Corporation ("Deep Marine"), and its affiliates (collectively with Deep Marine, the "Debtors"),[1] filed for bankruptcy protection on December 4, 2009. The Debtors hereby propose the following joint plan of reorganization for the resolution of outstanding creditor claims against, and equity interests in, the Debtors. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129 (as hereinafter defined).

Although styled as a "joint plan," the Plan consists of six (6) separate plans for the Debtors. Consequently, votes will be tabulated separately for each Debtor with respect to each Debtor's Plan and distributions will be made separately to each separate class as provided in the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of the Plan and certain related matters. No materials other than the Disclosure Statement, the Plan and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY. ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

### ARTICLE I
### DEFINED TERMS, RULES OF INTERPRETATION,
### AND COMPUTATION OF TIME

**Section 1.01   Scope of Defined Terms; Rules of Construction**

For purposes of this Plan, except as expressly defined elsewhere in the Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in Article I of this Plan. Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular. The masculine gender shall include the feminine, and the feminine gender shall include the masculine.

---

[1] The affiliated entities Filing bankruptcy cases on December 4, 2009 were: Deep Marine Technology Incorporated; Deep Marine 1, LLC; Deep Marine 2, LLC; Deep Marine 3, LLC; and Deep Marine 4, LLC.

**Section 1.02   Defined Terms**

(1)      "Acquired Assets" means such assets of the Debtors that are purchased by the Purchaser pursuant to the Bidding Procedures and the Sale Order or the Confirmation Order.

(2)      "Administrative Claim(s)" means a Claim(s) for costs and expenses of administration pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (c) all Allowed Professional Fee Claims; (d) any Cure Costs; and (e) all Claims for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5) Allowed by the Bankruptcy Court.

(3)      "Administrative Claims Bar Date" has the meaning set forth in Section 12.01(a) of the Plan.

(4)      "Affiliate" has the meaning set forth in Bankruptcy Code section 101(2).  For purposes of Article XII of the Plan and the definition of Related Person, an Affiliate of a Person shall also include another Person controlling, controlled by or under common control with such first Person.  For purposes of this definition, "control" means, when used with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract, or otherwise, and the terms "controlling" and "controlled" have correlative meanings.

(5)      "Allowed" means with reference to any Claim or Interest: any Claim or Interest or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the later of (i) the Claims Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Schedules as liquidated, non-contingent and undisputed; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or is permitted herein, or denied by a Final Order; (c) as to which liability of the Debtors and the amount thereof has been determined and expressly allowed by a Final Order; (d) as to which the liability of the Debtors and the amount thereof are determined and expressly allowed by final order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) that is expressly deemed allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed Administrative Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with Section 12.01 of this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtors or the Liquidating Trustee (1) have not interposed a timely objection or (2) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order.

(6)      "Auction" means the Bankruptcy Court ordered event by which competing bids are obtained for the Acquired Assets as contemplated by the Bidding Procedures and Sale Motion.

(7)      "Avoidance Actions" means any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a).

(8)      "Ballot" means the document for accepting or rejecting the Plan, in the form approved by the Bankruptcy Court.

(9)      "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as  in effect on the Petition Date as heretofore or hereafter amended.

(10)      "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

(11)      "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

(12)      "Bar Date(s)" means the applicable date(s) designated by the Bankruptcy Court as the last date for Filing proofs of Claims or Interests in the Chapter 11 Cases of the respective Debtors.

(13)      "Bidding Procedures" means those certain Bidding Procedures approved pursuant to the Bidding Procedures Order.

(14)      "Bidding Procedures and Sale Motion" means that certain Debtors' Expedited Motion for (A) Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Property, (II) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (III) Approving Form and Notice Thereof, and (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief Filed on March 15, 2010.

(15)      "Bidding Procedures Order" means that certain Order Approving Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Property, (II) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (III) Approving Form and Notice Thereof, which was entered by the Bankruptcy Court on April 12, 2010.

(16)     "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

(17)     "Cash" means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

(18)     "Causes of Action" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

(19)     "Chapter 11 Case(s)" means (a) when used in reference to a particular Debtor or group of Debtors, the chapter 11 case pending for that Debtor or particular group of Debtors in the Bankruptcy Court, and (b) when used in reference to all of the Debtors, the above-captioned procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(20)     "Claim" means a claim, whether or not asserted or Allowed, as defined in Bankruptcy Code section 101(5).

(21)     "Claims Objection Deadline" means the first Business Day which is at least 180 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 7.01(b) of the Plan.

(22)     "Class" means a category of Claims or Interests as set forth in Article III below pursuant to Bankruptcy Code section 1122.

(23)     "Closing" means the closing of the sale of the Acquired Assets to the Purchaser in accordance with the Sale Order or the Confirmation Order.

(24)     "Collateral" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(25)     "Committee" means the official committee of unsecured creditors appointed pursuant to Bankruptcy Code section 1102(a) in the Chapter 11 Cases.

(26)     "Confirmation Date" means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(27)    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be continued from time to time.

(28)    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

(29)    "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases.

(30)    "Consummation" takes place simultaneously with the completion of the Closing on the Effective Date.

(31)    "Creditor" means any Person who holds a Claim against any Debtor.

(32)    "Cure Costs" means the costs required of a Debtor to cure any and all defaults, pursuant to Bankruptcy Code section 365, of such Debtor arising under any executory contract to which such Debtor is a party, or any unexpired lease to which such Debtor is a party.

(33)    "Debtor(s)" means individually or collectively the following debtors and debtors in possession: Deep Marine; DMT; DM1; DM2; DM3; and, DM4.

(34)    "Deep Marine" means Deep Marine Holdings, Inc., the Debtor in Case No. 09-39313 pending in the Bankruptcy Court.

(35)    "Deficiency Claim" means a Claim in the amount by which an Allowed Secured Claim exceed the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with section 506(a) of the Bankruptcy Code.  A Deficiency Claim is General Unsecured Claim.

(36)    "DIP Budget" means the budget approved (as amended and supplemented) as part of any debtor in possession financing order entered in the Chapter 11 Cases.

(37)    "DIP Facility" means that certain loan and security agreement effective as of December 18, 2009, by and between Deep Marine, DMT, DM1, DM2, DM3, DM4 and the DIP Lender, as amended, modified and supplemented, and as approved by Court order.

(38)    "DIP Facility Claim" means the Claim of the DIP Lender against the Debtors, represented by, related to, arising under, or in connection with the DIP Facility, for all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments made to the DIP Lender prior to the Effective Date on account of such Claims (if any).

(39)    "DIP Lender" means SunChase Holding, Inc. as lender under the DIP Facility.

(40)    "Disallowed Claim" means all or such part of a Claim that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

(41)     "Disclosure Statement" means the Disclosure Statement for the Debtors' Joint Plan of Reorganization dated as of March 31, 2010, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

(42)     "Disputed" means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties; (b) proof of which was required to be Filed but as to which a Proof of Claim or Interest was not timely or properly Filed; (c) proof of which was timely and properly Filed and which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed; (d) that is disputed in accordance with the provisions of this Plan; or (e) as to which the Debtors or the Liquidating Trustee have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of determining whether a particular Claim is a Disputed Claim prior to the expiration of any period of limitation fixed for the interposition by the Debtors or the Liquidating Trustee of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(43)     "Distribution Date" means the date, occurring as soon as practicable after the Effective Date, upon which distributions are made pursuant to the terms of the Plan to Holders of Allowed Administrative Claims, and other Allowed Claims; provided, however, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

(44)     "Distribution Record Date" has the meaning set forth in Section 5.07 of the Plan.

(45)     "DMT" means Deep Marine Technology Incorporated, the Debtor in Case No. 09-39314 pending in the Bankruptcy court.

(46)     "DM1" means Deep Marine 1, LLC, the Debtor in Case No. 09-39315 pending in the Bankruptcy Court.

(47)     "DM2" means Deep Marine 2, LLC, the Debtor in Case No. 09-39316 pending in the Bankruptcy Court.

(48)     "DM3" means Deep Marine 3, LLC, the Debtor in Case No. 09-39317 pending in the Bankruptcy Court.

(49)     "DM4" means Deep Marine 4, LLC, the Debtor in Case No. 09-39318 pending in the Bankruptcy Court.

(50)     "Effective Date" means the Business Day on which all conditions set forth in Section 8.02 of the Plan have been satisfied or waived as permitted hereunder.

(51)     "Employee Benefit Plans" means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, offices or employees (whether salaried or hourly, active or retired) of the applicable Debtor.

(52)     "Entity" has the meaning set forth in Bankruptcy Code section 101(15).

(53)     "Estate(s)" means individually or collectively the estate created for such Debtor in its Chapter 11 Case pursuant to Bankruptcy Code section 541.

(54)     "Exhibit" means an exhibit annexed either to the Plan or the Disclosure Statement or Filed as part of the Plan Supplement.

(55)     "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

(56)     "Final Order" means (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings or motion for re-argument or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, motion for re-argument or rehearing thereof has been Filed or sought, such order of the Bankruptcy Court shall not have been stayed.

(57)     "GE" means, collectively, GE Business Financial Services, Inc., General Electric Capital Corporation, and any other entity for which GE Business Financial Services, Inc. is the Administrative Agent under any credit agreement or related credit documents with the Debtors.

(58)     "General Unsecured Claim" means any Claim that is not Secured, entitled to priority under the Bankruptcy Code, or a Subordinated Equity Securities Claim.

(59)     "Governance Documents" means any certificate of formation, bylaws, limited liability company agreements (or any other formation and organizational documents) of the Debtors in effect as of the Petition Date.

(60)     "Holder" means the beneficial holder of any Claim or Interest.

(61)     "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

(62)     "Insider" has the meaning set forth in Bankruptcy Code 101(31).

(63)     "Interests" or "Interest" means the interest of any holder of equity securities in any of the Debtors represented by any issued outstanding common stock, preferred interests or other

instrument evidencing a present ownership interest in any of the Debtors prior to the Effective Date (including prior to the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common or preferred interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common interests or preferred interests or other equity securities (or any right, claim, or interest in and to any common interests, preferred interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common or preferred interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common interests, preferred interests or other equity securities, however evidenced.

(64) "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

(65) "Liquidating Trust" means the entity created pursuant to the Liquidating Trust Agreement.

(66) "Liquidating Trust Agreement" means the Liquidating Trust Agreement approved and entered into in accordance with the Plan pursuant to which the Liquidating Trust will be established and administered.

(67) "Liquidating Trustee" means John Bittner or any other Person subsequently appointed in accordance with the Plan and the Liquidating Trust Agreement to oversee and administer the Liquidating Trust.

(68) "Maritime Senior Secured Claim" means a Secured Claim that is secured by a Lien that qualifies as a "preferred maritime lien" under 46 U.S.C. § 31301(5) or other applicable law.

(69) "Maritime Junior Secured Claim" means a Secured Claim that is secured by a Lien that qualifies as a maritime lien pursuant to 46 U.S.C. § 31301 et seq., or other applicable law, but that is not a "preferred maritime lien" under 46 U.S.C. § 31301(5), or other applicable law, or a "preferred mortgage" under 46 U.S.C. § 31301(6), or other applicable law.

(70) "Mortgage Claim" means a Secured Claim that is secured by a Lien that qualifies as a "preferred mortgage" under 46 U.S.C. § 31301(6).

(71) "Net Proceeds" means all proceeds received from the sale, disposition, collection or other monetization of any Other Asset, less reasonable and customary out-of-pocket expenses incurred by the Liquidating Trustee in connection with such sale, disposition, collection or other monetization.

(72) "Other Assets" has the meaning set forth in Section 4.05 of the Plan.

(73)     "Other Secured Claim" means any Secured Claim against any Debtor other than a Maritime Senior Secured Claim, Secured Mortgage Claim of GE, Secured Claim of Otto Candies, LLC, Secured Mortgage Claim of Otto Candies, LLC, Secured Mortgage Claim of DCC Ventures, LLC or Maritime Junior Secured Claim.

(74)     "Person" means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind.

(75)     "Petition Date" means the date or dates on which each of the respective Debtors Filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

(76)     "Plan Distribution" means the payment or distribution under the Plan of Cash, assets, securities or instruments evidencing an obligation under the Plan or other property of any nature to any Holder of an Allowed Claim.

(77)     "Plan Supplement Filing Date" means the date the Debtors File the Plan Supplement, which date shall not be later than ten (10) days prior to the Voting Deadline (except as may be otherwise agreed to by the Debtors and the Committee).

(78)     "Plan Supplement" means any supplement to the Plan, and the compilation of documents and forms of documents and Exhibits to the Plan, as amended, modified or supplemented from time to time, to be Filed by the Debtors as permitted herein on or before the Plan Supplement Filing Date.

(79)     "Plan" means this Joint Plan of Reorganization, including any Exhibits and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended, modified or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(80)     "Potential Bidder" means any Person who wishes to participate in the bidding process.

(81)     "Priority Non-Tax Claims" means any Claim other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in Bankruptcy Code section 507(a).

(82)     "Priority Tax Claim" means a Claim that is entitled to priority pursuant to Bankruptcy Code section 507(a)(8).

(83)     "Pro Rata" means that proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class except in cases where Pro Rata is used in reference to multiple Classes in which case, Pro Rata means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

(84)    "Professional" means any professional (a) employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328 or 1103 and to be compensated for services rendered pursuant to Bankruptcy Code sections 327, 328, 329, 330 or 331, or (b) seeking compensation and reimbursement pursuant to Bankruptcy Code section 503(b)(4).

(85)    "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

(86)    "Proof of Claim (or Interest)" means the proof of claim (or interest) that must be Filed by a Holder of a Claim (or Interest) by the date(s), if any, designated by the Bankruptcy Court as the last date(s) for Filing proofs of claim against or interests in the Debtors.

(87)    "Purchase and Sale Agreement" means the agreement for the purchase and sale of the Acquired Assets between some or all of the Debtors and the Purchaser, which agreement, if the Stalking Horse Bidder is the Purchaser because there are no other Qualified Bidders, will be the Purchase and Sale Agreement entered into between the Debtors and Oceaneering International Inc. dated March 15, 2010.

(88)    "Purchaser" means the Person or group that is the successful bidder under the Bidding Procedures and that purchases the Acquired Assets pursuant to the Sale Order or the Confirmation Order.

(89)    "Qualified Bidder" means a Potential Bidder who has met the prerequisites to become a qualified bidder set forth in the Bidding Procedures.

(90)    "Related Persons" means, with respect to any Person, their officers, directors (or the functional equivalent, if any), employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

(91)    "Released Parties" means, collectively, each of the Debtors on and after the Petition Date, the Liquidating Trustee, the Committee, and each of their respective Related Persons, except that "Released Parties" does not include Otto Candies, LLC, Otto Candies Jr., Otto Candies III, Candies Shipbuilders, LLC, Nasser Kazeminy, DCC Ventures, LLC, NJK Holding Corporation, NKOC, Inc., Triomphe Investors, LLC, Joseph Grano, Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman, John Hudgens, or any other party against whom rights are preserved in Section 4.10 of the Plan (and their respective Related Persons).

(92)    "Sale Order" means that certain Order Approving Debtors' Motion for Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief, entered by the Bankruptcy Court.

(93)    "Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to Bankruptcy Code section 521 and Bankruptcy

Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(94)     "Secured" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a).  To the extent that the value of a Creditor's interest in the Estate's interest in such property is less than the amount of the Claim that has the benefit of such security, such Claim is a Deficiency Claim.

(95)     "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

(96)     "Stalking Horse Bidder" has the meaning set forth in the Bidding Procedures.

(97)     "Subordinated Claim" means a Claim, if any, subject to subordination under Section 510(b) of the Bankruptcy Code, including without limitation, any Claim that arises from the rescission of a purchase or sale of an equity interest, or for damages arising from the purchase or sale of such a security, or for reimbursement, indemnification, or contribution allowed under Bankruptcy Code section 502 on account of such Claim.

(98)     "Subsidiary" means a Debtor other than Deep Marine.

(99)     "Transfer" shall mean the sale of the Acquired Assets to the Purchaser pursuant to the Sale Order or the Confirmation Order.

(100)     "Unclaimed Property" has the meaning set forth in Section 5.03 of the Plan.

(101)     "Unimpaired" means a Claim or Interest that is not Impaired.

(102)     "Unsold Assets" has the meaning set forth in Section 4.07 of the Plan.

(103)     "Voting Agent" means Grant Thornton as employed and retained by the Debtors pursuant to an order of the Bankruptcy Court, as disclosure statement and plan noticing agent, and balloting agent.

(104)     "Voting Deadline" means the date by which a Creditor or Interest Holder must deliver a Ballot to accept or reject the Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan.

**Section 1.03   Rules of Interpretation**

For purposes of the Plan, (i) except as provided in Article IX, any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular

form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) except as provided in Article IX, any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan; (iv) the words "herein," "hereto," and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (vi) the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

**Section 1.04    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Section 1.05    Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to legal currency of the United States of America, unless otherwise expressly provided.

**Section 1.06    Exhibits and Plan Supplement**

All Exhibits, as well as the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely Filed with the Clerk of the Bankruptcy Court on or before the Plan Supplement Filing Date.  Holders of Claims and Interests may obtain a copy of the Filed Exhibits and Plan Supplement upon written request to the Debtors.  Upon their Filing, the Exhibits and Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website at https://ecf.txsb.uscourts.gov/cgi-bin/login.pl (login and password required).  The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Debtors explicitly reserve the right to modify or make additions to or subtractions from any Exhibit to the Plan or the Plan Supplement and to amend, modify or supplement any Exhibit to the Plan prior to the Confirmation Date.

**Section 1.07    Deemed Acts**

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

# ARTICLE II
## UNCLASSIFIED CLAIMS
### (NOT ENTITLED TO VOTE ON THE PLAN)

In accordance with Bankruptcy Code section 1123(a)(l), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III hereof.  These unclassified Claims are treated as follows:

## Section 2.01   Administrative Claims

Except as otherwise provided for in the Plan, and subject to the requirements of Section 12.01 of the Plan, each Holder of an Allowed Administrative Claim shall receive from the Liquidating Trustee in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Administrative Claim the amount of such Allowed Administrative Claim, in Cash belonging to the relevant Debtor, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtors, or, after the Effective Date, the Liquidating Trustee.

## Section 2.02   Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive from the Liquidating Trustee, in full satisfaction, release settlement, and discharge of and in exchange for such Allowed Priority Tax Claim the amount of such Allowed Priority Tax Claim, in Cash belonging to the relevant Debtor, on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that is ten (10) Business Days after the date such Claim is Allowed, or (iii) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or, after the Effective Date, the Liquidating Trustee.

# ARTICLE III
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

## Section 3.01   Introduction

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to this Plan and Bankruptcy Code sections 1122 and 1123(a)(l).  A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims (except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code section 1123(a)(l)) are classified in Section 3.05 through Section 3.10 below.

**Section 3.02    The DIP Facility Claim**

The DIP Facility Claim consist of the Claim of the DIP Lender related to, arising under, or in connection with the DIP Facility, for all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments made to the DIP Lender prior to the Effective Date on account of such Claims (if any).  The DIP Facility Claim is secured by a lien on the DMT Sapphire.  Additionally, the DIP Facility Claim constitutes an allowed senior administrative claim pursuant to Bankruptcy Code section 364(c)(1) against each of the Debtors with priority over all valid claims, administrative expenses, adequate protection claims, and all other valid claims against each of the Debtors.

The DIP Facility Claim will consist of an Allowed Claim against Deep Marine Technology Incorporated, Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC, such that each of the foregoing Debtors shall satisfy an equal one-fifth of the aggregate amount of all obligations under the DIP Facility outstanding as of the Effective Date, as such amount is agreed to by the DIP Lender and the Debtors, or, in the event of a dispute regarding such amount, as such amount has been determined by a Final Order of the Bankruptcy Court.

Except to the extent that the DIP Lender has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), the DIP Lender shall receive, on account of, and in full and complete settlement, release and discharge of and in exchange for, the DIP Facility Claim, Cash, in equal amounts, from DMT, DM1, DM2, DM3, and DM4, with such aggregate Cash amount to equal the amount of the Allowed DIP Facility Claim, on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date such Claim becomes an Allowed Claim (or as soon as reasonably practicable thereafter).

The Debtors believe that, as of the Effective Date, the total amount of the Allowed DIP Facility Claims will be approximately $5.69 million.

**Section 3.03    Voting; Acceptance by Impaired Classes**

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.  All classes are Impaired under this Plan except for Priority Non-Tax Claims, Senior Secured Maritime Claims, Secured Mortgage Claims of GE, Secured Claims of Otto Candies, LLC, Secured Mortgage Claims of Otto Candies, LLC, Secured Mortgage Claims of DCC Ventures, LLC and Other Secured Claims.

**Section 3.04   Maritime Lien Priority**

Among Maritime Senior Secured Claims applicable law creates several subclasses, each with priority over subsequent classes.  The subclasses, in order of priority, are as follows:

(a)   *Special legislative rights of governments (e.g. wreck removal, St. Lawrence Seaway and Panama Canal tolls and damages, rights of detention, removal and destruction for pollution, rights of forfeiture and sale for various federal statutory offences).*

(b)   *Expenses of justice while in custodia legis.*

(c)   *Salvage liens.*

(d)   *Wages of master and crew.*

(e)   *Maritime torts.*

(f)   *U.S. contract maritime liens for necessaries entered into before a preferred ship mortgage.* [2]

Within each subclass applicable law provides that maritime liens are ranked in reverse order of attachment.  However, applicable law also provides that, to the extent particular maritime liens of the same class arose within the same voyage, season, or short period, they may be paid pro rata.

While this Plan does not create a voting subclass for each subclass listed above, to the extent all Maritime Senior Secured Claims are not paid in full, distributions relative to each subclass shall be made in order of priority as stated above, and distributions within each subclass shall be made in reverse order of attachment, with no Maritime Senior Secured Claim receiving any distribution until those Maritime Senior Secured Claims with superior priority are first paid in full, except in those cases where liens arose within the same voyage, season, or short period, in which cases distributions shall be made pro rata.

Applicable law also provides that Maritime Junior Secured Claims are ranked in reverse order of attachment.  However, applicable law also provides that, to the extent particular maritime liens of the same class arose within the same voyage, season, or short period, they may be paid pro rata.  Thus, to the extent all Maritime Junior Secured Claims are not paid in full, distributions shall be made in reverse order of attachment with no Maritime Junior Secured Claim receiving any distribution until those Maritime Junior Secured Claims with superior priority are first paid in full, except in those cases where liens arose within the same voyage, season, or short period, in which cases distributions shall be made pro rata.

---

[2] The descriptions provided in these subclasses are not intended as an exhaustive list of bases for maritime liens.  To the extent that additional bases for maritime liens exist under applicable law, such liens will be prioritized in accordance with applicable law.

**Section 3.05   Deep Marine Holdings, Inc.**

      (1)      **Class A1:  Priority Non-Tax Claims**

Classification:  Class A1 consists of all Allowed Priority Non-Tax Claims against Deep Marine Holdings, Inc.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class A1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class A1 shall receive in full satisfaction, release and discharge of and in exchange for, such Claim, Cash of Deep Marine equal to the amount of such Allowed Claim in Class A1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class A1 becomes an Allowed Claim in Class A1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class A1 are Unimpaired.  Each Holder of an Allowed Claim in Class A1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

      (2)      **Class A2:  Other Secured Claims**

Classification:   Class A2 consists of all Allowed Other Secured Claims against Deep Marine Holdings, Inc.

Treatment:  Each Holder of an Allowed Class A2 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Class A2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class A2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class A2 Claim; or (b) satisfaction of any such Allowed Class A2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class A2 are Unimpaired.  Each Holder of an Allowed Claim in Class A2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

      (3)      **Class A3:  General Unsecured Claims**

Classification:  Class A3 consists of all Allowed General Unsecured Claims against Deep Marine Holdings, Inc.

Treatment:  Each Holder of an Allowed Class A3 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Claim, from the Liquidating Trust on or as

soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to Deep Marine in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against Deep Marine and all Allowed Claims in Classes A1 and A2.

Voting:  Class A3 Claims are Impaired.  Each Holder of an Allowed Claim in Class A3 shall be entitled to vote to accept or reject the Plan.

(4)    **Class A4:  Subordinated Claims**

Classification:  Class A4 consists of Allowed Subordinated Claims against Deep Marine Holdings, Inc.

Treatment:  Each Holder of an Allowed Class A4 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging Deep Marine in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against Deep Marine and all Allowed Claims in Classes A1, A2 and A3.

Voting:  Class A4 Claims are Impaired.  Each Holder of an Allowed Claim in Class A4 shall be entitled to vote to accept or reject the Plan.

(5)    **Class A5:  Interests**

Classification:  Class A5 consists of all Allowed Interests in Deep Marine Holdings, Inc.

Treatment:   On the Effective Date, all of the Class A5 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class A5 Interest shall receive in full satisfaction, release and discharge of, and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging Deep Marine in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against Deep Marine and all Allowed Claims in Classes A1, A2, A3 and A4.

Voting:  Class A5 Interests are Impaired.  Each Holder of an Allowed Claim in Class A5 shall be entitled to vote to accept or reject the Plan.

**Section 3.06   Deep Marine Technology Incorporated**

(1)    **Class B1:  Priority Non-Tax Claims**

Classification:   Class B1 consists of all Allowed Priority Non-Tax Claims against Deep Marine Technology Incorporated.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class B1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class B1 shall receive

in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DMT equal to the amount of such Allowed Claim in Class B1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class B1 becomes an Allowed Claim in Class B1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class B1 are Unimpaired.   Each Holder of an Allowed Claim in Class B1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(2)   **Class B2:  Secured Claims of Otto Candies, LLC**

Classification:   Class B2 consists of Allowed Secured Claims of Otto Candies, LLC against Deep Marine Technology Incorporated.

Treatment:   Each Holder of an Allowed Class B2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class B2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class B2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class B2 Claim; or (b) satisfaction of any such Allowed Class B2 Claim by delivering the Collateral securing any such Claim.   Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:   Claims in Class B2 are Unimpaired.   Each Holder of an Allowed Claim in Class B2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(3)   **Class B3:   Secured Claims of PNC Bank, N.A. (as successor to National City Business Credit and National City Bank)**

Classification: Class B3 consists of all Allowed Secured Claims of PNC Bank, N.A. (as successor to National Business Credit and National City Bank) against Deep Marine Technology Incorporated.

Treatment:   Each Holder of an Allowed Class B3 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Class B3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), the Cash Net Proceeds of any account receivable securing such Holder's Class B3 Claim, after satisfaction in full of all superior liens, up to the Allowed Amount of the Holder's Class B3 Claim, on or as soon as practicable after the later of (a) the date that is five (5) Business Days after such Claim is Allowed; (b) the date that is five (5) Business Days after collection such account receivable; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class B3 Claims are Impaired.  Each Holder of an Allowed Claim in Class B3 shall be entitled to vote to accept or reject the Plan.

(4)     **Class B4:  Other Secured Claims**

Classification:  Class B4 consists of all Allowed Other Secured Claims against Deep Marine Technology Incorporated.

Treatment:  Each Holder of an Allowed Class B4 Claim shall receive in full satisfaction, release and discharge of, and in exchange for such Allowed Class B4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class B4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class B4 Claim; or (b) satisfaction of any such Allowed Class B4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class B4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class B4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(5)     **Class B5:  General Unsecured Claims**

Classification:  Class B5 consists of all Allowed General Unsecured Claims against Deep Marine Technology Incorporated.

Treatment:  Each Holder of an Allowed Class B5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DMT in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DMT and all Allowed Claims in Classes B1, B2, B3 and B4.

Voting:  Class B5 Claims are Impaired.  Each Holder of an Allowed Claim in Class B5 shall be entitled to vote to accept or reject the Plan.

(6)     **Class B6:  Subordinated Claims**

Classification:  Class B6 consists of Allowed Subordinated Claims against Deep Marine Technology Incorporated.

Treatment:  Each Holder of an Allowed Class B6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DMT in the Liquidating Trust after payment of all Allowed Administrative Claims

and all Allowed Priority Tax Claims against DMT and all Allowed Claims in Classes B1, B2, B3, B4 and B5.

Voting:  Class B6 Claims are Impaired.  Each Holder of an Allowed Claim in Class B6 shall be entitled to vote to accept or reject the Plan.

(7)    **Class B7:  Interests**

Classification:  Class B7 consists of all Allowed Interests in Deep Marine Technology Incorporated.

Treatment:   On the Effective Date, all of the Class B7 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class B7 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging DMT in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DMT and all Allowed Claims in Classes B1, B2, B3, B4, B5 and B6.

Voting:  Class B7 Interests are Impaired.  Each Holder of an Allowed Claim in Class B7 shall be entitled to vote to accept or reject the Plan.

**Section 3.07    Deep Marine 1, LLC**

(1)    **Class C1:  Priority Non-Tax Claims**

Classification:  Class C1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 1, LLC.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class C1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class C1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM1 equal to the amount of such Allowed Claim in Class C1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class A1 becomes an Allowed Claim in Class C1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class C1 are Unimpaired.  Each Holder of an Allowed Claim in Class C1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(2)    **Class C2:  Maritime Senior Secured Claims**

Classification:  Class C2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C2 Claim; or (b) satisfaction of any such Allowed Class C2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class C2 are Unimpaired.  Each Holder of an Allowed Claim in Class C2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(3)     **Class C3:  Secured Mortgage Claim of GE**

Classification:  Class C3 consists of all Allowed Secured Mortgage Claims of GE against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C3 Claim; or (b) satisfaction of any such Allowed Class C3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class C3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class C3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(4)     **Class C4:  Maritime Junior Secured Claims**

Classification:  Class C4 consists of all Allowed Maritime Junior Secured Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C4 Claim up to the Allowed Amount of the Holder's Class C4 Claim; or (b) satisfaction of any such

Allowed Class C4 Claim by delivering the Collateral securing any such Claim. Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class C4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class C4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(5)     **Class C5:  Other Secured Claims**

Classification:   Class C5 consists of all Allowed Other Secured Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class C5 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class C5 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class C5 Claim; or (b) satisfaction of any such Allowed Class C5 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class C5 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class C5 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(6)     **Class C6:  General Unsecured Claims**

Classification:  Class C6 consists of all Allowed General Unsecured Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM1 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM1 and all Allowed Claims in Classes C1, C2, C3, C4 and C5.

Voting:  Class C6 Claims are Impaired.  Each Holder of an Allowed Claim in Class C6 shall be entitled to vote to accept or reject the Plan.

(7)     **Class C7:  Subordinated Claims**

Classification:   Class C7 consists of all Allowed Subordinated Claims against Deep Marine 1, LLC.

Treatment:  Each Holder of an Allowed Class C7 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM1 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM1 and all Allowed Claims in Classes C1, C2, C3, C4, C5, and C6.

Voting:  Class C7 Claims are Impaired.  Each Holder of an Allowed Claim in Class C7 shall be entitled to vote to accept or reject the Plan.

(8)     **Class C8:  Interests**

Classification:  Class C8 consists of all Allowed Interests in Deep Marine 1, LLC.

Treatment:   On the Effective Date, all of the Class C8 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class C8 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM1 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM1 and all Allowed Claims in Classes C1, C2, C3, C4, C5, C6 and C7.

Voting:  Class C8 Interests are Impaired.  Each Holder of an Allowed Claim in Class C8 shall be entitled to vote to accept or reject the Plan.

**Section 3.08     Deep Marine 2, LLC**

(1)     **Class D1:  Priority Non-Tax Claims**

Classification:   Class D1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 2, LLC.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class D1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class D1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM2 equal to the amount of such Allowed Claim in Class D1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class A1 becomes an Allowed Claim in Class A1 (or as soon as reasonably practicable thereafter).

Voting:  Claims in Class D1 are Unimpaired.  Each Holder of an Allowed Claim in Class D1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(2)     **Class D2:  Maritime Senior Secured Claims**

Classification:  Class D2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D2 Claim; or (b) satisfaction of any such Allowed Class D2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class D2 are Unimpaired.  Each Holder of an Allowed Claim in Class D2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(3)     **Class D3:  Secured Mortgage Claim of GE**

Classification:  Class D3 consists of all Allowed Secured Mortgage Claims of GE against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D3 Claim; or (b) satisfaction of any such Allowed Class D3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class D3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class D3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(4)    **Class D4:  Maritime Junior Secured Claims**

<u>Classification</u>:  Class D4 consists of all Allowed Maritime Junior Secured Claims against Deep Marine 2, LLC.

<u>Treatment</u>:  Each Holder of an Allowed Class D4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D4 Claim; or (b) satisfaction of any such Allowed Class D4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

<u>Voting</u>:  Class D4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class D4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(5)    **Class D5:  Other Secured Claims**

<u>Classification</u>:  Class D5 consists of all Allowed Other Secured Claims against Deep Marine 2, LLC.

<u>Treatment</u>:  Each Holder of an Allowed Class D5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class D5 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class D5 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class D5 Claim; or (b) satisfaction of any such Allowed Class D5 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

<u>Voting</u>:  Class D5 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class D5 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(6)    **Class D6:  General Unsecured Claims**

<u>Classification</u>:  Class D6 consists of all Allowed General Unsecured Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM2 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims of DM2 and all Allowed Claims in Classes D1, D2, D3, D4, and D5.

Voting:  Class D6 Claims are Impaired.  Each Holder of an Allowed Claim in Class D6 shall be entitled to vote to accept or reject the Plan.

(7)    **Class D7:  Subordinated Claims**

Classification:  Class D7 consists of Allowed Subordinated Claims against Deep Marine 2, LLC.

Treatment:  Each Holder of an Allowed Class D7 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM2 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM2 and all Allowed Claims in Classes D1, D2, D3, D4, D5, and D6.

Voting:  Class D7 Claims are Impaired.  Each Holder of an Allowed Claim in Class D7 shall be entitled to vote to accept or reject the Plan.

(8)    **Class D8:  Interests**

Classification:  Class D8 consists of all Allowed Interests in Deep Marine 2, LLC.

Treatment:   On the Effective Date, all of the Class D8 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class D8 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging DM2 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM2 and all Allowed Claims in Classes D1, D2, D3, D4, D5, D6 and D7.

Voting:  Class D8 Interests are Impaired.  Each Holder of an Allowed Claim in Class D8 shall be entitled to vote to accept or reject the Plan.

**Section 3.09    Deep Marine 3, LLC**

(1)    **Class E1:  Priority Non-Tax Claims**

Classification:  Class E1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 3, LLC.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class E1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class E1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM3 equal to the amount of such Allowed Claim in Class E1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class E1 becomes an Allowed Claim in Class E1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class E1 are Unimpaired.  Each Holder of an Allowed Claim in Class E1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(2)     **Class E2:  Maritime Senior Secured Claims**

Classification:  Class E2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E2 Claim; or (b) satisfaction of any such Allowed Class E2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class E2 are Unimpaired.  Each Holder of an Allowed Claim in Class E2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(3)     **Class E3:  Secured Mortgage Claims of DCC Ventures, LLC and Otto Candies, LLC**

Classification:   Class E3 consists of Allowed Secured Mortgage Claims of DCC Ventures, LLC and Otto Candies, LLC against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E3 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E3 Claim; or (b) satisfaction of any such Allowed Class E3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten

(10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class E3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class E3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(4)      **Class E4:  Maritime Junior Secured Claims**

Classification:   Class E4 consists of Allowed Maritime Junior Secured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E4 Claim; or (b) satisfaction of any such Allowed Class E4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class E4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class E4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(5)      **Class E5:  Other Secured Claims**

Classification:   Class E5 consists of all Allowed Other Secured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class E5 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class E5 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class E5 Claim; or (b) satisfaction of any such Allowed Class E5 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class E5 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class E5 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(6)     **Class E6:  General Unsecured Claims**

Classification:  Class E6 consists of all Allowed General Unsecured Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM3 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM3 and all Allowed Claims in Classes E1, E2, E3, E4 and E5.

Voting:  Class E6 Claims are Impaired.  Each Holder of an Allowed Claim in Class E6 shall be entitled to vote to accept or reject the Plan.

(7)     **Class E7:  Subordinated Claims**

Classification:   Class E7 consists of all Allowed Subordinated Claims against Deep Marine 3, LLC.

Treatment:  Each Holder of an Allowed Class E7 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM3 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM3 and all Allowed Claims in Classes E1, E2, E3, E4, E5, and E6.

Voting:  Class E7 Claims are Impaired.  Each Holder of an Allowed Claim in Class E7 shall be entitled to vote to accept or reject the Plan.

(8)     **Class E8:  Interests**

Classification:  Class E8 consists of all Allowed Interests in Deep Marine 3, LLC.

Treatment:   On the Effective Date, all of the Class E8 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class E8 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM3 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM3 and all Allowed Claims in Classes E1, E2, E3, E4, E5, E6 and E7.

Voting:  Class E8 Interests are Impaired.  Each Holder of an Allowed Claim in Class E8 shall be entitled to vote to accept or reject the Plan.

**Section 3.10       Deep Marine 4, LLC**

(1)       **Class F1:  Priority Non-Tax Claims**

Classification:  Class F1 consists of all Allowed Priority Non-Tax Claims against Deep Marine 4, LLC.

Treatment:   Except to the extent that a Holder of an Allowed Claim in Class F1 has agreed in writing with the Debtors (or the Liquidating Trustee) to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class F1 shall receive in full satisfaction, release and discharge of and in exchange for such Claim, Cash of DM4 equal to the amount of such Allowed Claim in Class F1 in accordance with Bankruptcy Code section 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) or (b) the date such Claim in Class F1 becomes an Allowed Claim in Class F1 (or as soon as reasonably practicable thereafter).

Voting:   Claims in Class F1 are Unimpaired.  Each Holder of an Allowed Claim in Class F1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(2)       **Class F2:  Maritime Senior Secured Claims**

Classification:  Class F2 consists of all Allowed Maritime Senior Secured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F2 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class F2 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class F2 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class F2 Claim; or (b) satisfaction of any such Allowed Class F2 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Claims in Class F2 are Unimpaired.  Each Holder of an Allowed Claim in Class F2 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(3)       **Class F3:  Maritime Junior Secured Claims**

Classification:  Class F3 consists of all Allowed Maritime Junior Secured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F3 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class F3 Claim (including interest,

fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class F3 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class F3 Claim; or (b) satisfaction of any such Allowed Class F3 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class F3 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class F3 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(4)     **Class F4:  Other Secured Claims**

Classification:   Class F4 consists of all Allowed Other Secured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F4 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Class F4 Claim (including interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtors, or after the Effective Date, the Liquidating Trustee, either (a) the Cash proceeds of the Collateral securing such Holder's Allowed Class F4 Claim after satisfaction in full of all superior liens up to the Allowed Amount of the Holder's Class F4 Claim; or (b) satisfaction of any such Allowed Class F4 Claim by delivering the Collateral securing any such Claim.  Payment shall be made on or as soon as practicable after the later of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or after the Effective Date, the Liquidating Trustee.

Voting:  Class F4 Claims are Unimpaired.  Each Holder of an Allowed Claim in Class F4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(5)     **Class F5:  General Unsecured Claims**

Classification:  Class F5 consists of all Allowed General Unsecured Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F5 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging DM4 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM4 and all Allowed Claims in Classes F1, F2, F3, and F4.

Voting:   Class F5 Claims are Impaired.  Each Holder of an Allowed Claim in Class F5 shall be entitled to vote to accept or reject the Plan.

(6)     **Class F6:  Subordinated Claims**

Classification:   Class F6 consists of all Allowed Subordinated Claims against Deep Marine 4, LLC.

Treatment:  Each Holder of an Allowed Class F6 Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM4 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM4 and all Allowed Claims in Classes F1, F2, F3, F4, and F5.

Voting:   Class F6 Claims are Impaired.  Each Holder of an Allowed Claim in Class F6 shall be entitled to vote to accept or reject the Plan.

(7)     **Class F7:  Interests**

Classification:  Class F7 consists of all Allowed Interests in Deep Marine 4, LLC.

Treatment:   On the Effective Date, all of the Class F7 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date and each Holder of an Allowed Class F7 Interest shall receive in full satisfaction, release and discharge of and in exchange for such Interest, from the Liquidating Trust on or as soon as reasonably practicable after the Effective Date, its Pro Rata share of Cash proceeds belonging to DM4 in the Liquidating Trust after payment of all Allowed Administrative Claims and all Allowed Priority Tax Claims against DM4 and all Allowed Claims in Classes F1, F2, F3, F4, F5, and F6.

Voting:   Class F7 Interests are Impaired.  Each Holder of an Allowed Claim in Class F7 shall be entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 4.01   No Substantive Consolidation**

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent

provided for in the relevant Plan), and such Claims will be administered and treated in the manner provided in the relevant Plan.

## Section 4.02   Sale of the Acquired Assets

The Plan contemplates the sale of the Acquired Assets to a third party. To effect this, the Debtors Filed the Bidding Procedures and Sale Motion which seek, *inter alia*, to establish the Auction. On April 12, 2010, the Bankruptcy Court entered the Bidding Procedures Order, which established March 13, 2010 as the deadline for Potential Bidders to submit bids for the Acquired Assets, and established March 17, 2010, as the date for the Auction. In connection with the Auction, the Debtors have identified the Stalking Horse Bidder as a potential purchaser for the Acquired Assets. If no additional Qualified Bidders are identified at the Auction, the Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Stalking Horse Bidder, pursuant to the Purchase and Sale Agreement. If additional Qualified Bidders are identified, at the conclusion of the Auction, the Debtors will seek Bankruptcy Court approval to sell the Acquired Assets pursuant to the Purchase and Sale Agreement to the Qualified Bidder submitting the highest and best offer, free and clear of any Liens, Claims, encumbrances or other interests. The Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement in this regard. The Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

## Section 4.03   Appointment of Liquidating Trustee

On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidation Trust. The Liquidating Trust shall be governed by the Liquidating Trust Agreement. The initial Liquidating Trustee shall be John Bittner. The salient terms of the employment of the Liquidating Trustee, including duties and compensation, to the extent not set forth in the Plan, shall be set forth in the Liquidating Trust Agreement or the Confirmation Order. The Liquidating Trust Agreement shall contain provisions customary to liquidating trust agreements utilized in comparable circumstances. The Liquidating Trust and the Liquidating Trustee shall be bound by the Plan and shall not challenge any provision of the Plan. The Liquidating Trust Agreement shall be filed as an exhibit to the Plan Supplement, and its express terms shall govern distributions thereunder.

## Section 4.04   Duties of the Liquidating Trustee

John Bittner shall be the proposed Liquidating Trustee. The Liquidating Trustee will initially be appointed by the Bankruptcy Court in the Confirmation Order. The Liquidating Trustee will act as the Estates' representative for all purposes, and will be responsible for, among other things, (i) administering the liquidation of the Other Assets; (ii) controlling and managing the consideration received from the liquidation of the Other Assets; (iii) filing, prosecuting and settling Claim objections; (iv) prosecuting and settling any Estate causes of action transferred to the Liquidating Trust pursuant to this Plan; (v) pursuing any applicable insurance proceeds; (vi) making distributions and creating reserves in accordance with the terms of this Plan; (vii) winding-up and closing the Estates; (viii) abandoning any of the assets of the Debtors if the

Liquidating Trustee concludes that such assets are of no benefit to the Creditors; (ix) enforcing the payment of notes or other obligations of any Person; (x) opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Liquidating Trust; (xi) paying all lawful expenses, debts, charges and liabilities of the Debtors; (xii) purchasing insurance with coverage and limits as it deems desirable including, insurance covering liabilities of the Liquidating Trustee and his employees and agents or employees or agents of the Debtors incurred in connection with their services to the Debtors; (xiii) appointing, engaging, employing, supervising, and compensating officers, employees, and other Persons as may be necessary or desirable, including managers, consultants, accountants, technical, financial, real estate, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories; (xiv) delegating any or all of the discretionary power and authority conferred with respect to all or any portion of the Estates' property to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation except for such liability as is provided in the Plan; (xv) executing, delivering, and performing such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan; (xvi) undertaking any action necessary to maintain the corporate existence and/or dissolve, the Debtors; (xvii) undertaking any action necessary to ensure that the Debtors are and remain in good standing and compliance with applicable federal, state, and local laws; (xviii) filing any federal, state, or local tax returns and provide for the payment of any related taxes; and (xix) undertaking any action or performing any obligation provided for or required under the Plan.  The Liquidating Trustee's compensation will be set forth in the Liquidating Trust Agreement and approved by the Bankruptcy Court at Confirmation.  The Liquidating Trustee will be authorized to employ legal and accounting professionals employed by the Debtors or the Committee pre-confirmation, as well as such other professionals as the Liquidating Trustee may deem necessary and appropriate, including without limitation employment of professionals on a contingent fee basis, without further order of the Bankruptcy Court.  In case of the resignation or inability to serve of a Liquidating Trustee, a successor Liquidating Trustee shall be appointed in accordance with the Liquidating Trust Agreement.

The Liquidating Trustee shall own and shall have the right to assert, enforce and/or waive any applicable privileges (legal or otherwise, including the attorney-client privilege) held by the Debtors at any time (pre-petition or post-petition).

### Section 4.05   Distribution of All Net Proceeds of Sale of Assets on the Effective Date

To the extent not already paid, all proceeds from the sale of the Acquired Assets of the Debtors shall be paid to the Debtors, or, after the Effective Date, the Liquidating Trustee for the benefit of the Debtors.  At the same time, any other assets of any of the Debtors not transferred to the Purchaser at Closing, including any equity interests in any Debtor (all such assets, the "Other Assets") shall be transferred to the Liquidating Trust for the benefit of the Holders of Secured Claims with Liens on such Other Assets, or, if no such Liens exist, for the benefit of Holders of General Unsecured Claims, Subordinated Claims and Interests.

The Liquidating Trustee shall make the payments required under the Plan to the Holders of Allowed Claims in compliance with this Plan, the Confirmation Order and the Liquidating Trust Agreement.

## Section 4.06   Distribution Procedures

Any payments or distributions to be made by the Liquidating Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims.  Any payments or distributions to be made by the Liquidating Trustee pursuant to the Plans shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in the Plan.  Any payment, delivery or distribution by the Liquidating Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Liquidating Trustee into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is allowed.  The Liquidating Trustee will establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan.  The Debtors and the Liquidating Trustee will make no distributions upon a Claim held by a party against whom a Debtor or the Liquidating Trustee asserts any avoidance action until resolution of the avoidance action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  Avoidance Actions are retained as property of the Debtors under the Plan and transferred to the Liquidating Trust as of the Effective Date, and such actions may be pursued solely by the Debtors or, after the Effective Date, the Liquidating Trustee.

## Section 4.07   Cancellation of Existing Security Claims

Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Liquidating Trustee after the Effective Date) any Collateral or other property of any Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

## Section 4.08   Continued Corporate Existence

Each Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of its state of incorporation for the purposes of satisfying its obligations under the Plan and the winding down of its affairs.

After the final distribution for each Estate, and the preparation and filing of any tax returns required of each Estate, the Liquidating Trustee shall effectuate the dissolution of each Debtor in accordance with the Plan, be discharged and have no further responsibilities for that Debtor.

**Section 4.09   Directors and Officers**

On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action), (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Liquidating Trustee and the Liquidating Trustee or its designee shall be the presiding officer and the sole Governor of each such Debtor.  The Liquidating Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor on and after the Effective Date.

**Section 4.10   Preservation of Rights of Action; Settlement**

**Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise dealt with in the Plan, the Purchase and Sale Agreement, the Confirmation Order or are expressly and specifically released in connection with the Plan, the Confirmation Order or in any settlement agreement approved during the Chapter 11 Cases, or otherwise provided in the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b): (1) any and all rights, claims, causes of action, (including Avoidance Actions, which definition explicitly includes preference actions pursuant to 11 U.S.C. § 547), defenses, and counterclaims of or accruing to the Debtors or their Estates shall become assets of and vest in the Liquidating Trust, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Liquidating Trustee does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan or the Schedules, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Plan, the Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Debtors' right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that the Liquidating Trustee has, or may have, as of the**

Effective Date.  The preference actions reserved in this paragraph include, but are not limited to, potential preference actions against all parties listed on the attached Exhibit H.

Notwithstanding any provision of the Disclosure Statement or Plan, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and rights against any and all third parties, regardless of when such claims arose, including, without limitation, any and all causes of action and/or claims for relief the Debtors or the Liquidating Trustee may have against (i) any former director, officer, and/or shareholder of the Debtors (and their Related Persons) and/or any named defendant or plaintiff (and their Related Persons) in suits pending in the Court of Chancery of Delaware or any district court of the State of Texas, including, but not limited to, Otto Candies, LLC, Otto Candies Jr., Otto Candies III, Candies Shipbuilders, LLC, Nasser Kazeminy, DCC Ventures, LLC, NJK Holding Corporation, NKOC, Inc., Triomphe Investors, LLC, Joseph Grano, Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman and John Hudgens (and their Related Persons) and (ii) any insurer on any directors' and officers' liability and/or similar insurance policies in which either the Debtor and/or its current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers.  The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtors or the Liquidating Trustee relating to any claims or causes of action referred to in this Section, or otherwise. The Liquidating Trustee shall constitute the representative for the Debtors and their Estates for purposes of retaining, asserting and/or enforcing actions under § 1123(b)(3)(B) of the Bankruptcy Code. On and after the Effective Date, the Liquidating Trustee, in its discretion, may be substituted as a party of record in any pending litigation brought by or against the Debtors without need for further order of the Bankruptcy Court.  The claims and rights against parties listed in (i) and (ii) of this paragraph and preserved in the Disclosure Statement, the Plan and any Confirmation Order are not limited to claims and rights arising under the Bankruptcy Code, but also include claims and rights arising under any other applicable law, whether international or domestic, state or federal, statutory or common, whether or not such claims and causes of action are currently alleged or plead by any party or are currently known by the Debtors. Specifically, and without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action against the parties described in (i) and (ii) above, as well as any entity affiliated with or controlled by such parties, including but not limited to claims for fraud, breach of fiduciary duty, unjust enrichment, negligence, corporate waste, abuse, mismanagement, vicarious liability, illegal dividend, shareholder oppression, fraudulent transfer, breach of contract, subordination, and recharacterization (as well as any and all attendant claims and causes of action related to the foregoing, e.g. aiding and abetting the same, conspiracy to commit the same, violation of other laws (such as the RICO statute) in furtherance of the same, etc.).

Likewise, as of the filing of this Disclosure Statement, the Debtors have not yet completed their review of all Secured Claims, and therefore, without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action, whether arising pre-petition or post-petition, against any Holder of any Secured Claim of Otto

Candies, LLC; Secured Claim of PNC Bank, N.A.; Secured Mortgage Claim of GE; Secured Mortgage Claim of DCC Ventures; Secured Mortgage Claim of Otto Candies, LLC; Maritime Senior Secured Claim; Maritime Junior Secured Claim; Secured Claim of the DIP Lender; and Other Secured Claim. Such reservation explicitly includes, without limitation, any causes of action related to the extent, validity and priority of any and all Liens asserted by such parties including all causes of action related to the amount of all fees and expenses (including attorney fees and expenses and other third party consultant, agent and advisor fees and expenses), subordination, recharacterization, lender liability, breach of contract, fraud, interference, negligence, good faith, fiduciary duty, direct liability, control, duress, and surcharge. Additionally, without limitation, the Debtors explicitly reserve all causes of action against GE arising out of or related to GE's seizure of any escrowed funds of the Debtors.

Likewise, as of the filing of this Disclosure Statement, the Debtors have not yet completed their review of accounts receivable owned by the Debtors, and therefore, without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action related to all accounts receivable and the work giving rise to same. Without limiting the foregoing preservation of rights, either as to claims, causes of action, or parties, the Debtors explicitly reserve all of their rights (whether for breach of contract, quantum meruit or otherwise) against (i) Boots and Coots Services, LLC, its affiliates, and all other third parties (including Allseas Group S.A., its affiliates, and all subcontractors) related to the accounts receivable (and the work giving rise to the same) owed by Boots and Coots Services, LLC to Deep Marine Technology, Incorporated; (ii) Capital Signal, its affiliates, and all other third parties (including Ocean Services, LLC and its affiliates, against whom the Debtors preserve, without limitation, all Avoidance Actions related to any alleged assignment of the Capital Signal accounts receivable) related to the accounts receivable (and the work giving rise to the same) owed by Capital Signal to Deep Marine Technology, Incorporated (or, allegedly, owed to Ocean Services, LLC); and (iii) LLOG Exploration, its affiliates, and all other third parties related to the accounts receivable (and the work giving rise to the same) owed by LLOG Exploration to Deep Marine Technology, Incorporated.

Likewise, as of the filing of this Disclosure Statement, the Debtors have not yet completed their review of potential claims against former employees and former professionals (e.g. financial advisers, attorneys, accountants, investment bankers, consultants and agents), and therefore, without limiting any other provision in the Disclosure Statement, Plan or Confirmation Order, the Debtors and the Liquidating Trustee explicitly reserve any and all claims and causes of action (including but not limited to all Avoidance Actions, all claims for breach of contract, breach of fiduciary duty, negligence, fraud, malpractice, malfeasance) that the Debtors may have against such Persons and their Related Persons.

The Debtors and Liquidating Trustee reserve the right to amend and supplement the preservation of rights described in this Section, and such reservation includes, but is not limited to, the right to supplement this section via attachment to the Plan.

**The Debtors' reservation of rights, causes of action and claims made in the Disclosure Statement, Plan and/or related documents are without prejudice to the rights, defenses or claims of any other party, and no such reservation shall affect any party's right to dispute any right, cause of action or claim brought by the Debtors, or after the Effective Date, the Liquidating Trustee.  Furthermore, no reservation of rights, causes of action and claims made in the Disclosure Statement, Plan and/or related documents shall be construed as an admission by any non-Debtor party.  Any explicit reservation of causes of action, claims and/or allegations in the Disclosure Statement or Plan (or any documents related thereto) is intended for preservation of the estates' rights, and is not intended to create or enhance any rights.**

### Section 4.11   Employee Benefit Plans

Prior to the Effective Date, all Employee Benefit Plans shall be terminated in accordance with the applicable provisions of the state and federal law.  The Purchaser and the Liquidating Trust shall have no liability for any obligations under any Employee Benefit Plan.

### Section 4.12   Exclusivity Period

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of the Plan under Bankruptcy Code section 1121(d).

### Section 4.13   Effectuating Documents; Further Reorganization Transactions

John Bittner, as Chief Restructuring Officer of the Debtors or, after the Effective Date, the Liquidating Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. John Bittner, as Chief Restructuring Officer of the Debtors or, after the Effective Date, the Liquidating Trustee, shall be authorized to certify or attest to any of the foregoing actions. The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement.

### Section 4.14   Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(c), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected by mergers, provided under the Plan, from the Debtors to the Liquidating Trust or any other Person or Entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 4.15    Closing of the Debtors' Chapter 11 Cases.**

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

**Section 5.01    Timing and Delivery of Distributions**

The Liquidating Trust Agreement shall govern distributions from the Liquidating Trust and shall include and be consistent with the terms of the other sections of this Article V and other relevant provisions of the Plan, including, without limitation, Article III of the Plan.

**Section 5.02    Method of Cash Distributions**

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating Trustee.

**Section 5.03    Failure to Negotiate Checks**

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee.  All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be "Unclaimed Property," and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

**Section 5.04    Compliance with Tax Requirements**

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Liquidating Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Liquidating Trustee within thirty (30) days from the date of such request, the Liquidating Trustee may, at its

option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**Section 5.05    De Minimis Distributions**

No Cash payment of less than five ($5.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**Section 5.06    Setoffs**

Except for any Claim that is Allowed in an amount set forth in the Plan, the Debtors or the Liquidating Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or a Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by any Debtor of any such claims the Debtor may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Liquidating Trustee.

**Section 5.07    Distribution Record Date**

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims.  The Liquidating Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

**ARTICLE VI**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**

**Section 6.01    Assumption/Rejection**

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

**Section 6.02    Cure Amounts**

The Bidding Procedures and Sale Motion contemplates that numerous executory contracts and unexpired leases will be assumed and either assigned to the Purchaser pursuant to the Sale Order or the Confirmation Order.  In accordance with the Bidding Procedures, as part of the Plan Supplement, the Debtors will File a list of such executory contracts and unexpired leases along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures Order, File a detailed statement setting forth its

reason and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation Hearing. The fixing of the Cure Costs shall constitute the Debtor's right to assign the executory contract and unexpired lease to the Purchaser under Bankruptcy Code sections 365(c) and (f).

## Section 6.03   Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

## Section 6.04   Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Liquidating Trust. The Liquidating Trustee may purchase extensions or tails on any insurance policy.

## Section 6.05   Pass-through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Liquidating Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c) shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Liquidating Trust and the counterparty unaltered and unaffected by the bankruptcy Filings or Chapter 11 Cases.

## Section 6.06   Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be

disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

**Section 6.07   Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.   If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**Section 6.08   Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

**Section 7.01   Objections to Claims**

*(a)      Authority*

The Debtors or the Liquidating Trustee, on and after the Effective Date, shall have the exclusive authority to File objections to Claims, and to withdraw any objections to such Claims that they File.   The Debtors or the Liquidating Trustee, on and after the Effective Date, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims.   The Debtors or the Liquidating Trustee, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims.   From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.   The Liquidating Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

*(b)      Objection Deadline*

As soon as practicable, but no later than the Claims Objection Deadline, the Liquidating Trustee may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor or the Liquidating Trustee, as the case may be, without notice or hearing.

For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.

## Section 7.02   Estimation of Claims

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Liquidating Trustee or any Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

## Section 7.03   No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Liquidating Trustee in writing, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## Section 7.04   Distributions After Allowance

The Liquidating Trustee shall make payments and distributions from a distribution reserve to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other

-44-

property that was reserved on account of such Disputed Claim, if any, shall become property of the Liquidating Trust for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

**Section 7.05    Reduction of Claims**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

**Section 7.06    Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. The Liquidating Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

### ARTICLE VIII
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

**Section 8.01    Conditions Precedent to Confirmation**

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 8.04 below:

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such order shall have become a Final Order.

(b)    The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors and, in the event the Stalking Horse Bidder is the Purchaser, the Stalking Horse Bidder; and (ii) include a finding of fact that the Debtors, and their respective present members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described

in Bankruptcy Code section 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

(c)    If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order in form and substance reasonably acceptable to the Debtors.

## Section 8.02    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 8.04 below:

(a)    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and, in the event the Stalking Horse Bidder is the Purchaser, the Stalking Horse Bidder, and such order shall have become a Final Order.

(b)    If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtors, and such order shall have become a Final Order.

(c)    Purchaser shall have provided written evidence satisfactory to the Debtors that simultaneous with the occurrence of the Effective Date, Purchaser is prepared to close on the Transfer, and the Closing shall have occurred pursuant to the Purchase and Sale Agreement.

(d)    The Liquidating Trust Agreement shall have been fully executed in form and substance reasonably acceptable to the Debtors.

## Section 8.03    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

## Section 8.04    Waiver of Conditions

Each of the conditions set forth in Section 8.01 or Section 8.02 hereof may be waived in whole or in part by the Debtors.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## Section 8.05    Revocation, Withdrawal, or Non-consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null

and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE IX
## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to the Purchaser, the Debtors may not modify such document without the written consent of the Purchaser, as applicable. After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE X
## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

      A.      Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

      B.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

      C.      Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are

parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

D.      Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

E.      Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

F.      Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

G.      Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

H.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

I.      Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

J.      Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Purchase and Sale Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

K.      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

L.      Recover all assets of the Debtors and property of the Estates, wherever located;

M.      Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

N.      Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

O.      Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

P.      Enter an order or final decree concluding or closing the Chapter 11 Cases; and

Q.      Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XI
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### Section 12.01  Bar Dates for Certain Actions

(a)      *Administrative Claims; Substantial Contribution Claims*

The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and Administrative Claims in section (b) or (c) below), which date will be forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary case liabilities described in section (b) below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.  The Liquidating Trustee shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

(b)      *Administrative Ordinary Course Liabilities*

Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims.  For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code section 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

(c)      *Administrative Tax Claims*

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no Bar Date has otherwise been previously established, must be Filed and served on the Liquidating Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable Bar Date shall be forever barred from asserting any such claim against the Debtors, the Liquidating Trust or their property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

(d)      *Professional Fee Claims*

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must be Filed and served on the Liquidating Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

## Section 12.02  Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the

United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan.  Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids.  Post-confirmation, the Debtors, and post-Effective Date, the Liquidating Trustee, shall be responsible for the payment of accruing United States Trustee quarterly fees for each of the Debtors until each case is closed by the Court.  The Debtors and the Liquidating Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

## Section 12.03  Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## Section 12.04  Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

## Section 12.05  Exculpation

The Released Parties SHALL NOT BE LIABLE TO ANY PERSON FOR ANY cause of action, arising on or after the Petition Date, arising in connection with or out of the administration of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any Released Party as to which such Released Party has been exculpated from liability pursuant to the preceding sentence or any other order of this Court.

**Section 12.06 Indemnification**

The Liquidating Trustee shall indemnify each Person identified as a Released Party against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities for which they are exculpated under Section 12.05; provided, however, that no Released Party shall be entitled to indemnification under this Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Released Party was grossly negligent or acted fraudulently or with willful misconduct in performing such Released Party's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law. Any Released Party entitled to indemnification under this section shall have a priority distribution right that is senior to the holders of Allowed Claims in every classified Class.  The Liquidating Trustee may use assets of the Liquidating  Trust (as an expense of consummating this Plan) to purchase indemnification insurance to satisfy any potential indemnification claims

**Section 12.07 Discharge of Liabilities**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.   Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtors, their Estates, the Liquidating Trust and all successors thereto.  As provided in section 524 of the Bankruptcy Code, subject to the terms of the Plan, such discharge shall void any judgment against the Debtors, their Estates, the Liquidating Trust or any successors thereto at any time obtained to the extent it relates to a Claim or Interest discharged, and operates as an injunction against the prosecution of any action against the Liquidating Trust or their respective property and assets to the extent it relates to a discharged Claim or Interest.

**Section 12.08  Permanent Injunction**

Except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement, or the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any Released Party on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party or against the property or interests in property of such Released Party on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any Released Party or against the property or interests in property of any Released Party on account of any such Claim or Interest.  The foregoing injunction will extend to successors of any Released Party and their respective property and interests in the property.

**Section 12.09  Bankruptcy Rule 3016 Compliance**

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

**Section 12.10  Term of Injunctions or Stay**

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 12.11  Integral to Plan**

Each of the injunctions provided in this Plan is an integral part of the Plan and is essential to its implementation.  Each of the Released Parties and any other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

**Section 12.12  Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

**Section 12.13  Notices**

        Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Liquidating Trust shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

Deep Marine Holdings, Inc. et al.
Attention: John Bittner
20411 Imperial Valley
Houston, Texas  77073
Phone:   (713) 896-8555
Fax:       (713) 849-4021

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300
Fax: (713) 221-1212

If to the Liquidating Trustee

Deep Marine Liquidating Trust
c/o Grant Thornton LLP
Attention:  John Bittner
1717 Main Street, Suite 1500
Dallas, Texas  75201
Phone:   (214) 561-2390
Fax:       (214) 561-2370

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300
Fax: (713) 221-1212

**Section 12.14  Setoffs**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or the Liquidating Trust may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or the Liquidating Trust, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Liquidating Trust of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtor or the Liquidating Trust, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

**Section 12.15  Recoupment**

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or the Liquidating Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**Section 12.16  Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.  For the avoidance of doubt, as provided in section 4.02 of this Plan, the Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

**Section 12.17  Request for Expedited Tax Review**

The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**Section 12.18  Dissolution of Committee**

On the Effective Date, the Committee shall dissolve and the member of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

**Section 12.19  No Admissions**

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

**Section 12.20  Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or the Liquidating Trust, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

**ARTICLE XIII**

**CONFIRMATION REQUEST**

The Debtors request Confirmation of the Plan under Bankruptcy Code section 1129.  If any Impaired Class does not accept the Plan pursuant to Bankruptcy Code section 1126, the Debtors request Confirmation pursuant to Bankruptcy Code section 1129(b).  In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under Bankruptcy Code section 1129(b) requires modification.

*[Signature Page Immediately Follows]*

Dated:  April 28, 2010

DEEP MARINE HOLDINGS, INC.

By: ___ /s/ *John D. Bittner* _____
Name: ___ John D. Bittner _____
Title: ___ Chief Restructuring Officer _____

Dated: April 28, 2010

DEEP MARINE TECHNOLOGY
INCORPORATED

By: ___ /s/ *John D. Bittner* _____
Name: ___ John D. Bittner _____
Title: ___ Chief Restructuring Officer _____

Dated: April 28, 2010

DEEP MARINE 1, LLC

By: ___ /s/ *John D. Bittner* _____
Name: ___ John D. Bittner _____
Title: ___ Chief Restructuring Officer _____

Dated: April 28, 2010

DEEP MARINE 2, LLC

By: ___ /s/ *John D. Bittner* _____
Name: ___ John D. Bittner _____
Title: ___ Chief Restructuring Officer _____

Dated: April 28, 2010

DEEP MARINE 3, LLC

By: ___ /s/ *John D. Bittner* _____
Name: ___ John D. Bittner _____
Title: ___ Chief Restructuring Officer _____

Dated: April 28, 2010

DEEP MARINE 4, LLC

By: ___ /s/ *John D. Bittner* _____
Name: ___ John D. Bittner _____
Title: ___ Chief Restructuring Officer _____

**EXHIBIT B**

Deep Marine Holdings Co.
Balance Sheet
As of February 28, 2010

| | February |
|---|---|

## ASSETS

Current Assets

Accounts Receivable
    Inter-company Receivables — ($106,053)
    ------------------------
Total Accounts Receivable — ($106,053)

Other Current Assets
    ------------------------
    ------------------------

Fixed Assets
    ------------------------

Other Assets
    ------------------------
    ------------------------

TOTAL ASSETS — ($106,053)
    ==============

## LIABILITIES & EQUITY

### Liabilities
Current Liabilities
    Accounts Payable
    ------------------------

Other Current Liabilities
    ------------------------
    ------------------------

Long Term Liabilities
    ------------------------
    ------------------------

### Equity
    Year to Date Earnings — ($490)
    Retained Earnings — (105,563)
    ------------------------
Total Equity — ($106,053)
    ------------------------

TOTAL LIABILITIES & EQUITY — ($106,053)
    ==============

UNAUDITED

Deep Marine Technology, Inc.
Balance Sheet
As of February 28, 2010

|  | February |
|---|---|

## ASSETS

Current Assets
  Cash and Cash Equivalent | $1,207,469

Accounts Receivable
   Trade receivables | 4,459,531
   Inter-company Receivables | 33,929,194
   ------------------------
Total Accounts Receivable | $38,388,725

Other Current Assets
   Inventory | 4,981,456
   Prepaid Expenses | 429,550
   Prepaid Insurance | 36,166
   ------------------------
Total Other Current Assets | $5,447,172
   ------------------------

Fixed Assets
   Vessels | 32,176,585
   Vessels - Software | 114,041
   ROV | 19,455,950
   Subs | 2,124,612
   Tooling | 544,345
   Shop Equipment | 210,418
   Office Furn & Fixtures | 295,327
   Office Equipment | 891,880
   Transportation Vehicles | 9,779
   Leasehold Improvements | 43,533
   Acc Depreciation - Vessels | (2,608,591)
   Acc Depreciation - ROVs | (5,553,088)
   Acc Depreciation - DOVs | (681,557)
   Acc Depreciation - Other | (1,407,954)
   ------------------------
Total Fixed Assets | $45,615,280

Other Assets
  Deposits | 113,550
  ------------------------
Total Other Assets | $113,550
  ------------------------

TOTAL ASSETS | $90,772,196
  ==============

UNAUDITED

Deep Marine Technology, Inc.
Balance Sheet
As of February 28, 2010

|  | February |
|---|---|

## LIABILITIES & EQUITY

### Liabilities

Current Liabilities

Post Petition Liabilities

| | |
|---|---|
| DIP Financing | 3,315,198 |
| DIP Interest Payable | 73,557 |
| Accrued Liabilities - Professionals | 499,608 |
| Accrued Liabilities - Non-Operating Vessels | 26,900 |
| Accounts Payable | 244,164 |
| Total Post Petition Liabilities | $4,159,427 |

Liabilities Subject to Compromise

| | |
|---|---|
| Accounts Payable | 31,202,093 |
| Wages Payable | 78,986 |
| Accrued Vacation | 148,964 |
| Short-term Notes Payable | 13,937,000 |
| Revolver - National City Bank | 1,058,597 |
| Revolver - O/S Checks | 3,687 |
| Total Other Current Liabilities | $46,429,327 |
| Total Current Liabilities | $50,588,754 |

Long Term Liabilities

| | |
|---|---|
| Long-term Notes Payable | 17,068,374 |
| Total Long Term Liabilities | $17,068,374 |
| Total Liabilities | $67,657,128 |

### Equity

| | |
|---|---|
| Capital Stock | 48,701 |
| Additional Paid-in Capital | 76,712,341 |
| Treasury Stock | (31,200) |
| Year to Date Earnings - Post Petition | (4,159,965) |
| Retained Earnings | (49,454,809) |
| Total Equity | $23,115,068 |
| TOTAL LIABILITIES & EQUITY | $90,772,196 |

UNAUDITED

Deep Marine 1, LLC.
Balance Sheet
As of February 28, 2010

| | February |
|---|---|

## ASSETS

Current Assets

Accounts Receivable
    Inter-company Receivables | ($229,482)
------------------------

Total Accounts Receivable | ($229,482)

Other Current Assets
------------------------
------------------------

Fixed Assets
    Vessels | 15,200,000
    Acc Depreciation - Vessels | (2,789,486)
------------------------

Total Fixed Assets | $12,410,514

Other Assets
------------------------
------------------------

TOTAL ASSETS | $12,181,031
==============

## LIABILITIES & EQUITY

### Liabilities

Current Liabilities
    Accounts Payable
------------------------

Other Current Liabilities
    Interest Payable | $168,673
------------------------

  Total Other Current Liabilities | $168,673
------------------------

Total Current Liabilities | $168,673

Long Term Liabilities
    Long-term Notes Payable | 13,461,405
------------------------

Total Long Term Liabilities | $13,461,405
------------------------

Total Liabilities | $13,630,078

### Equity

    Year to Date Earnings | (1,273,797)
    Retained Earnings | (175,249)
------------------------

Total Equity | ($1,449,046)
------------------------

TOTAL LIABILITIES & EQUITY | $12,181,031
==============

UNAUDITED

Deep Marine 2, LLC.
Balance Sheet
As of February 28, 2010

| | February |
|---|---|

## ASSETS

Current Assets

Accounts Receivable
    Inter-company Receivables

|  | |
|---|---|
| Inter-company Receivables | ($2,537,490) |
| Total Accounts Receivable | ($2,537,490) |

Other Current Assets

Fixed Assets
| | |
|---|---|
| Vessels | 38,400,000 |
| Acc Depreciation - Vessels | (3,842,630) |
| Total Fixed Assets | $34,557,370 |

Other Assets

| TOTAL ASSETS | $32,019,880 |
|---|---|

## LIABILITIES & EQUITY

### Liabilities

Current Liabilities
    Accounts Payable

Other Current Liabilities
| | |
|---|---|
| Interest Payable | $210,558 |
| Total Other Current Liabilities | $210,558 |
| Total Current Liabilities | $210,558 |

Long Term Liabilities
| | |
|---|---|
| Long-term Notes Payable | 30,636,500 |
| Total Long Term Liabilities | $30,636,500 |
| Total Liabilities | $30,847,058 |

### Equity
| | |
|---|---|
| Year to Date Earnings | (2,301,130) |
| Retained Earnings | 3,473,952 |
| Total Equity | $1,172,822 |

| TOTAL LIABILITIES & EQUITY | $32,019,880 |
|---|---|

UNAUDITED

Deep Marine 3, LLC.
Balance Sheet
As of February 28, 2010

|  | February |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Accounts Receivable | |
| Inter-company Receivables | ($11,523,445) |
|  | ------------------------ |
| Total Accounts Receivable | ($11,523,445) |
| Other Current Assets | |
|  | ------------------------ |
|  | ------------------------ |
| Fixed Assets | |
| Vessels | 16,000,000 |
| Acc Depreciation - Vessels | (2,059,629) |
|  | ------------------------ |
| Total Fixed Assets | $13,940,371 |
| Other Assets | |
|  | ------------------------ |
|  | ------------------------ |
| TOTAL ASSETS | $2,416,925 |
|  | ============== |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| Current Liabilities | |
| Accounts Payable | |
|  | ------------------------ |
| Other Current Liabilities | |
| Short-term Notes Payable | $3,956,475 |
| Interest Payable | 164,806 |
|  | ------------------------ |
| Total Other Current Liabilities | $4,121,281 |
|  | ------------------------ |
| Total Current Liabilities | $4,121,281 |
| Long Term Liabilities | |
|  | ------------------------ |
|  | ------------------------ |
| Total Liabilities | $4,121,281 |
| **Equity** | |
| Year to Date Earnings | (897,864) |
| Retained Earnings | (806,492) |
|  | ------------------------ |
| Total Equity | ($1,704,355) |
|  | ------------------------ |
| TOTAL LIABILITIES & EQUITY | $2,416,925 |
|  | ============== |

UNAUDITED

Deep Marine 4, LLC.
Balance Sheet
As of February 28, 2010

|  | February |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Accounts Receivable | |
| Inter-company Receivables | ($19,531,098) |
| | ------------------------ |
| Total Accounts Receivable | ($19,531,098) |
| Other Current Assets | |
| | ------------------------ |
| | ------------------------ |
| Fixed Assets | |
| Vessels | 21,000,000 |
| Acc Depreciation - Vessels | (1,774,255) |
| | ------------------------ |
| Total Fixed Assets | $19,225,745 |
| Other Assets | |
| | ------------------------ |
| | ------------------------ |
| TOTAL ASSETS | ($305,352) |
| | ============== |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| Current Liabilities | |
| Accounts Payable | |
| | ------------------------ |
| Other Current Liabilities | |
| | ------------------------ |
| | ------------------------ |
| Long Term Liabilities | |
| | ------------------------ |
| | ------------------------ |
| **Equity** | |
| Year to Date Earnings | ($848,590) |
| Retained Earnings | 543,238 |
| | ------------------------ |
| Total Equity | ($305,352) |
| | ------------------------ |
| TOTAL LIABILITIES & EQUITY | ($305,352) |
| | ============== |

UNAUDITED

**EXHIBIT C**

**Pending Pre-Petition Litigation**

**Current:**

- *Deep Marine Holdings, Inc. and Deep Marine Technology Incorporated v. FLI Deep Marine LLC, et al.,* Adversary No. 10-3026, United States Bankruptcy Court, Southern District of Texas, Houston Division

- *Deep Marine Technology, Inv. v. Inspectronic Corporation*, Case No. 09-2211, United States District Court, Southern District of Texas, Houston Division

- *Deepwork Inc. v. Paul McKim, et al.*, Civil Action No. 5032, In the Court of Chancery of the State of Delaware

- *FLI Deep Marine LLC and Bressner Partners v. Deep Marine Shareholders et al.*, Civil Action No. 4138, In the Court of Chancery of the State of Delaware

- *FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg v. Paul McKim, et al.*, Civil Action No. 5020, In the Court of Chancery of the State of Delaware

- *Christopher Hartman, Bobby Adams v. Deep Marine Technology Incorporated*, Case No. 09-2603, United States District Court, Southern District of Texas, Houston Division

- *Paul McKim v. Nasser Kazeminy, et al.,* Cause No. 2008-64385, In the 129th District Court, Harris County, Texas

- *Gene Nichols v. Deep Marine Technology Incorporated*, Case No. 09-7381, United States District Court, Eastern District of Louisiana, New Orleans Division

- *Shouna Ogea v. Offshore Services of Acadiana LLC and Deep Marine Technology Incorporated*, Case No. 09-1817, United States District Court, Western District of Louisiana, Lafayette Division

- *Betty Oliver v. Aramark U.S. Offshore Services, LLC and Deep Marine Technology Incorporated*, Cause No. 08-08-47249-CV, 79th Judicial District Court, Jim Wells County, Texas

**Recently Settled or Dismissed Litigation:**

- *Bender Shipbuilding and Repair Co., Inc. v. Deep Marine Technology Incorporated, et al,* Case No. 09-547, United States District Court, Southern District of Alabama, Mobile Division

- *Glenn Duval v. Deep Marine Technology Incorporated*, Case No. 08-00485, United States District Court, Western District of Louisiana, Lafayette Division

- *G-S Hydro US, Inc. v. Deep Marine Technology Incorporated*, Cause No. 2009-66693, 270th Judicial District Court, Harris County, Texas

- *Inspectronic Corporation v. Deep Marine Technology Incorporated*, Case No. 09-5807, United States District Court, Southern District of New York

- *Lemarco Mitchell v. Jambon Boat Rentals LLC v. Deep Marine Technology Incorporated*, Case No. 08-00667, United States District Court, Western District of Louisiana, Lafayette Division

- *MADCON v. Deep Marine Technology Incorporated*, Case No. 09-4248. United States District Court, Eastern District of Louisiana, New Orleans Division

- *Ocean Service, LLC v. Deep Marine Technology Incorporated*, Case No. 09-1481, United States District Court, Southern District of Texas, Houston Division

- *Radler Enterprises Inc. v. Deep Marine Technology Incorporated*, 2009-74104, 133rd Judicial District Court, Harris County