**EXHIBIT D**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION



**ENTERED**
**04/12/2010**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| **et al.** | § | |
| | § | **Jointly Administered** |
| **Debtors.** | § | **Chapter 11** |

## ORDER APPROVING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING BIDDING DEADLINE, AUCTION DATE AND SALE HEARING DATE, AND (III) APPROVING FORM AND NOTICE THEREOF

Upon the Debtors' Motion for Entry of an Order (i) Approving Bidding Procedures, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, and (iii) Approving Form and Notice Thereof (the "Motion").[1]

After due deliberation and having determined that the relief requested in the Motion is in the best interests of the Debtors and their estates,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:**[2]

A.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

HOUSTON\2365784.5

B.    The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), 365, 503, 507, and 1123(b) the Bankruptcy Code and Rules 2002(a)(2), 6003, 6004, 6006(a), 9007, and 9014 of the Bankruptcy Rules.

C.    Notice of the Motion, having been given to (i) counsel for the Committee; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts; (ix) all other parties known to Debtors who have or may have asserted liens against any of the Acquired Assets; (x) the Debtors' thirty (30) largest unsecured creditors; (xi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Assets, is sufficient in light of the circumstances and the nature of the relief requested in the Motion.

D.    The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including without limitation, (i) approval of the Bidding Procedures; (ii) approval and authorization to serve the Sale Notice; and (iii) determination of final Cure Amounts.

E.    The Bidding Procedures and the PSA were negotiated in good faith by the Debtors and the Proposed Purchaser.

F.    The Sale Notice, in substantially the form of the attached **Exhibit 2**, is reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Sale Hearing and the Auction.

G. The Sale Notice, the Cure Notice, and the Motion, are reasonably calculated to provide all counterparties to the Assumed and Assigned Contracts with proper notice of the potential assumption and assignment of their executory contract or unexpired lease and any Cure Amounts relating thereto.

H. The Break-Up Fee and the Expense Reimbursement to be paid under the circumstances described herein and in the PSA are: (i) actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of Bankruptcy Code sections 503(b) and 507(a)(2); (ii) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Proposed Purchaser; (iii) reasonable and appropriate, in light of the size and nature of the proposed sale transaction and comparable transactions, the commitments that have been made and the efforts that have been and will be expended by the Proposed Purchaser; and (iv) necessary to induce the Proposed Purchaser to continue to pursue the sale transaction and to continue to be bound by the PSA.

I. The Break-Up Fee and the Expense Reimbursement also induced the Proposed Purchaser to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors and other bidders may rely. The Proposed Purchaser has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price for the Acquired Assets will be received. Accordingly, the Bidding Procedures and the Break-Up Fee are reasonable and appropriate and represent the best method to maximize value for the Debtors' estates.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved and fully incorporated into this Order. The Debtors are authorized to undertake any and all actions necessary or appropriate to implement the Bidding Procedures.

2.  All objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion (held on April 8, 2010 and on April 12, 2010) or by stipulation filed with the Court, are overruled except as otherwise set forth herein.

**Notice of Auction and Sale Hearing**

3.  The Sale Notice, substantially in the form attached hereto as **Exhibit 2** (a) is hereby approved and (b) shall be served within five (5) business days of entry of this Order, upon each of the following parties: (i) counsel for the Committee; (ii) the United States Trustee for the Southern District of Texas; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Assets; (vi) the United States Department of Justice; (vii) the United States Environmental Protection Agency and any applicable state environmental agency; (viii) the counterparties to each of the Assumed and Assigned Contracts; (ix) all other parties known to Debtors who have or may have asserted liens against any of the Acquired Assets; (x) the Debtors' thirty (30) largest unsecured creditors; (xi) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (xii) all other entities known to have expressed interest in a transaction with respect to all or part of the Acquired Assets.

4.  As further described in the Bidding Procedures, in the event that the Debtors timely receive one or more Qualifying Bids other than the PSA, the Debtors shall conduct the Auction starting at 10:00 a.m. (prevailing Central Time) on May 17, 2010 (the "Auction Date")

at the law offices of Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002.

5.    On or before five (5) business days after the entry of this Order, the Debtors shall publish the Publication Notice, substantially in the form of the attached hereto as **Exhibit 3**, in the National Edition of The Wall Street Journal once.

**Assumption of Contracts and Leases**

6.    Pursuant to the PSA, the Proposed Purchaser does not require the assumption and assignment of any Assumed and Assigned Contracts.  In the event that any Qualifying Bid requires the assumption and assignment of any Assumed and Assigned Contract, the Debtors shall cause notice to be provided to any counterparties to such Assumed and Assigned Contract specified in such Qualifying Bid by May 14, 2010 (the "Cure Notice").

7.    The Cure Notice, substantially in the form attached hereto as **Exhibit 4**, is hereby approved.

8.    The Cure Notice shall, among other things, (i) identify the potential Assumed and Assigned Contracts, (ii) specify the Cure Amounts necessary to assume and assign such Assumed and Assigned Contracts, and (iii) state that failure to timely object to the proposed assumption and assignment and/or the Cure Amount shall constitute deemed consent to such assumption and assignment and Cure Amount.

9.    Except as may otherwise be agreed to by the parties to an Assumed and Assigned Contract (with the consent of the Prevailing Bidder and the Committee), all Cure Amounts shall be paid as administrative expenses in accordance with the Plan.

10.    Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to

adequate assurance of future performance or to the Cure Amounts set forth in the Cure Notice, must be in writing and filed with the Court no later than 3:00 p.m. (prevailing Central Time) on May 25, 2010 (the "Cure Notice Objection Deadline").

11.     If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice shall be binding upon the non-debtor party or parties to the Assumed and Assigned Contract for all purposes in these chapter 11 cases and otherwise. All such counterparties to the Assumed and Assigned Contracts shall (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Prevailing Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Contracts.

12.     If a non-debtor counterparty to an Assumed and Assigned Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing.

**Break-Up Fee and Expense Reimbursement**

13.     The Break-Up Fee and the Expense Reimbursement as set forth in the PSA is hereby approved; provided, however, that the Proposed Purchaser shall not be entitled to any Break-Up Fee or Expense Reimbursement if the Proposed Purchaser is the Prevailing Bidder for

all of the Acquired Assets except for the DMT Diamond. If the Proposed Purchaser becomes entitled to receive the Break-Up Fee and the Expense Reimbursement in accordance with the terms of the PSA (as modified by the previous sentence), which right survives the termination of the PSA, then the Proposed Purchaser shall be, and hereby is, granted an allowed administrative claim in the Debtors' chapter 11 case in an amount equal to the Break-Up Fee and the Expense Reimbursement, under Bankruptcy Code sections 503(b) and 507(a)(2) and in such case, the Break-Up Fee and the Expense Reimbursement shall be paid to the Proposed Purchaser, in accordance with the PSA; provided, however, the Proposed Purchaser shall not be entitled to any Break-Up Fee or Expense Reimbursement if the Proposed Purchaser is the Prevailing Bidder for all of the Acquired Assets except for the DMT Diamond.

14.     The Break-Up Fee and the Expense Reimbursement shall be the exclusive remedy of the Proposed Purchaser and its affiliates for any termination of the PSA. In no event shall the Debtors or any of their respective affiliates have any liability with respect to the Proposed Purchaser or any of its affiliates, in connection with the PSA, in excess of the Break-Up Fee and the Expense Reimbursement in the event that the PSA terminates pursuant to the terms thereof, and in such event any claim, right or cause of action by the Proposed Purchaser or its affiliates against the Debtors or their affiliates in excess of the Break-Up Fee and the Expense Reimbursement shall be deemed, and is hereby, fully waived, released and forever discharged.

15.     The Debtors are authorized and directed, without further action or order by the Court to pay the Break-Up Fee and the Expense Reimbursement in accordance with the terms and conditions of the PSA as modified by this Order.

16.     No person, other than the Proposed Purchaser, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment.

**Miscellaneous**

17.    In no event shall the Debtors or their affiliates have any liability in connection with the PSA, to the Proposed Purchaser or to any other person for any special, consequential or punitive damages, and any such claim, right or cause of action for any damages that are special, consequential or punitive shall be deemed, and is hereby waived, released and forever discharged.

18.    The Sale Hearing will be conducted at 9:00 a.m. (prevailing Central Time) on June 2, 2010.  At such time, the Debtors will seek the entry of an order of this Court approving and authorizing the Sale to the Prevailing Bidder at the Auction on the terms and conditions of the Prevailing Bid.  The Prevailing Bidder shall appear at the Sale Hearing and be prepared to testify in support of the Prevailing Bid and the Prevailing Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

19.    Objections, if any, to the relief requested in the Motion as it relates to the Sale must be in writing and filed in this court on or before 3:00 p.m. (prevailing Central Time) on May 21, 2010 (the "Sale Objection Deadline").

20.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise or any Local Rules of this Court, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

23.     This Court shall retain jurisdiction to resolve any dispute relating to the interpretation of the terms and conditions of the PSA and this Order.   To the extent any provisions of this Order shall be inconsistent with the Motion or PSA, the terms of this Order shall control.

24.     Announcements of agreement by counsel made on the record on April 8, 2010 or on April 12, 2010 are incorporated into this Order and will be enforced by the Court.

Dated: __4-12-10__

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

## BIDDING PROCEDURES

Set forth below are the bid procedures (the "Bidding Procedures") to be employed by Deep Marine Holdings, Inc., *et al.* (collectively, the "Debtors") in connection with that certain Purchase and Sale Agreement (the "PSA"), dated as of March 15, 2010, between the Debtors and Oceaneering International, Inc., a corporation organized under the laws of the State of Delaware (the "Proposed Purchaser"), pursuant to which the Proposed Purchaser proposes to acquire the Acquired Assets (defined below), free and clear of liens and interests, pursuant to and in accordance with the terms and conditions specified therein.

The Debtors shall obtain entry of an order, in form and substance reasonably acceptable to the Debtors, the Proposed Purchaser and the Official Committee of Unsecured Creditors (the "Committee"), from the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") which, among other things (a) approves these Bidding Procedures, (b) approves the form and manner of the sale notice and bidding procedures notice, (c) schedules a Sale Hearing date, and (d) approves procedures for the assumption and, if necessary, assignment of executory contracts and unexpired leases (the "Bid Procedures Order").[1]

1.     Property to be Sold

The Debtors shall offer for sale (the "Sale") the vessels and their machinery, engines, tower, cranes and other appurtenances, remotely operated vehicles, and equipment, spare parts, spare equipment, stores and certain contracts related to the foregoing identified in further detail in the PSA (such assets collectively referred to herein as the "Acquired Assets").

2.     Confidentiality Agreements

Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtors, any person wishing to participate in the bidding process ("Potential Bidder") and wishing to conduct due diligence on the Acquired Assets may be granted access to all material information that has been or will be made available to the Proposed Purchaser or any other Potential Bidder.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Debtors' Motion for (A) Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Property, (II) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (III) Approving Form and Notice Thereof, and (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief (the "Motion").

Exhibit 1

3.     Participation Requirements

Any Potential Bidder that wishes to participate in the bidding must become a "Qualifying Bidder." As a prerequisite to becoming a Qualifying Bidder, a Potential Bidder:

a.     must deliver an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors;[2] and

b.     must be able, as determined by the Debtors, in consultation with the Committee, to consummate a transaction based upon a Qualifying Bid (as defined below).

The Proposed Purchaser is deemed a Qualifying Bidder and the PSA constitutes a Qualifying Bid for all purposes, any other provision of these Bidding Procedures notwithstanding. A Potential Bidder who satisfies the foregoing prerequisites shall be deemed a "Qualifying Bidder". The Debtors reserve the right (i) at any time to require any Potential Bidder previously determined to be a Qualified Bidder (other than the Proposed Purchaser) to provide additional evidence of its ability to consummate a transaction based upon a Qualifying Bid in order to remain a Qualified Bidder, and (ii) to exclude any Potential Bidder from participating further in the auction process as a result of its inability to satisfy such further requirements to remain a Qualified Bidder.

4.     Due Diligence

The Debtors shall afford any Qualifying Bidder the time and opportunity to conduct reasonable due diligence. This will include an opportunity for Qualifying Bidders to inspect the Acquired Assets. The due diligence period shall extend through and include the Bid Deadline (as defined below). The Debtors and their representatives shall not be obligated to furnish any due diligence information after the Auction.

5.     Bid Requirements

To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder by a date no later than the Bid Deadline (as defined below) that:

a.     states such Qualifying Bidder offers to purchase the Acquired Assets or the DMT Diamond only upon the terms and conditions substantially as set forth in the PSA or pursuant to an alternative structure or terms that the Debtors determine are no less favorable to the Debtors' estates than the terms and conditions of the PSA;

---

[2] For the avoidance of doubt, parties who have already executed a confidentiality agreement with the Debtors shall not be required to execute a new confidentiality agreement provided that the existing confidentiality agreement is in form and substance acceptable to the Debtors.

b.    identifies the cash consideration to be paid for the Acquired Assets, or the amount of any credit bid as allowed hereunder;

c.    states such Qualifying Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Acquired Assets or the DMT Diamond only on terms and conditions no less favorable to the Debtors' estates than the terms and conditions contained in the PSA (as determined by the Debtors in their reasonable business judgment, in consultation with the Committee);

d.    is accompanied by a clean and duly executed purchase and sale agreement or similar agreement (the "Modified Purchase Agreement") and a marked Modified Purchase Agreement reflecting any variations from the PSA executed by the Proposed Purchaser;

e.    states such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Modified Purchase Agreement and provides written evidence in support thereof;

f.    states such Qualifying Bidder's offer is irrevocable[3] until the closing of the Sale if such Qualifying Bidder is the Prevailing Bidder (as defined below) and whether such Qualifying Bidder agrees to serve as a Back-Up Bidder;

g.    contains such financial and other information to allow the Debtors, in consultation with the Committee, to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, including, without limitation, such financial and other information setting forth adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") in a form requested by the Debtors to allow the Debtors to serve, within three (3) business days after such receipt, such information on counter-parties to any contracts or leases being assumed or assumed and assigned in connection with the proposed sale that have requested, in writing, such information;

h.    identifies with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

i.    does not request or entitle such Qualifying Bidder to any break up fee, expense reimbursement, or similar type of payment;

---

[3] The Back-up Bidder (as defined below) shall be required to keep its bid open and irrevocable until 5:00 p.m. (prevailing Central time) on the date which is (i) twenty (20) days after the date of the Sale Hearing (the "Outside Back-up Date") or (ii) the closing of the Sale transaction with the Prevailing Bidder, whichever date occurs sooner.

j.    fully discloses the identity of each entity that will be bidding in the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation;

k.    is likely to result in a value to the Debtors' estate which, in the Debtors' reasonable judgment, and in consultation with the Committee, is more than the aggregate of the value of the sum of (a) the Break-up Fee and the Expense Reimbursement, (b) the purchase price to be paid pursuant to the terms of the PSA, (c) any applicable purchase price adjustments, as provided for in the PSA, and (d) $250,000.00; provided, however, if the bid is for the DMT Diamond only the aggregate value of the bid must equal or exceed $6,250,000;

l.    (i) does not contain any financing contingencies of any kind; (ii) provides for expiration of any due diligence contingency on or before the Bid Deadline; and (iii) contains evidence that the Qualifying Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Sale, which evidence is reasonably satisfactory to the Debtors, in consultation with the Committee;

m.    includes evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and performance of the Modified Purchase Agreement; and

n.    provides a purchase deposit equal to or greater than the deposit set forth in the PSA.

A competing bid meeting the above requirements shall constitute a "Qualifying Bid." The Debtors, in consultation with the Committee, shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than **12:00 p.m. (prevailing Central time) on May 14, 2010**.

6.    <u>Bid Deadline</u>

A Qualifying Bidder that desires to make a bid shall deliver a written or electronic copy of its bid to: (i) Deep Marine Technology Incorporated, 20411 Imperial Valley Drive, Houston, Texas 77073 (Attn: John Bittner, email: <u>John.Bittner@GT.com</u>), (ii) counsel to the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77007 (Attn: Trey Wood, email: <u>Trey.Wood@bgllp.com</u>), and (iii) counsel for the Committee, McKool Smith P.C., 600 Travis Street, Suite 7000, Houston, Texas 77002 (Attn: Hugh Ray III, email: <u>hmray@mckoolsmith.com</u>) so as to be received by a date **no later than 3:00 p.m. (prevailing Central Time) on May 13, 2010 (the "<u>Bid Deadline</u>")**.

7. <u>Aggregate Bids</u>

Persons who collectively are referred to as a "Qualifying Bidder" need not be affiliates and need not act in concert with one another, and the Debtors may aggregate separate bids from unaffiliated persons to create one "Bid" from a "Qualifying Bidder"; provided, however, that all bidders shall remain subject to the provisions of Bankruptcy Code section 363(n) regarding collusive bidding.

8. <u>Evaluation of Qualifying Bids</u>

Prior to the Auction, the Debtors shall determine, in their reasonable judgment after consultation with the Debtors' financial and legal advisors and the Committee, which of the Qualifying Bids is likely to result in the highest and best value to the Debtors' estates, and shall provide a copy of that Qualifying Bid to all Qualifying Bidders prior to the beginning of the Auction.

9. <u>No Qualifying Bids</u>

If no Qualifying Bids other than the Qualifying Bid submitted by the Proposed Purchaser are submitted by the Bid Deadline, the Debtors shall not hold an Auction and instead shall request at the Sale Hearing that the Bankruptcy Court approve the PSA with the Proposed Purchaser and declare the Proposed Purchaser and the PSA to be the Prevailing Bid.

10. <u>Auction</u>

In the event that the Debtors timely receive one or more Qualifying Bids other than the PSA, the Debtors shall, conduct an auction (the "<u>Auction</u>") starting at 10:00 a.m. on May 17, 2010 (the "<u>Auction Date</u>") at the law offices of Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002. The Auction shall be governed by the following procedures:

    a.    only the Proposed Purchaser and the other Qualifying Bidders who have made a Qualifying Bid shall be entitled to make any subsequent bids at the Auction;

    b.    the Proposed Purchaser and each other Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

    c.    the Proposed Purchaser and the other Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

    d.    bidding shall commence at the amount of the highest Qualifying Bid as determined pursuant to Paragraph 8 above;

    e.    the Proposed Purchaser and each Qualifying Bidder may then submit successive bids in increments of at least $250,000.00 higher than the bid at which the Auction commenced and then continue in minimum increments of at least $250,000.00 higher than the previous bid; provided that the

Debtors shall retain the right to modify the bid increment requirements at the Auction;

f.   the Proposed Purchaser and each other Qualifying Bidder may make one or more credit bids of some or all of their claims to the full extent permitted by Bankruptcy Code section 363(k); provided, however, if a Qualifying Bidder credit bids a claim that is subject to liens senior to it, the credit bid must provide for the payment in full in cash of any such senior secured claims on the later of (i) the closing of the Sale or (ii) allowance of the senior secured claims;

g.   the Auction will be conducted openly and the Proposed Purchaser and the other Qualifying Bidders will be informed of the terms of the previous bid;

h.   the Proposed Purchaser and all other Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the PSA or Modified Purchase Agreement at the Auction, provided that any such modifications to the PSA or Modified Purchase Agreement on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors' estates, as determined by the Debtors in consultation with the Committee, than the terms of the highest and best Qualifying Bid at that time;

i.   the Auction shall continue until there is only one offer that the Debtors determine, in consultation with the Committee and subject to Bankruptcy Court approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Prevailing Bid"); provided, however, if the Debtors receive a Qualifying Bid for the DMT Diamond only, the Prevailing Bid for the DMT Diamond may be different than the Prevailing Bid for the other Acquired Assets. In making this decision, the Debtors shall consider, without limitation, the amount of the Purchase Price or other amounts to be paid to the Debtors, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the PSA requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Prevailing Bid shall become the "Prevailing Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable PSA or Modified Purchase Agreement;

j.   within fifteen (15) calendar days after the entry of the Sale Order, the Prevailing Bidder and the Debtors (i) shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Prevailing Bid was made, and (ii) shall close the sale transaction; and

k.   the Debtors may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that they anticipate will result

in the highest or otherwise best value for the Debtors' estates and that are not inconsistent with any applicable Bankruptcy Court order, provided that any changed or additional rules of the Auction are not materially inconsistent with the Bidding Procedures and are communicated to all participants at or prior to the Auction.

11.   Sale Hearing

The Prevailing Bid will be subject to approval by the Bankruptcy Court. The hearing to approve the Prevailing Bid (the "Sale Hearing") shall take place at ~~3:00 p.m.~~ *9:01 a.m.* (prevailing Central Time) on ~~May 27~~ *June 2*, 2010. At such time, the Debtors will seek the entry of an order of the Bankruptcy Court approving and authorizing the Sale to the Prevailing Bidder at the Auction on the terms and conditions of the Prevailing Bid. The Prevailing Bidder shall appear at the Sale Hearing and be prepared to testify in support of the Prevailing Bid and the Prevailing Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

12.   Return of Deposits

Except as provided herein, all deposits shall be returned to each bidder not selected by the Debtors as the Prevailing Bidder no later than five (5) business days following the conclusion of the Auction, except for the Back-up Bidder (as defined below) whose deposit will be returned by no later than the third (3rd) business day after the earlier to occur of: (a) the closing of the sale transaction with the Prevailing Bidder or (b) the Outside Back-up Date.

13.   Failure to Consummate Purchase

If an Auction is conducted, the party with the next highest or otherwise best Qualifying Bid (including for this purpose the Proposed Purchaser), as determined by the Debtors, in the exercise of their business judgment, at the Auction may serve as a back-up bidder (the "Back-up Bidder") and keep such bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central time) on the date which is (i) twenty (20) days after the date of the Sale Hearing (the "Outside Back-up Date") or (ii) the closing of the Sale transaction with the Prevailing Bidder. Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved Sale because of (a) the failure of a condition precedent beyond the control of either the Debtors or the Prevailing Bidder or (b) a breach or failure to perform on the part of such Prevailing Bidder, the Back-up Bidder will be deemed to be the new Prevailing Bidder, and the Debtors will be authorized to consummate the Sale with the Back-up Bidder without further order of the Bankruptcy Court, provided, however, that if the Proposed Purchaser is the Back-up Bidder, the Debtors shall be required to consummate the Sale to the Back-up Bidder.[4] In the case of (b) above, the defaulting

---

[4] For the avoidance of doubt, if the Prevailing Bidder fails to consummate the purchase and the purchase is ultimately consummated with the Proposed Purchaser (in their capacity as the Back-up Bidder), the Proposed Purchaser shall not be entitled to receive the Break Up Fee or to deduct the amount of the Break Up Fee from the Purchase Price.

Prevailing Bidder's deposit shall be forfeited to the Debtors as the Debtors' sole remedy with respect to the defaulting Prevailing Bidder.

    14.    <u>Reservation of Rights; Deadline Extension</u>

The Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify these Bidding Procedures or impose at, or prior to, the Auction, additional customary terms and conditions on the Sale of the Acquired Assets, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Acquired Assets at any time prior to or during the Auction or canceling the Auction in the Debtors' business judgment, and in consultation with the Committee. Notwithstanding the foregoing, (a) the Debtors may not impair or modify the Proposed Purchaser's rights and obligations under the PSA or the Proposed Purchaser's right to credit the Break Up Fee as part of any subsequent bids, or (b) extend the Outside Back-up Date.

**BRACEWELL & GIULIANI LLP**

By:  */s/ William A. (Trey) Wood, III*
       Marcy E. Kurtz
       Texas Bar No. 11768600
       Marcy.Kurtz@bgllp.com
       William A. (Trey) Wood III
       Texas Bar No. 21916050
       Trey.Wood@bgllp.com
       Jason G. Cohen
       Texas Bar No. 24050435
       Jason.Cohen@bgllp.com
       Bracewell & Giuliani LLP
       711 Louisiana, Suite 2300
       Houston, Texas 77002
       Telephone:    (713) 223-2300
       Facsimile:    (713) 221-1212

**ATTORNEYS FOR THE DEBTORS**

**EXHIBIT 2**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| et al. | § | |
| | § | **Jointly Administered** |
| Debtors. | § | **Chapter 11** |

## NOTICE OF AUCTION AND SALE HEARING

PLEASE TAKE NOTICE that on March 15, 2010, the above-captioned debtors and debtors in possession (the "Debtors"), by counsel, filed with the Bankruptcy Court their Motion for (a) Entry of an Order (i) Approving Bidding Procedures, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (iii) Approving Form and Notice Thereof, and (b) Entry of an Order After the Sale Hearing (i) Authorizing the Debtors to Sell Their Assets, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iii) Granting Related Relief (the "Motion").[1]

PLEASE TAKE FURTHER NOTICE that, on [April 12, 2010], the Bankruptcy Court entered the order approving the Motion (the "Bid Procedures Order"), which among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which certain assets of the Debtors are to be sold.

PLEASE TAKE FURTHER NOTICE that a copy of the Bid Procedures Order is being served on you concurrently with this Sale Notice.

PLEASE TAKE FURTHER NOTICE that, in accordance with the terms of the Bid Procedures Order, the Debtors may conduct an auction (the "Auction") starting at 10:00 a.m. (prevailing Central Time) on May 17, 2010 (the "Auction Date") at the law offices of Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002. Only parties that have submitted a Qualifying Bid by no later than 3:00 p.m. (prevailing Central Time) May 13, 2010 (the "Bid Deadline") will be permitted to participate in and/or make any statements on the record at the Auction.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

PLEASE TAKE FURTHER NOTICE that at ~~3:00 p.m.~~ (prevailing Central Time) on ~~May~~ June 1 ~~27~~, 2010, or as soon thereafter as counsel may be heard (the "Sale Hearing"), the Debtors shall appear before the Bankruptcy Court and seek entry of an order:

- approving the Purchase and Sale Agreement;

- authorizing the sale of the Acquired Assets by the Debtors to the Proposed Purchaser or such other Person or entity who is the Prevailing Bidder at the Auction

- authorizing the assumption and assignment of certain executory Contracts and unexpired Leases; and

- granting certain related relief.

PLEASE TAKE FURTHER NOTICE that the terms and conditions of the proposed sale of the Acquired Assets are set forth in the Purchase and Sale Agreement. The Purchase and Sale Agreement represent the results of extensive arms-length negotiations conducted by the Debtors to obtain the highest and best offer for the Acquired Assets. However, as set forth in the Bid Procedures Order, the sale remains subject to higher or better offers from any prospective Qualifying Bidder.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion as it relates to the Sale must: (a) be set forth in writing describing the basis therefor, and must be filed with the Bankruptcy Court electronically; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and be served upon: (i) Deep Marine Technology Incorporated, 20411 Imperial Valley Drive, Houston, Texas 77073 (Attn: John Bittner, email: John.Bittner@GT.com), (ii) counsel to the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Trey Wood, email: Trey.Wood@bgllp.com), and (iii) counsel for the Committee, McKool Smith P.C., 600 Travis Street, Suite 7000, Houston, Texas 77002 (Attn: Hugh Ray III, email: hmray@mckoolsmith.com) so as to be received no later than 3:00 p.m. (prevailing Central Time) on May 21, 2010 (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that the failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Acquired Assets to the Proposed Purchaser or the Prevailing Bidder and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Acquired Assets, the Debtors' consummation and performance of the Purchase and Sale Agreement, and the assumption and assignment of the Assumed and Assigned Contracts, if authorized by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that this Sale Notice is subject to the full terms and conditions of the Motion and the Bid Procedures Order, which shall control in the event of any conflict, and the Debtors encourage the parties in interest to review such documents in their entirety.

**BRACEWELL & GIULIANI LLP**

By:   */s/ William A. (Trey) Wood III*
      William A. (Trey) Wood III
      Texas Bar No. 21916050
      Trey.Wood@bgllp.com
      Marcy E. Kurtz
      Texas Bar No. 11768600
      Marcy.Kurtz@bgllp.com
      Jason G. Cohen
      Texas Bar No. 24050435
      Jason.Cohen@bgllp.com
      Bracewell & Giuliani LLP
      711 Louisiana, Suite 2300
      Houston, Texas 77002
      Telephone:    (713) 223-2300
      Facsimile:    (713) 221-1212

**ATTORNEYS FOR THE DEBTORS**

**EXHIBIT 3**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.;** | § | **Case No. 09-39313** |
| **DEEP MARINE TECHNOLOGY** | § | |
| **INCORPORATED;** | § | **Case No. 09-39314** |
| **DEEP MARINE 1, LLC;** | § | **Case No. 09-39315** |
| **DEEP MARINE 2, LLC;** | § | **Case No. 09-39316** |
| **DEEP MARINE 3, LLC;** | § | **Case No. 09-39317** |
| **DEEP MARINE 4, LLC** | § | **Case No. 09-39318** |
| Debtors. | § | **Chapter 11** |

## PUBLICATION NOTICE OF AUCTION AND SALE HEARING

PLEASE TAKE NOTICE that, on [April 12, 2010], the Bankruptcy Court entered its order (the "Bid Procedures Order"), which among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which certain assets of the Debtors are to be sold. Such assets include the DMT Diamond (U.S. Coast Guard Official Number 1091373), the DMT Emerald (U.S. Coast Guard Official Number 1190616), the DMT Topaz (U.S. Coast Guard Official Number 1071956), and the DMT Sapphire (U.S. Coast Guard Official Number 1129810) (together, the "Vessels"); the DMT Diamond ROV (one Triton™ XLS (XLS 5) heavy work class remote operated vehicle currently located at the Debtors' offices in Houston, Texas), the DMT Emerald ROV No. 1 (one Triton™ XLS (XLS 21) heavy work class remote operated vehicle currently installed on the DMT Emerald), the DMT Emerald ROV No. 2 (one Triton™ XLS (XLS 2) heavy work class remote operated vehicle currently installed on the DMT Emerald), the DMT Sapphire ROV (one Triton™ XLS (XLS 36) heavy work class remote operated vehicle currently installed on the DMT Sapphire), the DMT Topaz ROV (one Triton™ XLS (XLS 6) heavy work class remote operated vehicle currently installed on the DMT Topaz), one Nemesis work class remote operated vehicle currently located at the Debtors' offices in Houston, Texas (together, the "ROVs"); and various other equipment related to the Vessels and ROVs, spare parts and spare equipment and stores.

PLEASE TAKE FURTHER NOTICE that, in accordance with the terms of the Bid Procedures Order, the Debtors may conduct an auction (the "Auction") starting at 10:00 a.m. (prevailing Central Time) on May 17, 2010 (the "Auction Date") at the law offices of Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002. Only parties that have submitted a Qualifying Bid by no later than 3:00 p.m. (prevailing Central Time) on May 13, 2010 (the "Bid Deadline") will be permitted to participate in and/or make any statements on the record at the Auction.

HOUSTON\2366381

5:Wam.

PLEASE TAKE FURTHER NOTICE that at ~~3:00 p.m.~~ (prevailing Central Time) on ~~May~~ June 2 ~~27,~~ 2010, or as soon thereafter as counsel may be heard (the "Sale Hearing"), the Debtors shall appear before the Bankruptcy Court and seek entry of an order: (i) approving the Purchase and Sale Agreement or Modified Purchase Agreement, (ii) authorizing the sale of the Acquired Assets by the Debtors to the Proposed Purchaser or such other Person or entity who is the Prevailing Bidder at the Auction, (iii) authorizing the assumption and assignment of certain executory Contracts and unexpired Leases; and (iv) granting certain related relief.

PLEASE TAKE FURTHER NOTICE that the terms and conditions of the proposed sale of the Acquired Assets are set forth in the Purchase and Sale Agreement. The Purchase and Sale Agreement represent the results of extensive arms-length negotiations conducted by the Debtors to obtain the highest and best offer for the Acquired Assets. However, as set forth in the Bid Procedures Order, the sale remains subject to higher or better offers from any prospective Qualifying Bidder.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion as it relates to the Sale must: (a) be set forth in writing describing the basis therefor, and must be filed with the Bankruptcy Court electronically; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and be served upon: (i) Deep Marine Technology Incorporated, 20411 Imperial Valley Drive, Houston, Texas 77073 (Attn: John Bittner, email: John.Bittner@GT.com), (ii) counsel to the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Trey Wood, email: Trey.Wood@bgllp.com), and (iii) counsel for the Committee, McKool Smith P.C., 600 Travis Street, Suite 7000, Houston, Texas 77002 (Attn: Hugh Ray III, email: hmray@mckoolsmith.com) so as to be received no later than 3:00 p.m. (prevailing Central Time) on May 21, 2010 (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that the failure of any person or entity to file an objection before the Sale Objection Deadline shall be deemed a consent to the sale of the Acquired Assets to the Proposed Purchaser or the Prevailing Bidder and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Acquired Assets, the Debtors' consummation and performance of the Purchase and Sale Agreement or Modified Purchase Agreement, and the assumption and assignment of the Assumed and Assigned Contracts, if authorized by the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that this Sale Notice is subject to the full terms and conditions of the Motion and the Bid Procedures Order, which shall control in the event of any conflict, and the Debtors encourage the parties in interest to review such documents in their entirety.

**EXHIBIT 4**

Case 09-39313 Document 296-1 Filed in TXSB on 03/15/10 Page 28 of 31

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.,** | § | **Case No. 09-39313** |
| **et al.** | § | |
| | § | **Jointly Administered** |
| Debtors. | § | **Chapter 11** |

**NOTICE OF DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN UNEXPIRED
LEASES AND EXECUTORY CONTRACTS AND
SETTING FORTH THE CURE AMOUNTS**

PLEASE TAKE NOTICE that on March 15, 2010, the above-captioned debtors and debtors in possession (the "Debtors"), by counsel, filed with the Bankruptcy Court their Motion for (a) Entry of an Order (i) Approving Bidding Procedures, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (iii) Approving Form and Notice Thereof, and (b) Entry of an Order After the Sale Hearing (i) Authorizing the Debtors to Sell Their Assets, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iii) Granting Related Relief (the "Motion").[1]

PLEASE TAKE FURTHER NOTICE that, on [April 12, 2010], the Bankruptcy Court entered the order approving the Motion (the "Bid Procedures Order"), which among other things, establishes procedures (the "Bidding Procedures") relating to the assumption and assignment of Assumed and Assigned Contracts of the Debtor.

PLEASE TAKE FURTHER NOTICE that at 9:01 am. (prevailing Central Time) on June 21 2010, or as soon thereafter as counsel may be heard, there will be a hearing (the "Sale Hearing"), where the Debtors will seek approval and authorization of the Sale to the Proposed Purchaser or the Qualifying Bidder that submits the highest and best offer at the Auction, as applicable.

PLEASE TAKE FURTHER NOTICE that the Debtors are party to various executory Contracts and unexpired Leases (collectively, the "Contracts") and, pursuant to the Bid Procedures Order, the Debtors may assume and assign certain of such Contracts to the Prevailing Bidder (collectively, the "Assumed and Assigned Contracts").

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion.

Case 09-39313   Document 296-1   Filed in TXSB on 03/15/10   Page 28 of 46

PLEASE TAKE FURTHER NOTICE that you have been identified as a counterparty to an Assumed and Assigned Contract. The Assumed and Assigned Contract with respect to which you have been identified as a counterparty, and the corresponding proposed cure amount (the "Cure Amount") are set forth on **Schedule 1** annexed hereto.

PLEASE TAKE FURTHER NOTICE that the Debtors believe that any and all defaults (other than the filing of this chapter 11 case) and actual pecuniary losses under the Assumed and Assigned Contracts can be cured by the payment of the Cure Amount.

PLEASE TAKE FURTHER NOTICE that the assumption and assignment of any Assumed and Assigned Contract shall result in the full release and satisfaction of any claims or defaults, whether monetary or non-monetary.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the proposed assumption and assignment of any Assumed and Assigned Contract must: (a) be set forth in writing describing the basis therefor, and must be filed with the Bankruptcy Court electronically; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules; and be served upon: (i) Deep Marine Technology Incorporated, 20411 Imperial Valley Drive, Houston, Texas 77073 (Attn: John Bittner, email: John.Bittner@GT.com), (ii) counsel to the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002 (Attn: Trey Wood, email: Trey.Wood@bgllp.com), and (iii) counsel for the Committee, McKool Smith P.C., 600 Travis Street, Suite 7000, Houston, Texas 77002 (Attn: Hugh Ray III, email: hmray@mckoolsmith.com), so as to be actually received on or before 3:00 p.m. (prevailing Central Time) on May 21, 2010 (the "Cure Notice Objection Deadline").

PLEASE TAKE FURTHER NOTICE that any counterparty failing to timely file an objection to a Cure Amount or the proposed assumption and assignment of an Assumed and Assigned Contract shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, the Debtors' estates, or the Prevailing Bidder with respect to its contract and will be deemed to consent to the Sale and the proposed assumption and assignment of its contract.

PLEASE TAKE FURTHER NOTICE that where a counterparty to an Assumed and Assigned Contract files a timely objection asserting a higher cure amount than the Cure Amount, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, the amount to be paid under Bankruptcy Code section 365 with respect to such objection will be determined at the Sale Hearing or such other date and time as may be fixed by the Bankruptcy Court. All other objections to the proposed assumption and assignment of the Assumed and Assigned Contracts will be heard at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that if no Cure Amount is due under the Assumed and Assigned Contract, and the counterparty to such agreement does not otherwise object to the assumption and assignment of such agreement, no further action needs to be taken on the part of that counterparty.

PLEASE TAKE FURTHER NOTICE that the Debtors' decision to assume and assign the Assumed and Assigned Contracts is subject to Bankruptcy Court approval and consummation of

the Sale.  Absent consummation of the Sale, each Assumed and Assigned Contract shall not be deemed assumed and assigned and shall in all respects be subject to further administration under the Bankruptcy Code.  The designation of any agreement as an Assumed and Assigned Contract shall not constitute or be deemed to be a determination or admission by the Debtors or the Proposed Purchaser that such document is, in fact, an executory Contract or unexpired Lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: May 14, 2010

**Schedule 1**

**[TO COME]**

**EXHIBIT E**

DEEP MARINE HOLDINGS, INC., *et al.*
PRELIMINARY WATERFALL ANALYSIS
AS OF APRIL 28, 2010

GENERAL ASSUMPTIONS:

1. Waterfall analysis assumes sale contemplated to Stalking Horse Bidder for $85 million.
2. Allocation by vessel is derived from the allocation of value in the Purchase and Sale Agreement
   with Stalking Horse Bidder ("PSA")
3. Allocation of value to ROVs is assumed to be a ratable allocation of value to each
   ROV, based upon a total allocation of $10.5 million to ROVs.
4. Allocation to tools or spare parts owned by DMT of $0.5 million as per the PSA.
5. Obligations owed to PNC Bank, N.A. are assumed to be repaid through collection
   of existing accounts receivable.
6. No subordination or recharacterization of any debt has been assumed herein,
   unless otherwise specifically noted herein.
7. No allocation of value to post-acquisition capital expenditures or capitalized
   repairs have been assumed herein.
8. Amounts and priorities of Claims are based upon the Debtors' Schedules as Filed
   with the Bankruptcy Court and a preliminary review of Filed Proofs of Claims.
   Such amounts and priorities are provided herein for estimation purposes only, and are not
   intended to bind either the Debtors or Creditors.
   The Debtors expressly reserve all rights to dispute the amount and/or priority of any Filed Claims.
   The amounts and priorities of Claims ultimately allowed in any class may differ
   substantially from amounts shown herein, and the effect on these projections may be material.
9. No recoveries of preferences, fraudulent transfers/conveyances or other potential
   Causes of Action (including Avoidance Actions) are reflected herein, and Debtors reserve all
   rights regarding same.
10. Amounts and priorities of maritime Liens reflected herein are based upon the Debtors' Schedules
    as Filed with the Bankruptcy Court and a preliminary review of Filed Proofs of Claims.
    Such amounts and priorities are provided herein for estimation purposes only, and are not
    intended to bind either the Debtors or Creditors.
    The Debtors expressly reserve all rights to dispute the amount and/or priority of any maritime Lien.
    The amount and priority of maritime Liens ultimately allowed and the classification of same may differ
    substantially from amounts shown herein, and the effect on these projections may be material.
11. Waterfall analysis assumes that overhead and case administration costs are
    allocated ratably over DMT, DM1, DM2, DM3 and DM4.
12. No provision has been made for the allowance of any legal and/or consulting
    fees incurred by any Secured Creditor, where payment may be sought from the
    Debtors.
13. No estimate of costs of administering the Liquidating Trust have been included
    in this waterfall analysis.
14. Waterfall analysis assumes that no federal, state or local income tax will be due or payable as a result of
    the sale transaction proposed by the PSA or any other approved Purchase and Sale Agreement.
15. For the avoidance of doubt, this waterfall analysis is for informational purposes only, and nothing herein
    shall be binding on any party for any purpose.

DEEP MARINE HOLDINGS, INC.
PRELIMINARY WATERFALL ANALYSIS
AS OF MARCH 30, 2010
in 000s

| | Amount |
|---|---|
| Investment in Deep Marine Technology, Inc. | $          - |
| Chapter 11 Admin Costs: | |
| Administrative Claims | - |
| Allocated overhead / case administration costs from DM4 | - |
| Proceeds Available for Secured Claims | - |
| Secured Claims: | - |
| Proceeds Available for General Unsecured Claims | - |
| General Unsecured Claims | Unknown |
| Proceeds Available for Subordinated Claims | - |
| Subordinated Claims | Unknown |
| Proceeds Available for Equity Holders | $          - |

DEEP MARINE TECHNOLOGIES, INC.
PRELIMINARY WATERFALL ANALYSIS
AS OF MARCH 30, 2010
in 000s

|  | Amount |
|---|---|
| Proceeds from Sale of Inventory: | |
| Vessels (fuel on board) (a) | 500 |
| Warehouse | 500 |
| | |
| Total Inventory | 1,000 |
| | |
| | |
| Proceeds from Subsidiaries after satisfaction of secured debt: | |
| Deep Marine 1, LLC | - |
| Deep Marine 2, LLC | 10,318 |
| Deep Marine 3, LLC | - |
| Deep Marine 4, LLC | 7,648 |
| | |
| | |
| Allocation of Value to ROVs (b) | |
| XLS5 | 2,100 |
| XLS6 | 2,100 |
| XLS21 | 2,100 |
| XLS22 | 2,100 |
| XLS36 | 2,100 |
| | |
| Total Proceeds Available for Creditors (from Sale of Vessels) | 29,466 |
| | |
| Other Assets & Projected Recoveries: | |
| Accounts Receivable (c) | 3,000 |
| Shop Equipment and Other Assets | 200 |
| | |
| Total Proceeds Available | $ 32,666 |
| | |
| | |
| Chapter 11 Administrative Claims: | |
| | |
| Administrative Claims | (1,750) |
| Allocated overhead / case administration costs from DM4 (d) | (1,063) |
| | |
| Proceeds Available for Secured Claims: | 29,853 |
| | |
| Secured Liabilities | |
| PNC Bank | (1,150) |
| Candies ROV Debt: (e) | |
| XLS5 | (2,079) |
| XLS6 | (2,079) |
| XLS22 | (1,825) |
| XLS36 | (2,079) |
| | |
| | - |
| | |
| Proceeds Available for Priority Claims | 20,641 |
| | |
| Priority Claims | |
| Priority Tax & Wage Claims | (361) |
| | |
| Proceeds Available for General Unsecured Claims | 20,280 |
| | |
| General Unsecured Claims (f) | 55,340 |
| | |
| Percentage Recovery | 37% |

(a) Estimate of current market value of fuel on board the vessels.
(b) The ROV Nemesis is also being sold, however its value is minimal in relation to
    the other 5 ROVs and the Debtors have not allocated a dollar amount to that ROV
    for the purpose of this analysis.
(c) Based upon current estimate of collectability; subject to revision.
(d) Includes allocation of $1.063 million in overhead / case admin costs from DM4.
(e) Repayment of these notes are assumed to be in an amount equal to the principal
    balance owing plus accrued interest as of the Petition Date.
(f) The amount shown herein for general unsecured claims is based on the Debtors'
    books and records, a preliminary review of filed claims and certain assumptions
    on allowance of certain claims in other classes.  No estimate has been made
    herein for damage claims for rejection of executory contracts and leases.  The
    allowance of such claims could increase the ultimate amount of allowed general
    unsecured claims.

DEEP MARINE 1, LLC
PRELIMINARY WATERFALL ANALYSIS
AS OF MARCH 30, 2010
in 000s

|  |  | Amount |
|---|---|---|
| Sale Price of DMT Diamond |  | $6,000 |
| Chapter 11 Admin Costs: |  |  |
| Allocated overhead / case administration costs from DM4 (a) |  | 1,063 |
| Secured Debt: |  |  |
| GE Preferred Ship Mortgage | 13,630 | 4,937 |
| Junior Maritime Liens (b) | 7,238 | - |
| Proceeds Available to DMT | $ | - |
| Deficiency Claim |  | (15,931) |

(a) Includes allocation of $1.063 million in overhead / case admin costs from DM4.
(b)  Amounts for maritime Claims are based upon an estimate from the
      Debtors' records and a preliminary review of Filed Proofs of Claim
      and are all assumed to be Maritime Junior Secured Claims. Actual amounts
      and priorities of Allowed maritime Claims may differ materially from
      amounts and priorities shown herein and Debtors reserve all rights to challenge
      any Filed Claim requesting maritime Lien status.  Certain parties may
      assert Maritime Senior Secured Claims, as defined in the Plan.  If such
      Claims are ultimately allowed as Allowed Maritime Senior Secured Claims, such
      Claims may be entitled to payment in full before any payment
      on any preferred ship mortgage.  No provision for post-petition
      interest has been assumed for any Allowed maritime Lien claim.
(c) GE contends that the value of the DMT Diamond is greater than $6,000,000.00
      The Debtors reserve their right to dispute any valuation.

DEEP MARINE 2, LLC
PRELIMINARY WATERFALL ANALYSIS
AS OF MARCH 30, 2010
in 000s

|  |  | Amount |
|---|---|---|
| Sale Price of DMT Emerald |  | $49,000 |
| Chapter 11 Admin Costs: |  |  |
| Allocated overhead / case administration costs from DM4 (a) |  | 1,063 |
| Secured Debt: |  |  |
| GE Preferred Ship Mortgage (b) | 31,345 | 31,345 |
| Junior Maritime Liens (c) | 5,785 | 5,785 |
| Proceeds Available for Priority Tax |  | $   10,807 |
| Priority Tax | 489 | 489 |
| Proceeds Available for DMT |  | $   10,318 |
| Deficiency Claim |  | - |

(a) Includes allocation of $1.063 million in overhead / case admin costs from DM4.
(b) Post-petition interest on the GE Preferred Ship Mortgage is calculated
    using the contractual interest rate as of the Petition Date.
(c)  Amounts for maritime Claims are based upon an estimate from the
    Debtors' records and a preliminary review of Filed Proofs of Claim
    and are all assumed to be Maritime Junior Secured Claims. Actual amounts
    and priorities of Allowed maritime Claims may differ materially from
    amounts and priorities shown herein and Debtors reserve all rights to challenge
    any Filed Claim requesting maritime Lien status.  Certain parties may
    assert Maritime Senior Secured Claims, as defined in the Plan.  If such
    Claims are ultimately allowed as Allowed Maritime Senior Secured Claims, such
    Claims may be entitled to payment in full before any payment
    on any preferred ship mortgage.  No provision for post-petition
    interest has been assumed for any Allowed maritime Lien claim.
(d)  GE informs the Debtors that GE will seek fees, costs, interest, etc.
    The Debtors reserve their right to dispute any fees, costs, interest, etc.

DEEP MARINE 3, LLC
PRELIMINARY WATERFALL ANALYSIS
AS OF MARCH 30, 2010
in 000s

|  |  | Amount |
|---|---|---|
| Sale Price of DMT Topaz |  | $4,000 |
| Chapter 11 Admin Costs: |  |  |
| Allocated overhead / case administration costs from DM4 (a) |  | 1,063 |
| Secured Debt: |  |  |
| Preferred Ship Mortgage | 4,121 | 2,937 |
| Junior Maritime Liens (b) | 4,794 | - |
| Proceeds Available to DMT | $ | - |
| Deficiency Claim |  | (5,978) |

(a) Includes allocation of $1.063 million in overhead / case admin costs from DM4.
(b)  Amounts for maritime Claims are based upon an estimate from the
     Debtors' records and a preliminary review of Filed Proofs of Claim
     and are all assumed to be Maritime Junior Secured Claims. Actual amounts
     and priorities of Allowed maritime Claims may differ materially from
     amounts and priorities shown herein and Debtors reserve all rights to challenge
     any Filed Claim requesting maritime Lien status.  Certain parties may
     assert Maritime Senior Secured Claims, as defined in the Plan.  If such
     Claims are ultimately allowed as Allowed Maritime Senior Secured Claims, such
     Claims may be entitled to payment in full before any payment
     on any preferred ship mortgage.  No provision for post-petition
     interest has been assumed for any Allowed maritime Lien claim.

DEEP MARINE 4, LLC
PRELIMINARY WATERFALL ANALYSIS
AS OF MARCH 30, 2010
in 000s

|  |  | Amount |
|---|---:|---:|
| Sale Price of DMT Sapphire |  | $15,000 |
| Secured Debt: |  |  |
| Preferred Ship Mortgage (DIP Loan) | 5,315 | 5,315 |
| Allocated overhead / case administration costs to DMT and DM1-3 | (4,252) | (4,252) |
| Junior Maritime Liens (a) | 6,289 | 6,289 |
| Proceeds Available to DMT |  | $ 7,648 |

(a)  Amounts for maritime Claims are based upon an estimate from the
Debtors' records and a preliminary review of Filed Proofs of Claim
and are all assumed to be Maritime Junior Secured Claims. Actual amounts
and priorities of Allowed maritime Claims may differ materially from
amounts and priorities shown herein and Debtors reserve all rights to challenge
any Filed Claim requesting maritime Lien status.  Certain parties may
assert Maritime Senior Secured Claims, as defined in the Plan.  If such
Claims are ultimately allowed as Allowed Maritime Senior Secured Claims, such
Claims may be entitled to payment in full before any payment
on any preferred ship mortgage.  No provision for post-petition
interest has been assumed for any Allowed maritime Lien claim.

**EXHIBIT F**

DEEP MARINE HOLDINGS, INC., et al.
NOTES TO LIQUIDATION ANALYSIS
AS OF APRIL 28, 2010


GLOBAL NOTES:

1. Recovery amount for each vessel and ROV estimated at 85% of contemplated sale value in the
   Purchase and Sale Agreement between the Debtors and the Stalking Horse Bidder (the "PSA").
2. Allocation by vessel is consistent with the allocation of value in the PSA.
3. Estimated recovery value of ROVs is assumed to be a ratable allocation of value to each ROV.
4. Recovery percentage for Other Fixed Assets estimated at 5% of net book value.
5. Chapter 7 administrative expenses estimated at $240,000 each for DMT, DM1, DM2, DM3 and DM4.
6. Chapter 7 legal and professional fees estimated at $100,000 each for DMT, DM1, DM2, DM3 and DM4.
7. Trustee fees are estimated based on official fee schedules and estimated
   recovery amounts.
8. Obligations owed to PNC Bank, N.A. are assumed to be repaid through collection of existing
   accounts receivable.
9. No subordination or recharacterization of any debt has been assumed herein, unless otherwise
   specifically noted herein.
10. No allocation of value to post-acquisition capital expenditures or capitalized repairs have been
    assumed herein.
11. Amounts of unsecured Claims are based upon the Debtors' Schedules as Filed with the
    Bankruptcy Court, a preliminary review of Filed Proofs of Claim, and certain assumptions on allowance of
    certain Claims in other classes.  The Debtors expressly reserve all rights to dispute any Claims
    filed by any Creditors and the amount of Claims ultimately allowed in any class may differ materially
    from amounts shown herein.
12. No estimate has been made herein for damage Claims for rejection of executory contracts and
    leases.  The allowance of such Claims could increase the ultimate amount of Allowed General
    Unsecured Claims.
13. No recoveries of preferences, fraudulent conveyances/transfers or other potential Causes of Action
    (including Avoidance Actions) are reflected herein, and Debtors reserve all rights regarding same.
14. Liquidation analysis assumes that Chapter 11 overhead and case administration costs are
    allocated ratably over DMT, DM1, DM2, DM3 and DM4.
15. No provision has been made for the allowance of any legal and/or consulting fees incurred by
    any Secured Creditor, where payment may be sought from the Debtors.
16.  Amounts for maritime Claims are based upon an estimate from the
    Debtors' records and a preliminary review of Filed Proofs of Claim
    and are all assumed to be Maritime Junior Secured Claims. Actual amounts
    and priorities of Allowed maritime Claims may differ materially from
    amounts and priorities shown herein and Debtors reserve all rights to challenge
    any Filed Claim requesting maritime Lien status.  Certain parties may
    assert Maritime Senior Secured Claims, as defined in the Plan.  If such
    Claims are ultimately allowed as Allowed Maritime Senior Secured Claims, such
    Claims may be entitled to payment in full before any payment
    on any preferred ship mortgage.  No provision for post-petition
    interest has been assumed for any Allowed maritime Lien claim.
17.  Waterfall analysis assumes that no federal, state or local income tax will be due or payable as a result of
    the sale transaction proposed by the PSA or any other approved Purchase and Sale Agreement.
18.  For the avoidance of doubt, this liquidation analysis is for informational purposes only, and nothing herein
    shall be binding on any party for any purpose.

Deep Marine Holdings, Inc.
Projected Liquidation Analysis
As of March 31, 2010

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Accounts Receivable | | | |
| Inter-company Receivables | $ ( 106,053 ) | 0% | $ - |
| Total Accounts Receivable | ( 106,053 ) | | - |
| Other Current Assets | | | |
| Fixed Assets | | | |
| Net Book Value | - | | 0 |
| Total Fixed Assets | - | | 0 |
| Other Assets | | | |
| TOTAL ASSETS | ($106,053) | | |
| Estimated Gross Proceeds from Liquidation of Assets | | $ | - |
| Less:  Chapter 7 Administrative Expenses | | | - |
| Legal and Professional Fees | | | - |
| Trustee Fees | | | - |
| Gross Liquidation Proceeds after Expenses and Trustee Fees | | | - |
| **Allocation of Proceeds from Liquidation** | | | |
| **Secured Claims:** | | | |
| Secured Claims | - | | - |
| Potential Maritime Lien Claims | - | | - |
| Gross Liquidation Proceeds Available After Distribution to Secured Claims | | | - |
| **Priority Claims:** | | | |
| Priority Tax Claims | | | - |
| Gross Liquidation Proceeds Available After Distribution to Priority Claims | | | - |
| **General Unsecured Claims:** | | | |
| General Unsecured Claims: | - | | - |
| Gross Liquidation Proceeds Available to Equity/Intercompany Payables | | | - |

Deep Marine Technology Inc.
Projected Liquidation Analysis
As of March 31, 2010

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Cash and Cash Equivalent | $ 841,250 | 100% | $ 841,250 |
| | | | |
| Accounts Receivable | | | |
| Trade receivables | 4,459,531 | 45% | 2,000,000 |
| Inter-company Receivables | 33,929,194 | 19% | 6,505,480 |
| | | | |
| Total Accounts Receivable | 38,388,725 | | 8,505,480 |
| | | | |
| Other Current Assets | 5,447,172 | 6% | 300,000 |
| | | | |
| Fixed Assets | | | |
| Vessels, Capitalized Repairs & Improvements | 29,566,037 | 0% | - |
| ROVs | 13,762,406 | 65% | 8,925,000 |
| Other | 1,976,044 | 5% | 100,000 |
| | | | |
| Total Fixed Assets | 45,304,487 | | 9,025,000 |
| | | | |
| Other Assets | 113,550 | 0% | - |
| | | | |
| TOTAL ASSETS | $90,095,184 | | |
| | | | |
| Estimated Gross Proceeds from Liquidation of Assets | | | $ 18,671,730 |
| | | | |
| Less:  Chapter 7 Administrative Expenses | | | ( 240,000 ) |
| Legal and Professional Fees | | | ( 100,000 ) |
| Trustee Fees | | | ( 363,000 ) |
| | | | |
| Gross Liquidation Proceeds after Expenses and Trustee Fees | | | 17,968,730 |

## Allocation of Proceeds from Liquidation

| | | | |
|---|---|---|---|
| **Chapter 11 Administrative Claims** | | | |
| Administrative Claims | 1,750,000 | 100% | 1,750,000 |
| Allocated Overhead/Case Administration Costs from DM4 | 1,062,993 | 100% | 1,062,993 |
| | | | |
| Gross Liquidation Proceeds Available After Distribution to Administrative Claims | | | 15,155,737 |
| | | | |
| **Secured Claims:** | | | |
| PNC Revolver | 1,150,000 | 100% | 1,150,000 |
| Otto Candies LLC ROV Debt | 17,007,000 | 42% | 7,140,000 |
| | | | |
| Gross Liquidation Proceeds Available After Distribution to Secured Claims | | | 6,865,737 |
| | | | |
| **Priority Claims:** | | | |
| Priority Non-Tax Claims | 313,629 | 100% | 313,629 |
| Priority Tax Claims | 144,898 | 100% | 144,898 |
| | | | |
| Gross Liquidation Proceeds Available After Distribution to Priority Claims | | | 6,407,210 |
| | | | |
| **General Unsecured Claims:** | | | |
| General Unsecured Claims: | 58,743,674 | 11% | 6,407,210 |
| | | | |
| Gross Liquidation Proceeds Available to Equity | | | - |

Deep Marine 1, LLC.
Projected Liquidation Analysis
As of March 31, 2010

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Accounts Receivable | | | |
| Inter-company Receivables | $ ( 229,482 ) | 0% | $ - |
| Total Accounts Receivable | ( 229,482 ) | | - |
| Other Current Assets | | | |
| Fixed Assets | | | |
| Net Book Value of DMT Diamond | 12,350,000 | 41% | 5,100,000 |
| Total Fixed Assets | 12,410,514 | | 5,100,000 |
| Other Assets | | | |
| TOTAL ASSETS | $12,181,031 | | |
| Estimated Gross Proceeds from Liquidation of Assets | | | $ 5,100,000 |
| Less:  Chapter 7 Administrative Expenses | | | ( 240,000 ) |
| Legal and Professional Fees | | | ( 100,000 ) |
| Trustee Fees | | | ( 176,250 ) |
| Gross Liquidation Proceeds after Expenses and Trustee Fees | | | 4,583,750 |
| **Allocation of Proceeds from Liquidation** | | | |
| **Chapter 11 Administrative Costs** | | | |
| Allocated Overhead/Case Administration Costs from DM4 | 1,062,993 | 100% | 1,062,993 |
| Proceeds Available for Secured Creditors | | | 3,520,757 |
| **Secured Claims:** | | | |
| Preferred Ship Mortgage | 13,630,078 | 26% | 3,520,757 |
| Potential Maritime Lien Claims | 7,238,188 | | - |
| Gross Liquidation Proceeds Available After Distribution to Secured Claims | | | - |
| **Priority Claims:** | | | |
| Priority Tax Claims | | | - |
| Gross Liquidation Proceeds Available After Distribution to Priority Claims | | | - |
| **General Unsecured Claims:** | | | |
| General Unsecured Claims: | - | | - |
| Gross Liquidation Proceeds Available to Equity/Intercompany Payables | | | - |

Deep Marine 2, LLC.
Projected Liquidation Analysis
As of March 31, 2010

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Accounts Receivable | | | |
|    Inter-company Receivables | $ ( 2,537,490 ) | 0% | $ - |
| Total Accounts Receivable | ( 2,537,490 ) | | - |
| Other Current Assets | | | |
| Fixed Assets | | | |
|    Net Book Value of DMT Emerald | 34,435,068 | 121% | 41,650,000 |
| Total Fixed Assets | 34,435,068 | | 41,650,000 |
| Other Assets | | | |
| TOTAL ASSETS | $31,897,578 | | |

| | | |
|---|---|---|
| Estimated Gross Proceeds from Liquidation of Assets | | $ 41,650,000 |
| Less:  Chapter 7 Administrative Expenses | | ( 240,000 ) |
|    Legal and Professional Fees | | ( 100,000 ) |
|    Trustee Fees | | ( 1,272,750 ) |
| Gross Liquidation Proceeds after Expenses and Trustee Fees | | 40,037,250 |

**Allocation of Proceeds from Liquidation**

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **Chapter 11 Administrative Costs** | | | |
| Allocated Overhead/Case Administration Costs from DM4 | 1,062,993 | 100% | 1,062,993 |
| Proceeds Available for Secured Creditors | | | 38,974,257 |
| **Secured Claims:** | | | |
| Preferred Ship Mortgage | 30,847,058 | 100% | 30,847,058 |
| Potential Maritime Lien Claims | 5,785,005 | 100% | 5,785,005 |
| Gross Liquidation Proceeds Available After Distribution to Secured Claims | | | 2,342,194 |
| **Priority Claims:** | | | |
| Priority Tax Claims | 488,593 | 100% | 488,593 |
| Gross Liquidation Proceeds Available After Distribution to Priority Claims | | | 1,853,601 |
| **General Unsecured Claims:** | | | |
| General Unsecured Claims: | - | | - |
| Gross Liquidation Proceeds Available to Equity/Intercompany Payables | | | 1,853,601 |

Deep Marine 3, LLC.
Projected Liquidation Analysis
As of March 31, 2010

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Accounts Receivable | | | |
| Inter-company Receivables | $ ( 11,523,445 ) | 0% | $            - |
| Total Accounts Receivable | ( 11,523,445 ) | | - |
| Other Current Assets | | | |
| Fixed Assets | | | |
| Net Book Value of DMT Topaz | 13,880,419 | 24% | 3,400,000 |
| Total Fixed Assets | 13,880,419 | | 3,400,000 |
| Other Assets | | | |
| TOTAL ASSETS | $2,356,974 | | |
| Estimated Gross Proceeds from Liquidation of Assets | | | $   3,400,000 |
| Less:  Chapter 7 Administrative Expenses | | | ( 240,000 ) |
| Legal and Professional Fees | | | ( 100,000 ) |
| Trustee Fees | | | ( 125,250 ) |
| Gross Liquidation Proceeds after Expenses and Trustee Fees | | | 2,934,750 |
| **Allocation of Proceeds from Liquidation** | | | |
| **Chapter 11 Administrative Costs** | | | |
| Allocated Overhead/Case Administration Costs from DM4 | 1,062,993 | 100% | 1,062,993 |
| Proceeds Available for Secured Creditors | | | 1,871,757 |
| **Secured Claims:** | | | |
| Secured Claims | 4,121,281 | 45% | 1,871,757 |
| Potential Maritime Lien Claims | 4,793,746 | 0% | - |
| Gross Liquidation Proceeds Available After Distribution to Secured Claims | | | - |
| **Priority Claims:** | | | |
| Priority Tax Claims | | | - |
| Gross Liquidation Proceeds Available After Distribution to Priority Claims | | | - |
| **General Unsecured Claims:** | | | |
| General Unsecured Claims: | - | | - |
| Gross Liquidation Proceeds Available to Equity/Intercompany Payables | | | - |

Deep Marine 4, LLC.
Projected Liquidation Analysis
As of March 31, 2010

| | Net Book Value | Percentage Recovery | Estimated Recovery |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Accounts Receivable | | | |
| Inter-company Receivables | $ ( 19,531,098 ) | 0% | $ - |
| Total Accounts Receivable | ( 19,531,098 ) | | - |
| Other Current Assets | | | |
| Fixed Assets | | | |
| Net Book Value of DMT Sapphire | 19,147,059 | 67% | 12,750,000 |
| Total Fixed Assets | 19,147,059 | | 12,750,000 |
| Other Assets | | | |
| TOTAL ASSETS | ($384,039) | | |
| Estimated Gross Proceeds from Liquidation of Assets | | | $ 12,750,000 |
| Less:  Chapter 7 Administrative Expenses | | | ( 240,000 ) |
| Legal and Professional Fees | | | ( 100,000 ) |
| Trustee Fees | | | ( 405,750 ) |
| Gross Liquidation Proceeds after Expenses and Trustee Fees | | | 12,004,250 |
| **Allocation of Proceeds from Liquidation** | | | |
| **Secured Claims:** | | | |
| Secured Claims--DIP Loan | 5,314,969 | 100% | 5,314,969 |
| Less:  Credit for Allocated Overhead/Case Administration Costs to DMT and DM1-3 | ( 4,251,972 ) | 100% | ( 4,251,972 ) |
| Potential Maritime Lien Claims | 6,289,375 | 100% | 6,289,375 |
| Gross Liquidation Proceeds Available After Distribution to Secured Claims | | | 4,651,878 |
| **Priority Claims:** | | | |
| Priority Tax Claims | | | - |
| Gross Liquidation Proceeds Available After Distribution to Priority Claims | | | 4,651,878 |
| **General Unsecured Claims:** | | | |
| General Unsecured Claims: | - | | - |
| Gross Liquidation Proceeds Available to Equity/Intercompany Payables | | | 4,651,878 |