UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | Case No. 09-39313 | |
| DEEP MARINE HOLDINGS, INC.; § | (Jointly Administered) | |
| § | | |
| DEEP MARINE TECHNOLOGY § | | |
| INCORPORATED; § | | |
| DEEP MARINE 1, LLC; § | | |
| DEEP MARINE 2, LLC; § | | |
| DEEP MARINE 3, LLC; and § | | |
| DEEP MARINE 4, LLC § | | |
| § | | |
| Debtors § | Chapter 11 | |

### GE'S EMERGENCY REQUEST FOR STATUS CONFERENCE TO CLARIFY BIDDING PROCEDURES AND RETAINED RIGHTS IN CONNECTION WITH THE MAY 17TH AUCTION OF DEBTORS' ASSETS

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

General Electric Capital Corporation ("GE") seeks guidance from the Court on the issues set forth below in connection with the May 17, 2010 Auction of the Debtors' Assets:

1.  GE is a creditor of Deep Marine 1, LLC ("DM1"), the owner of the DMT Diamond, and is owed in excess of $13 million. The loan is secured by a preferred ship mortgage on the vessel.

2.  GE's principal objection to the Debtors' Bid Motion was that the Proposed Purchaser's allocation of value for certain of the purchased assets, and in particular the $6 million allocated price for the DMT Diamond, was far below the value of the asset.

3. It is academic that a secured party's collateral cannot be sold to a third party for less than fair value. A bankruptcy court's power to approve a sale of assets is subject to Fifth Amendment due process requirements. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935). In context of a Section 363 sale of a secured party's collateral, the court must "determine whether the property interests of third parties are adequately protected through consent or compensation." *Ultimate Sportsbar, Inc. v. United States*, 48 Fed. Cl. 540, 546 (2001); *citing Wright v. Union Central Life Ins. Co.*, 311 U.S. 273 (1940).

4. Because the assets being sold are owned by separate legal entities, each having separate creditors and separate asserted liens against the assets, and because these cases have not been substantively consolidated, GE's collateral and property rights in the DMT Diamond cannot be taken at an artificially low price, even to further a "greater good" of enhancing recoveries for other Debtor entities.

5. The Debtors have attempted to address GE's concerns by allowing individual bids for the DMT Diamond, and by permitting GE to credit bid its secured claim at the auction, in the event the only bids for the DMT Diamond are below the value of GE's collateral.

6. A bankruptcy auction, however well intended, does not result in "fair market value." Depending on circumstances and timing, it may not even result in "orderly liquidation value." At this point GE does not know whether any other purchaser will appear to bid on the DMT Diamond.

7.     On May 13, 2010, GE made a "Qualifying Bid" in the form of a credit bid for the DMT Diamond; hence an auction will take place for at least that vessel.  GE did so to protect the value of its collateral.  GE's bid is sufficiently greater than $6 million to require an auction, but still far below the fair market value of the vessel.

8.     GE would prefer that the DMT Diamond be sold to a third party purchaser for fair value, as opposed to acquiring ownership of the vessel through a credit bid.  GE does not know, at this time, whether entities other than the Proposed Purchaser have made Qualifying Bids on the DMT Diamond.  GE hopes that other bidders will participate in the Auction, such that the vessel is sold for cash for fair value, but there is no assurance that this will happen.

9.     The agreement to sell the DMT Diamond (and other assets) to the Proposed Purchaser contains an allocation of value to the DMT Diamond of $6 million.  This is not, however, evidence of the true value of the vessel because the Proposed Purchaser's contract requires that all of the assets under the contract be sold for the total price payable thereunder.   This means that while the individual values may have optical effect, they are ultimately illusory.  Only the total value paid by the Proposed Purchaser is relevant, and in this case only on the question of the total value of the assets.

10.    GE has commissioned several qualified appraisers to assess both the value of the DMT Diamond in its present condition, and the value of the Debtors' four (4) vessels, relative to each other.  From their work GE believes the Proposed Purchaser's

price allocations for the specific vessels do not reflect the true, relative values of the individual vessels.

11. As stated, GE would prefer that the DMT Diamond be sold to a third party for fair value, as opposed to purchasing the vessel by a credit bid. If the Debtors' assets are all sold to the Proposed Purchaser for $85 million, it is not clear whether the sale proceeds will be allocated among the estates based on the Proposed Purchaser's allocations. If so, DM1 would only receive $6 million (or slightly higher, as a result of GE's credit bid) in proceeds for the DMT Diamond. This is far below the fair value of the vessel, and would render the proposed sale fatally defective.

12. Assuming, for example, that the value of the DMT Diamond, based on the $85 million sales price and the value of the vessel relative to the value of the assets as a group is, hypothetically, $15 million, GE would prefer that DM1 be allocated that amount of cash, with GE's liens to attach to the proceeds.

13. GE is in the position of being an involuntary participant in the Auction. GE made its Qualifying Bid on the DMT Diamond to protect its rights and its collateral. Any further bid by GE and its participation in the Auction will be affected by the answer to following question: Is the Proposed Purchaser's allocation of value under a contract for purchase of the assets as a group binding on the estates? GE cannot effectively participate in the Auction and protect its rights to its collateral without knowing this answer.

GE respectfully requests that the Court set an emergency status conference on the Bid Procedures and Auction prior to the commencement of the auction at 10:00 a.m. on Monday, May 17, 2010

DATED: May 14, 2010.

Respectfully submitted,

ADAMS AND REESE LLP

By:   /s/ Susan C. Mathews
     JOHN A. LEE
     State Bar No. 12125400
     SUSAN C. MATHEWS
     State Bar No. 05060650
     1221 McKinney, Suite 4400
     Houston, Texas 77010
     Tel: 713-652-5151
     Fax: 713-652-5152

**ATTORNEYS FOR GE BUSINESS FINANCIAL SERVICES, INC. AND GENERAL ELECTRIC CAPITAL CORPORATION**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all parties on the attached Service List and to those parties who are registered to receive electronic notice via electronic file notification by the Clerk of the Court on this 14th day of May 2010.

                                             /s/ Susan C. Mathews
                                              Susan C. Mathews

## SERVICE LIST

| *Debtor* | *Debtor's counsel* |
|---|---|
| Deep Marine Holdings, Inc.<br>20411 Imperial Valley<br>Houston, TX 77073 | Marcy E Kurtz<br>Bracewell & Giuliani LLP<br>711 Louisiana<br>Ste 2300<br>Houston, TX 77002<br>713-221-1206<br>Fax : 713-221-2125<br>Email: marcy.kurtz@bgllp.com<br><br>Jason Gary Cohen<br>Bracewell & Giuliani LLP<br>711 Louisiana St<br>Ste2300<br>Houston, TX 77002<br>713-221-1416<br>Fax : 713-222-3209<br>Email: jason.cohen@bgllp.com |
| *US Trustee's Office*<br>Nancy Lynne Holley<br>U S Trustee<br>515 Rusk St<br>Ste 3516<br>Houston, TX 77002<br>713-718-4650<br>Email: nancy.holley@usdoj.gov | *Counsel for Official Committee of Unsecured Creditors*<br><br>Hugh M. Ray, III<br>McKool Smith, P.C.<br>600 Travis, Suite 7000<br>Houston, TX 77002<br>713-485-7300<br>Fax: 713-485-7344 |