# EXHIBIT A

## DEEP MARINE HOLDINGS, INC. ET AL. LIQUIDATING TRUST AGREEMENT

Deep Marine Holdings, Inc., Deep Marine Technology, Incorporated, Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC (together, "Deep Marine"), hereby enter this LIQUIDATING TRUST AGREEMENT, dated as of March [*], 2010 (this "Agreement"), by and among Deep Marine, as settlor, and John Bittner, as trustee of the Deep Marine Liquidating Trust (the "Trust") referred to herein (in such capacity, the "Trustee"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Joint Plan of Reorganization of Deep Marine under chapter 11 of the Bankruptcy Code dated March 15, 2010 (the "Plan").

### Background

A.      On December 4, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

B.      The Plan provides that on the Effective Date the transfers of cash and other property and assets to the Trust as described in Section 1.3 of this Agreement will be made;

C.      On or about June 2, 2010, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Plan.

D.      In this Agreement, the Holders of Allowed Claims not previously paid are sometimes collectively referred to as the "Trust Beneficiaries" and the cash, amounts and other assets transferred to the Trust as described in Section 1.3 are sometimes collectively referred to as the "Trust Assets;"

E.      The Trust is being created pursuant to this Agreement for the purposes of liquidating the Trust Assets that are not already cash, and distributing the proceeds thereof and the cash held by the Trust (the "Trust Proceeds") to the Trust Beneficiaries, as described in the Plan; and

F.      The Trustee shall have all powers necessary to implement the provisions of this Agreement and administer the Trust, including, without limitation, the power to: (i) prosecute for the benefit of the Trust Beneficiaries that are Holders of Allowed General Unsecured Claims, Allowed Subordinated Claims and Allowed Interests, through counsel selected by the Trustee, any causes of action that may from time to time be held by the Trust; (ii) preserve, maintain and liquidate the Trust Assets; (iii) distribute the Trust proceeds to the Trust Beneficiaries pursuant to the Plan; and (iv) otherwise perform the functions and take the actions provided for in this Agreement or required or permitted in the Plan or in any other agreement executed pursuant to the Plan, in each case subject to the provisions of the Plan.

### Agreement

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, Deep Marine and the Trustee agree as follows:

# ARTICLE 1

## DECLARATION OF TRUST

1.1     <u>Creation of Trust</u>. Deep Marine and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby constitute and create the Trust, which shall bear the name "Deep Marine Liquidating Trust." In connection with the exercise of the Trustee's powers hereunder, the Trustee may use this name or such variations thereof as the Trustee sees fit.

1.2     <u>Purpose of Trust</u>. The purpose of this Agreement is to implement the provisions of the Plan relating to the Trust, the Trust Beneficiaries and distributions of the cash and other assets held by the Trust on behalf, and for the benefit, of the Trust Beneficiaries, and to serve as a mechanism for liquidating and converting to cash the Trust Assets that are not already cash and distributing the Trust Proceeds to the Trust Beneficiaries in accordance with this Agreement, the Plan and the Confirmation Order.

1.3     <u>Transfer of Trust Assets to Trust</u>.

1.3.1     On the Effective Date and contemporaneously with the Closing, the Debtors will transfer to the Trust all net proceeds from the sale of the Acquired Assets for the benefit of the Holders of all Allowed Claims, subject to any Liens, Claims, encumbrances or other interests thereon, in accordance with Sections 4.02 and 12.16 of the Plan.

1.3.2     On the Effective Date, all of the Debtors' Causes of Action, the Avoidance Actions and all associated residual liabilities shall be transferred to the Trust by the Debtors. The Causes of Action and the Avoidance Actions shall be held in the Trust for the benefit of the Trust Beneficiaries.

1.3.3     On the Effective Date and contemporaneously with the Closing, all Other Assets shall be transferred to the Trust by the Debtors subject to any Liens, Claims, encumbrances or other interests thereon, in accordance with Sections 4.02 and 12.16 of the Plan. All Other Assets shall be held in Trust for the benefit of the Trust Beneficiaries.

1.3.4     The transfers in Sections 1.3.1, 1.3.2, 1.3.3 above are made for the sole benefit of the Trust Beneficiaries, pursuant to Bankruptcy Code sections 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and the Confirmation Order. Nothing in this Agreement is intended to, or shall be construed to, effect a release, extinguishment or compromise of any claim or cause of action transferred to the Trust pursuant to the Plan or this Agreement. The Trust Assets, the Trust Proceeds and all other property held from time to time by the Trust under this Agreement and any earnings, including without limitation interest, on any of the foregoing (collectively, the "<u>Trust Property</u>"), are to be applied by the Trustee in accordance with the terms hereof, the Plan and the Confirmation Order for the benefit of the Trust Beneficiaries, and for no other party, subject to the Plan, the Confirmation Order and the further covenants, conditions and terms hereinafter set forth.

1.3.5     To the extent any Trust Assets cannot be transferred to the Trust because of a restriction on transferability under applicable nonbankruptcy law that is not superseded by

Bankruptcy Code section 1123 or any other provision of the Bankruptcy Code, such Trust Assets shall be retained by Deep Marine. The proceeds from the sale or monetization of any such Trust Asset retained by Deep Marine shall be transferred to the Trust pursuant to the Plan, subject to any Liens, Claims, encumbrances or other interests thereon, in accordance with Sections 4.02 and 12.16 of the Plan, as if such transfer had not been restricted under applicable nonbankruptcy law. The Trustee may commence an action in the Bankruptcy Court to resolve any dispute regarding the transfer of the proceeds from the sale or monetization of any Trust Assets so retained by Deep Marine. To the extent necessary or appropriate, the Trustee may be designated as a representative of one or more of the Estates pursuant to Bankruptcy Code section 1123(b)(3)(B) to enforce or pursue any Trust Assets that remain property of Deep Marine after the Effective Date. From and after the Effective Date, the sole function of Deep Marine shall be to comply with the provisions of the Plan.

1.3.6   For all federal, state and local income tax purposes, the transfer of the Trust Assets to the Trust will be deemed to be a transfer to the Trust Beneficiaries, followed by a deemed transfer by such beneficiaries to the Trust as described in Section 5.1.  Interests of any of the Trust Beneficiaries in the Trust Proceeds are sometimes referred to as "Beneficial Interests."

1.3.7   The Trustee and the Trust Beneficiaries shall each value the Trust Assets and assumed liabilities consistently for federal, state and local income tax purposes. After the Effective Date, the Trustee, in reliance upon such professionals as the Trustee may retain, shall make a good faith valuation of the Trust Assets no later than 90 days following the Effective Date.

1.4   Liquidation of Trust Assets.

1.4.1   The Trustee will seek to resolve the Causes of Action and the Avoidance Actions in the interest of the Trust Beneficiaries.  The Trustee shall, in an expeditious but orderly manner and subject to the other provisions of the Plan and this Agreement, resolve the Causes of Action and the Avoidance Actions, liquidate and convert to cash the proceeds thereof, make timely distributions thereof in accordance with the terms of the Plan and this Agreement and not unduly prolong the existence of the Trust or Deep Marine. The Trustee shall exercise reasonable business judgment and resolve the Causes of Action and the Avoidance Actions to maximize distributions and net recoveries; provided, however, that the Trustee shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the maximization of distributions and net recoveries. Such recoveries may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any of the Causes of Action or the Avoidance Actions (in whole or in combination, and including the sale of any claims, rights or causes of action). The Trustee may incur any reasonable and necessary expenses in connection with resolution of the Causes of Action or the Avoidance Actions, which expenses shall be paid from the Trust Assets.

1.4.2   The Trustee shall, in an expeditious but orderly manner, monetize and convert the Other Assets (other than the Causes of Action and the Avoidance Actions, which will be dealt with as provided in Section 1.4.1) to cash and make timely distributions thereof, and not unduly prolong the duration of the Trust or Deep Marine. In so doing, the Trustee shall exercise its reasonable business judgment in monetizing such Other Assets to maximize distributions and

net recoveries. The monetization of such Other Assets may be accomplished through the sale or other monetization of such Assets (in whole or in combination) all as the Trustee may determine is in the best interests of the Trust Beneficiaries. Promptly after the sale or other monetization of all or each portion of such Other Assets, the Trustee shall deliver to the Trust Beneficiaries the net proceeds of such sale or monetization. If, at the end of five (5) years after the Effective Date, any of such Other Assets in the Trust remain unsold (the "Unsold Assets"), the Trustee shall submit a motion to the Bankruptcy Court, which shall set forth the Trustee's proposed treatment of the Unsold Assets. If any party objects, the Bankruptcy Court shall schedule a hearing with respect to the motion.

        1.4.3   The Trustee shall have no liability to any of the Debtors, their Estates, their Creditors, the Committee, their members or any other party for the outcome of its decisions with respect to the resolution of the Causes of Action or the Avoidance Actions or the monetization of the Other Assets, except for gross negligence, fraud or reckless, intentional or willful misconduct.

        1.5   Appointment and Acceptance of Trustee. The Trustee shall be deemed to be appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The Trustee accepts the Trust created by this Agreement and the grant, assignment, transfer, conveyance and delivery to the Trustee, on behalf, and for the benefit, of the Trust Beneficiaries, by Deep Marine of all of their respective right, title and interest in the Trust Assets, upon and subject to the terms and conditions set forth herein, in the Plan and in the Confirmation Order.

        1.6   No Reversion to Deep Marine. In no event shall any part of the Trust Property revert to or be distributed to Deep Marine or any other Debtor or reorganized Debtor.

        1.7   Incidents of Ownership. The Trust Beneficiaries shall be the sole beneficiaries of the Trust, the Trust Assets and the Trust Property, and the Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Confirmation Order, including, but not limited to, those powers set forth in Section 6.1 hereof.

## ARTICLE 2

## TRUST BENEFICIARIES

        2.1   Conflicting Claims. If any conflicting claims or demands are made or asserted with respect to a Beneficial Interest, the Trustee shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Trustee may elect to make no payment or distribution with respect to the Beneficial Interest represented by the claims or demands involved, or any part thereof, and the Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Trustee shall not be or become liable to any party for the Trustee's refusal to comply with any of such conflicting claims or demands. The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (ii) all differences have been resolved by a written agreement among all of such parties and the Trustee, which agreement shall include

a complete release of the Trust and the Trustee (the occurrence of either (i) or (ii) being referred to as a "Dispute Resolution" in this Section 2.1). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Trustee shall hold in a segregated interest bearing account with a United States financial institution any payments or distributions from the Trust to be made with respect to the Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

2.2    Rights of Trust Beneficiaries. Each Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Trust Beneficiary hereunder according to the terms of its Beneficial Interest which shall be limited to the amount of the Trust Beneficiary's Allowed Claim. Each Trust Beneficiary shall take and hold the same, subject to all the terms and conditions of this Agreement, the Plan and the Confirmation Order. The interest of a Trust Beneficiary is hereby declared and shall be in all respects personal property. Except as expressly provided in the Plan, the Confirmation Order or this Agreement, a Trust Beneficiary shall have no title to, right to, possession of, management of or control of the Trust or the Trust Property.

2.3    Interest Beneficial Only. The ownership of a Beneficial Interest in the Trust shall not entitle any Trust Beneficiary to any title in or to the Trust Property or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

2.4    Evidence of Beneficial Interest. Ownership of a Beneficial Interest in the Trust will be evidenced by the books and records of the Trust maintained by the Trustee. The Trustee shall, upon written request of a Trust Beneficiary, provide reasonably adequate documentary evidence of such Trust Beneficiary's Beneficial Interest, as indicated in the books and records of the Trust. The expense of providing such documentation shall be borne by the requesting Trust Beneficiary.

2.5    Transfers of Beneficial Interests. Beneficial Interests are non-transferable, except pursuant to the laws of descent and distribution.

2.6    Limited Liability. No provision of this Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Trust Beneficiary, shall give rise to any liability of such Trust Beneficiary solely in its capacity as such, whether such liability is asserted by Deep Marine, or by any other Person. Trust Beneficiaries are deemed to receive the Trust Property in accordance with the provisions of this Agreement, the Plan and the Confirmation Order in exchange for their Allowed Claims, without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## ARTICLE 3

## DURATION AND TERMINATION OF TRUST

3.1    Duration. The Trust shall become effective upon the Effective Date and shall remain and continue in full force and effect until terminated as provided herein. The Trust shall

terminate (the "Termination Date") upon the occurrence of the earlier of (i) the full liquidation, administration and distribution of the Trust Property in accordance with the Plan, the Confirmation Order and this Agreement and the full performance of all other duties and functions of the Trustee set forth in the Plan, the Confirmation Order and this Agreement and (ii) the fifth anniversary of the Effective Date, subject to one or more finite extensions, which must be approved by the Bankruptcy Court pursuant to the terms set forth in the Plan within six months prior to the then-current termination date and provided that the Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service to the effect that any such extension would not adversely affect the status of the Trust as a grantor trust for federal income tax purposes. Notwithstanding anything to the contrary in this Agreement, in no event shall the Trustee unduly prolong the duration of the Trust, and the Trustee shall, in the exercise of its reasonable business judgment and in the interests of the Trust Beneficiaries, at all times endeavor to (I) liquidate the Trust Property that is not Cash to maximize net recoveries and (II) otherwise terminate the Trust as soon as practicable in accordance with the Plan and this Agreement. When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Trustee shall seek authority from the Bankruptcy Court to close such Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

3.2     Continuance of Trust for Winding Up. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its duties have been fully performed. Upon distribution of all the Trust Property, the Trustee shall retain the books, records and files that shall have been delivered to or created by the Trustee. At the Trustee's discretion, all of such records and documents may be destroyed at any time following the date that is six years after the final distribution of Trust Property (unless such records and documents are necessary to fulfill the Trustee's obligations pursuant to Sections 4.6, 5.1, 5.2, 5.3, or 6.1 hereof). Except as otherwise specifically provided herein, upon the final distribution of Trust Property, the Trustee shall be deemed discharged and have no further duties or obligations hereunder, except to account to the Trust Beneficiaries as provided in Section 4.3 hereof and as may be imposed on the Trustee by virtue of Section 6.1 hereof, and the Trust will be deemed to have been dissolved.

# ARTICLE 4

# ADMINISTRATION OF TRUST

4.1     Payment of Claims, Expenses and Liabilities.  Subject to Section 4.2.3 hereof, the Trustee shall use Cash funds of the Trust: (i) to pay reasonable administrative expenses of the Trust that are incurred (including, but not limited to, any taxes imposed on the Trust or professional fees and expenses in connection with the administration and liquidation of the Trust Property and preservation of books and records as provided in Section 3.2 hereof); (ii) to satisfy other obligations or other liabilities incurred or assumed by the Trust (or to which the Trust Property is otherwise subject) in accordance with the Plan, the Confirmation Order or this Agreement, including fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Trust Assets and Trust Property; and (iii) to satisfy any other obligations of the Trust expressly set forth in the Plan. Such Cash funds shall come from

amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred.

    4.2    <u>Distributions</u>.

        4.2.1    <u>Generally</u>. From the Effective Date through the Termination Date:

            4.2.1.1    Subject to Section 4.1 and 4.2.2, at least annually the Trustee shall make the distributions required by the Plan, and such other distributions, including distributions of net income and net proceeds of sales of assets, in such amounts and at such times, from the Trust as the Trustee deems proper, subject to and in accordance with the Plan and this Agreement.

            4.2.1.2    Trust Beneficiaries will be required to maintain current documentation with the Trustee with respect to their qualification for exemption from federal income tax withholding on distributions, failing which the Trustee shall be entitled to withhold such portion of their distributions as may be required by law.

            4.2.1.3    Neither Deep Marine nor any Trust Beneficiary will have any liability for or responsibility with respect to the Trustee's fees or other expenses of administration of the Trust (collectively, "<u>Trust Expenses</u>").

        4.2.2    <u>Trust Property Available for Distribution</u>. Notwithstanding anything in this Agreement to the contrary, the Trustee shall cause the Trust at all times to retain sufficient funds (the "<u>Expense Reserve</u>") as the Trustee shall determine as are reasonably necessary for the Trust to: (i) make the payments and satisfy the obligations and liabilities described in Section 4.1; and (ii) fund any other amounts as required under the Plan, as well as the reasonable fees and expenses of the Trustee, the Trust, the members of the Trust Advisory Board, and the professionals retained by the Trustee (the "<u>Trust Professionals</u>").

        4.2.3    <u>Priority of Distribution of Trust Proceeds</u>. Any Trust Property available for distribution shall be applied, (i) first, to the fees, costs, expenses and liabilities of the Trust, the Trustee, and the members of the Trust Advisory Board (including the fees and expenses of the Trust Professionals) as provided in Section 4.1; provided, however, that the Trustee may not surcharge the collateral of any Trust Beneficiary to pay for any such fees, costs, expenses and liabilities except as may be authorized by the Bankruptcy Court upon motion of the Trustee to pay for fees, costs and expenses incurred in connection with the protection, preservation, liquidation and distribution of such collateral; and (ii) second, to distributions to Trust Beneficiaries in accordance with the terms of the Plan, this Agreement and the Confirmation Order.

        4.2.4    <u>Distribution of Trust Proceeds Upon Termination</u>. Promptly following the termination of the Trust, the Trustee shall distribute any amounts not yet distributed from the Trust to the Trust Beneficiaries in accordance with the terms of this Agreement, the Plan and the Confirmation Order.

        4.2.5    <u>De Minimis Distributions</u>. No Cash payment of less than twenty-five dollars ($25.00) shall be made to the Holder of any Claim on account of its Allowed Claim or to

the holder of any Beneficial Interest. Any Holder of an Allowed Claim or a Beneficial Interest on account of which the amount of Cash to be distributed pursuant to any distribution from the Trust is less than $25.00 shall be deemed to have no claim for such distribution against the Debtors, the Trust or the Trust Property.  Any cash not distributed pursuant to this Section 4.2.5 shall be the property of the Trust free of any restrictions thereon. Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 5.03 of the Plan.

      4.2.6   <u>Location for Distributions; Notice of Change of Address</u>.  Distributions shall be made by the Trustee to Trust Beneficiaries at the addresses provided in Section 11.4 hereof or such other address as may be provided to the Trustee by such Trust Beneficiary. Each Trust Beneficiary shall be responsible for providing the Trustee with timely written notice of any change in address. The Trustee is not obligated to make any effort to determine the correct address of any Trust Beneficiary.

      4.2.7   <u>Setoffs</u>. Except for any Claim that is Allowed in an amount set forth in the Plan, the Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estate or a Debtor may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by any Debtor of any such claims the Debtor may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Trustee.

      4.2.8   <u>Distribution Record Date</u>. As of the close of business on the fifth (5th) Business Day following the Effective Date (the "<u>Distribution Record Date</u>"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims. The Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

    4.3   <u>Reports</u>.

      4.3.1   The Trustee shall deliver to the Trust Beneficiaries, as soon as practicable, but no later than 30 days, after the end of each quarter, a report, in reasonable detail, containing information with respect to the Trust, its assets, the administration of the Trust, the resolution of Avoidance Actions, the monetization of Other Assets, the status of all Trust Assets and causes of action assigned to the Trust, including any settlements entered into by the Trust, the fees and expenses of the Trust, the Trustee and the Trust Professionals, the amount of Trust Proceeds received by the Trust, and any other matters relating to the Trust or the Trustee.  The Trustee

shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Trust and the Trustee to be in compliance with applicable law. The Trustee shall provide the Notice Parties (as defined in Section 10.1 hereof) with such other information as may be reasonably requested by such board from time to time.

4.4     Exchange Act. If the Trust becomes subject to the registration requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Trustee shall cause the Trust to register pursuant to, and comply with, the applicable reporting requirements of the Exchange Act.

4.5     Fiscal Year. Except for the first and last years of the Trust, the fiscal year of the Trust shall be the calendar year. For the first and last years of the Trust, the fiscal year of the Trust shall be such portion of the calendar year that the Trust is in existence.

4.6     Books and Records.

4.6.1     The Trustee shall retain and preserve the Debtors' books, records and files that shall have been delivered to or created by the Trustee, including all such books, records and files as may be needed to investigate, prosecute and resolve the causes of action held by the Trust.

4.6.2     The Trustee shall maintain, in respect of the Trust and the holders of Beneficial Interests, books and records relating to the assets and the income of the Trust and the payment of expenses of the Trust and the Trustee, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof in accordance with the provisions of this Agreement and applicable provisions of law, including tax law.  Any Trust Beneficiary may inspect the books and records maintained by the Trustee at a mutually agreeable time and place or as may be ordered by the Bankruptcy Court if no agreement can be reached.

4.7     Cash Payments. Any Cash payment to be made pursuant to the Plan or this Agreement shall be denominated in U.S. dollars and may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Trustee.

4.8     Insurance. The Trust may maintain customary insurance coverage for the protection of the Trustee and the Trust Advisory Board on and after the Effective Date as the Trustee determines to be appropriate. The Trustee also may obtain insurance coverage it deems necessary and appropriate with respect to any real or personal property which are Trust Assets.

4.9     Deep Marine.

4.9.1     On or after the Effective Date, the Trustee, in its sole and exclusive discretion, may take such action as permitted by applicable law and amended Governance Documents, as the Trustee may determine is reasonable and appropriate, including, but not limited to, causing: (i) Deep Marine to be merged into a remaining subsidiary and/or affiliate; (ii) Deep Marine to be dissolved; (iii) the legal name of Deep Marine to be changed; or (iv) the closure of Deep Marine's Chapter 11 Cases on the Effective Date or any time thereafter.

4.9.2    Pursuant to the Plan, on the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action), and (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Trustee and the Trustee or its designee shall be the presiding officer and the sole Governor of each such Debtor. The Trustee shall make all determinations with respect to employment of any other directors, officers, managers and employees of each such Debtor described in clause (b) on and after the Effective Date.

# ARTICLE 5

# TAX MATTERS

5.1    Tax Treatment. The Trustee and the holders of Beneficial Interests will treat the Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.770l-4(d) and any comparable provision of state or local law. Consistent with this treatment, for all federal, state and local income tax purposes, (i) each (a) Holders of Allowed Secured Claims in Classes A2, B2, B3, B4, C2, C3, C4, C5, D2, D3, D4, D5, E2, E3, E4, E5, F2, F3, and F4 (b) Holders of Allowed General Unsecured Claims in Classes A3, B5, C6, D6, E6 and F6, (c) Holders of Subordinated Claims in Classes A4, B6, C7, D7, E7 and F7, and (d) Holders of Interests in Classes A5, B7, C8, D8, E8, and F8, shall be treated as transferring such Allowed Claim to the Debtors in exchange for the holder's share of the Trust Assets (subject to the liabilities of the Debtors assumed by the Trust), in addition to other distributions to which the holder may be entitled to under the Plan, and then as transferring the holder's share of the Trust Assets (subject to the liabilities) to the Trust in exchange for the holder's Beneficial Interest in the Trust.  The holders of Beneficial Interests in the Trust will be treated solely for federal, state and local tax purposes as the grantors and deemed owners of the Trust; and the Debtors, the Trustee and the Trust Beneficiaries will use consistent valuations for the transferred assets for all federal, state and local income tax purposes. The Trustee shall be authorized to take any action necessary to maintain compliance with this regulation or its successor that does not contradict the terms of this Agreement, the Plan or the Confirmation Order.

5.2    Tax Reporting. The "taxable year" of the Trust shall be the "calendar year" as those terms are defined in Section 441 of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"). The Trustee shall file returns for the Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a). The Trustee shall annually (within seventy-five (75) days after the end of each calendar year) send to each record holder of a Beneficial Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal, state and local income tax returns. Such reporting shall also occur within sixty (60) days of the dissolution of the Trust. The Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan relating to Disputed Claims) to the Trust Beneficiaries in accordance with their relative Beneficial Interests in the Trust and the Trust Assets that are held for their benefit.

5.3     Tax Withholdings. The Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Internal Revenue Code or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Trust Beneficiaries. All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to such Trust Beneficiaries for all purposes of this Agreement. The Trustee shall be authorized to collect such tax information from the Trust Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan, the Confirmation Order and this Agreement. The Trustee may refuse to make a distribution to any Trust Beneficiary that fails to furnish such information in a timely fashion, until such information is delivered; provided, however, that upon the Trust Beneficiary's delivery of such information, the Trustee shall make such distribution to which the Trust Beneficiary is entitled, without interest.

## ARTICLE 6

## POWERS OF AND LIMITATIONS ON THE TRUSTEE

6.1     Powers of the Trustee.

6.1.1     The Trustee shall have only such rights, powers and privileges expressly set forth in the Plan and this Agreement and as otherwise provided by applicable law. Subject to the Plan and other provisions herein, including, without limitation, Section 9.4 of this Agreement, the Trustee shall be expressly authorized to undertake the following actions, in the Trustee's good faith judgment, in the best interests of the Trust Beneficiaries and to maximize net recoveries and distributions therefor:

6.1.1.1     object to and/or withdraw objections to Claims, and manage, control, prosecute, compromise and/or settle objections to Claims without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, the Confirmation Order and this Agreement; the Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses, subject to Section 4.1;

6.1.1.2     investigate, prosecute, settle or otherwise compromise or abandon for the benefit of the Trust all claims and causes of action transferred to the Trust or arising in favor of the Trust, including, without limitation, take any action with respect to appeals, counterclaims, and defenses of such claims and causes of action;

6.1.1.3     liquidate the Trust Assets that are not already Cash;

6.1.1.4     execute any documents and take any other actions related to, or in connection with, the liquidation of the Trust Assets, the distribution of the Trust Proceeds and the exercise of the Trustee's powers granted herein;

6.1.1.5     hold legal title to any and all rights of the Trust Beneficiaries in, to or arising from the Trust Property;

6.1.1.6    protect and enforce the rights to the Trust Property vested in the Trustee by this Agreement by any method deemed reasonably appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

6.1.1.7    make distributions of the Trust Proceeds and other Trust Property to the appropriate Trust Beneficiaries in accordance with this Agreement, the Plan, and the Confirmation Order;

6.1.1.8    file, if necessary, any and all federal, state and local tax returns with respect to the Trust and pay taxes properly payable by the Trust, if any;

6.1.1.9    make all necessary filings in accordance with any applicable law, statute or regulation, including, but not limited to, the Exchange Act;

6.1.1.10    determine and satisfy from the Trust Property any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, created, incurred or assumed by the Trust in accordance with the Plan and this Agreement;

6.1.1.11    retain and pay professionals from the Trust Property as provided herein;

6.1.1.12    invest monies received by the Trust, the Trustee or otherwise held by the Trust or the Trustee in accordance with Section 6.4 hereof;

6.1.1.13    in the event that the Trustee determines that the Trust Beneficiaries or the Trust may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences;

6.1.1.14    create sub-trusts or title vehicles of which the Trust or the Trust Beneficiaries hold the beneficial or ownership interests, as applicable;

6.1.1.15    perform such functions and take such actions as are required, provided for or permitted in this Agreement, the Plan, the Confirmation Order or any other agreement executed pursuant to the Plan; and

6.1.1.16    enter into, on behalf of the Trust, escrow or similar agreements with U.S. financial institutions, on compensation and other terms reasonably acceptable to the Trustee, for purpose of effecting distributions otherwise in accordance with this Agreement, the Plan and the Confirmation Order and investing Trust Property in accordance with Section 6.4 prior to the distribution thereof.

6.1.1.17    control, enforce, assert, and waive (in its reasonable discretion) all privileges (legal or otherwise, including the attorney-client privilege) held by the Debtors at any time, whether pre-petition or post-petition.

6.2    Limitations on Trustee. No part of the Trust Property shall be used or disposed of by the Trustee in furtherance of any trade or business. The Trustee shall, on behalf of the Trust,

hold the Trust out as a trust in the process of liquidation and not as an investment company. The Beneficial Interests are not transferrable, and the Trustee shall not become a market-maker for the Beneficial Interests or otherwise attempt to create a secondary market for the Beneficial Interests. The Trustee shall be restricted to the liquidation of the Trust Assets on behalf, and for the benefit, of the Trust Beneficiaries and the distribution and application of Trust Property for the purposes set forth in this Agreement, the Plan and the Confirmation Order, and the conservation and protection of the Trust Property and the administration thereof in accordance with the provisions of this Agreement, the Plan and the Confirmation Order.

6.3     Professionals. The Trust may, but shall not be required to, from time to time enter into contracts with, consult with and retain attorneys, accountants and other professionals, deemed by the Trustee to have qualifications necessary or desirable to assist in the proper administration of the Trust. The Trustee shall pay the reasonable fees and expenses of such persons out of the Trust Property in the ordinary course of business as provided in and subject to Section 4.1.  The Trust may also enter into contingent fee agreements with professionals, without further Bankruptcy Court approval.

6.4     Investment of Trust Monies. The Trustee shall invest the Trust Proceeds received by the Trustee or otherwise held by the Trustee in demand or time deposits of investment grade banks, or short-term investments issued or guaranteed by the United States or by a department, agency or instrumentality of the United States, of which the length of term shall be consistent with the obligations to pay costs, expenses and other obligations and make distributions pursuant to the Plan and under Article 4 of this Agreement.

# ARTICLE 7

## CONCERNING THE TRUSTEE

7.1     Generally. The Trustee shall exercise such of the rights and powers vested in it by this Agreement, the Plan and the Confirmation Order, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of its own affairs. No provision of this Agreement, the Plan or the Confirmation Order shall be construed to relieve the Trustee from liability for its own gross negligence, fraud or reckless, intentional or willful misconduct, except that the Trustee shall not be liable for any action taken in good faith in reliance upon the advice of professionals retained by the Trustee in accordance with this Agreement.

7.2     Reliance by Trustee. Except as otherwise provided in this Agreement, the Plan or the Confirmation Order:

7.2.1     the Trustee may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties; and

7.2.2     persons (including any professionals retained by the Trustee in accordance with this Agreement) engaged in transactions with the Trustee shall look only to the Trust

-13-

Property to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Agreement, the Plan or the Confirmation Order, and the Trustee shall have no personal or individual obligation to satisfy any such liability.

       7.3    <u>Liability to Third Persons</u>. Neither the Trustee nor the members of the Trust Advisory Board shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Trust, the Trust Property or the affairs of the Trust, except for their own gross negligence, fraud or reckless, intentional or willful misconduct, and all such persons shall look solely to the Trust Property for satisfaction of claims of any nature arising in connection with affairs of the Trust. Other than as set forth in the Plan or in the Confirmation Order, nothing in this Section 7.3 shall be deemed to release any Trust Beneficiary from any actions or omissions occurring prior to the Effective Date.

       7.4    <u>Nonliability of Trustee for Acts of Others</u>. Nothing contained in this Agreement, the Plan or the Confirmation Order shall be deemed to be an assumption by the Trustee of any of the liabilities, obligations or duties of the Debtors and shall not be deemed to be or contain a covenant or agreement by the Trustee to assume or accept any such liability, obligation or duty. Any successor Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Trustee hereunder, and any statement or representation made as to the assets comprising the Trust Property or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. The Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue. The Trustee or any successor Trustee shall not be liable for any act or omission of any predecessor Trustee.

       7.5    <u>Indemnity</u>. The Trustee and, if the Trustee is an entity, its officers and directors or managers, the Trust Professionals in their capacity as such, and the members of the Trust Advisory Board (collectively, the "<u>Indemnified Parties</u>"), shall be indemnified by the Trust solely from the Trust Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Trustee or the Trust Advisory Board solely in their capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct. Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the Trust immediately upon the entry of a final, non-appealable judgment or order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.5. The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

       7.6    <u>Compensation and Expenses</u>. Subject to Section 4.1, the Trustee shall receive fair and reasonable compensation for its services in accordance with the compensation schedule

attached hereto as Annex A. The Trustee shall be entitled to reimburse itself and the Trust Professionals from the Trust Property on a monthly basis for all reasonable out-of-pocket expenses actually incurred in the performance of duties in accordance with this Agreement, and, when due, professional fees in accordance with the terms of this Agreement and such professionals' retention.

# ARTICLE 8

## SUCCESSOR TRUSTEES

8.1    <u>Resignation</u>. The Trustee may resign from the Trust by filing a notice of resignation with the Court at least sixty (60) days prior to the effective date of such resignation. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice and (ii) the effective date of the appointment of a successor Trustee in accordance with Section 8.4 hereof and such successor's acceptance of such appointment in accordance with Section 8.5 hereof.  In the event of a resignation, the resigning Trustee shall provide to the Bankruptcy Court and the Trust Advisory Board a full accounting of monies and assets received, disbursed, and held during the term of the office of the Trustee.

8.2    <u>Removal</u>. The Trustee may be removed, with cause, by the Bankruptcy Court, upon motion of the Trust Advisory Board or a Trust Beneficiary. Such removal shall become effective on the date specified by the Bankruptcy Court.

8.3    <u>Effect of Resignation or Removal</u>. The resignation, removal, incompetency, bankruptcy or insolvency of the Trustee shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan or the Confirmation Order or invalidate any action theretofore taken by the Trustee. All fees and expenses appropriately incurred by the Trustee prior to the resignation, incompetency or removal of the Trustee shall be paid from the Trust Property as provided herein, unless such fees and expenses are disputed by the successor Trustee, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Trustee that are subsequently allowed by the Bankruptcy Court shall be paid from the Trust Property. In the event of the resignation or removal of the Trustee, such Trustee shall: (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Trustee or directed by the Bankruptcy Court to effect the termination of such Trustee's capacity under this Agreement; (ii) promptly deliver to the successor Trustee all documents, instruments, records and other writings related to the Trust as may be in the possession of such Trustee; provided, however, that such Trustee may retain one copy of each of such documents for its purposes; and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

8.4    <u>Appointment of Successor</u>. In the event of the resignation, removal, incompetency, bankruptcy or insolvency of the Trustee, a vacancy shall be deemed to exist and a successor shall be selected and appointed within thirty (30) days after the date of such vacancy by the Bankruptcy Court, upon its own motion or the motion of the Trust Advisory Board or any Trust Beneficiary.

8.5     Acceptance of Appointment by Successor Trustee. Any successor Trustee appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and, in case of the Trustee's resignation, to the resigning Trustee. Thereupon, such successor Trustee shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Trust with like effect as if originally named Trustee and shall be deemed appointed pursuant to Bankruptcy Code section 1123(b)(3)(B). The resigning or removed Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such resigning or removed Trustee hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee upon the trusts herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Trustee.

## ARTICLE 9

## TRUST ADVISORY BOARD

9.1     Establishment of Trust Advisory Board

9.1.1    The "Trust Advisory Board" means the board to be appointed in accordance with, and to exercise the duties set forth in, this Trust Agreement, which duties shall be in the nature of overseeing, advising and consulting with the Trustee on matters pertaining to the administration of the Trust.  The Trust Advisory Board shall be comprised of three members to be initially selected by the Creditors' Committee as identified on Annex B to this Agreement.

9.1.2    The Trust Advisory Board shall not take any action which will cause the Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

9.1.3    A quorum for meetings of the Trust Advisory Board shall consist of a majority of the non-recused, voting members of the Trust Advisory Board then serving; provided, however, that, for purposes of determining whether a quorum is present at such a meeting, a voting member of the Trust Advisory Board shall be deemed present if a representative of the member is attending in person, by telephone or by proxy.

9.1.4    Except as expressly provided herein, the affirmative vote of a majority of the non-recused, voting members of the Trust Advisory Board shall be the act of the Trust Advisory Board with respect to any matter that requires the determination, consent, approval or agreement of such board.  Any or all of the members of the Trust Advisory Board may participate in a regular or special meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Trust Advisory Board participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Trust Advisory Board, each Trust Advisory Board member shall be entitled to cast one vote, which vote shall be cast personally by such Trust Advisory Board member or by proxy.  In a

matter in which the Trustee cannot obtain direction or authority from the Trust Advisory Board, the Trustee may file a motion requesting such direction or authority from the Bankruptcy Court.

9.1.5   A Trust Advisory Board member and its representative shall be recused from the Trust Advisory Board's deliberations and votes on any matters as to which such member has a conflicting interest.  If a Trust Advisory Board member or its representative does not recuse itself from any such matter, that Trust Advisory Board member and its representative may be recused from such matter by the majority vote of the remaining, voting members of the Trust Advisory Board that are not recused from the matter.

9.1.6   Any action required or permitted to be taken by the Trust Advisory Board at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Trust Advisory Board as evidenced by one or more written consents describing the action taken, signed by the Trust Advisory Board and filed with the minutes or proceedings of the Trust Advisory Board.

9.2   <u>Resignation or Removal of Members</u>.  The authority of the members of the Trust Advisory Board will be effective as of the Effective Date and will remain and continue in full force and effect until the Trust is dissolved.  The service of the members of the Trust Advisory Board will be subject to the following:

9.2.1   the members of the Trust Advisory Board will serve until death, resignation, or removal;

9.2.2   a member of the Trust Advisory Board may resign at any time by providing a written notice of resignation to the remaining members of the Trust Advisory Board.  Such resignation will be effective when a successor is appointed as provided herein;

9.2.3   the members of the Trust Advisory Board may be removed, and in the event of a vacancy in such member's position (whether by removal, death or resignation) a new member may be appointed, by the unanimous vote of the remaining members of the Trust Advisory Board.  The appointment of a successor member of the Trust Advisory Board will be evidenced by the filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor member of the Trust Advisory Board.  If a successor member is not appointed within 45 days, then the Trustee or a member of the Trust Advisory Board may request the appointment of a replacement board member by the Bankruptcy Court; and

9.2.4   immediately upon appointment of any successor member of the Trust Advisory Board, all rights, powers, duties, authority, and privileges of the predecessor member of the Trust Advisory Board hereunder will be vested in and undertaken by the successor member of the Trust Advisory Board without any further act; and the successor member of the Trust Advisory Board will not be liable personally for any act or omission of the predecessor member of the Trust Advisory Board.

9.3   <u>Expense Reimbursement</u>.  Any member of the Trust Advisory Board may be reimbursed by the Trustee for its actual, reasonable out-of-pocket expenses incurred by the member in connection with service on the board.  The members of the Trust Advisory Board

shall not be entitled to receive any other form of compensation for services rendered. The Trustee may object to any expense submitted for payment and if the parties cannot resolve any such objection by agreement, the parties may submit the objection to the Bankruptcy Court for resolution.

9.4   <u>Joint Interest</u>.   It is expressly acknowledged that the members of the Trust Advisory Board and the Trustee share a joint interest in the prosecution of the Causes of Action and the Avoidance Actions and entry into an agreement to share information based on such joint interest will be deemed sufficient to preserve and protect privileges.

# ARTICLE 10

## APPROVALS OF PROPOSALS

10.1   <u>Necessary Approvals</u>.   Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall give the Trust Advisory Board, GE, DCC Ventures, NJK Holding Corporation, Nasser Kazeminy, Otto Candies, LLC, Otto Candies, III and Candies Shipbuilders, LLC (collectively, the "Notice Parties") 14  days prior written notice (the "Notice Period") of the following matters (individually referred to as a "Proposal"):

10.1.1  Any transaction to sell, assign, transfer or abandon any Trust Assets (other than claims, rights or Causes of Action which are addressed in Sections 10.1.2 and 10.1.3) in which the amount of the transaction exceeds $75,000 ;

10.1.2  Any decision to settle or otherwise resolve any objections to Secured Claims, Priority Claims, Administrative Expense Claims or Unsecured Claims against the Debtors in which the amount of the settlement or resolution results in an allowed Secured Claim, Priority Claim, Administrative Expense Claim or Unsecured Claim in excess of $75,000 ;

10.1.3  Any decision or agreement to discount, compromise, settle and/or sell any rights, claims, Causes of Action or litigation in which either (i) the amount sought in any claim, Cause of Action or litigation, or (ii) the amount of the settlement or sale, exceeds $75,000 ;

10.1.4  Any decision to make any distributions to the holders of Allowed Claims;

10.1.5  Retention of any Trust Professional;

10.1.6  Payment of any cost or expense of the Trust; and

10.1.7  Any amendment of this Trust Agreement.

10.2   If none of the Notice Parties object to the Proposal prior to the expiration of the Notice Period, the Notice Parties shall be deemed to have approved the Proposal and the Trustee shall be authorized to take all actions necessary to consummate the Proposal without further notice or order of the Bankruptcy Court. If any of the Notice Parties objects to the Proposal prior to the expiration of the Notice Period, the Trustee may seek an order of the Bankruptcy Court approving and authorizing the Proposal; but may not consummate the Proposal without an order

of the Bankruptcy Court.  GE, Kazeminy and Candies shall cease to be a Notice Party entitled to notice under Section 10.1 of this Agreement once they are no longer a Trust Beneficiary.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

11.1    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas (without reference to conflicts of law).

11.2    <u>Jurisdiction</u>. Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Trust and the Trustee, including, without limitation, the administration and activities of the Trust and the Trustee; provided, however, that notwithstanding the foregoing, the Trustee shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any claims or causes of action assigned to the Trust.

11.3    <u>Severability</u>. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

11.4    <u>Notices</u>. Any notice or other communication required or permitted to be made under this Agreement shall be in writing, shall be delivered personally or by telex, facsimile or other telegraphic means, by nationally recognized overnight delivery service or by first-class mail, and shall be deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows (or to such other address as the recipient may specify by written notice given in accordance with this Section):

(i) if to the Trustee, to:

Deep Marine Liquidating Trust
c/o Grant Thornton LLP
Attention:  John Bittner
1717 Main Street, Suite 1500
Dallas, Texas  75201
Phone:   (214) 561-2390
Fax:       (214) 561-2370

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone: (713) 223-2300
Fax: (713) 221-1212

(ii) if to any Trust Beneficiary, to the last known address of such Trust
Beneficiary according to the Trustee's records; and

(iii) if to Deep Marine, to:

Deep Marine Holdings, Inc. et al.
Attention: John Bittner
20411 Imperial Valley
Houston, Texas  77073
Phone:   (713) 896-8555
Fax:      (713) 849-4021

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone: (713) 223-2300
Fax: (713) 221-1212

    11.5    <u>Headings</u>. The headings contained in this Agreement are solely for convenience
of reference and shall not affect the meaning or interpretation of this Agreement or of any terms
of any provision hereof.

    11.6    <u>Plan</u>. The terms of this Agreement are intended to supplement the terms provided
by the Plan and the Confirmation Order. However, to the extent that the terms of the Plan are
inconsistent with the terms set forth in this Agreement with respect to the Trust, then the Plan
shall govern. The Trust and the Trustee shall be bound by the Plan and shall not challenge any
provision of the Plan.

    11.7    <u>Cooperation</u>. Deep Marine shall turn over or otherwise make available to the
Trustee, at no cost to the Trust or the Trustee, all books and records reasonably required by the
Trustee to carry out its duties hereunder, and agrees to otherwise reasonably cooperate with the
Trustee in carrying out its duties hereunder.

11.8    Entire Agreement. This Agreement and the Annex attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

11.9    Amendment. Subject to Sections 9.4 and 10.1, this Agreement may be amended by the Trustee; provided, however, that Bankruptcy Court approval shall be required for any changes or amendments to this Agreement that are inconsistent with the terms of the Plan or the Confirmation Order.

11.10    Meanings of Other Terms. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein" and "hereof" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement. The words "include," "includes," "including" and similar terms shall be deemed to be followed by the words "without limitation."

11.11    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A facsimile or portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

DEEP MARINE HOLDINGS, INC.

By: _____
Name: _____
Title: _____

DEEP MARINE TECHNOLOGY,
INCORPORATED

By: _____
Name: _____
Title: _____

**DEEP MARINE 1, LLC**

By: _____

Name: _____

Title: _____


**DEEP MARINE 2, LLC**

By: _____

Name: _____

Title: _____


**DEEP MARINE 3, LLC**

By: _____

Name: _____

Title: _____


**DEEP MARINE 4, LLC**

By: _____

Name: _____

Title: _____


**LIQUIDATING TRUSTEE**

By: _____

Name: _____

Title: _____

**Annex A**

Trustee's Compensation

The Trustee's fees in connection with its engagement will be [$665.00] per hour. The Trustee will also be entitled to be reimbursed for certain expenses as provided in the Agreement.

Invoices for fees and expenses incurred in connection with services as Trustee will be billed monthly, and are due upon receipt.

**The Trustee shall not be required to file fee applications with the Bankruptcy Court.**

**Annex B**

[to come]