**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
06/02/2010

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **DEEP MARINE HOLDINGS, INC.;** | § | **Case No. 09-39313** |
| **DEEP MARINE TECHNOLOGY** | § | |
| **INCORPORATED;** | § | **Case No. 09-39314** |
| **DEEP MARINE 1, LLC;** | § | **Case No. 09-39315** |
| **DEEP MARINE 2, LLC;** | § | **Case No. 09-39316** |
| **DEEP MARINE 3, LLC;** | § | **Case No. 09-39317** |
| **DEEP MARINE 4, LLC** | § | **Case No. 09-39318** |
| **Debtors.** | § | **(Jointly Administered under 09-39313)** |
| | | **Chapter 11** |

## ORDER CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION AND APPROVING SALE OF SUBSTANTIALLY ALL ASSETS

On December 4, 2009, Deep Marine Holdings, Inc., Deep Marine Technology Incorporated, Deep Marine 1, LLC, Deep Marine 2, LLC, Deep Marine 3, LLC and Deep Marine 4, LLC (together, the "Debtors") each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors filed a Joint Plan of Reorganization on March 15, 2010 (doc. no. 295), a true and correct copy of which, as modified and amended in accordance with this Order, is attached hereto as **Exhibit A** (the "Plan")[1] and is incorporated herein by reference. Also on March 15, 2010, the Debtors filed their Motion for (a) Entry of an Order (i) Approving Bidding Procedures, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (iii) Approving Form and Notice Thereof, and (b) Entry of an Order After the Sale Hearing (i) Authorizing the Debtors to Sell Their Assets, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (iii) Granting Related Relief (the "Sale Motion") (doc. no. 296).

The Debtors filed a supplement to their Plan (the "Plan Supplement") on May 28, 2010. The Plan Supplement includes the Liquidating Trust Agreement and Purchase and Sale Agreements. The Plan Supplement is incorporated herein by reference, provided however that the Liquidating Trust Agreement shall be amended as set forth in Paragraph 53 of this Order.

On March 30, 2010, the Debtors filed their Joint Disclosure Statement for the Debtors' Proposed Joint Plan of Reorganization (the "Disclosure Statement") (doc. no. 339), as well as their Motion for Entry of an Order (I) Approving Disclosure Statement, (II) Determining Dates, Procedures and Forms Applicable to Solicitation Process, (III) Establishing Vote Tabulation Procedures, and (IV) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Plan (the "Solicitation Procedures Motion") (doc. no. 342).

On April 12, 2010, the Court entered its order approving the Debtors' Motion for Entry of an Order (i) Approving Bidding Procedures, (ii) Scheduling Bidding Deadline, Auction Date and Sale Hearing Date, (iii) Approving Form and Notice Thereof (the "Bid Procedures Order") (doc. no. 363). In accordance with the Bid Procedures Order, the Debtors published notice of the entry of the Bid Procedures Order, Auction (defined below) and Sale Hearing (defined below) in the national edition of the Wall Street Journal, as evidenced by the Certificate of Publication filed with the Court (doc. no. 397).

On April 29, 2010, the Court entered its Order approving the Disclosure Statement as well as the solicitation procedures set forth in the Solicitation Procedures Motion (the "Solicitation Procedures Order") (doc. no. 421). In accordance with the Solicitation Procedures Order, the Debtors have filed an affidavit of solicitation mailing attesting that on April 30, 2010, copies of (i) the notice of the confirmation hearing and plan objection deadline, (ii) Disclosure

---

[1] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Plan.

Statement, (iii) Plan, and (iv) a ballot (when appropriate) were served on the creditors and equity interest holders of the Debtors, as well as all parties on the consolidated master service list, as required by the Solicitation Procedures Order. Furthermore, the Debtors published notice of the entry of the Solicitation Procedures Order, Sale and Confirmation Hearing and Plan Objection Deadline in the national edition of the Wall Street Journal, as evidenced by the Certification of Publication filed with the Bankruptcy Court (doc. no. 433).

On May 17, 2010, the Debtors held an auction (the "Auction"), in accordance with the Bid Procedures Order. As a result of the Auction, the Debtors, in consultation with the Official Unsecured Creditors Committee (the "Committee"), selected a highest and best bid as the prevailing bidder.[2]

On June 2, 2010, the Bankruptcy Court held a hearing to consider the sale ("Sale") of substantially all of the Debtors' assets (the "Acquired Assets") as well as confirmation of the Debtors' Plan (the "Sale and Confirmation Hearing"). Based upon the arguments of counsel and the evidence submitted, proffered and adduced at the Sale and Confirmation Hearing, and the record in these cases, of which the Bankruptcy Court took judicial notice; and the Bankruptcy Court having determined that the relief requested in the Sale Motion, Sale Documents (as defined below), the Plan, and the provisions of this Order are in the best interests of the Debtors, their estates, and their creditors; and it appearing that reasonable and adequate notice of the Sale Motion, the Bidding Procedures Order, the Plan, the Auction and the Sale and Confirmation

Hearing has been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and orders of this Bankruptcy Court; the Bankruptcy Court hereby makes the following findings of fact and conclusions of law, and issues this Confirmation Order confirming the Plan and approving the Sale.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

A.      Exclusive Jurisdiction; Venue; Core Proceeding.   The Bankruptcy Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this Bankruptcy Court is proper under 28 U.S.C. §§ 1408 and 1409.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), (N) and (O) and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.      Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket in these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, and adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

---

[2] The highest and best bid was an aggregate bid comprised of four separate bids from four separate bidders, as allowed pursuant to the Bid Procedures Order, and as detailed in the Debtors' Notice of Auction Results (doc. no. 458).  Each of the four prevailing bidders is a "Prevailing Bidder" and together, they constitute the "Prevailing Bidders."  Each sale of assets to each Prevailing Bidder is memorialized in a separate purchase and sale agreement and related documents (each a "Purchase and Sale Agreement", together the "Purchase and Sale Agreements").  In each instance in this Order where "Prevailing Bidders" is used in relation to "Acquired Assets" or "Purchase and Sale Agreements" such use is meant to include both the plural and the singular, with the singular usage applied to each Prevailing Bidder and that Prevailing Bidder's relative Purchase and Sale Agreement and Acquired Assets.

C.   <u>Retention of Jurisdiction</u>.  The Bankruptcy Court finds and concludes that the Bankruptcy Court's retention of jurisdiction as set forth in Article X of the Plan comports with 28 U.S.C. §§ 1334 and 157.

### Notice, Solicitation and Acceptance

D.   <u>Adequate Notice of Sale and Confirmation Hearing</u>.   In accordance with Bankruptcy Rules 2002, 3019, and 9014, the Bid Procedures Order, and the Solicitation Procedures Order, the Bankruptcy Court finds and concludes that proper, timely and adequate notice of the time for filing objections to the Sale and Confirmation of the Plan and proper, timely and adequate notice of the Sale and Confirmation Hearing was provided to all Holders of Claims and Interests.  No other or further notice of the Sale, the Confirmation of the Plan, or the Sale and Confirmation Hearing is necessary or required.

E.   <u>Adequate Information</u>.   The Bankruptcy Court finds and concludes that the solicitation of acceptances of the Plan was conducted after disclosure of "adequate information" as defined in Bankruptcy Code § 1125(a) and in accordance with the Solicitation Procedures Order.

F.   <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Bankruptcy Court finds and concludes that the Debtors have solicited acceptances of the Plan in good faith and in compliance with the Bankruptcy Code.  The Debtors and each of their agents, directors, managing partners, managers, officers, employees, financial advisors, attorneys, and other professionals are deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the solicitation of the Plan, and therefore are not and shall not, on account of such issuance or solicitation, be liable at any time for the violation of any law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distribution or

dissemination of any information contained in the Plan, the Disclosure Statement, the Plan Supplement, and any and all related documents.

<u>**Sale Authorization**</u>

G.      <u>Compliance with Bidding Procedures Order.</u>      As demonstrated by (i) the testimony and other evidence proffered and adduced at the Sale and Confirmation Hearing, and (ii) the representations of counsel made on the record at the Sale and Confirmation Hearing, the Debtors have complied in all respects with the Bidding Procedures Order.  Furthermore, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors afforded all interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Acquired Assets.

H.      <u>Auction Process.</u>  The Debtors and their agents and advisors (i) considered all bids submitted on or before the Bid Deadline (as defined in the Bid Procedures Order); (ii) negotiated in good faith with all bidders up to and including the Auction; and (iii) conducted the Auction in accordance with the Bidding Procedures.  The Auction was conducted in a manner that was reasonably certain to achieve the highest and best offer for the Acquired Assets.  At the conclusion of the Auction, the Debtors announced that they had determined, after consultation with the Committee, that the aggregate offer submitted by the Prevailing Bidders was the highest and best bid in accordance with the Bid Procedures Order.

I.      <u>Debtors' Authority.</u>  Upon entry of this Order, the Debtors (i) have full authority to execute the Purchase and Sale Agreements and all related documents (together, the "<u>Sale Documents</u>"), and the sale by the Debtors has been duly and validly authorized; (ii) have all authority necessary to consummate the Sale contemplated by the Sale Documents and the Plan; (iii) have taken all action necessary to approve the Sale, Sale Documents and the consummation

by the Debtors of the transactions contemplated thereby; and (iv) do not require any consents or approvals, other than those expressly provided for in the Sale Documents, to consummate the Sale and such transactions.

J.      Debtors' Business Judgment.   The Debtors have exercised sound business judgment in deciding to enter into the Sale Documents and to sell the Acquired Assets to the Prevailing Bidders pursuant to the Sale Documents and the Plan, including the facts that: (a) the Sale Documents constitute the highest and best offer for the Acquired Assets; (b) the Sale Documents and the closing of the transactions contemplated thereby presents the best opportunity to realize the highest value for the Acquired Assets; (c) the consideration provided by the Prevailing Bidders for the purchase of the Acquired Assets pursuant to the Sale Documents, the Plan and this Order exceeds what the Debtors would be able to realize in a separate liquidation of the Acquired Assets; and (d) without the Sale, there will likely be a substantial diminution in the value of the Acquired Assets to the detriment of the Debtors' estates, their creditors and parties in interest.

K.      Consideration Adequate.   The Prevailing Bidders' aggregate offer for the Acquired Assets is the highest and best offer received by the Debtors after a period in which third parties had sufficient opportunity to seek information and enter into discussions or negotiations with the Debtors and their retained advisors concerning a sale of the Acquired Assets. The consideration offered by the Prevailing Bidders is fair and reasonable and constitutes fair and adequate consideration and reasonably equivalent value for the Acquired Assets pursuant to the Bankruptcy Code.

L.      Sale Free and Clear of All Interests and Claims.   Not selling the Acquired Assets free and clear of all Interests and Claims (as defined below) would adversely affect the Debtors'

estates, and a sale of the Acquired Assets other than one free and clear of Interests and Claims would be of substantially less benefit to the Debtors' estates.  The Prevailing Bidders would not have entered into the Sale Documents and would not consummate the Sale or the transactions contemplated by the Sale Documents, thus adversely affecting the Debtors, their estates, and their creditors, if the sale of the Acquired Assets to the Prevailing Bidders were not free and clear of all Interests and Claims, or if the Prevailing Bidders would, or in the future could, be liable for any of the Interests or Claims.  The Debtors may sell the Acquired Assets free and clear of all Interests or Claims because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. All holders of Interests or Claims that did not object to the sale are deemed to have consented to the sale pursuant to 11 U.S.C. § 363(f)(2).

M.   Assumed and Assigned Contracts.   The assumption by the Debtors of the executory contracts listed in Exhibit B to that certain Purchase and Sale Agreement between the relevant Debtors and Otto Marine Limited (the "Assumed and Assigned Contracts") (and attached hereto as part of the Plan Supplement) is integral to that Purchase and Sale Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. Further, the subsequent assignment of the Assumed and Assigned Contracts by the Debtors to Otto Marine Limited is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  Otto Marine Limited has provided adequate assurance of future performance under the Assumed and Assigned Contracts within the meaning of Bankruptcy Code 365(f)(2)(B).

N.   Additional Findings.  The sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford, as the sale was conducted concurrent with solicitation of a plan.  None of the Prevailing Bidders is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101.

## Compliance with Bankruptcy Code § 1129

O.   Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  In accordance with Bankruptcy Code § 1129(a)(1), the Bankruptcy Court finds and concludes that the Plan complies with the applicable provisions of the Bankruptcy Code:

(a)   Compliance 11 U.S.C. § 1123(a).  In accordance with Bankruptcy Code § 1123(a), the Bankruptcy Court finds and concludes that the Plan: (a) designates Classes of Claims and Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), and 507(a)(8); (b) specifies Classes of Claims and Interests that are not Impaired under the Plan; (c) specifies the treatment of Classes of Claims and Interests that are Impaired under the Plan; (d) provides the same treatment for each Claim or Interest of a particular Class, unless the Holder of a particular Claim or Interest agrees to less favorable treatment of their respective Claim or Interest; (e) provides for adequate means for the Plan's implementation; (f) does not provide for the issuance of non-voting equity securities; and (g) contains only provisions that are consistent with the interests of Holders of Claims and Interests and with public policy with respect to the manner of selection of any officer or director of the Liquidating Trust on and after the Effective Date.  Therefore, the Plan satisfies the requirements of Bankruptcy Code § 1123(a).

(b)   Compliance with 11 U.S.C. § 1123(b).  As permitted by Bankruptcy Code § 1123(b), the Plan: (a) Impairs or leaves Unimpaired, Classes of Claims and Interests; (b) provides for the assumption, rejection, or assignment of executory contracts and unexpired leases of the Debtors; (c) provides for the settlement or adjustment of Claims or Interests belonging to the Debtors or their Estates and for the retention and enforcement of Claims or Interests; (d) enjoins certain acts by Holders of Claims or Interests; (e) exculpates certain Persons from certain Claims and Causes of Action; (f) contains a release of certain Claims and Causes of Action of, among others, the Debtors and their Estates that could be asserted against certain Persons; and (g) includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code.

(c)   The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates.  Therefore, the Plan satisfies the requirements of Bankruptcy Code § 1123(a) and (b).

P.    Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).    In accordance with Bankruptcy Code § 1129(a)(2), the Bankruptcy Court finds and concludes that the Debtors have complied with the applicable provisions of the Bankruptcy Code. The Debtors are proper debtors under Bankruptcy Code § 109. The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Plan, the Disclosure Statement, the Ballots, the Plan Supplement and all related documents and notices, and in soliciting and tabulating votes on the Plan.

Q.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).    In accordance with Bankruptcy Code § 1129(a)(3), the Bankruptcy Court finds and concludes that the Debtors have proposed the Plan in good faith and not by any means forbidden by law, and the Debtors have acted, and are presently acting, in good faith in conjunction with all aspects of the Plan. All transactions contemplated by the Plan were negotiated and consummated at arm's length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of the Plan. The Debtors filed the Chapter 11 Cases and proposed the Plan with legitimate and honest purposes including, among other things, (1) facilitating the sale to the Prevailing Bidders thus maximizing asset value to the benefit of all Debtors; (2) aiding the orderly liquidation of the Debtors and all the Debtors' businesses through a rapid, efficient liquidation under chapter 11; and (3) maximizing of the recovery to Holders of Claims and Interests under the circumstances of the Chapter 11 Cases. Furthermore, the Plan reflects the best interests of the Debtors' Estates and Holders of Claims and Interests.

R.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).     In accordance with Bankruptcy Code § 1129(a)(4), the Bankruptcy Court finds and concludes that all payments made or to be made by the Debtors or by a Person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court.

S.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).     In accordance with Bankruptcy Code § 1129(a)(5), the Bankruptcy Court finds and concludes that: (1) the Debtors have disclosed the identity and affiliations of all individuals initially proposed to serve, after the Effective Date of the Plan, as directors and officers or who are otherwise responsible for overseeing the management and operations of the Liquidating Trust; (2) the appointment of the individuals disclosed who serve as directors and officers of Liquidating Trust and will be responsible for overseeing the management of the Liquidating Trust is consistent with the interests of Holders of Claims and Interests and with public policy; and (3) the Debtors have disclosed all insiders that will be employed by the Liquidating Trust and the nature of compensation for such insiders.

T.     No Rate Changes (11 U.S.C. § 1129(a)(6)).     In accordance with Bankruptcy Code § 1129(a)(6), the Bankruptcy Court finds and concludes that the Debtors are not subject to any governmental regulation of any rates.

U.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).     In accordance with Bankruptcy Code § 1129(a)(7), the Bankruptcy Court finds and concludes that with respect to Impaired Classes of Claims or Interests (i.e., Classes A3, A4, A5, B3, B5, B6, B7, C6, C7, C8,

D6, D7, D8, E6, E7, E8, F5, F6, F7), each Holder of a Claim or Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

V.   Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)).   At the conclusion of the Confirmation Hearing, GE withdrew all of its Ballots.   In accordance with Bankruptcy Code § 1129(a)(8), the Bankruptcy Court finds and concludes that: (1) Classes A1, A2, B1, B2, B4, C1, C2, C3, C4, C5, D1, D2, D3, D4, D5, E1, E2, E3, E4, E5, F1, F2, F3, and F4 are not Impaired under the Plan and are deemed to have accepted the Plan under § 1126(f) of the Bankruptcy Code; and (2) Classes A3, A5, B5, C6, D6, E6, F5 have accepted the Plan in accordance with §§ 1126(c) and (d) of the Bankruptcy Code.   With respect to any Class that has rejected the Plan, the Bankruptcy Court finds and concludes that, pursuant to Bankruptcy Code § 1129(b)(1) and (2), the Plan does not discriminate unfairly, and is fair and equitable because no Holder junior to those in these Classes will receive or retain any property under the Plan. As set forth in the Dalsass Declaration, the only holders of Claims in the Classes entitled to vote that voted to accept or reject the Plan voted as follows:

| CLASSES | TOTAL BALLOTS RECEIVED | | | |
|---------|------------------------|---|---|---|
| | ACCEPT | | REJECT | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER |
| A3 | $46,440.11(100%) | 5 (100%) | 0 (0%) | 0 (0%) |
| A5 | $335,187.60 (100%) | 1 (100%) | 0 (0%) | 0 (0%) |
| B5 | $4,380,856.67 (100%) | 17 (100%) | 0 (0%) | 0 (0%) |
| C6 | $386,238.80 (100%) | 1 (100%) | 0 (0%) | 0 (0%) |

| D6 | $834,732.39 (100%) | 1 (100%) | 0 (0%) | 0 (0%) |
| E6 | $97,192.50 (100%) | 1 (100%) | 0 (0%) | 0 (0%) |
| F5 | $923,723.22 (100%) | 1 (100%) | 0 (0%) | 0 (0%) |

W.    Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9)).
The Bankruptcy Court finds and concludes that the Plan's treatment of Claims of a kind
specified in Bankruptcy Code §§ 507(a)(1) through (8) satisfies the requirements set forth in
Bankruptcy Code § 1129(a)(9).

X.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).    In accordance with
Bankruptcy Code § 1129(a)(10), the Bankruptcy Court finds and concludes that at least one
Class of Claims or Interests that is Impaired under the Plan for each Debtor has voted to accept
the Plan, without including acceptances of the Plan by any insider.

Y.    Feasibility (11 U.S.C. § 1129(a)(11)).    The Disclosure Statement and the other
evidence proffered or adduced at the Sale and Confirmation Hearing with respect to feasibility
(1) is persuasive and credible and (2) establishes that Confirmation of the Plan is not likely to be
followed by the need for further financial reorganization or liquidation of the Debtors not
otherwise proposed in the Plan, thus satisfying the requirements of Bankruptcy Code
§ 1129(a)(11).

Z.    Payment of Fees (11 U.S.C. § 1129(a)(12)).    In accordance with Bankruptcy Code
§ 1129(a)(12), the Bankruptcy Court finds and concludes that, to the extent that fees payable to
the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for
the payment of all such fees on the Effective Date of the Plan and as they come due after the
Effective Date.

AA.     Other Provisions of 11 U.S.C. 1129(a).  The Court finds that the provisions of 11 U.S.C. §§ 1129(a)(13), (a)(14), (a)(15), and (a)(16) are not applicable to the Debtors or the Liquidating Trust.

BB.     Principal Purpose (11 U.S.C. § 1129(d)).   The Bankruptcy Court finds and concludes that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance.

CC.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  The Debtors presented uncontroverted evidence at the Sale and Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to any Class that has rejected the Plan as required by § 1129(b)(1) of the Bankruptcy Code.  Upon Confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes.[3]

DD.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b).

### Modifications to the Plan

EE.     The Bankruptcy Court finds and concludes that all modifications made to the Plan after solicitation of votes on the Plan had commenced, as reflected in this Confirmation Order, as set forth on the record at the Sale and Confirmation Hearing, or as reflected in the Plan and Plan Supplement, satisfy the requirements of Bankruptcy Code § 1127(a) and Bankruptcy Rule 3019, are not material, and do not adversely affect the treatment and rights of the Holders of any Claim or Interest under the Plan who have not otherwise accepted such modifications.  Accordingly, the Debtors have satisfied Bankruptcy Code § 1127(c) and Bankruptcy Rule 3019 with respect to the

---

[3] Exhibit E to the Plan, which is the Debtors' Preliminary Distribution Analysis (as amended and modified), and the assumption contained therein, is not binding on any party for any purpose.

Plan, as modified; and Holders of Claims or Interests that have accepted or rejected the Plan (or are deemed to have accepted or rejected the Plan) are deemed to have accepted or rejected, as the case may be, the Plan as modified on the date of this Confirmation Order, pursuant to Bankruptcy Code § 1127(d) and Bankruptcy Rule 3019.

### Exemptions

FF.     Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a)). The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), any transfers from the Debtors to the Liquidating Trust or any other Person or Entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax or governmental assessment.   The appropriate federal, state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or other documents as set forth in the Plan without the payment of any such tax or governmental assessment.

### Transactions Pursuant to the Plan

GG.     Rule 9019 Settlement; Releases and Discharges.  The Bankruptcy Court finds and concludes that pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Impaired Claims against and Interests in the Debtors.  Such compromises and settlements are made in exchange for consideration and are in the best interests of the Holders of Impaired Claims and Interests, are within the range of possible litigation outcomes, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan.

HH.     Release, Indemnification, and Exculpation.   The failure to effect the release, indemnification, and exculpation provisions of the Plan would impair the Debtors' ability to confirm the Plan.   Accordingly, the compromises and settlements embodied in the release, indemnification, and exculpation provisions described in Article XII of the Plan are approved.

II.     Plan Provisions Valid and Binding.   The Bankruptcy Court finds and concludes that, upon entry of this Confirmation Order, each term and provision of the Plan and the Plan Supplement is valid, binding, and enforceable pursuant to its terms.

JJ.     Plan Documents Valid and Binding.   The Bankruptcy Court finds and concludes that the Sale Documents and all other documents reasonably necessary to implement the Plan shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements.   The Bankruptcy Court further finds and concludes that the Sale Documents and all other documents reasonably necessary to implement the Plan are in the best interests of the Debtors, their Estates and the Liquidating Trust and have been negotiated in good faith and at arm's length.

KK.     Compliance with Bankruptcy Rule 3016.   In accordance with Bankruptcy Rule 3016(a), the Bankruptcy Court finds and concludes that the Plan is dated and the Entities that submitted it, and filed it, are identified.

## Miscellaneous Provisions

LL.     The Bankruptcy Court finds that Confirmation of the Plan is in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and all other parties in interest.

MM.   All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Sale and Confirmation of the Plan or otherwise at the Sale and Confirmation Hearing are incorporated herein by reference.

NN.   All findings of fact that are conclusions of law shall be deemed to be conclusions of law, and all conclusions of law which are findings of fact shall be deemed to be findings of fact.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.   <u>Confirmation</u>.  The Plan, as attached to this Order and with the modifications and clarifications embodied in this Order, IS HEREBY CONFIRMED.  The terms of this Order are controlling if any inconsistency exists between the Plan or the Liquidating Trust Agreement, and this Order.  The failure specifically to include or to refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety.

2.   <u>Binding Effect</u>.  The Plan, its provisions and this Order shall be, and hereby are, binding upon the Debtors and any Creditor or equity security holder of the Debtors, whether or not the Claim or Interest of such Creditor or equity security holder is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan.

3.   <u>Plan Classification Controlling</u>.  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or

Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the Liquidating Trust except for voting purposes.

4.     Allowance of Claims.  Except as provided in Paragraphs 38 and 39 of this Order, as provided in Paragraph 7.01 of the Plan, no Claim, including but not limited to the Claims of Otto Candies, LLC, DCC Ventures, LLC and NJK Holdings, is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of time fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.  The deemed allowance of a Claim for voting purposes shall in no way limit the rights of any party to challenge any Claim in accordance with the Bankruptcy Code, Bankruptcy Rules, Plan and this Order.

5.     Transfer Free and Clear of All Interests and Claims.  The Acquired Assets are conveyed free and clear of all mortgages (including, without limitation, preferred ship mortgages), restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, preferred maritime, maritime, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens, including those existing or arising in contract, tort, in admiralty, in equity, under any domestic and/or foreign common or civil law, and those in rem or quasi in rem, or under any sister ship

law or otherwise), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any Court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or their predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "Interests or Claims").  Following the Effective Date, no holder of any Interests or Claims in the Acquired Assets shall interfere with the Prevailing Bidders' title to, or use and enjoyment of, the transferred assets based on or related to such Interests or Claims, or any actions that the Debtors may take in their Chapter 11 Cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transfer contemplated in or by the Sale Motion, Sale Documents, Plan or this Order.  All Interests or Claims in the Acquired Assets shall attach to the proceeds of the Sale to the same extent, validity and priority as such Interests or Claims existed prior to the Sale.

6.      PNC's Liens.  PNC Bank, N.A. alleges, among other things, that it holds a claim against Deep Marine Technology, Inc., and that such claim is secured by a Lien on, among other things, the accounts receivable of Deep Marine Technology, Inc. (the "Accounts Receivable"). The Accounts Receivable are not Acquired Assets.  Any valid liens of PNC Bank, N.A. on the Accounts Receivable or any other property of the estates that does not constitute Acquired Assets, shall be retained by PNC Bank, N.A., whether the Accounts Receivable or other such property is transferred to another Entity or not, to the extent of the allowed amount of PNC Bank, N.A.'s Allowed Class B3 Claims.

7.      UTEC Liens and Claims.  Any liens of UTEC on specific Acquired Assets shall attach to the proceeds of such specific Acquired Assets to the same extent, validity and priority as such liens existed as of the Effective Date.  Subject to Paragraph 5 of this Order, nothing in the Plan or this Order shall affect any interests that UTEC may have in the property of third-party non-debtors, regardless of how such interests arose, and the venue provisions of Paragraph 12.08 of the Plan shall not apply to any in rem claim UTEC may have against any property of any third party non-debtors, regardless of how such claims arose.  Subject to Paragraph 12.08 of the Plan and Paragraph 5 of this Order, nothing in the Plan or this Order shall affect any claims of UTEC against any third-party non-debtors, regardless of how such claims arose.

8.      Sale Approved.  As an element of Confirmation, and pursuant to the Plan, the sale of assets, as such assets are described in the Purchase and Sale Agreements, is APPROVED.

9.      Notice of Sale.  Potential bidders had adequate notice of the Bidding Procedures and the Sale and Confirmation Hearing and were given adequate opportunity to make qualified bids.  All entities whether known or unknown asserting Interests or Claims in the Acquired Assets had adequate notice of the Sale and Confirmation Hearing.  Notice of the Sale and

Confirmation Hearing was reasonably calculated under the circumstances and complied in all respects with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

10.     Sale Documents.  Pursuant to 11 U.S.C. § 363(b), the Sale, the Sale Documents and the transactions contemplated thereby are approved in all respects.  Pursuant to 11 U.S.C. § 363(b), the Debtors are hereby authorized and directed to sell the Acquired Assets to the Prevailing Bidders and consummate the Sale in accordance with and subject to the terms and conditions of the Sale Documents and the Plan, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Sale Documents and the Plan, and are further authorized and directed to execute and deliver, and are empowered to perform under, consummate and implement, the Sale Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Documents, including without limitation the related documents, exhibits and schedules, and to take all further actions as may be reasonably requested by the Prevailing Bidders for the purposes of assigning, transferring, granting, conveying and conferring to the Prevailing Bidders or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Sale Documents.  The transfer of the Acquired Assets to the Prevailing Bidders pursuant to the Sale Documents and the Plan does not require any consents other than as specifically provided for in the Sale Documents and constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Prevailing Bidders with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests and Claims of any kind or nature whatsoever.

11.     Consideration Adequate. The consideration provided by the Prevailing Bidders for the Acquired Assets under the Purchase and Sale Agreements is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

12.     Good Faith. The transactions contemplated by the Sale Documents have been bargained for and undertaken by the Prevailing Bidders and the Debtors at arm's length, without collusion, and in good faith within the meaning of Bankruptcy Code section 363(m); the Prevailing Bidders and the Debtors have not engaged in any conduct that would cause or permit the Sale Documents to be avoided. Upon the granting of this Order by this Court with respect to the Sale Documents, the Prevailing Bidders shall be entitled to the protection of section 363(m) of the Bankruptcy Code. Pursuant to Bankruptcy Code section 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the Sale Documents and the Plan or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, shall be governed in all respects by the original provisions of this Order and the Sale Documents, as the case may be. The consideration paid by the Prevailing Bidders in the sale for the Acquired Assets under the Sale Documents is fair and reasonable, and may not be avoided or otherwise challenged under 11 U.S.C. § 363(n).

13.     Tax Liability. Any Taxes that may be payable by reason of the sale of the Acquired Assets under any Purchase and Sale Agreement (including any transfer, sales, use, value added, gross receipts, stamp, duty, documentary, registration, business and occupation and similar Taxes) ("Transaction Taxes") shall be the responsibility and obligation of the relevant

Prevailing Bidder regardless of whether any Tax authority seeks to collect such Taxes from the Debtors, their Estates, the Liquidating Trust or the Prevailing Bidder.  In no event shall either party to any Purchase and Sale Agreement be responsible for the Taxes based on net income, margin or gain of the other party that arise as a consequence of the consummation of the Sale.

14.     Transfer Tax Exemption.  The transfer of the Acquired Assets to the Prevailing Bidders under this Order and the Plan is exempt from any transfer or stamp tax under section 1146(a) of the Bankruptcy Code, whether imposed or assessable against the Debtors or the Prevailing Bidders.

15.     Consummation of Sale.  Each and every federal, state and governmental agency or department, and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Documents and the Plan.

16.     Surrender of Assets.  All entities who are presently, or on the Closing may be, in possession of some or all of the assets to be sold, transferred or conveyed to the Prevailing Bidders pursuant to the Sale Documents are hereby directed to turnover possession of the assets to the Prevailing Bidders on the date of Closing without any right to receive consideration of any amount or kind.

17.     Vessel Towing Expense.  As an actual and necessary cost and expense of effectuating the Sale, the Debtors are authorized to employ Crosby Tugs, LLC ("Crosby") for the purpose of transporting to Louisiana those vessels currently located in Alabama. Furthermore, the Debtors are authorized and directed to pay Crosby from unencumbered proceeds of the Sale within twenty-four hours of Closing, but in no case later than June 30, 2010, for any services rendered to the Debtors by Crosby pursuant to the preceding sentence.

18.   Authority to Effectuate Sale.   The Debtors, including but not limited to their respective officers, employees and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Sale Documents and this Order. The Debtors shall be, and hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Order.

19.   Automatic Stay.   The automatic stay pursuant to 11 U.S.C. § 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (i) to allow the Prevailing Bidders to give the Debtors any notice provided for in the Sale Documents, and (ii) to allow the Prevailing Bidders to take any and all actions permitted by the Sale Documents in accordance with the terms and conditions thereof.

20.   Tax Prorations.   Except as provided in Paragraph 13 of this Order, as to any Acquired Assets acquired by a Prevailing Bidder, the relevant Debtors and Prevailing Bidder shall apportion the liability for real and personal property taxes and ad valorem taxes ("Periodic Taxes") for all Tax periods including but not beginning or ending on the date of Closing (the "Proration Periods").   The Periodic Taxes described in this paragraph shall be apportioned between the relevant Debtors and Prevailing Bidder as of the date of Closing, with the relevant Prevailing Bidder liable for that portion of the Periodic Taxes equal to the Periodic Tax for the Proration Period multiplied by a fraction, the numerator of which is the number of days remaining in the Proration Period from and after the date of Closing (including the date of Closing), and the denominator of which is the total number of days covered by such Proration Period.   The relevant Debtors shall be liable for that portion of the Periodic Taxes for the Proration Period for which the relevant Prevailing Bidder is not liable under the preceding sentence.   At the Closing, the relevant Prevailing Bidder shall receive a credit against the

Purchase Price (as defined in the relevant Purchase and Sale Agreement) of the relevant Relevant Debtors' portion of the Periodic Taxes that are due and payable during the relevant Proration Period on or after the date of Closing and, if applicable, the relevant Prevailing Bidder shall be charged with such Prevailing Bidder's portion of such Periodic Taxes that are due and payable (and have been paid) before the date of Closing. If the date of Closing shall occur before the tax rate is fixed, the apportionment of ad valorem taxes shall be upon the basis of the tax rate for the preceding year applied to the latest assessed valuation. If, after the Closing, Periodic Taxes for the Proration Periods are determined to be higher or lower than those that have been apportioned as set forth above, the relevant Prevailing Bidder shall, as applicable, within 30 days of receiving the relevant tax bill, either pay the amount such Prevailing Bidder owes the relevant Debtors or provide an invoice to the Liquidating Trustee of the amount the relevant Debtors owe the relevant Prevailing Bidder, which amount the Liquidating Trustee promptly shall thereafter pay to the relevant Prevailing Bidder as an administrative expense in the appropriate bankruptcy case. For purposes of this paragraph, the Proration Period for ad valorem taxes and real and personal property taxes shall be the fiscal period for which such taxes were assessed by the relevant tax jurisdiction.

21.    Order Binding on Creditors and Equity Security Holders.  This Order, the Plan and the Sale Documents shall be binding in all respects upon all creditors and equity security holders (whether known or unknown) of the Debtors, all successors and assigns of the Prevailing Bidders, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection. Nothing contained in any chapter 11 plan confirmed in any

of these bankruptcy cases or the confirmation order confirming any such chapter 11 plan shall conflict with or derogate the provisions of the Plan, the Sale Documents and this Order.

22. <u>Benefits to Inure</u>. The terms and provisions of the Sale Documents and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, the Prevailing Bidders, and their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest or Claim in the Acquired Assets to be sold to the Prevailing Bidders pursuant to the Sale Documents and the Plan, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

23. <u>Purchase and Sale Agreements Controlling</u>. To the extent any provision of this Order is inconsistent with the terms of the Purchase and Sale Agreements, the Purchase and Sale Agreements shall govern. Nothing in this Order shall alter or amend the Purchase and Sale Agreements and the obligations of the Debtors and the Prevailing Bidders thereunder.

24. <u>Permits and Licenses</u>. To the extent permitted by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the assets sold, transferred or conveyed to the Prevailing Bidders on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.

25. <u>No Breaches on Account of Sale</u>. Any provision in any agreement to which any of the Debtors are a party that purports to declare a breach or default as a result of a change of control in respect of the sale or transfer of the Acquired Assets is hereby deemed unenforceable and all such agreements shall remain in full force and effect.

26.   <u>Purchase and Sale Agreements Approved in Their Entirety</u>.   The failure specifically to include or to reference any particular provision of any Purchase and Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that all of the Purchase and Sale Agreements be authorized and approved in their entirety.

27.   <u>No Material Modification</u>.   The Sale Documents and any related agreements, documents, or other instruments may only be modified, amended or supplemented in a non-material manner by the parties thereto in accordance with the terms thereof without further order of the Court.

28.   <u>Appointment of the Liquidating Trustee</u>.   On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtors and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust. The Liquidating Trust shall be governed by the Liquidating Trust Agreement. The initial Liquidating Trustee shall be John Bittner. The salient terms of the employment of the Liquidating Trustee, including duties and compensation, to the extent not set forth in the Plan, are set forth in the Liquidating Trust Agreement and this Order.  The Liquidating Trust and the Liquidating Trustee are bound by the Plan and shall not challenge any provision of the Plan.  The express terms of the Liquidating Trust Agreement shall govern distributions thereunder.  The Liquidation Trust Agreement is hereby approved.

29.   <u>Authority of Liquidating Trustee</u>.   The Liquidating Trustee shall hold and maintain all rights otherwise maintained by the Debtors-in-possession.  Whenever the Plan or related plan documents require or permit notice to the Debtors after the Effective Date, such notice shall be effective only when given to the Liquidating Trustee and the Liquidating Trustee

shall have the right to take all actions that the Debtors would have had the right to take if it had not been dissolved on the Effective Date. The Liquidating Trustee will act as the Estates' representative for all purposes, and will be responsible for, among other things, (i) administering the liquidation of the Other Assets; (ii) controlling and managing the consideration received from the liquidation of the Other Assets; (iii) filing, prosecuting and settling Claim objections; (iv) prosecuting and settling any Estate causes of action transferred to the Liquidating Trust pursuant to the Plan; (v) pursuing any applicable insurance proceeds; (vi) making distributions and creating reserves in accordance with the terms of the Plan; (vii) winding-up and closing the Estates; (viii) abandoning any of the assets of the Debtors if the Liquidating Trustee concludes that such assets are of no benefit to the Creditors; (ix) enforcing the payment of notes or other obligations of any Person; (x) opening and maintaining bank accounts on behalf of or in the name of the Debtors or the Liquidating Trust; (xi) paying all lawful expenses, debts, charges and liabilities of the Debtors; (xii) purchasing insurance with coverage and limits as it deems desirable including, insurance covering liabilities of the Liquidating Trustee and his employees and agents or employees or agents of the Debtors incurred in connection with their services to the Debtors; (xiii) appointing, engaging, employing, supervising, and compensating officers, employees, and other Persons as may be necessary or desirable, including managers, consultants, accountants, technical, financial, real estate, or investment advisors or managers, attorneys, agents or brokers, corporate fiduciaries, or depositories; (xiv) delegating any or all of the discretionary power and authority conferred with respect to all or any portion of the Estates' property to any one or more reputable individuals or recognized institutional advisers or investment managers without liability for any action taken or omission made because of any such delegation except for such liability as is provided in the Plan; (xv) executing, delivering, and

performing such other agreements and documents and to take or cause to be taken any and all such other actions as may be necessary or desirable to effectuate and carry out the purposes of the Plan; (xvi) undertaking any action necessary to maintain the corporate existence and/or dissolve, the Debtors; (xvii) undertaking any action necessary to ensure that the Debtors are and remain in good standing and compliance with applicable federal, state, and local laws; (xviii) filing any federal, state, or local tax returns and provide for the payment of any related taxes; and (xix) undertaking any action or performing any obligation provided for or required under the Plan. The Liquidating Trustee's compensation is set forth in the Liquidating Trust Agreement and is approved. The Liquidating Trustee is authorized to employ legal and accounting professionals employed by the Debtors or the Committee pre-confirmation, as well as such other professionals as the Liquidating Trustee may deem necessary and appropriate, including without limitation employment of professionals on a contingent fee basis, without further order of this Court. John Bittner, as Liquidating Trustee, anticipates that the Liquidating Trust may employ John Hudgens and/or Wade Abadie as consultants of the Liquidating Trust. Both Mr. Hudgens and Mr. Abadie are "insiders" as that term is defined in the Bankruptcy Code. The Liquidating Trustee anticipates compensating these individuals on an hourly basis in accordance with the Liquidating Trust Agreement. In case of the resignation or inability to serve of a Liquidating Trustee, a successor Liquidating Trustee shall be appointed in accordance with the Liquidating Trust Agreement. For the avoidance of doubt, the Liquidating Trust shall own all of the Estates' positions in all matters, and the Liquidating Trustee, as the Estates' representative for all purposes, may substitute for the Committee as a matter of right into any action, pleading, or matter. The Liquidating Trustee owns and has the right to assert, enforce and/or waive any applicable privileges (legal or otherwise, including the attorney-client privilege) held by the

Debtors at any time (pre-petition or post-petition). However, the Liquidating Trust and the Liquidating Trustee shall not have the right to assert, enforce and/or waive any applicable privileges that belonged to the Committee prior to the dissolution of the Committee.

30.    Plan Distributions.    The Liquidating Trustee shall make payments and distributions pursuant to the procedures in the Plan and the Liquidating Trust Agreement. Any payments or distributions to be made by the Debtors or the Liquidating Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims. Any payments or distributions to be made by the Liquidating Trustee pursuant to the Plan shall be made on or about the Effective Date, or as soon thereafter as practicable, except as otherwise provided for in the Plan. Any payment, delivery or distribution by the Debtors or the Liquidating Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Liquidating Trustee into the United States mail. Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims. No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed. The Liquidating Trustee in his discretion may establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of this Plan.

31.    Injunction.    Except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement, or the Confirmation Order, all Persons who have held, hold or may hold claims or causes of action against the Debtors, the Committee, the Prevailing Bidders, or any Related Person of the foregoing, related to the Debtors, the Estates or these Chapter 11 Cases, are

permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas, (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any Released Party on account of any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party or against the property or interests in property of such Released Party on account of any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any Released Party or against the property or interests in property of any Released Party on account of any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas.  The foregoing injunction will extend to successors of any Released Party and their respective property and interests in the property.

32.    Setoff Rights of LLOG.  Notwithstanding anything otherwise set forth in the Plan and this Confirmation Order, to the extent LLOG Exploration Company, LLC has any valid rights of setoff or recoupment, neither the Plan nor Confirmation Order shall affect or impair such rights with all such issues (and any opposition thereto) being preserved for later adjudication in the pending adversary proceeding before the Court.

33.    Setoff and Recoupment Rights of Boots & Coots.  Notwithstanding anything otherwise set forth in the Plan and this Confirmation Order, to the extent Boots & Coots

Services, LLC has any valid rights of setoff or recoupment, neither the Plan nor Confirmation Order shall affect or impair such rights with all such issues (and any opposition thereto) being preserved for later adjudication.

34.    Releases and Limitation of Liability of Released Parties.   The Released Parties SHALL NOT BE LIABLE TO ANY PERSON FOR ANY cause of action, arising on or after the Petition Date, arising in connection with or out of the administration of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any Released Party as to which such Released Party has been exculpated from liability pursuant to the preceding sentence or any other order of this Court.  The Liquidating Trustee shall indemnify each Person identified as a Released Party against any and all costs and expenses (including attorneys' fees) incurred by any of them in defending against post-Confirmation Date claims that are based on actions allegedly taken (or not taken) by them in their respective capacities for which they are exculpated under Section 12.05 of the Plan; provided, however, that no Released Party shall be entitled to indemnification under the Plan for the costs and expenses of defending a cause of action in which it is ultimately judicially determined that such Released Party was grossly negligent or acted fraudulently or with willful misconduct in performing such Released Party's duties hereunder or under any Final Order of the Bankruptcy Court or applicable law. Any Released Party entitled to indemnification under the Plan shall have a priority distribution right that is senior to the holders of Allowed Claims in every classified Class.  The Liquidating

Trustee may use assets of the Liquidating Trust (as an expense of consummating this Plan) to purchase indemnification insurance to satisfy any potential indemnification claims.

35.    Individual Claims of FLI Plaintiffs.  To the extent that the Court determines, in Adversary Proceeding 10-03026, that FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and/or Harley Langberg (together, the "FLI Plaintiffs") own direct causes of action against Paul McKim, BJ Thomas, Daniel Erikson, Francis Wade Abadie, Otto Candies, Jr., Otto Candies III, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman, Joseph Grano, John Hudgens, DCC Ventures, LLC, NJK Holdings Corporation, NKOC, Inc., Otto Candies LLC and/or Nasser Kazeminy, nothing in the Plan or this Order shall be held to affect the ability of the FLI Plaintiffs to pursue such direct causes of action, and the FLI Plaintiffs may bring such direct causes of action in the proper venue, notwithstanding Paragraph 12.08 of the Plan.

36.    Plan Modifications and Clarifications.   The Plan, as originally filed and distributed for solicitation, is hereby  modified by the following non-material changes, none of which adversely affect the treatment and rights of the Holders of any Claim or Interest under the Plan:[4]

(a)    Paragraph 1.02(21) of the Plan, which is the definition of "Claims Objection Deadline," is replaced in its entirety with the following language: "'Claims Objection Deadline' means the first Business Day which is at least 90 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 7.01(b) of the Plan."

(b)    Paragraph 1.02(91) of the Plan, which is the definition of "Released Parties," is replaced in its entirety with the following language:  "'Released Parties' means the members of the Committee.  "Released Parties" does not include Otto Candies, LLC, Otto Candies Jr., Otto Candies III, Candies Shipbuilders, LLC, Nasser Kazeminy, DCC Ventures, LLC, NJK Holding Corporation, NKOC, Inc., Triomphe Investors, LLC, Joseph Grano, Paul McKim, B.J. Thomas, Daniel Erickson, Francis Wade Abadie, Eugene DePalma, Larry Lenig, John Ellingboe, Bruce Gilman, John Hudgens, or any other party against whom rights are preserved in Section 4.10 of the Plan (and their respective Related Persons)."

---

[4] The Plan as attached hereto as Exhibit A reflects the changes detailed in this paragraph.

(c)     Paragraph 3.06(3)(Treatment) of the Plan, which is the treatment of the Secured Claims of PNC Bank, N.A., shall include the following sentence at the end of such paragraph: "Any valid liens of PNC Bank, N.A. on the accounts receivable of Deep Marine Technology, Inc., or any other property of the estates that does not constitute Acquired Assets, shall be retained by PNC Bank, N.A., whether the Accounts Receivable or other such property is transferred to another Entity or not, to the extent of the allowed amount of PNC Bank, N.A.'s Allowed Class B3 Claims."

(d)     Paragraph 7.03 of the Plan, titled "No Distribution Pending Allowance" is replaced in its entirety with the following language: "Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Liquidating Trustee in writing, no payments or distributions shall be made with respect to any disputed portion of a Claim unless and until all objections to such disputed portion of the Claim have been settled or withdrawn or have been determined by Final Order. The Liquidating Trustee shall pay the undisputed portion of a Claim in accordance with the Plan, Liquidating Trust Agreement, Confirmation Order and orders of the Court."

(e)     Paragraph 12.07 of the Plan, titled "Discharge of Liabilities," is replaced in its entirety with the following language: "Pursuant to section 1141 of the Bankruptcy Code, the Confirmation of the Plan will not discharge the Debtors of any debts."

(f)     Paragraph 12.08 of the Plan, titled "Permanent Injunction," is replaced in its entirety with the following language: **"Except as otherwise expressly provided in the Plan, the Purchase and Sale Agreement, or the Confirmation Order, all Persons who have held, hold or may hold claims or causes of action against the Debtors, the Committee, the Prevailing Bidders, or any Related Person of the foregoing, related to the Debtors, the Estates or these Chapter 11 Cases, are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas, (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any Released Party on account of any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party or against the property or interests in property of such Released Party on account of any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any Released Party or against the property or interests in property of any Released Party on account of any such claims or causes of action in any venue other than the United States Bankruptcy Court for the Southern District of Texas. The foregoing injunction will extend to successors of any Released Party and their respective property and interests in the property."**

37.     Payment of DIP Facility Claim.  Except as provided in Paragraphs 38 and 39 of this Order, notwithstanding anything in the Plan or Disclosure Statement to the contrary, the DIP Facility Claim shall be paid in full upon the Effective Date (or as soon as reasonably practicable thereafter) prior to all other valid claims, administrative expenses, adequate protection claims, and all other valid claims against any of the Debtors.  Further, the Debtors shall hold the proceeds from the sale of Deep Marine 4, LLC's assets in a segregated account and shall not use such proceeds until the DIP Facility Claim has been paid in full.

38.     Secured Mortgage Claim of GE Against Deep Marine 2, LLC.  Upon Closing of the sale of the DMT Emerald under the relevant Purchase and Sale Agreement, Deep Marine 2, LLC shall deliver to GE, Cash in satisfaction of the principal and nondefault interest (pre-petition and post-petition) portion of GE's Secured Mortgage Claim against Deep Marine 2, LLC (i.e. GE's Class C3 Claim), which amount is hereby Allowed (the "Undisputed GE Claim"); the parties (not the Court) estimate this amount at approximately $31,345,000.00.  Further, upon Closing of the sale of the DMT Emerald under the relevant Purchase and Sale Agreement, Deep Marine 2, LLC shall segregate $800,000.00 (the "Segregated Funds") of the Cash proceeds of the DMT Emerald into a separate an interest bearing account, which amount consists of the disputed default interest, fees and costs claimed by GE, related to the Secured Mortgage Claim of GE against Deep Marine 2, LLC.  The Lien securing the Secured Mortgage Claim of GE against Deep Marine 2, LLC shall attach to the Segregated Funds and the Debtors and Liquidating Trustee may not use or distribute any portion of the Segregated Funds pending further order of the Bankruptcy Court or an agreement of the parties.  All other proceeds of the DMT Emerald shall vest in the Liquidating Trust free and clear of any lien, claim or encumbrance of GE related to the Secured Mortgage Claim of GE against Deep Marine 2, LLC.  The payment and

Allowance of the Undisputed GE Claim is without prejudice to any objection the Debtors may have to the disputed portion of GE's Claim.

39.     <u>Secured Mortgage Claim of GE Against Deep Marine 1, LLC</u>.   Within 10 Business Days of the entry of this Order, Deep Marine 1, LLC (or the Liquidating Trust, as appropriate) shall initiate an adversary proceeding (the "<u>Diamond Adversary Proceeding</u>") in these Chapter 11 Cases to interplead the proceeds of the sale of the DMT Diamond (the "<u>Diamond Proceeds</u>") into the registry of the Bankruptcy Court.   Unless otherwise ordered by the Court, the extent, validity and priority of all Claims to the Diamond Proceeds (including, without limitation, and with respect to Deep Marine 1, LLC, all Maritime Senior Secured Claims, the Secured Mortgage Claim of GE, all Maritime Junior Secured Claims, all Other Secured Claims, all claims for surcharge under 11 U.S.C. § 506(c), and all Administrative Claims required to be paid in accordance with the Plan) shall be determined in the Diamond Adversary Proceeding. All Entities with Claims alleged against the Diamond Proceeds shall be parties to the Diamond Adversary Proceeding.   At the time of initiating the Diamond Adversary Proceeding, Deep Marine 1, LLC shall seek an expedited status conference before this Bankruptcy Court, for the purpose of entering a scheduling order.   The Diamond Proceeds shall be disbursed and applied as ordered by the Bankruptcy Court in the Diamond Adversary Proceeding and any other or related proceedings.   A judgment or order of the Bankruptcy Court directing the disbursement or application of the Diamond Proceeds shall not be subject to the provisions of the Plan regarding Allowance of Claims.

40.     <u>Order as Recording Instrument</u>.   Notice of entry of this Confirmation Order (i) shall have the effect of an order of the Court, (ii) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and (iii) shall be a recordable

instrument notwithstanding any contrary provision of nonbankruptcy law. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

41.    Assumption and Rejection of Unexpired Leases and Executory Contracts. Subject to, and at the time of, Closing under the Purchase and Sale Agreement between the relevant Debtors and Otto Marine Limited, the relevant Debtors are authorized to assume and assign to Otto Marine Limited the Assumed and Assigned Contracts.    Each Assumed and Assigned Contract that is assumed and assigned includes (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.    Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.    Notwithstanding anything in the Plan to the contrary, the Assumed and Assigned Contracts are not rejected by confirmation of the Plan.    Other than the Assumed and Assigned Contracts, on the Effective Date, and to the extent

permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected.

42. <u>Rejection Damages Claims</u>. Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

43. <u>Assumption Claims</u>. The Debtors filed and properly noticed upon all counterparties to the Assumed and Assigned Contracts the Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth Cure Amounts

(the "Cure Notice"). The Cure Notice provides that no cure or compensation payments are due under the Assumed and Assigned contracts. No counterparties objected to the Cure Notice and therefore all counterparties to the Assumed and Assigned Contracts are forever barred from objecting to the cure amounts set forth in the Cure Notice and from asserting any additional cure or other amounts against the Debtors, the Debtors' estates, or Otto Marine Limited with respect to the Assumed and Assigned Contracts, and all counterparties to the Assumed and Assigned Contracts are deemed to consent to the Sale and the assumption and assignment of the Assumed and Assigned Contracts.

44.     Reservation of 502(j) Rights. Notwithstanding anything in the Plan or this Order, all rights of parties concerning reconsideration of a claim under 11 U.S.C. § 502(j) are reserved.

45.     Reservation of 506(c) Rights. Nothing in the Plan or this Order shall in any way limit the rights of the Debtors or Liquidating Trust to surcharge any property securing an allowed secured claim pursuant to 11 U.S.C. § 506(c) and all such rights are reserved.

46.     Manner of Notices and Distributions. All notices, requests and distributions to a Holder of a Claim or interest shall be sent (i) to the last known address of the Holder or its attorney of record as reflected in the Holder's Proof of Claim or Administrative Expense Claim filed by or on behalf of such Holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtors. Any Holder of a Claim or Interest may designate another address for the purposes of this paragraph by providing the Debtors written notice of such address which notice will be effective upon receipt by the Debtors.

47.     Retention of Jurisdiction.  The Court shall, and hereby does, retain jurisdiction of this Case for all of the purposes set forth in Article X of the Plan and for the purposes provided in §§ 1127(b) and 1142 of the Bankruptcy Code and Bankruptcy Rule 3020(d).

48.     Boots & Coots Arbitration Claims.  Notwithstanding anything to the contrary, any rights of Boots & Coots Services, LLC ("Boots & Coots") to seek arbitration (including by vouching) of or with regard to any and all claims, demands, disputes, suits, actions, causes of actions, relief, accounts, remedies, obligations, setoffs, recoupments, and damages of every kind between and among Boots & Coots and the Debtors are hereby reserved and the Plan and this Confirmation Order shall not be construed to foreclose, adjudicate or waive any such rights of Boots & Coots. Notwithstanding anything to the contrary, the Debtors reserve their right to contest any such rights of Boots & Coots to seek arbitration (including by vouching) but agree that the Plan and this Confirmation Order shall not be construed to foreclose, adjudicate or waive any such rights of Boots & Coots.

49.     Payment of Statutory Fees.  On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.  Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan.  Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids.  Post-confirmation, the Debtors, and post-Effective Date, the Liquidating Trustee, shall be responsible for the payment of accruing United

States Trustee quarterly fees for each of the Debtors until each case is closed by the Court. The Debtors and the Liquidating Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

50.   Substantial Consummation.   This Plan shall be deemed to be substantially consummated on the Effective Date, provided the Closing of the Sale Documents occurs on or before such date.

51.   Notice of the Effective Date.   On or before ten (10) Business Days after occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Interests a notice that informs such holders of: (i) entry of the Confirmation Order; (ii) the occurrence of the Effective Date; (iii) the deadline established under this Plan for the filing of Administrative Expense Claims; and (iv) such other matters as the Debtors deems to be appropriate; provided, however, that failure to file such notice shall not affect the effectiveness of the Plan or the rights and substantive obligations of any Entity hereunder. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

52.   Non-Occurrence of Effective Date and Failure to Consummate the Plan.   The transactions contemplated in the Purchase and Sale Agreements are approved, and all aspects of the transactions between the Prevailing Bidders and the relevant Debtors, including, without limitation, the vesting of title to the Acquired Assets with the Prevailing Bidders free and clear of any and all Claims and Interests, shall be irrevocable upon Closing.

53.   Modifications to the Liquidating Trust Agreement.   The Liquidating Trust Agreement is modified to include the following provisions:

(a) No fee applications shall be required to be filed for any Trust Professionals and the Notice Parties reserve the right to object to the reasonableness of any fees and expenses to be paid to any Trust Professionals.

(b) No Trust Professional shall be required to file an application to be employed by the Liquidating Trust, however the Notice Parties reserve the right to object to the reasonableness of the fee structure for any Trust Professional, as well as any potential conflicts of interest, and whether the Liquidating Trustee has exercised reasonable business judgment in hiring any Trust Professional.

(c) The Liquidating Trustee shall advise the Notice Parties of employment of any Trust Professionals within five Business Days of such employment. Notice is not required prior to employment of any Trust Professionals.

(d) The Liquidating Trustee shall not be required to disclose the employment of any consulting professional to the parties against whom such consulting professional will be used.

(e) All rights to object to the jurisdiction of the Bankruptcy Court related to the employment and compensation of Trust Professionals are reserved.

54. <u>Claims Against Kazeminy/Candies Entities</u>. All claims by the Debtors and Liquidating Trust against Otto Candies, LLC, Otto Candies, Jr., Otto Candies III, Candies Shipbuilders, LLC, Nasser Kazeminey, DCC Ventures, LLC, NJK Holding Corporation, NKOC, Inc. and Triomphe Investors, LLC, including objections to proofs of claims and claims for surcharge against the DMT Topaz shall be brought by July 19, 2010.

55. <u>Order Nonseverable</u>. The provisions of this Order are nonseverable and mutually dependent.

56. <u>Captions and Headings</u>. Captions and headings herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, this Order.

57. <u>Order Effective and Enforceable Immediately</u>. Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be effective and enforceable immediately upon entry.

6-2-10

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE