IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| DEEP MARINE HOLDINGS, INC. | § | Case No. 09-39313 |
| et al. | § | |
| | § | Jointly Administered Chapter 11 |
| | § | |
| Debtors. | § | |

**OBJECTION OF FLI DEEP MARINE LLC, BRESSNER PARTNERS LTD., LOGAN LANGBERG AND HARLEY LANGBERG TO APPLICATION OF GREENBERG TRAURIG, LLP FOR ALLOWANCE OF SUBSTANTIAL CONTRIBUTION CLAIM**

FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg (collectively the "FLI Plaintiffs") hereby file their objection to the application for allowance of substantial contribution claim (the "GT Application") filed by Greenberg Traurig, LLP ("GT"), and in support thereof respectfully represent as follows:

**BACKGROUND**

1. GT has a long history of involvement with the Debtors, as well as with the Debtors' former controlling shareholders. At the time the Debtors commenced their adversary proceeding against the FLI Plaintiffs, the Debtors sought approval to hire GT as special counsel for the Debtors. The Official Committee of Unsecured Creditors (the "Committee"), along with the FLI Plaintiffs, objected to the application for such approval. In the face of fierce opposition, the Debtors withdrew their application for retention of GT. Nevertheless, GT apparently

continued to work for the Debtors, even without Court approval. Now, GT asks the Estate to pay its fees for work done on behalf of the Debtors, including for work done after the Debtors withdrew their application for approval to hire GT.

2. Given the ties of GT to Nasser Kazeminy ("Kazeminy") – who is now a defendant in a lawsuit filed by the Liquidating Trustee asserting virtually identical grounds as contained in the lawsuit filed by the FLI Plaintiffs against Kazeminy and others – and the Debtors, as well as the allegations in the lawsuit filed by the Liquidating Trustee against Kazeminy and others, GT should not be permitted to collect payment for its "services," at least until every other creditor has been paid in full.

3. At the very least, as a result of the questions raised in this Objection, as well as in the objection filed by the Liquidating Trustee, the Court should hold an evidentiary hearing to determine the nature of the work conducted by GT and the contribution such work made to the preservation of the Estate's assets.

## I.

## ARGUMENT

### A. GT Did Not Perform Services for the Estate as a Creditor and Therefore Is Not Entitled to Compensation Pursuant to Section 503(b)(3)(D)

4. Section 503(b)(3)(D) of the Bankruptcy Code provides that

> After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary expenses . . . incurred by . . . a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders . . . in making a substantial contribution in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D).

5. Section 503(b)(3)(D), by its terms, only applies to the actual and necessary expenses incurred by *creditors*. GT may be a creditor of the estates as a result of pre-petition legal work performed on behalf of the Debtors, but by its own admission GT was not acting as a creditor when it performed the services for which it now seeks allowance of its substantial contribution claim. Instead, GT was acting as counsel for the Debtors. GT took instruction from the Debtors and their counsel, and performed its work "at the Debtors' request." (GT Application ¶ 13) Any application by GT for the allowance of a substantial contribution claim must therefore be made pursuant to Section 503(b)(4) of the Bankruptcy Code, which is the section that addresses the payment of fees and expenses to attorneys who provide services to an entity whose expense is allowable pursuant to Section 503(b)(3)(D).

6. Section 503(b)(4) provides for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection." None of subparagraphs (A),(B), (C), (D), or (E) of Section 503(b)(3)(D) apply to services performed on behalf of the Debtors. The Debtor is not a creditor so 503(b)(3)(D) is inapplicable.

7. GT's Application is therefore made under the wrong section of Section of the Bankruptcy Code and should be denied on such basis.

**B. GT Should Not Have Been Performing Any Services for the Debtors Post-Petition**

8. GT was not authorized to perform legal services for the Debtors after the bankruptcy petition was filed, and in fact, both the Committee and the FLI Plaintiffs objected to the retention of GT by the Debtors. Therefore, to the extent GT is entitled to any compensation for the services it provided to the Debtors post-petition, such compensation should be considered a general unsecured claim, not an administrative expense which would receive priority status.

9. On January 19, 2010, the Debtors filed their Expedited Application to Approve Retention of Greenberg Traurig, LLP as Special Counsel to the Debtors (the "Application for Retention") [Docket #137] seeking the Court's authority to retain GT "for the limited purpose of representing them with regard to litigation that is pending against the Debtors in the Delaware Chancery Court." (Application for Retention at ¶8)

10. On January 28, 2010, the Official Committee of Unsecured Creditors filed an Objection to the Application. On February 4, 2010, the FLI Plaintiffs filed an objection to the Application.

11. In the Committee's Objection [Docket #161], the Committee noted that "Greenberg Traurig has a history with the insiders who no longer control the Debtors. The prior relationship between Greenberg Traurig and the insiders raises the question whether the Debtors should retain Greenberg Traurig to represent their interests in litigation involving claims against those insiders." (Committee's Objection ¶ 6)

12. The Committee presciently noted that

> The former insiders of the Debtors have already been sued for malfeasance. The Estates may benefit from a claim against these insiders covered by insurance policies or from pursuing collection from the former insiders directly. In that case, Greenberg Traurig's "defense" would not be useful to the Estates. If anything, Greenberg Traurig would best assist the creditors of the Estates (including Greenberg Traurig, which is itself a creditor) by disclosing to the Debtors' Chief Restructuring Officer ("CRO") the results of its investigation of the actions of the Debtors' former insiders. (Committee's Objection ¶ 8)

13. In fact, the Committee's Objection has been borne out by recent events. The Liquidating Trustee, on behalf of the Estate, has now filed a Complaint and Objection to Defendants' Proof of Claim against those "former insiders" including Nasser Kazeminy and Otto Candies, Jr., asserting, inter alia, the same causes of action, based on the same facts, as those asserted by the FLI Plaintiffs in the Complaints filed in Delaware Chancery Court. It is obvious that GT's work ostensibly on behalf of the Estate actually benefitted no one other than the controlling insiders such as Kazeminy and, if the substantial contribution claim is allowed, GT.

14. The FLI Plaintiffs likewise objected to the Application [Docket #178] by pointing out GT's long history of involvement with the Debtors and their insiders, including Mr. Kazeminy.

15. On the basis of these objections, GT and the Debtors withdrew the Application prior to a hearing on the merits before the Court. In fact, GT – as a result of its relationships with Kazeminy – could never have been approved to

represent the Debtors because GT did not meet the disinterestedness requirements of bankruptcy. See Matter of Consolidated Bancshares, Inc., 785 F.2d 1249, 1256 (5th Cir. 1986) ("The Bankruptcy Code requires that an attorney who would be employed by the debtor's estate must be disinterested and may not hold or represent an interest adverse to the estate"). Furthermore, "[t]he Supreme Court has stated, '[w]here an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.'" Id. (quoting Woods v. City Nat'l Bank and Trust Co. of Chicago, 312 U.S. 262, 268 (1940).)

16. Seen in this light, GT's Application is nothing more than an attempt to use the back door to get compensation for the work for which it was unable to get approval using the front door. Therefore, even if GT is entitled to compensation for the work it did, GT should not be entitled to priority status for such compensation, but should stand in line with the rest of the Estate's creditors.

**C. The Services Performed By GT Did Not Make a "Substantial Contribution" to the Case**

17. Even if the Court finds that Section 503(b)(3)(D) applies to GT's claim because GT performed services as a creditor of the Estate, GT is nevertheless not entitled to priority payment for its fees and expenses as administrative expenses because it did not make a substantial contribution to the case. At the very least, the Court should hold an evidentiary hearing to determine if in fact the services performed by GT made the necessary "substantial contribution."

18. The Bankruptcy Code does not define "substantial contribution." The Fifth Circuit, finding that there is no statutory definition or legislative history

indicating a contrary intent, uses the ordinary, plain meaning of the words and defines them as meaning "considerable in amount, value or worth" In re DP Partners, Ltd. P'ship, 106 F.3d 667, 673 (5th Cir.1997). In a Chapter 11 case, that means services constitute a "substantial contribution" if they "foster and enhance, rather than retard or interrupt the progress of reorganization." Id. At 672; see also In re Energy Partners, Ltd. 422 B.R. 68, 80 (Bkrtcy. S.D. Tex. 2009). As shown by the Committee's Objection to GT's Application for Retention, as well as by the Trustee's Objection to the Application (the "Trustee's Objection"), filed today, GT's actions on behalf of the Debtors did not "foster and enhance" the reorganization, but rather retarded it.

19. "The entity attempting to prove that it has made a substantial contribution must do so by a preponderance of the evidence." In re Energy Partners, Ltd. 422 B.R. at 80; In re Buttes Gas & Oil Co., 112 B.R. 191, 193 (Bankr. S.D. Tex. 1992).

20. "This Circuit requires an evidentiary hearing on disputed factual issues with the burden on the applicant to establish the value of his services." Matter of Consolidated Bancshares, Inc., 785 F.2d at 1257; In re U.S. Golf Corp., 639 F.2d 1197, 1207 (5th Cir. 1981).

21. The factors used by the Fifth Circuit in determining whether an applicant has made a substantial contribution include:

> (1) whether the services involved in the contribution provided a benefit to the estate; (2) whether the services involved in the contribution were undertaken just for the applicant alone or for the benefit of all parties in the case; (3) whether the applicant

> would have undertaken the same approach absent the expectation of compensation from the bankruptcy estate; (4) whether the benefit conferred through the applicant's contribution exceeds the cost which the applicant seeks to assess against the estate; (5) whether the efforts of the applicant were duplicative of efforts undertaken by statutory fiduciaries; (6) whether the applicant profited from the situation or rather faced substantial loss if it had not undertaken the approach that it did; and (7) whether the applicant had a negative effect on the case, such as making questionable objections to pleadings filed by the debtor or engaging in improper conduct in some other fashion which caused the debtor to incur costs or which delayed resolution of the case.

In re Energy Partners, Ltd., 422 B.R. at 80 (citing In re Mirant, 354 B.R. 113, 132-35 (Bankr. N.D. Tex. 2006). It is clear that based on the above factors, GT is not entitled to compensation for its contribution.

**D. GT's Services Did Not Preserve Estate Assets or Foster and Enhance the Reorganization of the Debtors**

22. GT's Application makes it appear as if "but for" GT's actions, the Estate's assets would now be in the hands of the FLI Plaintiffs. But that is clearly not the case. The FLI Plaintiffs' case in Delaware had only just begun. The FLI Plaintiffs were battling GT for its failure to obey Vice Chancellor Strine's November 2, 2009 Order of "Expedited Discovery" when GT filed the Debtors' original Petition; the case had proceeded no further than that. The FLI Plaintiffs initially took the very reasonable position in Delaware that the bankruptcy stay did not stay the entire Delaware action, but only stayed the action as against the Debtors. And, discovery in the Delaware action would have confirmed – at the FLI Plaintiffs' expense – the allegations in the FLI Plaintiffs' Complaint, as well as the virtually identical allegations in the Liquidating Trustee's Complaint, which would have

saved the Estate considerable time and money. The FLI Plaintiffs were financing the litigation expenses of prosecuting claims again Kazeminy and Otto Candies. Instead, GT incurred legal fees for the Debtors in an attempt to restrain the FLI Plaintiffs from causing the Estate to spend legal fees. On a net basis, it is difficult to see how that preserved any Estate assets.

23. As previously noted, the Committee – which represented the interests of the creditors that GT was purportedly acting for – did not see the value in GT's post-petition work[1], noting that "[t]he Estates may benefit from a claim against these insiders covered by insurance policies or from pursuing collection from the former insiders directly. In that case, Greenberg Traurig's "defense" would not be useful to the Estates."

24. In other words, the other creditors of the Debtors did not see GT's work as providing a "substantial contribution" to the Estate.

**E. GT's Post-Petition Work for the Debtors <u>Was Duplicative of Work Done By Debtors' Counsel</u>**

25. Once the Debtors filed for bankruptcy protection, the Debtors were represented by bankruptcy counsel and did not need the services of GT. Any services provided by GT at that point were necessarily duplicative of work that was done – or should have been done – by the attorneys at Bracewell Giuliani ("Bracewell") who were representing the Debtors. <u>See</u> <u>Matter of Consolidated</u>

[1] The Creditors Committee clearly did not see the benefit to GT's pre-petition work either. The Liquidating Trustee's Complaint, filed by the same attorneys that previously represented the Creditors Committee, calls into question virtually every conclusion reached by the Debtors' "Special Committee" in the Special Committee's Report. The "Special Committee" was represented by GT, and on information and belief GT did much, if not all, of the investigative work and substantially wrote the Special Committee's Report.

Bancshares, Inc., 785 F.2d at 1252.

26. GT repeatedly asserts in its Application that it provided services on behalf of the Debtors and at the request of Debtors' counsel, i.e., Bracewell. However Bracewell, on behalf of the Liquidating Trustee, filed an objection to GT's Application [Docket #630], asserting that "[t]he Trustee does not believe that all of the fees and expenses requested by Greenberg Traurig, LLP ("Greenberg") in the Application provided a benefit to the estate." (Trustee's Objection ¶ 1) That is, the very lawyers on whose instructions GT claims to have been acting, now claim that GT's services did not provide a benefit to the Estate. It is difficult to see how, under such circumstances, GT can receive priority payment of its fees without first justifying such fees at an evidentiary hearing at which the contribution of GT's services can be determined.

**F. GT's Assertions in its Application Do Not Match the Services Allegedly Provided to the Debtors**

27. GT claims that "[i]mmediately after the entry of the TRO by the Bankruptcy Court, GT . . . led the efforts to thwart the efforts by the plaintiffs in the Delaware Litigation to avoid the consequences of the TRO and attend conferences with both this Court and the Chancery Court of Delaware to ensure that the assets of the estate were preserved."

28. After the entry of the TRO, the FLI Plaintiffs took no action to avoid the consequences of the TRO. Furthermore, none of the invoices – except for one entry on January 27, 2010 indicating the attendance of one attorney telephonically at a bankruptcy court hearing – attached by GT to its Application as Exhibit A even

relate to GT's attendance at "conferences with both this Court and the Chancery Court of Delaware."

29. As another example, GT's invoices list work done in connection with negotiation of a confidentiality stipulation with the FLI Plaintiffs. The confidentiality stipulation was to cover the Special Report that this Court has recently found was entitled to no special confidentiality protections. Much of the negotiation concerned whether such documents should be produced under a standard confidentiality provision or under a more stringent "attorneys eyes only" designation. It is difficult to see how such work helped preserve the assets of the Estate.

**CONCLUSION**

30. In light of the questions raised by this Objection, even if the Court finds that GT's legal services are covered by Section 503(b)(3)(D), the Court should hold an evidentiary hearing to determine in each case whether the services GT performed for which it is seeking priority compensation indeed provided a "substantial contribution" to the preservation of the Estate's assets.

Dated: August 5, 2010

Respectfully submitted,

PADUANO & WEINTRAUB LLP

/s/ Katherine Harrison
Katherine Harrison
(Admitted *pro hac vice*)

1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
ap@pwlawyers.com

JASPAN SCHLESINGER LLP
913 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 351-8000

Attorneys for FLI Deep Marine LLC, Bressner Partners Ltd., Logan Langberg and Harley Langberg

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2010, a true and correct copy of the foregoing document was served on all parties on the attached service list by electronic means as listed on the court's ECF noticing system.

/s/ Jason Snyder
Jason Snyder