

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/02/2010

| | | |
|---|---|---|
| IN RE: | § | Case No. 09-39313 |
| DEEP MARINE HOLDINGS, INC. | § | Chapter 11 |
| and | § | |
| DEEP MARINE TECHNOLOGY | § | |
| INCORPORATED | § | |
| and | § | |
| DEEP MARINE 1, LLC | § | |
| and | § | |
| DEEP MARINE 2, LLC | § | |
| and | § | |
| DEEP MARINE 3, LLC | § | |
| and | § | |
| DEEP MARINE 4, LLC, | § | |
| | § | |
| DEEP MARINE TECHNOLOGY | § | CASE NO: 09-39314 |
| INCORPORATED | § | |
| | § | |
| DEEP MARINE 1, LLC | § | CASE NO: 09-39315 |
| | § | |
| DEEP MARINE 2, LLC | § | CASE NO: 09-39316 |
| | § | |
| DEEP MARINE 3, LLC | § | CASE NO: 09-39317 |
| | § | |
| DEEP MARINE 4, LLC | § | CASE NO: 09-39318 |
| | § | Jointly Administered Order |
| Debtor(s). | § | Judge Isgur |

### ORDER DISALLOWING REIMBURSEMENT FOR LEGAL FEES

The Court denies Grant Thornton's request for reimbursement from the Estates for its legal fees.

### Background

On December 4, 2009, Deep Marine Holdings, Inc. and several affiliated companies (collectively, the "Debtors") filed chapter 11 bankruptcy petitions. On December 31, 2009, Debtors requested authorization to employ and retain Grant Thornton LLP to provide management and restructuring services to Debtors, effective as of the petition date. Doc. 79.

Debtors also sought authority to employ and retain John Bittner, a partner of Grant Thornton, as the Debtors' chief restructuring officer, effective as of the December 4, 2009 petition date. *Id.* On January 6, 2010, the Court issued its Order Approving Application to Employ and Retain Grant Thornton LLP and John Bittner ("Retention Order"). Doc. 118.

The Retention Order provides, in relevant part, that "Grant Thornton shall be compensated in accordance with the terms described in the engagement letter . . ." ("Engagement Letter"), which was entered into between the Debtors and Grant Thornton on January 5, 2010. *Id.* The Engagement Letter states, with regard to reimbursement of expenses and legal fees:

> In addition to the fees set forth herein, the [Debtors] shall pay directly, or reimburse Grant Thornton upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, meals and lodging in accordance with the Professional Fee Order. Grant Thornton shall be entitled to *reimbursement of its reasonable attorney's fees and expenses incurred in assisting Grant Thornton with its engagement and compliance with the requirements of the Bankruptcy Code*.

*See* Doc. 118 (emphasis added).

On May 19, 210, Grant Thornton and Bittner filed their First Interim Fee Application. Doc. 457. The First Application sought Court approval for the reimbursement of $26,462.72 in legal fees described as the "Legal Fees of Outside Counsel for CRO Retention Matters." Doc. 457-6. On June 16, 2010, the Court approved the First Application but disallowed, without prejudice, Grant Thornton's and Bittner's request for authority to seek reimbursement for the $26,462.72 in legal fees. Doc. 537.

On August 20, 2010, Grant Thornton and Bittner filed their Second and Final Fee Application. Doc. 650. The Second Application requested the Court's approval for the

2

reimbursement of $13,231.36 in "Legal Fees of Outside Counsel for CRO Retention Matters."[1] Doc. 650-6. On October 4, 2010, Nasser Kazeminy, Otto Candies, Jr., and their affiliates (collectively, "Kazeminy and Canies") filed an objection to the First and Second Applications of Bittner and Grant Thornton. Doc. 728. Among other things, the objection sought the disallowance of the $13,231.36 in legal fees requested in the Second Application.[2] *Id.*

On October 12, 2010, the Court held a hearing on the Second Application. At the hearing, Bittner testified that Grant Thornton paid its outside counsel $26,462.72 for negotiating and executing the CRO order and engagement letter. Bittner testified that Grant Thornton is now seeking reimbursement for half of those legal fees from the Estates, which comes to $13,231.36.

At the conclusion of the hearing, the Court ordered the parties to submit briefs on whether Grant Thornton may be reimbursed by the Debtors for legal fees Grant Thornton paid to outside counsel for negotiating, drafting, and executing the CRO order and engagement letter.

**Analysis**

Sections 327, 328 and 330 of the Bankruptcy Code provide for the employment, retention, and compensation (from the estate) of professionals by the trustee or debtor-in-possession. Section 327 provides, in relevant part,

---

[1] The Second Application listed the full $26,462.72 amount that was initially requested in the First Application but provided for a "Voluntary Reduction of Legal Fees" in the amount of $13,231.36. Doc. 650-6. Thus, in the Second Application, Grant Thornton and Bittner only sought reimbursement of $13,231.36 in legal fees from the estate.

[2] Kazeminy and Candies offered the following argument in support of its objection:

> No explanation is provided as to why the CRO, who had the assistance of counsel for the Debtors in matters relating to the bankruptcy estates, needed the services of outside counsel. This expense was not approved when sought in the First Fee Application, and without explanation, [Grant Thornton] has placed it in its Second Fee Application. Although [Grant Thornton] attempts to sidestep this issue by only requesting reimbursement for one-half of the expense of its counsel this time, absent a full explanation, no part of the services should be reimbursed by the estates.

Doc. 728 (emphasis original).

> Except as otherwise provided in this section, the trustee, *with the court's approval*, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).  Section 328 provides, in relevant part,

> The trustee, or a committee appointed under section 1102 of this title, *with the court's approval*, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a) (emphasis added).  Section 330, provides, in pertinent part, that a professional employed pursuant to § 327 may be awarded:

> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1)(A)-(B).  Section 330 also authorizes bankruptcy courts to "award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).

Given §§ 327, 328, and 330, it is clear that bankruptcy courts play a significant role in overseeing the professional fees that are incurred by the estate.  Section 327 requires a trustee or debtor-in-possession to seek and receive bankruptcy court authorization before employing professionals on behalf of the estate.  Section 328 mandates bankruptcy court approval of the terms of professionals' compensation.  Section 330 enables bankruptcy courts to deny

compensation for unreasonable fees or unnecessary services and to deny reimbursement for unnecessary expenses requested by professionals.

However, §§ 327, 328, and 330 do not address the precise issue in this case: the reimbursement of a professional, employed to serve the estate pursuant to § 327, for the professional's legal fees (i.e. for the professional's employment of another professional), when such legal fees are incurred in the professional's own capacity and not on behalf of the estate. In fact, the Bankruptcy Code is silent on the ability of a professional, employed by the estate pursuant to § 327, to, in turn, employ another professional. *See In re Crafts Retail Holding Corp.*, 378 B.R. 44, 49 (Bankr. E.D.N.Y. 2007) ("Indeed, there is no provision in the Bankruptcy Code authorizing a court approved professional person . . . [to] employ another professional."). *See also In re Geneva Steel Co.*, 258 B.R. 799, 803 (Bankr. D. Utah 2001) ("Section 327 of the Code provides that the 'trustee,' with the court's approval, may employ one or more attorneys, etc. There is no provision in the Code for a professional appointed pursuant to Section 327 to seek appointment of another professional to represent its interests at a fee hearing."). This gap in the Bankruptcy Code does not extinguish the Court's oversight role. "The employment of professionals and payment of their fees are *always subject to this Court's approval and oversight*." *In re Fashion Shop of Kentucky, Inc.* 364 B.R. 283, 284 (Bankr, W.D. Ky. 2007) (emphasis added). Otherwise, the significant control bankruptcy courts' exercise over administrative costs—through §§ 327, 328, 330, and other sections of the Bankruptcy Code—could be completely undermined. *See also Crafts Retail*, 378 B.R. at 49 ("[The requirement of court approval of an attorney's employment in a bankruptcy case was adopted] to control serious abuses and [is] to be strictly observed; without an order of the court ... not only may he not be

retained, but he can recover nothing, no matter how beneficial, or how arduous, his services.") (quoting *In re Eureka Upholstering Co., Inc.*, 48 F.2d 95 (2d Cir. 1931) (Hand, J.).

The Court denies the $13,231.36 in legal fee reimbursement requested by Grant Thornton because such fees were never authorized by the Court to be incurred by Grant Thornton as a reimbursable expense. When the Court approved Grant Thornton's employment and retention, the Court authorized "reimbursement of [Grant Thornton's] reasonable attorney's fees and expenses incurred in *assisting Grant Thornton with its engagement* and *compliance with the requirements of the Bankruptcy Code*." Doc. 118 (emphasis added). Thus, two types of legal fees are potentially reimbursable: (1) fees incurred to assist Grant Thornton in carrying out the services it was engaged to perform; and (2) fees incurred to assist Grant Thornton in complying with the Bankruptcy Code.

Grant Thornton now seeks reimbursement for legal fees Grant Thornton incurred when it hired counsel to negotiate and draft the terms of Grant Thornton's employment and retention. These fees do not fit within either category of potentially reimbursable legal fees set forth in the Engagement Letter. Grant Thornton was *retained to be engaged* by the Debtors in the successful resolution of their bankruptcy case. Grant Thornton was not *engaged to be retained* by Debtors. The retention preceded the engagement. However, Grant Thornton is now requesting fees associated with its retention, and not with its engagement.

To be sure, the Court authorized reimbursement of certain types of legal fees that might be incurred by Grant Thornton. For example, if Grant Thornton needed counsel to determine if actions taken by the Estates might give rise to individual liability against Grant Thornton, then it might have needed to incur legal expenses to provide Grant Thornton with appropriate legal

6

advice. Conversely, Grant Thornton could not have retained counsel to represent the Estates' interest without obtaining specific Court authority. *Crafts Retail*, 378 B.R. at 49.

The Court did not grant advance authorization for Grant Thornton to incur legal fees with respect to whether it could be retained. Accordingly, they are not reimbursable by the Estates.

### Conclusion

The Court disallows reimbursement of the $13,231.36 requested by Grant Thornton.

SIGNED **November 1, 2010.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE